**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

**GITA F. SANKANO,**

        **Plaintiff,**

        **v.**

**TROUTMAN PEPPER HAMILTON SANDERS LLP AND BRIAN IWASHYNA,**

        **Defendants.**

**Case No. 1:24-cv-00142**

---

## STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

# Appendix G

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

GITA F. SANKANO,

                    Plaintiff,                    Case No. 1:24-cv-00142

v.

TROUTMAN PEPPER HAMILTON
SANDERS LLP and BRIAN IWASHYNA,

                    Defendants.

## DECLARATION OF MATTHEW BOWSHER

The undersigned states the following:

1.      My name is Matthew Bowsher.  I am of majority age, and I give this declaration of my
own free will based upon my personal knowledge for use in the above-captioned matter.

2.      In January 2019, I left my position as an attorney at Freddie Mac, and I joined Troutman
Sanders LLP as a partner in our Washington, D.C. office.  On July 1, 2020, resulting from its
combination with Pepper Hamilton LLP ("Pepper Hamilton"), Troutman Sanders changed its
name to Troutman Pepper Hamilton Sanders LLP ("Troutman").  On January 1, 2025, the firm's
name changed again to Troutman Pepper Locke LLP.

3.      I was a partner in Troutman's Multifamily Housing Finance ("MFH") practice group
throughout the time Gita Sankano was employed by Troutman, and I am currently a partner in
the MFH practice group.

### One-On-One Training of Gita Sankano

4.      I first communicated with Gita Sankano on November 11, 2020, shortly after learning
that she had joined the MFH practice group in the Washington, D.C. office in connection with
the merger with Pepper Hamilton.  I called Ms. Sankano to introduce myself and to ask whether
she was interested in working with me.  To find Ms. Sankano's contact information, I searched
the firm's directory on the intranet, which includes pictures of firm personnel, so I knew that Ms.
Sankano was Black before I reached out to her.

5.      My initial impression of Ms. Sankano was very favorable.  She was enthusiastic,
projected confidence, and seemed to have a great deal of "grit."  I knew she was very junior and
lacked knowledge of MFH transactions, but I was excited to work with her and thought she had
much potential, given her apparent "can do" attitude and her prior experience with real estate
related matters.  She also seemed excited to work with me.

6.      Because I knew that Ms. Sankano did not have any experience with multifamily loans that are structured to be sold to Freddie Mac, I offered to provide her with one-on-one training on that type of loan.  I suggested that we set up weekly 30-minute calls to provide information and answer her questions about Freddie Mac loans, Freddie Mac processes and procedures, and whatever else seemed useful to her in connection with the few deals that she was currently working on for my colleagues in Richmond.  *See* Exhibit 1.

7.      I conducted these weekly training sessions for Ms. Sankano from November 2020 through February 2021.  Ms. Sankano expressed appreciation for the training each week, but did not ask many questions.

8.      The one-on-one-training that I provided to Ms. Sankano is not something I have offered to any other associates, before or since.

**My Work with Ms. Sankano in 2021 and 2022**

9.      Ms. Sankano began working directly with me on one of my deals in December 2020.  Ms. Sankano worked directly with me or with other associates on my deals throughout 2021 and 2022, often asking for more work.  I understand Ms. Sankano alleged in her Complaint that she only began working with me in March 2022.  This is not true, as evidenced by firm records showing her work on my deals.  By March 2022, Ms. Sankano had worked on five of my deals, reporting a total of 161.4 hours.

**Continued Training of Ms. Sankano**

10.      Throughout the time I worked with Ms. Sankano, I took special care to explain the substantive legal and practical concepts underlying the transactions and our clients' interests.  Sometimes I provided these explanations on a phone call, and other times I sent Ms. Sankano lengthy emails with detailed explanations.  In each instance, I was trying to be helpful, and I considered my emails to be training her as I often train other associates (not belittling her in any way).  A sampling of the emails I sent to Ms. Sankano providing detailed explanations in order to train her on various concepts include the following, most of which were in response to questions which could have been answered with a quick yes or no, but I took the opportunity to provide deeper understanding of the circumstances:

•      July 30, 2021 - Explained how modifications should be revised when a borrower has a board of managers/directors for any of the various LLCs that are in the direct line of control.  (Exhibit 2).

•      October 17, 2021 - Explained how to draft a Purchase and Sale Agreement analysis.  (Exhibit 3).

•      January 28, 2022 – Explained that a joint venture agreement is just another name for the operating agreement of a joint venture. (Exhibit 4).

- March 9, 2022 – Explained why a second attorney review ("SAR") was not the best approach in this particular situation.  (Exhibit 5).

- March 9, 2022 –  Explained the chronology of our negotiations and why the legal description of the property was not finalized. (Exhibit 6).

- May 4, 2022 - Explained why we would never see an amended/restated structure on a supplemental loan.  (Exhibit 7).

- May 18, 2022 – Explained why the Fannie/Freddie attorneys in our MFH practice group does not prepare closing binders for borrowers (or anyone).  (Exhibit 8).

- August 15, 2022 –  Explained where in the Freddie Mac Guide she could find the requirement that UCC searches must not be more than 30 days old, and how the answer to her question might be different in future deals depending on the context.  (Exhibit 9).

- August 16, 2022 - After Ms. Sankano expressed some confusion about why some partners required bankruptcy searches and others do not, I sent Ms. Sankano a lengthy email explaining why different attorneys and clients required such searches.  She indicated that she appreciated my explanation. (Exhibit 10).

**Training of Ms. Sankano at Washington DC MFH Group Lunches**

11.     In addition to the one-on-one training sessions from late 2020 through early 2021 and the on-the-job training I provided to Ms. Sankano while working with her on deals, I also took steps to ensure that all of the Washington, D.C. attorneys in the MFH practice group had opportunities to learn about relevant topics.  On January 2, 2021, I launched a new format for the DC MFH group meetings where different partners and associates would take turns presenting on various topics or facilitating discussion on topics of interest, including recent Freddie/Fannie developments,  recent decisions of the Consumer Financial Protection Bureau, using MFH precedent, Airbnb / home sharing, working with affordable housing agencies, and general practice pointers.

**Ms. Sankano's Work Performance in 2021**

12.     Shortly after I began working with Ms. Sankano, I shared with another MFH partner, S.R. Sidarth, that while Ms. Sankano was very responsive, conscientious, proactive, and good about asking questions, she was very "raw" and had asked a particularly concerning question: whether funds should be disbursed before or after closing is authorized, which indicated to me that Ms. Sankano lacked a basic understanding of deal concepts.  *See* Exhibit 11.

13.     I continued to see Ms. Sankano make significant mistakes in her work throughout 2021 and I addressed them with her directly.  I also discussed Ms. Sankano's mistakes with other MFH partners and senior associates.  As one example, attached as Exhibit 12, is a copy of an email I sent to a more senior associate on June 10, 2021 explaining that Ms. Sankano had

"completely missed" a restriction set forth in the Purchase and Sale Agreement and asking him to follow up with her on it in a "constructive manner, so that she's aware and understands."

14.      On another occasion in June 2021, I told one of our practice group's Professional Development Partners, Nora Nickel, that despite my training with Ms. Sankano and the number of deals she had done with many attorneys in our group, Ms. Sankano did not seem to grasp some of the basics of contracts and deal closing logistics.  I noted that I liked her on a personal level, but commented that the "amount of hand-holding necessary is daunting."  *See* Exhibit 13.

15.      By August 2021, I had started to lose confidence in Ms. Sankano's ability to succeed in the practice group, after not seeing improvement in her performance since she started working with me, and despite the fact that she had received significant training.  I sent an email to our Practice Group Leader, Brian Iwashyna, stating that "I'm not bullish on her trajectory."  *See* Exhibit 14.  In November 2021, I expressed to another MFH partner, S.R. Sidarth, that I did not think that Ms. Sankano was even at the level of another associate who was two years less senior, in terms of her ability to handle the bulk of a deal independently.  *See* Exhibit 15.

**Ms. Sankano's Work Performance in 2022**

16.      At some point during or shortly before January 2022, Ms. Sankano told me that she wanted to work on more complex deals, so when I received a new deal in January 2022 involving a ground lease, I offered her the opportunity to work directly with me on it, and she accepted.  That deal was called "1430 Q."  *See* Exhibit 16.  This was the fifth deal that we had worked on together, but it was only the second deal in which we worked *directly* together (no senior associate involved), and I was eager to see firsthand how much she had improved over the prior year since we had worked on our first loan directly together, during which time she billed over 2,000 hours while working on dozens of Freddie/Fannie loans, learning from not only me but also several other partners and senior associates.

17.      In March 2022, as we closed the 1430 Q deal, I was disappointed and concerned at the frequency and caliber of the various mistakes (misunderstandings, poor communications, flawed analyses, etc.) which Ms. Sankano had made over the course of the past two months on this deal, some of which I had discussed with her in real-time.  While the deal was still fresh in my mind, I made a list of Ms. Sankano's noteworthy mistakes so that I would be able to sit down with her and discuss these items at an appropriate time, and so that I would remember these examples when it came time to complete her annual performance evaluation at the end of the year.  As we continued to work on more deals together throughout 2022, I continued to add to the list occasionally.  A copy of this running list of Ms. Sankano's mistakes is attached as Exhibit 17.  I had kept a similar list for the same purpose for another associate who had exhibited significant performance problems, Tom Scopelitis (who is a white male).

18.      Some of the mistakes that Ms. Sankano made on my deals in 2022 include the following:

•      February 4, 2022 - Ms. Sankano sent me a LIA (legal issues analysis), which contained a number of errors.  I responded with an email in which I explained the edits I made and pointed out errors that she should be aware of.  *See*  Exhibit 18.

4

- April 4, 2022 - Ms. Sankano sent a misleading email to the borrower's counsel. I took the time to send her a correction and detailed explanation of why her email was incorrect. *See* Exhibit 19.

- May 2, 2022 - After I revised Ms. Sankano's memo and provided her with a redline, I provided a detailed explanation as to why her characterization of the underlying issue/request, and her analysis of it, were not accurate. This additional explanation was needed because Ms. Sankano mistook some of my edits for stylistic changes. *See* Exhibit 20.

- May 8, 2022 - Ms. Sankano sent me her comments on an opinion which were inaccurate. Rather than just sending Ms. Sankano a redline showing my edits to her comments, I explained why I was making the changes. *See* Exhibit 21.

- June 7, 2022 - Ms. Sankano made an embarrassing mistake in an email to our client, providing the client with a cumulative set of all prior comments to a document instead of the new comments which the client specifically requested. Rather than responding harshly, I asked Ms. Sankano to "[p]lease re-read the thread carefully" and stated that "I think you may be mistaken." I then went on to explain her mistake. *See* Exhibit 22.

- November 28, 2022 - Ms. Sankano instructed opposing counsel to delete the addresses for both the lender and for Freddie from the counsel's draft opinion letter, leaving the letter addressed to nobody. I questioned why she would provide that instruction, given that the lender's name and address are included in the standard Freddie form opinion letter. Ms. Sankano responded that she had never seen the Freddie address in an opinion letter and she "forgot" that the form had a space for the lender's address. I explained why she shouldn't have asked them to delete all addresses. *See* Exhibit 23.

- December 1, 2022 - Ms. Sankano sent an email to opposing counsel stating that we would need public record searches performed on the borrower. Counsel questioned the request, as the borrower was newly formed (and thus there would not be anything to search for). Ms. Sankano doubled down on her error, stating "We still typically ask for searches." I told her that we typically do not, and that Ms. Sankano's own checklist – which was our group's standard form and which she had presumably used on every Freddie deal for the past two years -- stated "Searches not required for newly formed entities." *See* Exhibit 24.

19.    While Ms. Sankano was making many substantive and careless errors in her work, and while I viewed it as part of my job to point out some of these errors to her, I was also quick to praise her when she performed impressively. A collection of my emails to Ms. Sankano praising her work are attached as Exhibit 25.

20.    By the end of 2022, I had lost confidence in Ms. Sankano's work product, and I was frustrated at having to spend considerable extra time double-checking her work and providing corrections and explanations, often for relatively basic things, for which I didn't see other

associates requiring nearly the same amount of assistance. Despite working on Fannie and Freddie multifamily deals for two years, her communications, analysis, and attention to detail were not commensurate with her level of experience and were not improving. I also thought that she was either grossly inefficient or inflating her time, as she was billing seemingly excessive hours to relatively "vanilla" deals and routine tasks. A copy of an email that I sent to one of my colleagues on November 8, 2022, outlining these concerns, is attached as Exhibit 26. I sent an email with similar concerns to two other colleagues on December 1, 2022. In that email, I noted that Ms. Sankano had been closing deals for over two years, and still doesn't know the basics. I also stated that her judgment was "so far off the mark" and her responses to her mistakes were off-base as well. I also noted that she was often billing excessive numbers of hours to deals, and I was having to write off her time. *See* Exhibit 24.

21.     Throughout the time I worked with Ms. Sankano, I kept our Practice Group Leader, Brian Iwashyna, generally informed of how she was doing. Usually, those updates were provided in person (when Mr. Iwashyna came to the Washington, D.C. office where I work), or over the phone, but I sometimes provided feedback to him via email. I told Mr. Iwashyna about Ms. Sankano's lack of substantive knowledge about deals, even after she had been working with our group for some time and had received significant training. I also told Mr. Iwashyna that Ms. Sankano was making numerous sloppy mistakes, and needed to slow down. By the end of 2022, I did not want to work with Ms. Sankano, and I told Mr. Iwashyna that.

**Evaluation of Ms. Sankano's Work Performance in 2022**

22.     Near the end of 2022, I completed an annual performance evaluation for Ms. Sankano based on the work she performed for me in 2022. My evaluation is reflected in the 2022 Associate Evaluation attached as Exhibit 27. In my evaluation, I praised Ms. Sankano's responsiveness and follow-up, noting that her responsiveness was exceptional. However, as requested by the evaluation form, I also noted several items that Ms. Sankano needed to work on, including more attention to detail, more independent analysis, and demonstration of a deeper level of understanding of the underlying issues, rather than merely moving the checklist forward at lightning speed. As instructed by the evaluation form, I provided two specific examples of situations where she had demonstrated these shortcomings. One of these examples was something that I had raised with her at the time it occurred; the other example was not raised in real time, as it would have been inappropriate, but I had previously noted it in the ongoing list of issues (referenced above) for this exact purpose. Those two examples were as follows:

•       On October 5, 2022, the MFH delivery coordinator sent an email to Ms. Sankano stating the survey certificate on the deal did not match the survey. The delivery coordinator provided screenshots showing the survey and the survey certificate. Ms. Sankano responded by asking "Can you tell me what doesn't match," even though the screenshots clearly showed that the dates did not match. *See* Exhibit 28.

•       On October 12, 2022, Ms. Sankano made three mistakes in one short email that she sent to borrower's counsel and which she later sent to the client: (1) she attached the wrong loan application, which was for an unrelated borrower, (2) she said she would send a legal checklist in the coming days, but then proceeded to provide that checklist later in

the email, and (3) she referenced the title commitment for "each Property," but there was only one property. These errors were sloppy, confusing, and created an embarrassing first impression of the firm to opposing counsel, and our client. This was a standard form "intro" email which, by October 2022, presumably she would sent on dozens of prior deals. Moreover, in sending the wrong loan application, she disclosed confidential information, exposing our firm and our client to reputational risk and potential liability. A copy of my email to Ms. Sankano pointing out these three errors is attached as <u>Exhibit 29</u>.

23.     In my 2022 performance evaluation of Ms. Sankano, I referred to her as a "2019 grad" as the performance evaluation system showed that she was considered by the firm to be in the class of 2019. I now understand that Ms. Sankano graduated from law school in 2018 and was considered to be class of 2019 for our firm's evaluation and compensation purposes because she had a clerkship for a year before her employment with the firm. In referring to Ms. Sankano as a "2019 grad," I was pointing out that she had three years of work experience as of late 2022.

24.     In February 2023, Ms. Sankano came to my office to discuss my 2022 performance evaluation of her. She told me that everyone else's evaluation of her was good, and she was surprised by the review that I gave her. Ms. Sankano asked that in the future, I provide her with real-time feedback on issues as they arose. I was confused by Ms. Sankano's request, as I had provided Ms. Sankano with real-time feedback on many of the mistakes she had made, including one of the examples I gave in the 2022 performance evaluation. I did this by sending Ms. Sankano emails noting the things she had done incorrectly on a deal and providing her with an explanation of the issues involved. I thanked her during the meeting for bringing her concerns to my attention, and I agreed to her request.

**<u>Ms. Sankano's Work Performance in 2023</u>**

25.     I did not work as much with Ms. Sankano in 2023 as I had in 2022, due to my continued and increasing concerns over the poor quality of her work product and her inefficiency, together with my low volume of deals that year. Ms. Sankano did work on three of my deals in mid-2023, and I was able to get comfortable with that because Kelly Mufarrige was the senior associate handling the deals and could supervise Ms. Sankano's work.

26.     I was not asked to complete a 2023 performance evaluation for Ms. Sankano. This surprised me, as she had billed more than enough hours on my deals to prompt a request for such evaluation in our system.

**<u>My August 3, 2023 Email to Ms. Sankano</u>**

27.     In July 2023, I was asked by a client to handle a deal involving two properties called the Falls of Braeswood and the Falls of Dairy Ashford. I asked Kelly Mufarrige to be the senior associate on the deal, and Ms. Mufarrige assigned Ms. Sankano as the junior associate. As is the typical practice in our group, Ms. Sankano worked with the MFH New Matters team to open this new matter in our system, with me receiving 70% of the "matter responsible" credit in my capacity as the partner, and Ms. Mufarrige receiving 30% of the matter responsible credit in her

capacity as the senior associate. Ms. Sankano sent an email to the MFH New Matters team on July 31, 2023, providing them with the information to open the matter. *See* Exhibit 30.

28.     A MFH New Matters team member opened the new matter for the deal incorrectly, by giving me 100% of the matter responsible credit. Ms. Sankano noticed the error on August 3, and sent me and Ms. Mufarrige an email alerting us to it, but did nothing to fix it. Reluctant to get involved, after waiting two hours, I finally asked Ms. Sankano, "Can you have them fix it?" *See* Exhibit 31.

29.     Ms. Sankano then emailed MFH New Matters to try to fix the problem. But instead, she created more confusion by how she worded the correction. Rather than saying that Ms. Mufarrige should have 30% of the credit and I should have 70%, she wrote that "Kelly should be the matter responsible attorney for this one. See below. Please update." She then included an excerpt from her original email indicating that the split between Ms. Mufarrige and me should be 30% / 70%. *See* Exhibit 30.

30.     Not surprisingly, MFH New Matters was confused by Ms. Sankano's contradictory instructions. The MFH New Matters team member then changed the matter <u>assigned</u> credit but left the matter <u>responsible</u> credit as it was, still incorrectly reflecting me as having 100% of the matter responsible credit. In response, Ms. Sankano confused matters further, sending an email on August 3 at 11:17am that stated "Kelly should be the matter responsible. So it should change from Matt to Kelly." Exhibit 30. To make matters worse, Ms. Sankano sent an email a few minutes later at 11:19am stating, "To be clear, it should be the following" and then indicated that matter responsible credits should be assigned only to Ms. Mufarrige. *Id.*

31.     Both of the emails Ms. Sankano sent on August 3 at 11:17am and 11:19am were wholly incorrect. Ms. Sankano should have said that the matter responsible credits should be split between me and Ms. Mufarrige, with me having 70% of the credits and Ms. Mufarrige having 30% of the credits. Instead, Ms. Sankano indicated that the matter responsible credits should be changed from being all mine to being all with Ms. Mufarrige. So I stepped in again at 11:25am and clarified to the MFH New Matters team member that "It should not be 100% Kelly. It should be as was originally requested, per the thread below. Kelly Mufarrige <mark>(30%)</mark> / Matt Bowsher <mark>(70%)</mark>." Exhibit 30. (highlighting in original).

32.     Shortly after this, I sent Ms. Sankano an email (at 11:28am) pointing out that she was confused, and the matter responsible assignments should be 30% Kelly and 70% me, as she had instructed originally and as how she had instructed on all other matters that Ms. Sankano had opened for me which involved Ms. Mufarrige or another senior associate. Ms. Sankano responded that she thought she was clear with the first email she sent that morning. *See* Exhibit 32, page 1477. I was extremely frustrated by this response. Not only had Ms. Sankano created the problem with her internally contradictory and then incorrect emails, she was either refusing to accept any responsibility for the problem or unable to see her error even after it was pointed out to her. Incredibly, in the face of all evidence to the contrary including the responses from both the MFH New Matters team member and me, Ms. Sankano said that she thought she was clear. In response to her email, I sent Ms. Sankano a characteristically lengthy email explaining exactly why her emails were not clear. In that email, I noted that this was very basic, elementary

communication that had nothing to do with training or understanding of multifamily transactional law, as Ms. Sankano had previously implied that some of her mistakes were due to a lack of training. In my email, I also noted that Ms. Sankano had previously expressed an interest in receiving feedback from me in real time, so that is what I was doing. *Id.*

33.     I was particularly frustrated by Ms. Sankano's response because I had previously discussed with Ms. Sankano the need to communicate clearly with staff about administrative matters, as she had created problems with this on prior occasions. For instance, in February 2022, Ms. Sankano had sent one of the Legal Practice Assistants ("LPAs") a vague and cryptic email stating "We are sending out of *(sic)* escrow package for this one tomorrow. Please send us scans as well. I'll send you a calendar invite, as well." The senior associate on the deal had to step in and explain to the LPA exactly what needed to be included in the escrow package and provide more detailed instructions. I followed up on that email with my own two emails to Ms. Sankano stressing the need to provide clear and specific instructions when communicating with our administrative teams. My first such email (February 25, 2022, at 12:59pm) closed by stating:

> Just need you to be mindful, when using LPAs, whether it's for escrow packages, or pulling signature pages, or drafting loan docs, we need to be clear and thoughtful in our instructions, because the extra 1 or 2 minutes can save you 30 minutes of fixing a mistake, resending the correct versions, etc.

*See* Exhibit 33. I felt that Ms. Sankano's August 3 emails to the MFH New Matters team were similarly deficient, resulting in the same confusion, again requiring someone to step in to clarify her instructions for an administrative team member on a routine matter.

34.     In retrospect, my email to Ms. Sankano on August 3 was unduly harsh and borne out of my frustration. I stand by the content of the email, but I wish I had used less harsh terms to express myself. However, at no time did I intend to insult Ms. Sankano's intelligence. My comments focused solely on her demonstrated failure to communicate clearly, not her intelligence. I certainly did not make any kind of reference to her race.

35.     After sending my email to Ms. Sankano, I forwarded a copy of it to my Practice Group Leader, Mr. Iwashyna, to let him know the type of communication I was having with Ms. Sankano. *See* Exhibit 34.

36.     Ms. Sankano sent me an email about an hour later, in which she said that she would not tolerate my condescending tone, her intelligence being questioned, or me belittling her. *See* Exhibit 32, p. 1469. I was shocked by her reaction. I felt awful that I had caused her to feel this way, as I never meant to insult her. Given our three years of working together, my investment of so much time training her, and her familiarity with my writing style, I was surprised and knew I had to try to make it right. So I carefully composed a response, in which I confirmed that it was not my intention to make her feel that way, I thanked her for her constructive criticism of my constructive criticism, and stated that we both could benefit from continued growth and improvement in our communications. *See id.*

37.     I understand that Ms. Sankano filed a complaint with the firm's Human Resources department concerning my communications with her, particularly the email that I sent her on August 3, 2023.  I was interviewed by a member of the firm's Office of General Counsel in connection with this investigation.  After the conclusion of the investigation, I was told that the investigation found that the email I sent on August 3, 2023 was harsh, but it did not find that there was any racial animus behind the email.  My practice group leader, Mr. Iwashyna, called me to discuss my communication style following the close-out of the investigation.  After the concern was raised with Human Resources and I was counseled about my communication style, I have made a conscious effort to communicate in a more appropriate tone and manner in my emails.  Following this investigation, I did not have any interactions with Ms. Sankano.  I did not staff her on any deals, exchange emails with her, or complete an evaluation of her performance.  I also was not involved in the decision to terminate her employment.

**My Emails with Ms. Sankano about Notaries**

38.     In February 2022, Ms. Sankano sent an email to a client agreeing to separate the notary pages from the signature pages.  I had never heard of someone intentionally splitting the notary page from the signature page before, but I had seen it done accidentally, and it was rejected by the recorder's office as a result.  Consequently, I needed to determine why the client was making this request before we acceded to it, and I called Ms. Sankano to discuss the matter.  Because I was not sure what she knew about notaries, and because she had previously asked questions which showed a lack of familiarity with certain real estate fundamentals, I took the opportunity to very briefly explain the function of a notary, just as I had explained similar issues to her in the past.

39.     During the call, Ms. Sankano told me that the client wanted split notaries and that Mr. McPherson had agreed to do this in the past.  I accepted that explanation and ended the call politely, as there was nothing more to discuss.  I did not hang up on Ms. Sankano or treat her rudely or in a belittling manner.  I did not mention or refer to Ms. Sankano's race at all during this call.

40.     Following the call, Ms. Sankano sent me a follow-up email giving me an example of how the client's approach had been done on a prior deal.  I appreciated the follow-up even though we had already resolved the issue on the phone, and I responded "Understood, totally makes sense.  Thanks again."  *See* Exhibit 35.

**My Emails with Ms. Sankano about Whether She Had Seen Language Accepted Before**

41.     In April 2022, Ms. Sankano was working on a deal with me, and she sent me an email stating that she had no comments on the Delaware opinion letter that opposing counsel had just sent us.  I reviewed the opinion letter myself and noted certain language in the draft.  I asked Ms. Sankano if she had ever seen us accept that language before, because I knew that Ms. Sankano,

as an associate, had reviewed many more legal opinions than I had reviewed in the past few years, as such task is typically delegated to associates rather than partners. I further explained:

> Not asking you to push back blindly on the [borrower's] counsel on this, rather I'm asking you to give this some thought, consider whether you've ever seen it in the year you've been closing loans with us, and also pull prior Winstead opinions to see if Troutman has accepted it from this firm, then let's circle-back and see if it's appropriate to reject it.

Exhibit 36. I understand from her Complaint and testimony that Ms. Sankano thinks my tone in the first email on this matter was harsh, but I did not intend for it to be. Rather, I was sincerely asking her to consider whether we should accept this language and research whether we had previously accepted it. Our group's associates receive training on legal opinions, and I was confident that Ms. Sankano could access those resources quicker than I could. I also felt that it would provide her with better training than if I doubled-checked it myself and dictated the answer to her.

42.     Ms. Sankano responded that she had seen that type of language before, but on the wrong type of deal (Fannie Mae rather than Freddie Mac) and noted that she "might have got the opinion languages confused." She then said that Winstead (the opposing counsel) had rendered opinion #1 on previous deals so she agreed with me that we could push back. I responded "Perfect, thanks." *See id.*

43.     However, it turned out that Troutman actually had accepted the language in question before on a deal with Winstead. This was exactly what I was worried about, and why I had asked Ms. Sankano to pull prior opinions to see if we had accepted the language before. Ms. Sankano apparently had not done that when I asked, but she did so after opposing counsel pointed it out, and she confirmed that we had previously accepted the language on one of my deals for which the opinion was reviewed and approved by a different associate. I was then forced to email opposing counsel explaining how this situation had come about and why we accepted the language previously but pushed back on this deal, which was embarrassing, and could have been avoided if Ms. Sankano had investigated the issue as I had asked.

44.     Although I was disappointed in yet another example of Ms. Sankano's poor performance, I did not think it was helpful to admonish her, so I just emailed her to say "Meh, no biggie." *See* Exhibit 37.

## My Emails with Ms. Sankano about Whether Local Opinions Are Needed for Supplemental Loans

45.     In May 2022, I was working on a different deal with Ms. Sankano where I thought she was incorrect about one point, but it turned out that she was right and I was wrong.

46.     In the course of that deal in May 2022, Ms. Sankano told opposing counsel that "no enforceability / local opinions are needed because this transaction is a supplemental loan."  I sent her an email where I said the following:

> Please issue a correction to your statement below.  It is not accurate to say that "no enforceability/local opinions are needed".

I then went on to explain why I believed that local opinions were still required on supplemental loans, including the seemingly dispositive fact that the required Freddie Mac form opinion letter specifically did not waive all local opinions, rather it only waived the enforceability opinion.  I also pointed Ms. Sankano to a recent deal in which she herself had handled a supplemental loan for which the opinion letter included all local opinions.  *See* Exhibit 38.

47.     Ms. Sankano responded that it was her understanding that local opinions are not required for supplemental loans.  She referenced the Freddie Mac published opinion guidelines and our firm's annotated version of the Freddie opinion (an internal training resource), as well as an email from another partner making the same point.  *See id.*

48.     I reviewed the materials Ms. Sankano provided me and realized that she was correct and I was wrong.  I responded with an email acknowledging this, saying "Oh, wow!  Ha!! That's a massive disconnect between the form opinion and the guidelines...Thanks for bringing this to my attention!  I'll ping Jeremy and Virginia.  Hard to argue with the Guidelines, you're totally right of course..."  *Id.*  I then proceeded to check with certain other partners to make sure I understood their position on the current requirement and when it had changed.  In checking with those partners, I did not intend to disrespect Ms. Sankano in some way.  Rather, it was merely prudent that I confirm with those partners as they are our subject matter experts on opinions, and they would know firsthand the history of Freddie's changes which predated Ms. Sankano's relatively brief experience with Freddie Mac financing.

## Work with Other Black Associates

49.     I regularly work with and promote the advancement of Black associates at the firm.  The two associates with whom I have worked the most since I came to Troutman are Kelly Mufarrige (white woman) and Ari Ebi (Black man).  I have worked with Mr. Ebi on approximately 40% of my deals, more than any other associate at the firm.  More than sheer volume, Mr. Ebi has handled my largest single loan, as well as my largest pool of loans by dollar amount.  When Ms. Mufarrige was on leave in mid-2022 and I needed help replacing her assistance, I reached out to Abby Mulugeta (Black woman) in our Richmond office to handle four complicated and high-value loans over the course of several months.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.



Matthew Bowsher                                    1/30/2025

Matthew Bowsher                                    Date

| | |
|---|---|
| **From:** | Bowsher, Matthew R.[Matthew.Bowsher@troutman.com] |
| **Organizer:** | Bowsher, Matthew R.[Matthew.Bowsher@Troutman.com] |
| **Attendees:** | Sankano, Gita F. |
| **Location:** | Matt to call Gita:  202-220-1251 |
| **Subject:** | Freddie Mac loans - let's chat |
| **Importance:** | Normal |
| **Start Time:** | Tue 11/17/2020 10:00:00 AM (UTC-05:00) |
| **End Time:** | Tue 11/17/2020 10:30:00 AM (UTC-05:00) |
| **Required Attendees:** | Sankano, Gita F. |
| **Calendar Exception:** | Untitled |

---

**From:** Sankano, Gita F. <Gita.Sankano@Troutman.com>
**Sent:** Wednesday, November 11, 2020 6:11 PM
**To:** Bowsher, Matthew R. <Matthew.Bowsher@troutman.com>
**Subject:** RE: Thank you!
That sounds great! The weekly calls will be extremely helpful.
My availability on Tues and Wed mornings are open. Any day or time will work for me.
Sincerely,
Gita

**From:** Bowsher, Matthew R. <Matthew.Bowsher@troutman.com>
**Sent:** Wednesday, November 11, 2020 6:08 PM
**To:** Sankano, Gita F. <Gita.Sankano@Troutman.com>
**Subject:** RE: Thank you!
Cool, then let's make it happen. First things first, let's make sure you're getting the training & resources you need. I can't help you with Fannie loans, I don't know anything about them, but I can help you with Freddie, and it sounds like several of your current deals with Brian/Peter are Freddie. How about you and I set-up a weekly call for 30 mins just to touch base on Freddie stuff? We can use the time to discuss any questions you may have on the specific deals you're handling, and/or we can just talk in general teams about Troutman and Freddie processes and procedures, forms, and/or whatever seems useful to you. And if none of it seems necessary/useful, we can drop it, or we can go to every 2 weeks or every month, whatever works for you, I don't want to waste your time or force a square peg into a round hole here, but I also don't want you to get off on the wrong foot or for you to feel like you're on an island by yourself.
Is there a 30-min block on Tues or Wed mornings that might work for you?
Matt
**Matthew R. Bowsher**
Partner
**troutman pepper**
Office: 202.274.1939 | Mobile: 301.512.0423
matthew.bowsher@troutman.com

**From:** Sankano, Gita F. <Gita.Sankano@Troutman.com>
**Sent:** Wednesday, November 11, 2020 5:51 PM
**To:** Bowsher, Matthew R. <Matthew.Bowsher@troutman.com>
**Subject:** RE: Thank you!
That will be amazing! I would love to be a part of your group and get the experience that I need to get me to next level. I would also like to be as helpful as I can to your practice.
Thank you, Matt!

**From:** Bowsher, Matthew R. <Matthew.Bowsher@troutman.com>
**Sent:** Wednesday, November 11, 2020 5:47 PM
**To:** Sankano, Gita F. <Gita.Sankano@Troutman.com>

App.G-Bowsher-Ex.1

Troutman_00000264

**Subject:** RE: Thank you!

No worries! Glad to hear you're busy!! I look forward to working with you as well. We would <u>love</u> to make you as much of a part of our group as you're interested in being… we could easily provide you with 2000+ billables without breaking a sweat, and you could be closing Fannie and Freddie loans with as much autonomy or as much help as you desire, it's really all up to you, based on your skillset, your interest, and your availability. Sounds like Brian and Peter have already started indoctrinating you, which is perfect, as the more people you get a chance to work with, the better for you and for us.

Matt

**Matthew R. Bowsher**

**Partner**

**troutman pepper**

Office: 202.274.1939 | Mobile: 301.512.0423

<u>matthew.bowsher@troutman.com</u>

**From:** Sankano, Gita F. <<u>Gita.Sankano@Troutman.com</u>>
**Sent:** Wednesday, November 11, 2020 5:20 PM
**To:** Bowsher, Matthew R. <<u>Matthew.Bowsher@troutman.com</u>>
**Subject:** Thank you!

Hi Matt!

Sorry I had to get off the phone so quickly. I look forward to working with you. Thank you!

**Gita F. Sankano**

**Associate**

Direct: 202.220.1251 | Internal: 803-1251

<u>gita.sankano@troutman.com</u>

---

**troutman pepper**

2000 K Street, N.W., Suite 600

Washington, DC 20006-1865

troutman.com

Troutman Pepper is a 2020 Mansfield Certified Plus Firm

<span style="color:red">App.G-Bowsher-Ex.1</span>

Troutman_00000265

| | |
|---|---|
| **From:** | Sankano, Gita F.[Gita.Sankano@Troutman.com] |
| **Sent:** | Fri 7/30/2021 11:13:20 AM (UTC-04:00) |
| **To:** | Bowsher, Matthew R.[Matthew.Bowsher@troutman.com]; Burke, Natalie[Natalie.Burke@troutman.com] |
| **Subject:** | RE: JLL 483 The Lockwood - LIA.nrl |

Okay. I'll add that to the org chart comments

**Gita F. Sankano**
**Associate**
troutman pepper
Direct: 202.220.1251 | Internal: 803-1251
gita.sankano@troutman.com

**From:** Bowsher, Matthew R. <Matthew.Bowsher@troutman.com>
**Sent:** Friday, July 30, 2021 10:31 AM
**To:** Sankano, Gita F. <Gita.Sankano@Troutman.com>; Burke, Natalie <Natalie.Burke@Troutman.com>
**Subject:** RE: JLL 483 The Lockwood - LIA.nrl

Thanks for asking, and yes as you suspected the second of the two mods will not be applicable…. UNLESS the borrower identifies a board of managers/directors for any of the various LLCs which are in the directly line of control. Currently their org chart does not show any boards, but it's not unusual for borrowers to not show boards on their org charts. In fact, their org chart needs to be revised to clarify whether each of the entities currently labeled as being a "Sole Member / 100% Interest" is also the managing member (see screenshot below). If a sole member is not a managing member, then the underlying entity must have a manager (which may be either a member or a non-member) or a board of managers/directors. If there's a board, then we need to take the second mod from Lockwood and tweak it to refer to the appropriate entities in the Grove at Alban chart to which it applies. First things first, please have them revise the org chart to clarify whether all of those "sole members" are also the managing members.

**Matthew R. Bowsher**
**Partner**
troutman pepper
Office: 202.274.1939 | Mobile: 301.512.0423
matthew.bowsher@troutman.com

**From:** Sankano, Gita F. <Gita.Sankano@Troutman.com>
**Sent:** Friday, July 30, 2021 9:19 AM
**To:** Burke, Natalie <Natalie.Burke@troutman.com>; Bowsher, Matthew R. <Matthew.Bowsher@troutman.com>
**Subject:** RE: JLL 483 The Lockwood - LIA.nrl

Thank you, Natalie! I'll review the changes you made and note them for the next one.

Matt - are we using the same modifications for The Grove at Alban? Asking because I see that the org structure is a bit different here. I'll start on that LIA as well.

**Gita F. Sankano**
**Associate**
troutman pepper
Direct: 202.220.1251 | Internal: 803-1251
gita.sankano@troutman.com

**From:** Burke, Natalie <Natalie.Burke@troutman.com>
**Sent:** Friday, July 30, 2021 5:21 AM

App.G-Bowsher-Ex.2

**To:** Bowsher, Matthew R. <Matthew.Bowsher@Troutman.com>; Sankano, Gita F. <Gita.Sankano@Troutman.com>
**Subject:** RE: JLL 483 The Lockwood - LIA.nrl

Gita,  Nice job on this.  Attached is a redline showing the changes I made.  Most were stylistic.  One substantive point I added was to note the increased trade payables amount on Westwinds was different. Westwinds like this deal was a FRED/Middle Market deal.  I'm not sure if it's policy to change this on FRED/Middle Market deals but wanted to point out the difference.

I also moved the mod explanation language so that it's right below the mod and added additional explanations to explain why we made these changes (i.e., that there is a board in the lower tier structure and because the upper tier board member number changed).  I like to pre-emptively include this sort of info so Freddie doesn't have to come back to us and ask questions.

**Natalie A. Burke**
**Associate**
troutman pepper
Direct: 804.697.1437 | Mobile: 513.404.9457 | Internal: 15-1437
natalie.burke@troutman.com

**From:** Bowsher, Matthew R. <Matthew.Bowsher@troutman.com>
**Sent:** Friday, July 30, 2021 3:12 AM
**To:** Sankano, Gita F. <Gita.Sankano@troutman.com>; Burke, Natalie <Natalie.Burke@troutman.com>
**Subject:** RE: JLL 483 The Lockwood - LIA.nrl

I believe this is due today.   Natalie, see my few comments below, and please confirm to Gita whether you have any additional thoughts, then let's get this revised and sent to the client and to Freddie Legal.   Thanks, both of you!!

- Delete Matt's name/info
- Freddie loan number 508835887   (in addition to the first page, this also appears in Ex E)
- Freddie counsel:  Lauren Beatty
- Freddie paralegal:   Kelli Dunn
- In the section which asks "Is this loan or property part of a pool or otherwise being submitted to Freddie Mac concurrently with other loans or properties with the same sponsor?", please check the "yes" box rather than "no", and check the box for "uncrossed loans", and in the comments section explain as follows:

> The sponsor on this loan (Acento) is concurrently submitting the following two other loans to the Southeast Region, through different Seller/Servicers; none of the 3 loans are closing on the same day, so this is not a "pool", these are just three individual loans submitted concurrently by the same sponsor:  Grove at Alban (JLL) and Crystal Woods of Alexandria (CBRE)

**Matthew R. Bowsher**
**Partner**
troutman pepper
Office: 202.274.1939 | Mobile: 301.512.0423
matthew.bowsher@troutman.com

**From:** Sankano, Gita F. <Gita.Sankano@Troutman.com>
**Sent:** Wednesday, July 28, 2021 4:45 PM
**To:** Burke, Natalie <Natalie.Burke@troutman.com>
**Cc:** Bowsher, Matthew R. <Matthew.Bowsher@troutman.com>
**Subject:** JLL 483 The Lockwood - LIA.nrl

Hi Natalie,

Please see the LIA with redline attached. I also attached the link.

Sincerely,
Gita

**Gita F. Sankano**
**Associate**
Direct: 202.220.1251 | Internal: 803-1251
gita.sankano@troutman.com
_____

**troutman pepper**
401 9th Street, NW, Suite 1000
Washington, DC 20004
troutman.com
_____

A HIGHER COMMITMENT TO CLIENT CARE

Troutman Pepper is a 2020 Mansfield Certified Plus Firm


Attachments:
        image002.jpg (68185 Bytes)

App.G-Bowsher-Ex.2

Troutman_00004635

| From: | Bowsher, Matthew R.[/O=TROUTMANSANDERS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=99D8D2CBA40440EFA576623B7A8765CF-BOWSHER,] |
|---|---|
| Sent: | Sun 10/17/2021 8:50:47 PM (UTC-04:00) |
| To: | Nabozny, Samson R.[Samson.Nabozny@troutman.com]; Sankano, Gita F.[Gita.Sankano@troutman.com]; Nayak, Rodger P.[Rodger.Nayak@troutman.com] |
| Cc: | Ehudin, Zack S.[Zack.Ehudin@troutman.com]; Sidarth, S.R.[SR.Sidarth@troutman.com]; Mufarrige, Kelly A.[Kelly.Mufarrige@troutman.com]; Scopelitis, Thomas J.[Thomas.Scopelitis@troutman.com]; Ebi, Ari M.[Ari.Ebi@troutman.com] |
| Subject: | Freddie Mac - PSA Analysis |

**Samson** - At some point, somebody is going to ask you to do a analysis of a purchase and sale agreement… a PSA Analysis.  When they do, please review this email and its attachments for reference.  **Gita and Rodger**, I'm not sure how much instruction/background you've been given on this topic, though I know you've drafted several PSA Analyses; you might wanna take 2 minutes to read the email below, as I sent this same email to Sophie, and I figured it might make sense to confirm we'll all on the same page.

1   There is no required "form" PSA Analysis provided by Freddie.   However, there is definitely a certain set of info which is supposed to be addressed in such analysis, and that info is set forth in Guide Section 55.2.   See below for that list of required info.

2   Attached for reference are four random PSA Analyses, so that you can see how different attorneys have worded their analysis in response to different PSAs.

3   I don't know why, but everyone at Troutman seems to have adopted the same basic form of analysis which mysteriously replaces item #8 of the required list with a random new #8 all our own:  confirmation as to whether there is a condo restriction.  When we're reviewing the PSA, we should absolutely be checking to see whether there's a condo restriction in either the required form deed (which will be an exhibit to the PSA) or in a separate standalone restriction/covenant/agreement (this would likely be attached as an exhibit to the PSA if it's applicable, though it could be referenced conceptually in the main text of the PSA instead).   However, the mere fact that there's no condo restriction in the PSA doesn't mean there's not already a condo restriction recorded against the property. In our LIA, we need to confirm the existence of a condo restriction regardless of whether it's already recorded or whether it'll be recorded at closing in connection with the PSA, so it's potentially misleading/confusing to state in the PSA Analysis that there's no condo restriction in the PSA, unless you understand exactly what that statement does and does not mean.

4   See the "required" item #8 in the list below.   That's a whole separate certificate from the borrower, which isn't something we can set forth in our Analysis.  Lenders are supposed to be obtaining this certificate separately from the borrowers as part of their underwriting materials. I've seen Wells and JLL do this, not sure if others are, but that's on them in any event.

5   Most lenders do their own PSA Analyses, as several years ago Troutman explained to our clients that this is a way they could reduce legal fees.  Generally speaking, I think only Newmark, Berkadia, KeyBank and NewPoint still require us to do it for them.   However, even with lenders who do their own, occasionally you'll get some random person who is new and/or doesn't know how to do it, and asks us to do it.

6   PSA Analyses are not reviewed by Freddie Legal.  They are reviewed by the Freddie Underwriter.   Unlike the LIA, we don't send the PSA Analysis directly to Freddie Legal, rather we send the PSA Analysis to our client, and they upload it to Freddie as part of their underwriting package.   Most Freddie UWs have no idea that Guide Section 55.2 sets forth 8 specific criteria that the Analysis is supposed to address.  In fact, when our clients draft a PSA Analysis, it's typically garbage, very bare bones, often it's just a lazy copy-and-paste of a few key provisions…  it doesn't look anything like ours, doesn't follow Guide 55.2 at all.   And the dirty secret is that many of our clients who say they are drafting their own PSA Analysis are actually only doing it if/when the Freddie UW specifically asks them for it, which doesn't happen most of the time, as it's just not on their radar as something to proactively request.

**Purchase agreement and analysis**    If the Borrower is acquiring the Property, the Seller must submit to

App.G-Bowsher-Ex.3

Freddie Mac a copy of the purchase agreement and all amendments, plus a purchase agreement analysis, to include the following:

1  Calculation of the purchase price, taking into account any

- Contingency reductions

- Changes to the price predicated on changes in the closing date

- Material noncustomary adjustments to closing costs, closing credits, fees (specifically excluding allocations for title insurance, survey costs, brokers' fees, recording taxes and per diem rent, utility or insurance costs)

2  Identification of the scheduled closing date, together with options to extend

3  Analysis of all amendments

4  Confirmation that the purchase agreement and all amendments have been completed and signed

5  Identification of any contingencies or confirmation that none exist

6  Identification of any post-closing escrows to be posted by the property seller or the Borrower

7  Analysis of any environmental hazards, zoning or property conditions identified in the purchase agreement

8  Certification from the Borrower that there are not any due diligence items in the purchase agreement that have not been revealed and that Borrower acknowledges and agrees that Freddie Mac will not be deemed to have knowledge of any hazardous conditions, zoning issues or property condition issues merely by its possession of the purchase agreement

Attachments:

Pru 1287 Terra at Piney Point - PSA Analysis.DOCX (97514 Bytes)
KeyBank 712  Spring Parc -PSA Analysis.DOCX (53499 Bytes)
Berkadia 7966 Lake Monroe Apartments - PSA Analysis.DOCX (44721 Bytes)
Southtown Flats - PSA Analysis.DOCX (48620 Bytes)

**From:** Bowsher, Matthew R. [/O=TROUTMANSANDERS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=99D8D2CBA40440EFA576623B7A8765CF-BOWSHER,]
**Sent:** 1/28/2022 10:19:49 AM
**To:** Sankano, Gita F. [Gita.Sankano@Troutman.com]
**Subject:** RE: 1430Q - PSA / Title

It's already on your checklist.     Highlighted in yellow below.     "JV" stands for "joint venture", and the "JV Agreement" is just a colloquial phrase referring to the operating agreement (or limited partnership agreement, as appliable) of the joint venture entity.     As you can see on the org chart, circled in red below, the joint venture on this deal is 1430Q Partners LP, as that is the entity in which the two separate parties (Soma and Argosy) are joined.     So the "JV Agreement" is simply the limited partnership agreement of 1430Q Partners LP, which is on your checklist, and which we have not received.     On the all-hands call, I explained to them that we need a rough draft, and they said they'll send one soon.     Let me know if this isn't making sense, or if you still have questions.

**Matthew R. Bowsher**
**Partner**
troutman pepper
Office: 202.274.1939 ⦙ Mobile: 301.512.0423
matthew.bowsher@troutman.com

**From:** Sankano, Gita F. <Gita.Sankano@Troutman.com>
**Sent:** Friday, January 28, 2022 8:54 AM
**To:** Bowsher, Matthew R. <Matthew.Bowsher@troutman.com>
**Subject:** RE: 1430Q - PSA / Title

Hi Matt,

Please don't kill me if I missed this. I would like to work on the buy-sell analysis. Just to confirm, we have not received the JV agreement? If not, I'll add that to our checklist.

Thanks,
Gita

**Gita F. Sankano**
**Associate**
troutman pepper
Direct: 202.220.1251 ⦙ Internal: 803-1251
gita.sankano@troutman.com

**From:** Bowsher, Matthew R. <Matthew.Bowsher@troutman.com>
**Sent:** Wednesday, January 26, 2022 12:47 PM
**To:** Sankano, Gita F. <Gita.Sankano@Troutman.com>
**Subject:** FW: 1430Q - PSA / Title

App.G-Bowsher-Ex.4

Troutman_00009747

As you may already know, Walker & Dunlop is one of our clients which DOES require us to handle the PSA Analysis as opposed to doing it internally themselves, so we'll need to add that to our list of various analyses:

- Ground lease analysis
- Buy-Sell analysis
- Solar equipment lease analysis
- PSA analysis

**Matthew R. Bowsher**
**Partner**
troutman **pepper**
Office: 202.274.1939 ⋮ Mobile: 301.512.0423
matthew.bowsher@troutman.com

**From:** Veronica Veraldi <vveraldi@walkerdunlop.com>
**Sent:** Wednesday, January 26, 2022 10:53 AM
**To:** Bowsher, Matthew R. <Matthew.Bowsher@troutman.com>; Sankano, Gita F. <Gita.Sankano@troutman.com>
**Subject:** FW: 1430Q - PSA / Title

**EXTERNAL SENDER**

Hi Matt,

Not sure if you actually got the PSA.    It and the title commitment are attached.

Thanks,

Veronica Veraldi
SVP & GSE Closing Manager | GSE Closing
**Walker & Dunlop**
P: 301-215-5562
vveraldi@walkerdunlop.com

**From:** Colin Barnard <CBarnard@walkerdunlop.com>
**Sent:** Tuesday, January 25, 2022 9:09 PM
**To:** Veronica Veraldi <vveraldi@walkerdunlop.com>
**Cc:** Dillon Hoffman <DHoffman@walkerdunlop.com>
**Subject:** 1430Q - PSA / Title

Hi Veronica – The following items related to 1430Q are attached. Thanks.
1    PSA
2    First Amendment to PSA
3    Title Commitment

Colin Barnard, DRE# 01370640
Assistant Vice President | GSE Underwriting
**Walker & Dunlop**
1277 Treat Boulevard, Suite 925 Walnut Creek, CA 94597
P: 925-946-5916 M: 510-332-8310
CBarnard@walkerdunlop.com

*Use our web site to **send me a file** over 20MB.*

App.G-Bowsher-Ex.4

Follow Us:

LinkedIn | Facebook | Twitter | Instagram | YouTube

_

https://www.walkerdunlop.com/contact-us/email-disclaimer/

Attachments:
      image001.jpg (22579 Bytes)
      image003.png (26119 Bytes)
      image004.png (16196 Bytes)

App.G-Bowsher-Ex.4

**From:**    Bowsher, Matthew R. [/O=TROUTMANSANDERS/OU=EXCHANGE ADMINISTRATIVE GROUP
(FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=99D8D2CBA40440EFA576623B7A8765CF-BOWSHER,]
**Sent:**    3/9/2022 6:18:58 PM
**To:**    Sankano, Gita F. [Gita.Sankano@Troutman.com]
**Subject:**    RE: 1430 Q - Borrower LLC Agreement


I generally agree, but note that unlike most closings where we rate-lock two days before closing, on this deal we actually have a final commitment which has rate-locked 5 business days ahead of closing, so we have all the info we need in order to finalize the loan docs at this point... no need to wait until the day before closing to send the revised loan docs onto bor's counsel.   I certainly agree that you should review the docs before sending them, but I do not think it's worth waiting an additional couple days beyond that for a SAR, rather I think we should issue our revised drafts to bor's counsel as soon as you've reviewed them, and tell the bor's counsel that we're continuing to do our deep-dive quality control simultaneously with the bor's review of the docs.   Make sense?



## Matthew R. Bowsher
**Partner**
troutman **pepper**
Office: 202.274.1939 ⦙ Mobile: 301.512.0423
matthew.bowsher@troutman.com

**From:** Sankano, Gita F. <Gita.Sankano@Troutman.com>
**Sent:** Wednesday, March 9, 2022 5:22 PM
**To:** Bowsher, Matthew R. <Matthew.Bowsher@troutman.com>
**Subject:** RE: 1430 Q - Borrower LLC Agreement

Hi Matt,
We typically circulate redlines closer to the closing. I would like to take another fresh look at the docs before I send out a SAR request.

## Gita F. Sankano
**Associate**
troutman **pepper**
Direct: 202.220.1251 ⦙ Internal: 803-1251
gita.sankano@troutman.com

**From:** Oehler, Greg G. <GOehler@coxcastle.com>
**Sent:** Wednesday, March 9, 2022 5:21 PM
**To:** Sankano, Gita F. <Gita.Sankano@Troutman.com>; Bowsher, Matthew R. <Matthew.Bowsher@Troutman.com>
**Subject:** RE: 1430 Q - Borrower LLC Agreement

## EXTERNAL SENDER

Thanks, Gita.  When do you expect to circulate revised loan documents?

Greg G. Oehler



App.G-Bowsher-Ex.5

Troutman_00009744

*direct:* 310.284.2149
GOehler@coxcastle.com ⋮ vcard ⋮ bio ⋮ website

---

**From:** Sankano, Gita F. <Gita.Sankano@Troutman.com>
**Sent:** Wednesday, March 9, 2022 9:46 AM
**To:** Oehler, Greg G. <GOehler@coxcastle.com>; Bowsher, Matthew R. <Matthew.Bowsher@Troutman.com>
**Subject:** RE: 1430 Q - Borrower LLC Agreement

Hi Greg,

The borrower's operating agreement is in good shape.

Thank you!

**Gita F. Sankano**
**Associate**
**troutman** pepper
Direct: 202.220.1251 ⋮ Internal: 803-1251
gita.sankano@troutman.com

---

**From:** Oehler, Greg G. <GOehler@coxcastle.com>
**Sent:** Wednesday, March 9, 2022 12:45 PM
**To:** Sankano, Gita F. <Gita.Sankano@Troutman.com>; Bowsher, Matthew R. <Matthew.Bowsher@Troutman.com>
**Subject:** 1430 Q - Borrower LLC Agreement

**EXTERNAL SENDER**

Gita and Matt,

Can you confirm that you are signed off on the borrower's LLC agreement?

Thanks,

Greg G. Oehler



Cox, Castle & Nicholson LLP
2029 Century Park East ⋮ Suite 2100 ⋮ Los Angeles, CA 90067
*direct:* 310.284.2149
*main:* 310.284.2200 ⋮ *fax:* 310.284.2100
GOehler@coxcastle.com ⋮ vcard ⋮ bio ⋮ website

This communication is intended only for the exclusive use of the addressee and may contain information that is privileged or confidential. If you are not the addressee, or someone responsible for delivering this document to the addressee, you may not read, copy or distribute it. Any unauthorized dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please call us promptly and securely dispose of it. Thank you.

---

This e-mail (and any attachments) from a law firm may contain legally privileged and confidential information solely for the intended recipient. If you received this message in error, please notify the sender and delete it. Any unauthorized reading, distribution, copying, or other use of this e-mail (and attachments) is strictly prohibited. We have taken precautions to minimize the risk of transmitting computer viruses, but you should scan attachments for viruses and other malicious threats; we are not liable for any loss or damage caused by viruses.

App.G-Bowsher-Ex.5

| From: | Bowsher, Matthew R. [/O=TROUTMANSANDERS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=99D8D2CBA40440EFA576623B7A8765CF-BOWSHER,] |
|---|---|
| Sent: | 3/9/2022 10:22:51 PM |
| To: | Sankano, Gita F. [Gita.Sankano@Troutman.com]; Kramolowsky, Molly D. [/o=TroutmanSanders/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=872774c0eacd4bd283d0705ca90abe82-Denman,] |
| Subject: | RE: 1430 Q - Legal Description |

Right.   Lot of back-and-forth on this today; at first I "suggested" that we should split the legal into two Parcels (one describing the fee interest in the improvements, and one describing the leasehold in the land), but then the title agent described the insured estate in such a way that the split legal description was no longer need – YAY!! – but then the bor's counsel pointed-on that we HAVE to use a split legal not just to work with the description of the insured estate but because the loan docs work better with the split description (it's much clearer as to what exactly our collateral is).  So then we were all in agreement to use a revised/split legal description.  But THEN the pesky ground lessor counsel wanted to reeeeally make things a mess by having the Parcel 1 of the bifurcated legal description include a full description of the lease, to which I objected because we've done that a couple times and it's a shitshow, requires blanks in the legal wich need to later be completed.   That's where we left things, I got no response.


**Matthew R. Bowsher**
**Partner**
troutman **pepper**
Office: 202.274.1939 ┊ Mobile: 301.512.0423
matthew.bowsher@troutman.com

**From:** Sankano, Gita F. <Gita.Sankano@Troutman.com>
**Sent:** Wednesday, March 9, 2022 10:13 PM
**To:** Kramolowsky, Molly D. <Molly.Kramolowsky@troutman.com>
**Cc:** Bowsher, Matthew R. <Matthew.Bowsher@troutman.com>
**Subject:** 1430 Q - Legal Description

Hi Molly,

The legal description is not ready for this one correct?

Thanks,
Gita

**Gita F. Sankano**
**Associate**
Direct: 202.220.1251 ┊ Internal: 803-1251
gita.sankano@troutman.com
————————————————
troutman **pepper**
401 9th Street, NW, Suite 1000
Washington, DC  20004
troutman.com
————————————————

Troutman Pepper is a 2021 Mansfield Certified Plus Firm

App.G-Bowsher-Ex.6

Troutman_00009746

| | |
|---|---|
| From: | Bowsher, Matthew R. [/O=TROUTMANSANDERS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=99D8D2CBA40440EFA576623B7A8765CF-BOWSHER,] |
| Sent: | 5/4/2022 5:16:09 PM |
| To: | Sankano, Gita F. [Gita.Sankano@Troutman.com]; Ebi, Ari M. [/o=TroutmanSanders/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=c33103987d2d4682aa92110779c6dd1b-Ebi, Ari] |
| CC: | Foster, Brooke [/o=TroutmanSanders/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=3ec9974c5cfc4051911ecd632df92d7e-Foster,] |
| Subject: | RE: Pillar Portfolio - Supplemental Info & ICA |

Excellent question, glad you asked!   NO.  On supplementals, you will never see an amended/restated.   The whole point of doing an amended/restated structure is to take an existing loan, for which recording tax has already been paid, and you "amend/restate" that loan rather than terminating it and starting-over with a new loan, as this allows borrower to avoid having to pay recording tax on the portion of the loan which has already been paid…. e.g., if you "amend/restate" a $10M loan into a $12M loan you only have to pay tax on the new $2M, whereas if you just paid-off the old loan like normal and created a new $12M loan, you'd have to pay tax on the entire $12M.  Make sense?   So, if you understand that basic premise, you can see why there would be no reason to amend/restate a supplemental, because by definition the supp loan is all new money, nobody has ever paid recording tax on any of it before, you can't avoid tax on it by amending/restating an underlying loan in this context.


**Matthew R. Bowsher**
**Partner**
troutman **pepper**
Office: 202.274.1939 ⫶ Mobile: 301.512.0423
matthew.bowsher@troutman.com

**From:** Sankano, Gita F. <Gita.Sankano@Troutman.com>
**Sent:** Wednesday, May 4, 2022 4:44 PM
**To:** Bowsher, Matthew R. <Matthew.Bowsher@troutman.com>; Ebi, Ari M. <Ari.Ebi@troutman.com>
**Cc:** Foster, Brooke <Brooke.Foster@troutman.com>
**Subject:** RE: Pillar Portfolio - Supplemental Info & ICA

Are were amending and restating the note and security instrument for the properties below? I'm assuming we are for the supplemental as well?


**Seminary Towers**
**The Courts at Fair Oaks**
**The Manor**
**The Manor East**
**The Sycamores**

**Gita F. Sankano**
**Associate**
troutman **pepper**
Direct: 202.220.1251 ⫶ Internal: 803-1251
gita.sankano@troutman.com


**From:** Bowsher, Matthew R. <Matthew.Bowsher@troutman.com>
**Sent:** Wednesday, May 4, 2022 2:59 PM

App.G-Bowsher-Ex.7

**To:** Sankano, Gita F. <Gita.Sankano@Troutman.com>; Ebi, Ari M. <Ari.Ebi@Troutman.com>
**Cc:** Foster, Brooke <fosterkb@Troutman.com>
**Subject:** RE: Pillar Portfolio - Supplemental Info & ICA

Thanks, Gita.  We requested these docs from the client on Monday, they are following-up with their servicing folks.   We'll send as soon as we have them.  But, unless I'm missing something, for purposes of the PLIM, we don't need full copies of these docs, I think the only thing the PLIM requires is the name of the pool... or is there something I'm forgetting?   Eveie actually did some truly outstanding work on this file yesterday, and found that all 16 loans were securitized into the same pool (2019-KL05), as identified in the attached form Intercreditor Agreement as well as the attached insert which Eveie drafted.

Let us know if you need anything else for the LIA!   To the extent you can finish that by later today, so that Ari and I can finalize it and send to the client tomorrow, that's the goal, as they need to base their narrative on it and send it with their package to Freddie on Friday.

In related news, we asked client to get us an updated org chart (sent them comments), they said they "should" have a revised copy later today, so we'll send that to you as soon as it arrives.  There are just a couple transfer of interests that occurred over the past 3 years which they need to capture in order to have an accurate chart, slightly different than the 2019 version.   Speaking of which:  in your LIA, in the list of DETs, please delete D6 Pico 88, that entity was bought-out by the sponsor/manager, it's no longer in the updated org structure.

Ari is working on the doc mods, which will replace the version in the 2019 LIA.

I'm reviewing the Pref Equity Analysis from 2019 to confirm it captures some last-minute changes that were made to the JV at closing.

Goal is to send Julie/Eveie the "let's draft loan docs!" email on Friday, so that they can create one base set.   We'll review that carefully, then once it's approved, Lisa will create a custom HotDocs template on it, so that they can "automatically" generate the other 15 sets, rather than manually adding riders and docs mods into all 15, the idea being to eliminate some human error potential, as well as to save some time.    But of course not all 16 properties/borrowers are identical, so we'll still need to delete the inapplicable riders from some of the loans, definitely will need to comb through the final set of 16 carefully, it's just that the hope is to get the 16 sets drafted relatively quickly and uniformly.

Thanks, everyone.  Go Team!


**Matthew R. Bowsher**
**Partner**
troutman **pepper**
Office: 202.274.1939 ¦ Mobile: 301.512.0423
matthew.bowsher@troutman.com

**From:** Sankano, Gita F. <Gita.Sankano@Troutman.com>
**Sent:** Wednesday, May 4, 2022 2:32 PM
**To:** Bowsher, Matthew R. <Matthew.Bowsher@troutman.com>; Ebi, Ari M. <Ari.Ebi@troutman.com>
**Cc:** Foster, Brooke <Brooke.Foster@troutman.com>
**Subject:** FW: Pillar Portfolio - Supplemental Info & ICA

Hi there,

Please pass along the SSA and PSA for our PLIM.

App.G-Bowsher-Ex.7

Troutman_00009816

Thanks!

**Gita F. Sankano**
**Associate**
troutman **pepper**
Direct: 202.220.1251 ⦙ Internal: 803-1251
gita.sankano@troutman.com

---

**From:** Bowsher, Matthew R. <Matthew.Bowsher@troutman.com>
**Sent:** Tuesday, May 3, 2022 6:14 PM
**To:** Grant, Eve <eve.grant@troutman.com>; Ebi, Ari M. <Ari.Ebi@Troutman.com>
**Cc:** Staub, Julie Lynn <Julie.Staub@Troutman.com>; Sankano, Gita F. <Gita.Sankano@Troutman.com>; Foster, Brooke <fosterkb@Troutman.com>
**Subject:** RE: Pillar Portfolio - Supplemental Info & ICA

Your initiative is inspiring, Eveie! Thank you SO much, this is super helpful. Good to know all 16 senior loans were securitized into the same pool… I was expecting them to split them up across two or three pools… so this is a nice surprise, just one form ICA and just one master servicer to deal with! As Ari indicated, we are checking with the bor's counsel as to whether we can use the exact same signatory as before (Ben Curtiss) or whether they need to use someone else. We're also working on updating the loan doc mods (they were based on forms used 3 years ago, so the changes won't be major but we do need to review them); as soon as we nail that down, we'll send the updated doc mods to you and Julie, and maybe the updated org chart too, so that we can create a solid first template of loan docs from which we can create a custom HotDocs template.

**Matthew R. Bowsher**
**Partner**
troutman **pepper**
Office: 202.274.1939 ⦙ Mobile: 301.512.0423
matthew.bowsher@troutman.com

---

**From:** Grant, Eve <eve.grant@troutman.com>
**Sent:** Tuesday, May 3, 2022 1:34 PM
**To:** Bowsher, Matthew R. <Matthew.Bowsher@troutman.com>; Ebi, Ari M. <Ari.Ebi@troutman.com>
**Cc:** Staub, Julie Lynn <Julie.Staub@troutman.com>; Grant, Eve <eve.grant@troutman.com>; Sankano, Gita F. <Gita.Sankano@troutman.com>; Foster, Brooke <Brooke.Foster@troutman.com>
**Subject:** Pillar Portfolio - Supplemental Info & ICA

Good afternoon,

Attached is the form ICA that we can use when drafting docs. I've also attached the completed Supplemental Info doc that I prepared which contains all the recording info needed to insert in the Loan Agreement and the Rider to the Security Instrument. I pulled the REMIC info from DMS and inserted that as well as saving those docs (Security Instrument Assignment – Trust and UCC-3 – Trust) the BCM/6519 Recorded Docs folder within each property.

Just trying to get a jump to gather as much info as possible so that when we are ready to draft this will be one less item we will need to worry with.

Thanks.

Eveie

App.G-Bowsher-Ex.7

**Eve Grant**
**Legal Practice Assistant**
Direct: 804.697.1395 | Internal: 15-1395
eve.grant@troutman.com

troutman **pepper**
1001 Haxall Point, Suite 1500
Richmond, VA 23219
troutman.com

Troutman Pepper is a 2021 Mansfield Certified Plus Firm

App.G-Bowsher-Ex.7

| **From:** | Sankano, Gita F.[Gita.Sankano@Troutman.com] |
|---|---|
| **Sent:** | Wed 5/18/2022 6:18:16 PM (UTC-04:00) |
| **To:** | Bowsher, Matthew R.[Matthew.Bowsher@Troutman.com] |
| **Subject:** | RE: 1430 Q Street |

Got it! Yes I actually have. I used to prepare them on the legacy Pepper side. When I was on the HUD side (the closing binders are actually much more laborious than the Freddie or Fannie side. 100 tabs!), we prepared three sets (one for the lender, HUD, and Borrower). I'm not sure if Henry's group prepares three sets though.

I already told him we only prepare one set for Freddie. However, he keeps on pushing for one. I'll let him know.

Thank you!

**Gita F. Sankano**
**Associate**
troutman **pepper**
Direct: 202.220.1251 | Internal: 803-1251
gita.sankano@troutman.com

---

**From:** Bowsher, Matthew R. <Matthew.Bowsher@troutman.com>
**Sent:** Wednesday, May 18, 2022 6:11 PM
**To:** Sankano, Gita F. <Gita.Sankano@Troutman.com>
**Subject:** Re: 1430 Q Street

No.  We do not prepare "closing binders" for borrowers, we do not prepare them for anybody. We deliver the loans to Freddie but we do not prepare a "binder" for them, it's just a handful of originals in a redwell, everything else is sent only in electronic format.  Have you ever seen a real "closing binder"?  They are quite laborious and costly to make. Borrower counsel can do it just as easily as we can, what u need to explain to them is that it's not like we are already making actual true binders for lender such that making one xtra copy for bor wouldn't be a big additional cost/burden….  we straight-up just do not provide this service for anyone, we only send e-copies (and hardcopies of just a few docs to Freddie), that's all.

Matthew R. Bowsher
**TROUTMAN PEPPER**
office: 202-274-1939
cell: 301-512-0423

---

On May 18, 2022, at 5:54 PM, Sankano, Gita F. <Gita.Sankano@troutman.com> wrote:

I know we typically don't do this. However, do you think we can make an exception or no?

**Gita F. Sankano**
**Associate**
troutman **pepper**
Direct: 202.220.1251 | Internal: 803-1251
gita.sankano@troutman.com

---

**From:** Oehler, Greg G. <GOehler@coxcastle.com>

App.G-Bowsher-Ex.8

Troutman_00002502

**Sent:** Wednesday, May 18, 2022 5:52 PM
**To:** Sankano, Gita F. <Gita.Sankano@Troutman.com>
**Cc:** Bowsher, Matthew R. <Matthew.Bowsher@Troutman.com>
**Subject:** RE: 1430 Q Street

**EXTERNAL SENDER**

Thanks, Gita.  Will a closing binder also be delivered to the borrower?

**Greg G. Oehler**



*direct:*  310.284.2149

GOehler@coxcastle.com | vcard | bio | website

---

**From:** Sankano, Gita F. <Gita.Sankano@Troutman.com>
**Sent:** Wednesday, May 18, 2022 2:48 PM
**To:** Oehler, Greg G. <GOehler@coxcastle.com>
**Cc:** Bowsher, Matthew R. <Matthew.Bowsher@Troutman.com>
**Subject:** RE: 1430 Q Street

Hi Greg!

We sent the final executed loan documents (see attached). The final closing binder is prepared by our delivery team. The delivery team will send the closing binder, which includes the original loan documents and title policy to Freddie Mac.

Please let us know if you have any questions.

Thanks,
Gita

**Gita F. Sankano**
**Associate**
**troutman** pepper
Direct: 202.220.1251 | Internal: 803-1251
gita.sankano@troutman.com

---

**From:** Oehler, Greg G. <GOehler@coxcastle.com>
**Sent:** Wednesday, May 18, 2022 5:36 PM
**To:** Sankano, Gita F. <Gita.Sankano@Troutman.com>
**Subject:** 1430 Q Street

**EXTERNAL SENDER**

Gita,

<span style="color:red">App.G-Bowsher-Ex.8</span>

Are you preparing a closing binder for this loan?

Thanks,

**Greg G. Oehler**



Cox, Castle & Nicholson LLP

2029 Century Park East | Suite 2100 | Los Angeles, CA 90067

*direct:* 310.284.2149

*main:* 310.284.2200 | *fax:* 310.284.2100

GOehler@coxcastle.com | vcard | bio | website

This communication is intended only for the exclusive use of the addressee and may contain information that is privileged or confidential. If you are not the addressee, or someone responsible for delivering this document to the addressee, you may not read, copy or distribute it. Any unauthorized dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please call us promptly and securely dispose of it. Thank you.

This e-mail (and any attachments) from a law firm may contain legally privileged and confidential information solely for the intended recipient. If you received this message in error, please notify the sender and delete it. Any unauthorized reading, distribution, copying, or other use of this e-mail (and attachments) is strictly prohibited. We have taken precautions to minimize the risk of transmitting computer viruses, but you should scan attachments for viruses and other malicious threats; we are not liable for any loss or damage caused by viruses.

App.G-Bowsher-Ex.8

| From: | Bowsher, Matthew R. [/O=TROUTMANSANDERS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=99D8D2CBA40440EFA576623B7A8765CF-BOWSHER,] |
|---|---|
| Sent: | 8/15/2022 8:32:41 AM |
| To: | Sankano, Gita F. [/o=TroutmanSanders/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=Gita.Sankano] |
| Subject: | searches -- my take on it |

Thanks, Gita.   This specific issue --- the requirement of UCC searches to be not more than 30 days old – is a Guide requirement (Section 29.4) so this is not my call, this is Freddie's call.   Please ask the applicable regional Freddie attorney for approval.    But be careful not to extrapolate the foregoing response beyond the specific issue of UCC searches; technically the Guide ONLY requires UCC searches; so to the extent the question involved tax lien searches or judgement lien searches or bankruptcy or litigation searches (and I believe a portion of the searches you sent me are indeed litigation searches rather than just UCC searches), then this portion of the question would not be a Freddie issue, it would be an issue for the lender to approve internally, as each lender sets their own internal protocol/requirements for its own borrower due diligence, in which event you'd need to ask the lender to approve that portion of the issue/question.

Matt

**Matthew R. Bowsher**
**Partner**
**troutman pepper**
Office: 202.274.1939 ┊ Mobile: 301.512.0423
matthew.bowsher@troutman.com

**From:** Sankano, Gita F. <Gita.Sankano@troutman.com>
**Sent:** Friday, August 12, 2022 8:22 AM
**To:** Bowsher, Matthew R. <Matthew.Bowsher@troutman.com>
**Subject:** FW: Venetian on Ella - Legal Due Diligence Checklist

Hi Matt,

It's just a few days over. I think that's OK. However, I'll let you make that call.

Thanks!

**Gita F. Sankano**
**Associate**
**troutman pepper**
Direct: 202.220.1251 ┊ Internal: 803-1251
gita.sankano@troutman.com

---

**From:** Caroline Cho <ccho@coatsrose.com>
**Sent:** Thursday, August 11, 2022 6:12 PM
**To:** Sankano, Gita F. <Gita.Sankano@Troutman.com>
**Cc:** Rua, Heidi <Heidi.Rua@nmrk.com>; Murphy, Angela <Angela.Murphy@nmrk.com>; Magana, Brandi <Brandi.Magana@nmrk.com>; Keith Short <kshort@coatsrose.com>; Arun Verma <arunvermabvm@gmail.com>
**Subject:** RE: Venetian on Ella - Legal Due Diligence Checklist

**EXTERNAL SENDER**

Hi Gita,

Is the attached lien/litigation search for guarantor acceptable since it is just over 30 days prior to targeted closing date or will a new one be required?

Thanks,
Caroline

**Caroline Cho**
*Of Counsel*

## COATS | ROSE
A PROFESSIONAL CORPORATION

9 Greenway Plaza, Suite 1000
Houston, Texas 77046
Direct: 713-653-5705  Fax: 713-651-0220
ccho@coatsrose.com
www.coatsrose.com

---

**From:** Sankano, Gita F. <Gita.Sankano@Troutman.com>
**Sent:** Thursday, August 11, 2022 4:54 PM
**To:** Keith Short <kshort@coatsrose.com>; Caroline Cho <ccho@coatsrose.com>; Arun Verma <arunvermabvm@gmail.com>
**Cc:** Rua, Heidi <Heidi.Rua@nmrk.com>; Murphy, Angela <Angela.Murphy@nmrk.com>; Magana, Brandi <Brandi.Magana@nmrk.com>
**Subject:** Venetian on Ella - Legal Due Diligence Checklist

**External to CR**

---

The Target closing date for this deal is **August 31, 2022**

To help keep us on the same page, below is a legal due diligence checklist.  Please review and provide any items/information as soon as available (keeping in mind the timeframes noted below for certain items).

Legal Due Diligence
-        Title Commitment/Exceptions Documents – **Comments Sent**
-        UCC/Judgment/Tax Lien Searches (Borrower's counsel to order. Dated within 30 days of closing) –
**NEED** [See requirements below]
-        Draft Opinion Letter(s) (**in the form provided**)
1.        Borrower – **Draft OK; NEED executed copy at closing**
2.        Guarantor – **Draft OK; NEED executed copy at closing**

-        Organizational Documents (Borrower/Guarantor and their sub-entities) [We will also need any required consents/resolutions in order for the Borrower to enter into the Loan and sign the Loan Documents and for an entity Guarantor to sign the Guaranty and guarantee the Loan]:
1.        Rama Venetian Apartments LLC
1.                SPE Covenants - **Draft OK; NEED executed copy at closing**

**Search Requirements**

UCC/tax lien/judgment lien search requirements:

App.G-Bowsher-Ex.9

Troutman_00004707

- Name: Borrower's name-  Rana Venetian Apartments LLC
        Guarantor – Arun Verma
- Location:
        - The State in which the Borrower entity was formed
        - The local jurisdiction in which the Property is located
        - The state of residence of any individual
- Date: must be dated no earlier than 30 days prior to the Origination Date.

Please forward each item as soon as it is available.

Please note, the Title/Survey, Borrower Organizational Documents and the Draft Opinion all require approval and must be submitted at least 10 business days before closing.

Please let me know if you have any questions or need anything from me.

**Gita F. Sankano**
**Associate**
Direct: 202.220.1251 ⋮ Internal: 803-1251
gita.sankano@troutman.com

troutman **pepper**
401 9th Street, NW, Suite 1000
Washington, DC  20004
troutman.com

Troutman Pepper is a 2021 Mansfield Certified Plus Firm

This e-mail (and any attachments) from a law firm may contain legally privileged and confidential information solely for the intended recipient. If you received this message in error, please notify the sender and delete it. Any unauthorized reading, distribution, copying, or other use of this e-mail (and attachments) is strictly prohibited. We have taken precautions to minimize the risk of transmitting computer viruses, but you should scan attachments for viruses and other malicious threats; we are not liable for any loss or damage caused by viruses.

This e-mail and/or attachment is for the sole use of the intended recipient(s) and may contain confidential and/or legally privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message.

App.G-Bowsher-Ex.9

**From:**    Sankano, Gita F. [Gita.Sankano@Troutman.com]
**Sent:**    8/17/2022 8:17:04 AM
**To:**    Bowsher, Matthew R. [Matthew.Bowsher@Troutman.com]
**Subject:**    RE: Venetian on Ella - Legal Due Diligence Checklist

Thank you, Matt. This was extremely helpful.

## Gita F. Sankano
**Associate**
**troutman** pepper
Direct: 202.220.1251 | Internal: 803-1251
gita.sankano@troutman.com

---

**From:** Bowsher, Matthew R. <Matthew.Bowsher@troutman.com>
**Sent:** Tuesday, August 16, 2022 11:59 PM
**To:** Sankano, Gita F. <Gita.Sankano@Troutman.com>
**Subject:** RE: Venetian on Ella - Legal Due Diligence Checklist

I'm glad you asked.  My thoughts are that ever since my first day working at Troutman, I have harbored deep frustration over how both Troutman and our clients handle search requirements so inconsistently.   It drives me insane.   Here's what you need to understand:

1.      On standard Freddie loans (not SBL loans), technically Freddie only requires delivery of UCC searches, per Guide Section 29.4.  Local (county) UCC searches are automatically achieved via title commitments, so at first glance you might think you could satisfy the Guide by just doing a UCC search at the state level.   However, Guide Section 10.8 also says the mortgage must be a first priority lien, and we all know that UCC liens are not the only type of lien out there, so this is why we always also require searches for judgement liens and tax liens as well, even though the Guide doesn't specifically require it, because the existence of any such liens would be superior to our mortgage.   Thus, as a baseline, on all loans, we can all agree that we need at a minimum:  **UCC, judgement lien, and tax lien searches**.

2.      Some lenders have made the internal decision to require more than merely UCC/judgment/lien searches; they've added **litigation and bankruptcy searches** to their requirements.   (And some lenders even require these searches on more than just the borrower and/or the property seller, they include the guarantors or other controlling principals.)  To confirm whether a lender requires extra searches, you should always consult the "Lender Information Sheets" found on iManage at the attached link.

3.      The law firm of Reiferson Dee, when it reviews non-con opinions in its capacity as Freddie's outside counsel, requires those non-con opinions to be supported by not only UCC/judgment/lien searches, but also by litigation and bankruptcy searches.

4.      Because some lenders routinely require litigation and bankruptcy searches, and because Reiferson requires those extra searches on non-con opinion deals, some attorneys at Troutman have taken the position that it's best to simply require the litigation and bankruptcy searches on all loans, to be consistent and efficient and to avoid the hassle of using different requirements for different loans, and it should be noted that some Troutman attorneys work primarily with those lenders who require those extra searches so it makes sense for them to include those extra searches in their form checklists.  However, other Troutman attorneys feel that the extra cost to borrowers for those extra searches, and the time it takes for us to review the extra searches, is not justified when you consider that most lenders don't require them and the majority of loans do not have non-con opinions  -- i.e. these extra searches are an unnecessary burden on probably 80% of our loans -- and those same attorneys note that other law firms don't require the extra searches unless they're necessary so Troutman looks bad when we require those searches for no apparent reason, thus some Troutman

attorneys only require the extra searches when those searches are specifically required by the lender or by Reiferson Dee.

On our loan, Newmark doesn't require the extra searches, and our loan is under $40M so there's no non-con opinion, so we do not need litigation or bankruptcy searches.

Matt

**Matthew R. Bowsher**
Partner
troutman pepper
Office: 202.274.1939 ¦ Mobile: 301.512.0423
matthew.bowsher@troutman.com

---

**From:** Sankano, Gita F. <Gita.Sankano@troutman.com>
**Sent:** Tuesday, August 16, 2022 5:39 PM
**To:** Bowsher, Matthew R. <Matthew.Bowsher@troutman.com>
**Subject:** FW: Venetian on Ella - Legal Due Diligence Checklist

Hi Matt,

When I first started working with the DC MFH group, I was given the checklist attached. Our search request list does not include Bankruptcy Searches. I noticed that some partners request them and some do not. Before I respond to the email below, I just wanted to see what your thoughts are.

**Gita F. Sankano**
Associate
troutman pepper
Direct: 202.220.1251 ¦ Internal: 803-1251
gita.sankano@troutman.com

---

**From:** Caroline Cho <ccho@coatsrose.com>
**Sent:** Tuesday, August 16, 2022 5:25 PM
**To:** Sankano, Gita F. <Gita.Sankano@Troutman.com>
**Cc:** Rua, Heidi <Heidi.Rua@nmrk.com>; Murphy, Angela <Angela.Murphy@nmrk.com>; Magana, Brandi <Brandi.Magana@nmrk.com>; Keith Short <kshort@coatsrose.com>; Arun Verma <arunvermabvm@gmail.com>; Bowsher, Matthew R. <Matthew.Bowsher@Troutman.com>
**Subject:** RE: Venetian on Ella - Legal Due Diligence Checklist

**EXTERNAL SENDER**

I used the list of searches provided below. I can obtain a bankruptcy search. Is that the only search that you lack?

**Caroline Cho**
*Of Counsel*

COATS | ROSE
A PROFESSIONAL CORPORATION

9 Greenway Plaza, Suite 1000
Houston, Texas 77046
Direct: 713-653-5705  Fax: 713-651-0220

App.G-Bowsher-Ex.10

Troutman_00002922

ccho@coatsrose.com
www.coatsrose.com

**From:** Sankano, Gita F. <Gita.Sankano@Troutman.com>
**Sent:** Tuesday, August 16, 2022 4:23 PM
**To:** Caroline Cho <ccho@coatsrose.com>
**Cc:** Rua, Heidi <Heidi.Rua@nmrk.com>; Murphy, Angela <Angela.Murphy@nmrk.com>; Magana, Brandi
<Brandi.Magana@nmrk.com>; Keith Short <kshort@coatsrose.com>; Arun Verma <arunvermabvm@gmail.com>;
Bowsher, Matthew R. <Matthew.Bowsher@Troutman.com>
**Subject:** RE: Venetian on Ella - Legal Due Diligence Checklist


External to CR

Thank you! I don't see the bankruptcy searches,

**Gita F. Sankano**
**Associate**
troutman **pepper**
Direct: 202.220.1251 | Internal: 803-1251
gita.sankano@troutman.com

**From:** Caroline Cho <ccho@coatsrose.com>
**Sent:** Tuesday, August 16, 2022 5:11 PM
**To:** Sankano, Gita F. <Gita.Sankano@Troutman.com>
**Cc:** Rua, Heidi <Heidi.Rua@nmrk.com>; Murphy, Angela <Angela.Murphy@nmrk.com>; Magana, Brandi
<Brandi.Magana@nmrk.com>; Keith Short <kshort@coatsrose.com>; Arun Verma <arunvermabvm@gmail.com>;
Bowsher, Matthew R. <Matthew.Bowsher@Troutman.com>
**Subject:** RE: Venetian on Ella - Legal Due Diligence Checklist

**EXTERNAL SENDER**

Gita:

I've attached the requested searches on borrower.

Thanks,
Caroline

**Caroline Cho**
*Of Counsel*

COATS | ROSE
A PROFESSIONAL CORPORATION

9 Greenway Plaza, Suite 1000
Houston, Texas 77046
Direct: 713-653-5705  Fax: 713-651-0220
ccho@coatsrose.com
www.coatsrose.com

**From:** Sankano, Gita F. <Gita.Sankano@Troutman.com>
**Sent:** Monday, August 15, 2022 4:29 PM
**To:** Caroline Cho <ccho@coatsrose.com>

App.G-Bowsher-Ex.10

Troutman_00002923

Cc: Rua, Heidi <Heidi.Rua@nmrk.com>; Murphy, Angela <Angela.Murphy@nmrk.com>; Magana, Brandi <Brandi.Magana@nmrk.com>; Keith Short <kshort@coatsrose.com>; Arun Verma <arunvermabvm@gmail.com>; Bowsher, Matthew R. <Matthew.Bowsher@Troutman.com>
**Subject:** RE: Venetian on Ella - Legal Due Diligence Checklist

**External to CR**

Hi Caroline,

I'll circle back to you on that.

In the meantime, do you know when we will receive the borrower's searches?

Thanks,
Gita

**Gita F. Sankano**
**Associate**
troutman **pepper**
Direct: 202.220.1251 ¦ Internal: 803-1251
gita.sankano@troutman.com

**From:** Caroline Cho <ccho@coatsrose.com>
**Sent:** Thursday, August 11, 2022 6:12 PM
**To:** Sankano, Gita F. <Gita.Sankano@Troutman.com>
**Cc:** Rua, Heidi <Heidi.Rua@nmrk.com>; Murphy, Angela <Angela.Murphy@nmrk.com>; Magana, Brandi <Brandi.Magana@nmrk.com>; Keith Short <kshort@coatsrose.com>; Arun Verma <arunvermabvm@gmail.com>
**Subject:** RE: Venetian on Ella - Legal Due Diligence Checklist

**EXTERNAL SENDER**

Hi Gita,

Is the attached lien/litigation search for guarantor acceptable since it is just over 30 days prior to targeted closing date or will a new one be required?

Thanks,
Caroline

**Caroline Cho**
*Of Counsel*

COATS | ROSE
A PROFESSIONAL CORPORATION

9 Greenway Plaza, Suite 1000
Houston, Texas 77046
Direct: 713-653-5705  Fax: 713-651-0220
ccho@coatsrose.com
www.coatsrose.com

App.G-Bowsher-Ex.10

Troutman_00002924

**From:** Sankano, Gita F. <Gita.Sankano@Troutman.com>
**Sent:** Thursday, August 11, 2022 4:54 PM
**To:** Keith Short <kshort@coatsrose.com>; Caroline Cho <ccho@coatsrose.com>; Arun Verma <arunvermabvm@gmail.com>
**Cc:** Rua, Heidi <Heidi.Rua@nmrk.com>; Murphy, Angela <Angela.Murphy@nmrk.com>; Magana, Brandi <Brandi.Magana@nmrk.com>
**Subject:** Venetian on Ella - Legal Due Diligence Checklist

External to CR

---

The Target closing date for this deal is __August 31, 2022__

To help keep us on the same page, below is a legal due diligence checklist.  Please review and provide any items/information as soon as available (keeping in mind the timeframes noted below for certain items).

Legal Due Diligence
- Title Commitment/Exceptions Documents – **Comments Sent**
- UCC/Judgment/Tax Lien Searches (Borrower's counsel to order. Dated within 30 days of closing) – **NEED** [See requirements below]
- Draft Opinion Letter(s) (**in the form provided**)
1. Borrower – **Draft OK; NEED executed copy at closing**
2. Guarantor – **Draft OK; NEED executed copy at closing**

- Organizational Documents (Borrower/Guarantor and their sub-entities) [We will also need any required consents/resolutions in order for the Borrower to enter into the Loan and sign the Loan Documents and for an entity Guarantor to sign the Guaranty and guarantee the Loan]:
1. Rama Venetian Apartments LLC
1. SPE Covenants - **Draft OK; NEED executed copy at closing**


**Search Requirements**

UCC/tax lien/judgment lien search requirements:
- Name: Borrower's name-  Rana Venetian Apartments LLC
    Guarantor – Arun Verma
- Location:
    - The State in which the Borrower entity was formed
    - The local jurisdiction in which the Property is located
    - The state of residence of any individual
- Date: must be dated no earlier than 30 days prior to the Origination Date.


Please forward each item as soon as it is available.

Please note, the Title/Survey, Borrower Organizational Documents and the Draft Opinion all require approval and must be submitted at least 10 business days before closing.

Please let me know if you have any questions or need anything from me.

**Gita F. Sankano**
**Associate**
Direct: 202.220.1251 ⋮ Internal: 803-1251
gita.sankano@troutman.com

---

App.G-Bowsher-Ex.10

**troutman** **pepper**
401 9th Street, NW, Suite 1000
Washington, DC  20004
troutman.com

Troutman Pepper is a 2021 Mansfield Certified Plus Firm

This e-mail (and any attachments) from a law firm may contain legally privileged and confidential information solely for the intended recipient. If you received this message in error, please notify the sender and delete it. Any unauthorized reading, distribution, copying, or other use of this e-mail (and attachments) is strictly prohibited. We have taken precautions to minimize the risk of transmitting computer viruses, but you should scan attachments for viruses and other malicious threats; we are not liable for any loss or damage caused by viruses.

This e-mail and/or attachment is for the sole use of the intended recipient(s) and may contain confidential and/or legally privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message.

App.G-Bowsher-Ex.10

| | |
|---|---|
| **From:** | Bowsher, Matthew R.[/O=TROUTMANSANDERS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=99D8D2CBA40440EFA576623B7A8765CF-BOWSHER,] |
| **Sent:** | Tue 2/16/2021 7:28:18 PM (UTC-05:00) |
| **To:** | Sidarth, S.R.[SR.Sidarth@troutman.com] |
| **Subject:** | RE: Gita |

It went okay.  She's raw.  Like, sushi raw.  She said she has closed several (4 or 5?) deals with Brian, Peter, and Whitney, but it's very obvious that they are doing all the work and she's just copied on the emails, updating the checklist.  She thought we authorize closing _after_ the funds are disbursed to borrower?  She wasn't <u>sure</u> whether we could authorize closing before we have a signed settlement sheet?  She was very responsive, very conscientious, proactive with communications between the various parties, and most importantly she's good about asking questions, so don't get me wrong, she has a bright future, but as I said… sushi raw.    I guess I just I assumed, because she had "closed HUD deals" before, and had "closed several deals with Richmond", that she knew more about the basic mechanics than she truly does.   She'll climb the curve quickly, I'm sure.

## Matthew R. Bowsher
**Partner**
troutman **pepper**
Office: 202.274.1939 | Mobile: 301.512.0423
matthew.bowsher@troutman.com

---

**From:** Sidarth, S.R. <SR.Sidarth@troutman.com>
**Sent:** Tuesday, February 16, 2021 6:26 PM
**To:** Bowsher, Matthew R. <Matthew.Bowsher@troutman.com>
**Subject:** RE: Gita

She and I just spent quite a while on the phone working through deal mechanics, etc. – just FYI. Seems like your deal went well from her perspective.

She is so responsive – I remember when I used to be able to do that!

## S.R. Sidarth
**Partner**
troutman **pepper**
Direct: 202.274.2848 | Internal: 12-2848
sr.sidarth@troutman.com
Pronouns: he, him, his

---

**From:** Bowsher, Matthew R. <Matthew.Bowsher@troutman.com>
**Sent:** Tuesday, February 16, 2021 9:55 AM
**To:** Sidarth, S.R. <SR.Sidarth@troutman.com>
**Subject:** RE: Gita

Understood, will let you know.

## Matthew R. Bowsher
**Partner**

<span style="color:red">App.G-Bowsher-Ex.11</span>

**troutman** pepper
Office: 202.274.1939 | Mobile: 301.512.0423
matthew.bowsher@troutman.com

---

**From:** Sidarth, S.R. <SR.Sidarth@troutman.com>
**Sent:** Tuesday, February 16, 2021 9:53 AM
**To:** Bowsher, Matthew R. <Matthew.Bowsher@troutman.com>
**Subject:** Gita

How is your deal doing – heard it's closing today. The main thing I've noticed is that I feel like she's always a bit rushed in getting things out – so there are typos and a somewhat incomplete presentation. I want to tell her to just slow down a bit!

But I think she's very eager and wants to put in the work. That's the big thing at this stage in my book. Thoughts welcome, thanks.


**S.R. Sidarth**
**Partner**
Direct: 202.274.2848 | Internal: 12-2848
sr.sidarth@troutman.com
Pronouns: he, him, his

─────────────

**troutman** pepper
401 9th Street, NW, Suite 1000
Washington, DC 20004
troutman.com

Troutman Pepper is a 2020 Mansfield Certified Plus Firm

App.G-Bowsher-Ex.11

Troutman_00006724

| | |
|---|---|
| **From:** | Bowsher, Matthew R.[/O=TROUTMANSANDERS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=99D8D2CBA40440EFA576623B7A8765CF-BOWSHER,] |
| **Sent:** | Thur 6/10/2021 12:48:07 PM (UTC-04:00) |
| **To:** | Scopelitis, Thomas J.[Thomas.Scopelitis@troutman.com] |
| **Subject:** | FW: NKF - Southown Flats - PSA Analysis |

Her draft PSA analysis completely missed the condo conversion restriction set forth in the PSA.   Please see if she missed anything else, and follow-up with her on it in a constructive manner, so that she's aware and understands.


**Matthew R. Bowsher**
**Partner**
troutman **pepper**
Office: 202.274.1939 | Mobile: 301.512.0423
matthew.bowsher@troutman.com

**From:** Scopelitis, Thomas J. <Thomas.Scopelitis@troutman.com>
**Sent:** Thursday, May 20, 2021 11:46 PM
**To:** Sankano, Gita F. <Gita.Sankano@troutman.com>
**Cc:** Bowsher, Matthew R. <Matthew.Bowsher@troutman.com>
**Subject:** RE: NKF - Southtown Flats - PSA Analysis

Awesome! Thank you Gita.  I will take a look.
Tom

**Thomas J. Scopelitis**
**Associate**
troutman **pepper**
Direct: 202.274.2911 | Mobile: 516.655.8741 | Internal: 12-2911
thomas.scopelitis@troutman.com
Pronouns: he, him, his



**From:** Sankano, Gita F. <Gita.Sankano@Troutman.com>
**Sent:** Tuesday, May 18, 2021 5:31 PM
**To:** Scopelitis, Thomas J. <Thomas.Scopelitis@troutman.com>
**Cc:** Bowsher, Matthew R. <Matthew.Bowsher@troutman.com>
**Subject:** RE: NKF - Southtown Flats - PSA Analysis

Hi Tom,

Please see the PSA analysis attached.

Sincerely,
Gita

**Gita F. Sankano**
**Associate**
troutman **pepper**
Direct: 202.220.1251 | Internal: 803-1251

App.G-Bowsher-Ex.12

Troutman_00006698

gita.sankano@troutman.com

**From:** Scopelitis, Thomas J. <Thomas.Scopelitis@troutman.com>
**Sent:** Tuesday, May 18, 2021 2:02 PM
**To:** Sankano, Gita F. <Gita.Sankano@Troutman.com>
**Cc:** Bowsher, Matthew R. <Matthew.Bowsher@Troutman.com>
**Subject:** NKF - Southtown Flats - PSA Analysis

Hi Gita,

Do you have time to help Matt and I on a PSA Analysis for Southtown Flats?  The borrower is the purchaser under the PSA.  The client matter number is not available yet.  End of the week would be great on this if you could? I have included a sample.  Please let us know if there are any questions. Thanks Gita!
Tom


**Thomas J. Scopelitis**
**Associate**
Direct: 202.274.2911 | Mobile: 516.655.8741 | Internal: 12-2911
thomas.scopelitis@troutman.com
Pronouns: he, him, his

─────────────────

**troutman** pepper
401 9th Street, NW, Suite 1000
Washington, DC 20004
troutman.com

Troutman Pepper is a 2020 Mansfield Certified Plus Firm

App.G-Bowsher-Ex.12

Troutman_00006699

| From: | Nickel, Nora Garcia[/O=TROUTMANSANDERS/OU=FIRST ADMINISTRATIVE GROUP/CN=RECIPIENTS/CN=GARCIAMN] |
|---|---|
| Sent: | Mon 6/21/2021 11:28:33 AM (UTC-04:00) |
| To: | Bowsher, Matthew R.[Matthew.Bowsher@troutman.com] |
| Bcc: | Nickel, Nora Garcia[nora.nickel@troutman.com] |
| Subject: | RE: Follow-Up |

Hey!Thanks so much for this feedback and let me know what you hear back from Tom.I agree she's not the best on knowing the basics – or at least it doesn't come naturally.It's definitely harder for some than others.Speaking from personal experience, I'm sure folks had to dumb things down for me when I was a junior associate and it took me longer than others to finally "get it".Thankfully, I knew how to work hard and worked with partners who were very patient and willing to teach me.

Gita missed some litigation in searches she reviewed for me.It was in the PSA and she missed it there too.I walked her through everything and I'm hoping she now knows where and how to look for these things.Not sure if she knows how to convert .pdf to be searchable, but probably some helpful feedback.I know, sounds basic and simple, but maybe she doesn't know it could be helpful just to search "condo" or other key words.

I think she would benefit a ton working from you directly.I think Tom did a complete 180 with your guidance and help.

Thanks again for working with her.I know it takes extra time – and we don't have a lot of it!

**Nora Garcia Nickel**
**Partner**
troutman **pepper**
Direct: 804.697.1259 | Internal: 15-1259
nora.nickel@troutman.com

---

**From:** Bowsher, Matthew R. <Matthew.Bowsher@troutman.com>
**Sent:** Sunday, June 20, 2021 10:48 PM
**To:** Nickel, Nora Garcia <nora.nickel@troutman.com>
**Subject:** RE: Follow-Up

Meh.'m not sure, to be honest, because Tom (not I) delegated it to her and reviewed it.So I'll have to ask him.I did review our PSA Analysis, and she totally missed the condo restriction; it wasn't in the form deed as you'd usually expect, rather it was in a separate restrictive covenant, but still, she obviously didn't read the covenant or perform a simple search for the word "condo".

I like Gita on a personal level, and I spent many hours Zooming with her (we met once every week for a few months) to provide training, but despite all the deals she's done, she still seems sushi raw on the basics, I mean like she had absolutely no idea as to basic closing logistics (funds are released to borrower <u>after</u> we give our authorization… how could it possibly make sense for our authorization to come after funds have already been released?) or even the fundamentals of contract law (if the commitment hasn't been signed, why would you need an <u>amendment</u> rather than simply modifying the existing draft commitment?).I like many things about her, I don't want to race to judgement, but wow the amount of hand-holding necessary is daunting, and I'm not the only one who feels this way. just doesn't seem to naturally make a lot of the same basic connections as other first-years I've seen, including Kimberly.Maybe once she makes all those connections and figures it all out, she'll be awesome?And/or maybe I just have unrealistic expectations, possibly jaded by how quickly Kimmie has climbed the learning curve?

As soon as I have a vanilla deal without someone else's name on it, I look forward to giving it to her and working with her again directly, without Tom in the middle, just her and I, and we'll see how far she's come over the past few months since I closed my last deal with her.

**Matthew R. Bowsher**
**Partner**
troutman **pepper**
Office: 202.274.1939 | Mobile: 301.512.0423

App.G-Bowsher-Ex.13

Troutman_00006534

matthew.bowsher@troutman.com

**From:** Nickel, Nora Garcia <nora.nickel@troutman.com>
**Sent:** Sunday, June 20, 2021 10:27 PM
**To:** Bowsher, Matthew R. <Matthew.Bowsher@troutman.com>
**Subject:** Follow-Up

Hey!I saw Gita did a condo analysis for you.How did that go?I know she's still learning, but she's been very proactive on my deal.Just trying to see how she's working with others.

**Nora Garcia Nickel**
**Partner**
Direct: 804.697.1259 | Internal: 15-1259
nora.nickel@troutman.com

**troutman** pepper
1001 Haxall Point, Suite 1500
Richmond, VA 23219
troutman.com

A HIGHER COMMITMENT TO CLIENT CARE

Troutman Pepper is a 2020 Mansfield Certified Plus Firm

App.G-Bowsher-Ex.13

Troutman_00006535

| | |
|---|---|
| **From:** | Bowsher, Matthew R.[/O=TROUTMANSANDERS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=99D8D2CBA40440EFA576623B7A8765CF-BOWSHER,] |
| **Sent:** | Sat 8/28/2021 10:43:10 PM (UTC-04:00) |
| **To:** | Iwashyna, Brian J.[Brian.Iwashyna@troutman.com] |
| **Subject:** | DC hiring |

Zack and Sidarth are making a case for hiring not just a replacement for Kimmie but also an additional junior associate.Thoughts?

Zack says he has a boatload of deals, most of which are from former clients, so it sounds like he's crushing it, bringing his own book of business, adding to the pie just as we'd hoped he would.Sidarth sounds busy as well, in his own right.They share a mutual concern that we don't have enough junior associates up here to support our group, particularly given that (i) if Zack and Kelly are fortunate enough to both make partner in the next couple years as projected, suddenly we're looking at 6 partners, and (ii) Zack and Sidarth are supposed to be developing a TAH business but they have no dedicated TAH associate, in fact they don't have enough help from associates on conventional deals, while TAH deals require a ton of extra work and more time for a deeper understanding of what's going on.

Sophie joins us soon, so we'll be training her and Kimmie's replacement.Seems crazy to be training 3 new associates simultaneously, but if it's true that Zack is struggling to support this new piece of the pie which he has brought to the table, then hiring another associate does seem like the logical move, and it's the least we can do to help maximize his full potential, which I feel like we've barely tapped into.he's holding-up his end of the bargain, we need to reciprocate by providing the level of support we told him he'd find here.

Here's a snapshot of where we might find ourselves 18 months from now (Spring 2023):

| Partners | Associates |
|---|---|
| 1. David | 1. Ari |
| 2. Lindsey | 2. Tom |
| 3. Matt | 3. Sophie |
| 4. Sidarth | 4. Kimmie's replacement |
| 5. Zack | 5. Drolma (2021 summer associate) |
| 6. Kelly | |
| | 6. (Will Rodger still be here?He tried to quit after just 3 months of having a full workload, for goodness sake.There's little chance he'll still be here in 2 years.) |
| | 7. (Will Gita be working 100% with Richmond?She can't stand Sidarth, finds Zack difficult, and if Peter/Whitney are putting their time into training her and can provide her with 2000+ hours/yr then they deserve no less than 100% of her time, I have no problem with that… and candidly I'm not bullish on her trajectory so they'll have no fight from me for her services.) |

**Matthew R. Bowsher**
**Partner**
Office: 202.274.1939 | Mobile: 301.512.0423
matthew.bowsher@troutman.com

**troutman** pepper
401 9th Street NW, Suite 1000
Washington, DC 20004

**From:**         Bowsher, Matthew R.[/O=TROUTMANSANDERS/OU=EXCHANGE ADMINISTRATIVE GROUP
                  (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=99D8D2CBA40440EFA576623B7A8765CF-
                  BOWSHER,]

**Sent:**         Wed 11/10/2021 7:34:47 PM (UTC-05:00)

**To:**           Sidarth, S.R.[SR.Sidarth@troutman.com]; Crawford, Lindsey[Lindsey.Crawford@troutman.com]

**Subject:**      RE: FYI

Understood.    I just heard back from Brian, he offered RIC associate support for Kelly's leave (I didn't ask for it, I only pointed-out the impending situation, and he offered).


## Matthew R. Bowsher
**Partner**
troutman **pepper**
Office: 202.274.1939 | Mobile: 301.512.0423
matthew.bowsher@troutman.com

**From:** Sidarth, S.R. <SR.Sidarth@troutman.com>
**Sent:** Wednesday, November 10, 2021 7:29 PM
**To:** Bowsher, Matthew R. <Matthew.Bowsher@troutman.com>; Crawford, Lindsey
<Lindsey.Crawford@troutman.com>
**Subject:** RE: FYI

I am happy to use Vishal if Henry permits, but I thought he was on the market looking for support…

My point on a RIC associate was that Rodger will be our only non-senior associate who is fully operational after next Friday. It would be useful in my view for us and Zack/Kelly/Ari to have one more regular option beyond Rodger/Sophie until we add someone. I also don't include Gita in our rotation.


## S.R. Sidarth
**Partner**
troutman **pepper**
Direct: 202.274.2848 | Internal: 12-2848
sr.sidarth@troutman.com
Pronouns: he, him, his


**From:** Bowsher, Matthew R. <Matthew.Bowsher@troutman.com>
**Sent:** Wednesday, November 10, 2021 7:24 PM
**To:** Sidarth, S.R. <SR.Sidarth@troutman.com>; Crawford, Lindsey <Lindsey.Crawford@troutman.com>
**Subject:** RE: FYI

Great point about Kelly's leave.   When she left last year, it darn-near killed us, and we still had Ari-Tom-Kimmie. This time around, not only will we only have Ari-Rodger-Sophie, which is a significant downgrade in overall capacity, but we'll also have Zack's additional workload to support as well.   While I'm sure Zack will have whipped Samson into an impressively useful 1st-Year by April, there's no chance Samson will be able to single-handedly support Zack's entire workload by that time, so Zack will need a piece of Ari-Rodger-Sophie.

I know there's Gita, but she's still very heavily dedicated to Peter and Whitney, and she's not even at Kimmie's level yet, in terms of ability to handle the bulk of a deal independently, from what I've seen.

App.G-Bowsher-Ex.15

I put an email into Brian on this.

Regarding your point about finishing-up Tom's deals, I only have one deal with Tom, you've only got 2, and Tom says Lindsey's deals will be finished by the time Tom leaves? I'm not sure Brian's going to give us a piece of an associate just to cover that, nor am I inclined to ask. If we're going to ask for dedicated RIC associate help, I'd like to save that favor for Kelly's leave. If we just need someone to finish-up Tom's few deals, to the extent Kelly and Ari and Rodger can't handle it, how about Vishal or someone else from Henry's group… they're all low on hours recently.


**Matthew R. Bowsher**
**Partner**
troutman **pepper**
Office: 202.274.1939 | Mobile: 301.512.0423
matthew.bowsher@troutman.com

**From:** Sidarth, S.R. <SR.Sidarth@troutman.com>
**Sent:** Wednesday, November 10, 2021 6:32 PM
**To:** Bowsher, Matthew R. <Matthew.Bowsher@troutman.com>; Crawford, Lindsey
<Lindsey.Crawford@troutman.com>
**Subject:** FYI

Planning to use Samson to finish out Tom's 2 deals with me – will make that connection once Tom is ready to transition in earnest. Don't want to load Samson with lots of new work right now (given his load with Zack) but can let you know how that goes.

I think one topic for our conversation tomorrow should be if Brian can give us at least a piece of a RIC associate while we're in the middle of sorting through the next 30-45 days. In stepping back, I do think we need to go back to an active search – and it can be for either a junior or a mid-level associate (in Rodger's ballpark). Kelly's maternity leave has the potential to blow up Ari if we don't solve for it.


**S.R. Sidarth**
**Partner**
Direct: 202.274.2848 | Internal: 12-2848
sr.sidarth@troutman.com
Pronouns: he, him, his
──────────────
troutman **pepper**
401 9th Street, NW, Suite 1000
Washington, DC 20004
troutman.com

Troutman Pepper is a 2021 Mansfield Certified Plus Firm

App.G-Bowsher-Ex.15

Troutman_00006717

| | |
|---|---|
| **From**: | Bowsher, Matthew R. [Matthew.Bowsher@troutman.com] |
| **Sent**: | 1/23/2022 9:53:00 PM |
| **To**: | Sankano, Gita F. [/o=Pepper Hamilton LLP/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=Sankano, Gita F.b71] |
| **Subject**: | checking in |

Hey, you doing okay, under the circumstances?   I'm so sorry.   And I hope your sister and her family are weather it as well as can be expected.  I just can't even imagine.

Listen, I've got a new deal, and you specifically said you wanted to work on more complex deals, so I'd feel remiss assigning this to someone else, as it's a sponsor which doesn't have Ari's or Kelly's name on it.   Bit of an odd situation because technically it's David's deal but he's out with health issues and the client is in a hurry to move forward, so I guess I'm running with it?  Anyway:  you'll see an email from me later tonight bringing you into the deal, but if you're not up for it, if you just need some more time to recover from everything you and your family are dealing with, PLEASE just let me know, I can easily pivot and hand it to someone else, I just thought it was a good opportunity to have us do a deal together… but only if the timing works for you.   No pressure either way, just let me know.

Matt

**Matthew R. Bowsher**
**Partner**
Office: 202.274.1939 ⦙ Mobile: 301.512.0423
matthew.bowsher@troutman.com
_____
troutman **pepper**
401 9th Street NW, Suite 1000
Washington, DC 20004

**Sent:**                   Tue 3/15/2022 10:07:58 AM (UTC-04:00)

**Subject:**            Gita

**1430 Q**
- Needed to "talk through" which entities should be listed on the closing checklist
- Draft closing checklist was a mess, required an SPE Equity Owner despite the loan being well under $25M, she was on a call where borrower said we're getting a new survey yet her checklist asked for confirmation whether borrower was looking for a waiver of the survey, inconsistent formatting, missed several items (commercial leases / tenant estoppels / solar equipment lease consent & assignment) which had specifically been discussed and identified in emails.She's never done a ground lease deal so I don't blame her at all for not knowing exactly which items to add for the ground lease, such as the Memorandum, or the Estoppel, but most associates with her experience level would have at least listed the ground lease itself as a required item.Given that our standard form checklist requires a copy of the deed, wouldn't common sense suggest that, on a ground lease deal, we might want to require a copy of the ground lease?The fact that she didn't even take a stab at it, not even list the ground lease and put it in brackets and highlight it for my attention, was surprising.
- PSA analysis (a very short simple one-page doc which she has produced on several deals), had typos, sentences which were just copied/pasted directly from the PSA with no context given, no explanation of the defined terms, she included some defined terms which weren't actually used anywhere in the docs, some sentences didn't even make grammatical sense, and more troubling what that I pointed this out to her, and even after she revised it, it still didn't make sense.And instead of providing an actual outside closing date, she just set forth the calculation, i.e. 30 days after the 55-day due diligence period.After I sent her two sets of comments on this very simple document/analysis, her response was, "oh okay, guess I was too long winded"… which wasn't at all the problem with her analysis.She totally missed the point of my edits even though I specifically said, in writing, "the client needs to know the actual date certain, not just the calculation method".
- Analysis of solar equipment lease entirely missed the purchase option, typos in critical items like the amount of ground rent, analysis was disjointed and confusing (and ultimately inaccurate) when trying to explain the extension options.Similar to the PSA analysis, most of her analysis was just copied/pasted directly from the text of the underlying document rather than summarizing the doc and putting those copied sentences into context.Defined terms were incorrect (again because they were just copied/pasted from the lease), no attempt to provide original thought or to modify the copied language to at least the bare extent necessary to convey clear info to the reader.
- Had no idea that the JV Agreement was simply the operating agreement of the LLC in which the sponsor and equity were partners
- LIA:wrong zip code, no attempt to list paralegal (info is baked directly in our form, plus I sent her the chart separately), several typos in entity names (commas and periods, not checked against DE website), the condo conversion analysis repeated itself (gave the requirement, then repeated verbatim the requirement in the answer) and failed to recommend the rider which I specifically instructed to include.
- Asset Management Fee:sent her Jeremy's clean guidance email, it specifically says that if the fee is not payable directly by borrower then we don't need anything, yet she required borrower to subordinate the fee, seemingly not realizing that the JV Agreement is for the <u>JV</u>, not the borrower, i.e. a fee payable by the JV under the JV agreement is not payable directly by the borrower.
- Needed reminder to send PSA Analysis to client (it had been finished for a week, and the LIA had been sent)
- Instructions to draft the loan docs:wrong closing date (it was never that date); it's a ground lease mortgage, so why would we indicate "n/a" for ground rent reserves?; this is an acquisition, and the LIA specifically says bor has not yet been formed, so how could this be a recycled borrower?;asked for a "buy-sell rider" which no long exists (it was retired before she even started working for us); didn't ask for the standard ground lease riders;
- Updated LIA:didn't save edits in new version, so her redline shows all cumulative changes rather than just the ones we're asking the reader to review.
- (client sends draft loan commitment at 2:50pm with specific instructions to review ASAP, I ask Gita at 3:40 whether she thinks she can get to it within the next hour, no problem if she can't but just let me know; no response until 6:40, at which point I had already reviewed and sent comments)
- Bor's counsel asks "do you have the signed signature pages in hand", Gita responds "we don't typically send

App.G-Bowsher-Ex.17

Troutman_00000861

signed loan docs until closing"
- Sent invoice with <u>blanks</u>
- Didn't realize the person handling the escrow docs was different than the person handling the money / settlement sheet... docs don't go to the money person.
- Bailee Docs --specifically copied her on the bailee letter submission so that she was in the thread, yet she never sent the remaining bailee docs to anyone, didn't ask me about it to confirm who's sending them, and when I asked her to send them (on the day of closing), she said she wasn't part of the thread.
- Certified copies – didn't click the link to the docs, then once I directed her to it, she concluded that they weren't certified copies, even though the emails specifically said they were the compiled documents, and they were signed
- Certified copies, Part 2 --we sent a slip-page to a recordable doc.Title sent us a certified copy which didn't reflect the slip-page, they didn't make the correction.Gita didn't review the certified copy to confirm the change was made, didn't catch the mistake, so the title agent recorded the incorrect version of the document.Moreover, Gita contended that it wasn't our fault, that the title agent recorded the wrong copy... she didn't realize that the whole point of requesting "certified copies" was to enable us to confirm exactly what is being recorded, to confirm that the to-be-recorded version has the correct slip-pages, exhibits, signatures, etc.

## Estates at Palm Bay

- When I asked her to complete the standard "prepared by, and after recording return to" section on an assignment of an existing mortgage on an A&R deal, she completed it with our client's generic address (not to the attention of anyone in particular, just "JLL Real Estate Capital LLC"), instead of to the Troutman attorney like every other to-be-recorded document she's ever seen
- We received a DE opinion which included not merely the single-member DE LLC opinions (#21-24) but also a dozen other opinions.Clearly this was not just a "DE single member LLC opinion", yet that's what she continued to call it and consider it.On the closing checklist, she listed the DE single-member LLC opinion, but also had a separate line item for "DE opinion", despite the fact that every required DE opinion except the UCC opinion had been covered by what she was calling the "DE single member LLC opinion".
- On an A&R loan, Borrower's counsel asks "do you need the original Mortgage sent to title as well"; Gita responds, "just the notes and allonge"... which were NOT supposed to be "sent to title", those were supposed to be sent to Troutman, as Gita had previously instructed borrower's counsel a moment prior, only the Assignment of Mortgage was supposed to be "sent to title".
- Sherri explained that all of our prior comments were previously communicated to Freddie, and that Sherri was only looking for any additional comments on the revised draft commitment.I responded to Sherri that all of our comments were contained in Sherri's cumulative set of comments to Freddie.Gita completely missed all of that nuance, she only reviewed the revised draft commitment and saw that Freddie hadn't made our suggested edits and so Gita told Sherri that we had several additional comments on the draft... when in fact all of those comments were already captured in the set of comments that Sherri had asked us to review.
- I sent a detailed email to bor's counsel in which we all agreed that, on Lender's counterpart signature page, we would simply strike through Freddie's name and insert JLL's name in a signature block, after we all acknowledged that USAF had already signed the page with Freddie's name.But when we received the USAF signed sig page with Freddie's name on it, Gita was confused, thought that the signature block should show JLL's name rather than Freddie's name... even though the whole point of the strike-through approach was a workaround to deal with the fact that we knew USAF's counterpart would have Freddie's name.Why would we need to show Freddie's name stricken-through on our counterpart if the USAF counterpart already correctly had JLL's name instead of Freddie's?

## Andorra Point (Supp)

- Given the choice, in the context of a change of PM, she construed the following portion of 6.09(d)(i) of the LA to mean that a change in property manager should be called an assignment of the PM's interest:Borrower will not surrender, terminate, cancel, modify, renew or extend its property management agreement, <u>or enter into any other agreement relating to the management or operation of the Mortgaged Property with Property Manager or any other Person</u>, or consent to (i) <u>the assignment by the Property Manager of its interest under such property management agreement</u>

**App.G-Bowsher-Ex.17**

• Construed 9.01(h) of the LA to mean that an EOD can/should be waived if it doesn't cause harm, rather than that the extended notice/cure periods don't apply if the EOD does cause harm.

• Three entities had errant commas in their names on the org chart, which was understandably copied from senior loan, no problem, but (i) the name of our borrower, correctly shown in LIA w/o comma, didn't match the org chart, and (ii) the name of the DET in our LIA (with an errant comma, consistent with errant org chart) didn't match the DET which was correctly named in the senior loan docs w/o the errant comma.

### Pillar Supps

• Asked for copies of the PSA and SSA "for the PLIM", when she already had the name of the pool from Eveie, which is all you need for the PLIM.. you don't need an entire PSA/SSA unless there's a <u>servicing</u> PLIM, not a loan origination PLIM.

### Villages at City Center

• Simple escrow letter says we'll hold the orig note, and will receive a copy of the assignment, they want us to countersign it.Gita objects, says we shouldn't sign because the original assignment should be going to esrow… which it is… and because we should only be holding the orig note… which we will, and which is what the letter says, but she doesn't understand why someone would want us to confirm we're holding an original note in escrow.

### Venetian on Ella

• Delivery coordinator's email says "the Survey Cert is inconsistent with the survey" and shows two screenshots, one of the applicable portion of the Survey Cert and one of the applicable part of the survey.Anyone can clearly see the Cert refers to a different date than the one shown on the Survey…. the delivery coordinator literally painted a picture of the inconsistency, she did all the work, the reader of the email didn't need to review the docs, its was right there, all of the info.Nevertheless, Gita responds, "what exactly is the inconsistency?"

### Northaven Park

• In the legal intro email, she attached the Application for an entirely different deal (!!), said "we'll prepare the closing checklist in the coming days" but then says "we prepared the closing checklist, see below"… and she asked for title commitments "for each property" yet this is a one-property deal.

• Client said he made 3 edits to org chart, asked us to send it to borrower for confirmation that it's accurate; client's email specifically said to ask them to review and confirm the attached chart, email did not say we needed bor to make the edits.Gita sends the chart to the borrower and asks bor to make the 3 edits.. which have already been made, and which are even worded in the past tense.

• she gets a search result back showing that a case was settled 7 years ago… yet she asks borrower's counsel for written confirmation of the status of this case?When the borrower explains that it was settled 7 years ago as reflected on the search result, Gita doubles-down and says she needs confirmation from bor's counsel in writing?

• even though this deal is an acquisition with a newly-formed borrower, she asks bor's counsel for searches on the borrower.Bor's counsel reminds Gita this is a newly-formed borrower, and that Gita's own checklist specifically says we don't need searches on entities formed less than 90 days from closing.In response, Gita says we still need it anyway.

• Instructed borrower's counsel to send hardcopy original signature page to First American, despite the fact that First American had never been mentioned in any communications throughout the entire deal, and despite the fact that the correct escrow agent contact info (Republic Title) was set forth in the escrow letter on our system before the errant instructions were given.Throughout the entire deal, we had only dealt with Republic Title on anything involving title, escrow, and the settlement statement/funding… this was not a situation where there was any possible confusion due to multiple parties being involved.Our sole contact at Republic Title had the title of "escrow agent" in her email signature info, so there was no reason to suspect she wasn't the person to whom we should send our original documents, indeed earlier in the deal she had specifically asked to see our draft documents.At no point during the deal was there ever any mention of using a separate funding agent versus a title/recording agent, in fact for the week prior the settlement statement drafts had all bene circulated

by Republic Title… yet in response to borrower pointing-out the erroneous escrow agent instruction, instead of owning the mistake, Gita says she felt that First American was the funding agent, which, even if true, would not explain why she instructed borrower to send documents to First American, as we would never send original docs to the funding agent, we'd send them to the title/recording agent.

• When sending final loan docs to client, didn't send them to the main closer who actually needed them, and didn't include the mortgage or assignment of mortgage; when I asked her to send the mortgage/assignment, she said she normally doesn't include them "because they are recorded documents"… as if the client wouldn't need a copy of the loan docs because they're recorded?Or wouldn't want all loan docs to be included in one email, so that they're all together, whether they're recorded or not?

### Falls of Town Park

• When submitting the "new matter request", she listed the associate, rather than the partner, as the 100% matter responsible attorney

• sent the closing checklist to the wrong borrower's attorney.This was at 3pm on a Sunday, not like she was in a rush or under any time pressure whatsoever, and this wasn't the initial issuance of the checklist, so all she had to do was hit "reply all" to her prior email conveying the prior week's checklist.

### Falls of Braeswood & Falls of Dairy Ashford

• see my 8/3/2023 email to Gita, which provides a classic textbook summary of her fundamental problem:she makes a mind-boggling communication error which is obvious to everyone else and which wastes everyone's time with confusion, and when I point it out to her, she still doesn't see it, she insists she did nothing wrong, and doesn't learn from the mishap.

**Matthew R. Bowsher**
**Partner**
Office: 202.274.1939 | Mobile: 301.512.0423
matthew.bowsher@troutman.com

**troutman pepper**
401 9th Street NW, Suite 1000
Washington, DC 20004

App.G-Bowsher-Ex.17

Troutman_00000864

| From: | Bowsher, Matthew R.[Matthew.Bowsher@troutman.com] |
|---|---|
| Sent: | Fri 2/4/2022 11:27:59 AM (UTC-05:00) |
| To: | Sankano, Gita F.[Gita.Sankano@Troutman.com] |
| Subject: | RE: W&D 2422 1430 Q - LIA.nrl |
| Attachment: | REDLINE - 1430 Q - LIA v2.pdf |
| Attachment: | FRE_Legal MFRE (Attorney-Analyst) Assignments Contact Info (10-11-2021) (final).docx |

Attached is a redline showing my edits to your draft.   Let me know if you have any questions.   Some of my edits are obviously just wordsmithing, and I updated the solar lease analysis to reflect the effect of our modification to the Waiver & Consent, but there were a few items you should be aware of:

- Several entity names were wrong (periods, commas).  You copied them from the org chart as-is; unfortunately you cannot rely on org charts for correct spellings, you always need to take 5 mins to run those names through the DE website.  Otherwise you'll spend 20 minutes changing the loan docs later on.
- Your answers in the condo restriction analysis seemed to repeat verbatim what the requirement stated, even though the requirement was also already set forth.  So it was like the requirements were stated twice, instead of having the requirement and then an analysis.
- Paralegal assignment info is set forth in the Troutman form LIA and in the legal allocation chart attached

After you've reviewed, please send clean copy to client and to Freddie Legal.

Thanks!


**Matthew R. Bowsher**
**Partner**
troutman **pepper**
Office: 202.274.1939 | Mobile: 301.512.0423
matthew.bowsher@troutman.com

**From:** Sankano, Gita F. <Gita.Sankano@Troutman.com>
**Sent:** Thursday, February 3, 2022 7:26 PM
**To:** Bowsher, Matthew R. <Matthew.Bowsher@troutman.com>
**Subject:** W&D 2422 1430Q - LIA.nrl

Hi Matt,

Please see the LIA attached.  The buy-sell analysis is included in the LIA. In addition, I included the condo restriction analysis and the solar lease analysis in the LIA.

Thanks,
Gita

**Gita F. Sankano**
**Associate**
Direct: 202.220.1251 | Internal: 803-1251
gita.sankano@troutman.com
_____

troutman **pepper**
401 9th Street, NW, Suite 1000
Washington, DC  20004

App.G-Bowsher-Ex.18

Troutman_00002495

| | |
|---|---|
| **From:** | Bowsher, Matthew R. [/O=TROUTMANSANDERS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=99D8D2CBA40440EFA576623B7A8765CF-BOWSHER,] |
| **Sent:** | 4/4/2022 3:30:02 PM |
| **To:** | Sankano, Gita F. [Gita.Sankano@Troutman.com] |
| **Subject:** | RE: Estates at Palm Bay |

Hey, just so you understand the process, the requested doc mods to the loan agreement have <u>not</u> been "approved".  We submitted them with the LIA, and we expect them to be approved because they've been approved for this same sponsor on the past two loans and they're not deal-specific and they don't trigger and pricing adders or underwriting issue, but until we either (i) see a draft loan commitment with these mods attached as Ex E, or (ii) hear directly from Freddie Legal that they have approved the mods, it's incorrect for us to say they've been approved.   I don't think you need to correct your statement to the bor's counsel, because I think the mods will eventually be approved, and even if there's a minor edit/rejection then we can always say Freddie changed their mind upon further review or something like that, but I just need you to understand the process and how this works and how approval is communicated.   With that said, we sent the LIA three weeks ago, you'd be well within your rights to press the Freddie attorney for confirmation as to whether the mods are approved, but if you do, be certain to remind them that the mods have been previously approved for this sponsor, we wouldn't want you to imply that we were expecting Freddie to have any issues with the request, we'd want the email to be clear that we were "just making sure" that we're all set.

**Matthew R. Bowsher**
**Partner**
troutman **pepper**
Office: 202.274.1939 ¦ Mobile: 301.512.0423
matthew.bowsher@troutman.com

**From:** Sankano, Gita F. <Gita.Sankano@Troutman.com>
**Sent:** Monday, April 4, 2022 1:54 PM
**To:** Swope, Tobin <tswope@winstead.com>; Lee, Esther <elee@winstead.com>
**Cc:** Bowsher, Matthew R. <Matthew.Bowsher@troutman.com>
**Subject:** Estates at Palm Bay

Hi Esther,

The modifications to the loan agreement are approved.  We are reviewing the recitals to the Note and Security Instruments. We will send our comments soon. However, I do have a few comments/questions for you.

- Do you have the recording information for Leasehold Mortgage, Fixture Filing, Assignment of Rents, and Security Agreement dated as of March 14, 2019? I don't see it on title; and
- Are the two Notes below with the current lender?
- Promissory Note, dated as of March 14, 2019 - $31,646,914.00; and
- Amended and Restated Promissory Note, dated as of December 17, 2021 - $4,906,856

Thanks!

**Gita F. Sankano**
**Associate**

App.G-Bowsher-Ex.19

Troutman_00009772

Direct: 202.220.1251 | Internal: 803-1251
gita.sankano@troutman.com

**troutman pepper**
401 9th Street, NW, Suite 1000
Washington, DC  20004
troutman.com

Troutman Pepper is a 2021 Mansfield Certified Plus Firm

App.G-Bowsher-Ex.19

Troutman_00009773

| | |
|---|---|
| **From:** | Bowsher, Matthew R.[Matthew.Bowsher@troutman.com] |
| **Sent:** | Mon 5/2/2022 9:54:12 PM (UTC-04:00) |
| **To:** | Sankano, Gita F.[Gita.Sankano@Troutman.com] |
| **Subject:** | RE: JLL 613 Andorra Point  - Assignment of New Property Manager Memo.nrl |

Thanks for taking the time to share your thoughts with me on this, it's helpful.   I can see why you might think we should address it to JLL, but yeah, the whole point of the memo is to get the master servicer comfortable with waiving the default -- it's completely their call, not JLL's – so while it certainly wouldn't have been fatal to address it to JLL, I think the master will appreciate that it's directed specifically at them.   I must admit I was puzzled at why you referred to it as an "Assignment of the Property Manager's Interest", despite every email from Sam and the client and me (and even your own email) all referring to it as a change of the property manager; not sure what section of the loan agreement changed your mind.   I didn't find your writing to be long winded; I did shorten it up in a few spots, but not because it was long winded, rather because the narrative wasn't accurate or on-point.   For example, I'm not sure your interpretation of 9.01(h) of the loan agreement was correct; that provision doesn't say that the lender can waive defaults when no harm is caused, rather it says no extended notice/cure period will be granted if harm may result.   Also, just so you're generally aware, because I know this comes up a lot with servicing PLIMs:   section 3.08 of the PSA addresses "due on sale" provisions, which we use a lot with prohibited transfers of interests but it has nothing to do with a change in the property manager, that's why I corrected your reference from 3.01(c)14 of the SSA (which refers to 3.08 of the PSA) to Section 3.01(c)(26) of the SSA (which refers to Section 3.20 of the PSA).

## Matthew R. Bowsher
**Partner**
troutman pepper
Office: 202.274.1939 | Mobile: 301.512.0423
matthew.bowsher@troutman.com

---

**From:** Sankano, Gita F. <Gita.Sankano@Troutman.com>
**Sent:** Monday, May 2, 2022 8:07 AM
**To:** Bowsher, Matthew R. <Matthew.Bowsher@troutman.com>
**Subject:** RE: JLL 613 Andorra Point - Assignment of New Property Manager Memo.nrl

Thank you, Matt! I'll push this one out!

I thought the memo will be addressed to JLL for their internal purposes? Initially, the title of my memo was the Unauthorized Change in the Property Manager. However, after I read the section in the loan agreement, I decided to go with the "Assignment of the Property Manager of its interest." Also, I feel like I was a bit too long winded here. I tried to be as detailed as possible. Just wanted to let you know my thought process here.

## Gita F. Sankano
**Associate**
troutman pepper
Direct: 202.220.1251 | Internal: 803-1251
gita.sankano@troutman.com

---

**From:** Bowsher, Matthew R. <Matthew.Bowsher@troutman.com>
**Sent:** Monday, May 2, 2022 3:22 AM
**To:** Sankano, Gita F. <Gita.Sankano@Troutman.com>
**Subject:** RE: JLL 613 Andorra Point - Assignment of New Property Manager Memo.nrl

App.G-Bowsher-Ex.20

Troutman_00002628

Redline attached.   Please review and give thought to the changes; if you have no objections, please send to client.

Thanks.


**Matthew R. Bowsher**
**Partner**
troutman **pepper**
Office: 202.274.1939 | Mobile: 301.512.0423
matthew.bowsher@troutman.com

---

**From:** Sankano, Gita F. <Gita.Sankano@Troutman.com>
**Sent:** Saturday, April 30, 2022 11:30 AM
**To:** Bowsher, Matthew R. <Matthew.Bowsher@troutman.com>
**Subject:** JLL 613 Andorra Point - Assignment of New Property Manager Memo.nrl

Hi Matt,

Please see the Assignment of New Property Manager attached. I am also attaching all the material that I relied on to draft this memo. The following are attached:

- As noted above, the memo;
- SSA & PSA; and
- The Loan Agreement from the Original Lien


Thanks,
Gita

**Gita F. Sankano**
**Associate**
Direct: 202.220.1251 | Internal: 803-1251
gita.sankano@troutman.com

---

troutman **pepper**
401 9th Street, NW, Suite 1000
Washington, DC  20004
troutman.com

---

Troutman Pepper is a 2021 Mansfield Certified Plus Firm

App.G-Bowsher-Ex.20

Troutman_00002629

**From:**     Bowsher, Matthew R. [Matthew.Bowsher@troutman.com]
**Sent:**     5/8/2022 11:19:50 PM
**To:**     Sankano, Gita F. [/o=Pepper Hamilton LLP/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=Sankano, Gita F.b71]
**Subject:**     RE: Andorra Point (fka Cathedral East) - Opinion Comments

Thanks, Gita.   Just a couple comments:

1.      Can you take another look at the edits you made to Assumption "(vi)" and compare them to Assumption "(v)", and let me know?  Unless I'm missing something, I think (v) already says what you're trying to make them say in (vi).   Regarding their proposed version of (vi), I don't have a problem with them relying on the cert of foreign registration for an opinion on foreign registration... I view that as being similar to good standing, as opposed to formation.  We allowed it on the senior loan, and I've seen us often allow it.   For reference:

> (v)      With respect to Borrower's good standing, we have relied on a Certificate of Good Standing from the Secretary of State of the State of Delaware.   A copy of that certificate is attached to this opinion letter as Exhibit "A".
>
> (vi)     With respect to Borrower's ~~registration to do business in the Commonwealth of Pennsylvania~~good standing, we have relied on ~~the~~ Certificate of ~~Registration~~Good Standing from the Secretary of ~~the Commonwealth of Pennsylvania~~State of State of Borrower's Organization.   A copy of that certificate is attached to this opinion ~~letter as Exhibit "B".~~

2.      I completely understand why you deleted Pennsylvania from the scope of law, and deleted all the local law opinions – because this is a supp loan --- but given that they are freely offering us these opinions, and given that we typically do receive local opinions (minus enforceability) on most supplemental loans  ... I pulled the past half-dozen that Kelly and Ari have closed and they've all got local opinions...  I would feel very odd asking bor's counsel to delete these opinions, as those opinions are good for the lender and they're no sweat off of Bor's counsel back (they gave identical opinions on the senior loan).    I think it would be perfectly fine, going forward, if you want to explain to a bor's counsel upfront, on a supp loan, before they draft their opinion, that Freddie doesn't require local law opinions on supp loans.  But given that these guys already drafted this opinion with the local opinions in it, and they are licensed in PA so it's not like they're paying an outside law firm extra money to issue this, let's just go ahead and accept it on this loan?

Let me know if you'd like to discuss further.

Matt

**Matthew R. Bowsher**
**Partner**
troutman **pepper**
Office: 202.274.1939 ┆ Mobile: 301.512.0423
matthew.bowsher@troutman.com

**From:** Sankano, Gita F. <Gita.Sankano@Troutman.com>
**Sent:** Sunday, May 8, 2022 8:58 AM
**To:** Bowsher, Matthew R. <Matthew.Bowsher@troutman.com>
**Subject:** Andorra Point (fka Cathedral East) - Opinion Comments

Hi Matt,

App.G-Bowsher-Ex.21

Troutman_00009475

Please see my comments to the opinion. Please let me know your thoughts and I'll push these comments out to borrower's counsel.

Thanks,
Gita

**Gita F. Sankano**
**Associate**
Direct: 202.220.1251 ⦙ Internal: 803-1251
gita.sankano@troutman.com

troutman **pepper**
401 9th Street, NW, Suite 1000
Washington, DC  20004
troutman.com

Troutman Pepper is a 2021 Mansfield Certified Plus Firm

App.G-Bowsher-Ex.21

| | |
|---|---|
| **From**: | Bowsher, Matthew R. [Matthew.Bowsher@troutman.com] |
| **Sent**: | 6/7/2022 8:43:13 AM |
| **To**: | Sankano, Gita F. [/o=Pepper Hamilton LLP/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=Sankano, Gita F.b71] |
| **Subject**: | Re: Estates at Palm Bay - Closing Coordination (Order No. 10282789; File No. 4711021845/402200193SJ) |
| **Attachments**: | image001.png; image002.png; image003.jpg; RL Commitment.pdf; [TP Comments] Estates at Palm Bay - Draft Commitment(3825718.5) v6.docx |

Please re-read the thread carefully, including all emails from Sherri last night.   I think you may be mistaken.  All of our comments were already communicated by Sherri in the set of comments she sent to Freddie last night.  She explained this, and i acknowledged this.  To say it differently:  i realize the draft freddie commitment did not reflect many of our comments, but Sherri didn't ask us to identify all of the misses, she asked us whether there was any misses not already captured in the comments she sent to Freddie.

Matthew R. Bowsher
**TROUTMAN PEPPER**
office: 202-274-1939
cell: 301-512-0423


On Jun 7, 2022, at 6:49 AM, Sankano, Gita F. <Gita.Sankano@troutman.com> wrote:


Good Morning,

We just noticed that some of our comments were not addressed. In addition to Matt's comment below, please see our additional comments attached.

Thanks!

## Gita F. Sankano
**Associate**
troutman **pepper**
Direct: 202.220.1251 | Internal: 803-1251
gita.sankano@troutman.com


**From:** Bowsher, Matthew R. <Matthew.Bowsher@troutman.com>
**Sent:** Tuesday, June 7, 2022 12:33 AM
**To:** Jardine, Sherri <Sherri.Jardine@am.jll.com>
**Cc:** Beidleman, Bo <Bo.Beidleman@am.jll.com>; Huggins, Foster <Foster.Huggins@am.jll.com>; Smithey, Janet <Janet.Smithey@am.jll.com>; Cosby, Michael <Michael.Cosby@am.jll.com>; Sankano, Gita F. <Gita.Sankano@Troutman.com>
**Subject:** RE: Estates at Palm Bay - Closing Coordination (Order No. 10282789; File No. 4711021845/402200193SJ)

All of our comments on the latest revised draft commitment are captured in the set of cumulative comments you sent to Freddie earlier this evening, except for the comment below regarding the request to move the two USAF docs from rate-lock conditions to closing conditions.   No further comments from Troutman.

App.G-Bowsher-Ex.22

Troutman_00002731

**Matthew R. Bowsher**
Partner
troutman pepper
Office: 202.274.1939 ⋮ Mobile: 301.512.0423
matthew.bowsher@troutman.com

**From:** Bowsher, Matthew R.
**Sent:** Tuesday, June 7, 2022 12:12 AM
**To:** Jardine, Sherri <Sherri.Jardine@am.jll.com>
**Cc:** Beidleman, Bo <Bo.Beidleman@am.jll.com>; Huggins, Foster <Foster.Huggins@am.jll.com>; Smithey, Janet <Janet.Smithey@am.jll.com>; Cosby, Michael <Michael.Cosby@am.jll.com>; Sankano, Gita F. <Gita.Sankano@troutman.com>
**Subject:** RE: Estates at Palm Bay - Closing Coordination (Order No. 10282789; File No. 4711021845/402200193SJ)

We are reviewing the revised draft commitment right now.  You'll have our comments in 30 minutes.


**Matthew R. Bowsher**
Partner
troutman pepper
Office: 202.274.1939 ⋮ Mobile: 301.512.0423
matthew.bowsher@troutman.com

**From:** Jardine, Sherri <Sherri.Jardine@am.jll.com>
**Sent:** Tuesday, June 7, 2022 12:05 AM
**To:** Bowsher, Matthew R. <Matthew.Bowsher@troutman.com>
**Cc:** Beidleman, Bo <Bo.Beidleman@am.jll.com>; Huggins, Foster <Foster.Huggins@am.jll.com>; Smithey, Janet <Janet.Smithey@am.jll.com>; Cosby, Michael <Michael.Cosby@am.jll.com>; Sankano, Gita F. <Gita.Sankano@troutman.com>
**Subject:** Re: Estates at Palm Bay - Closing Coordination (Order No. 10282789; File No. 4711021845/402200193SJ)

EXTERNAL SENDER

Good point Matt!!! I will add to the commitment.  Any other comments?
From Sherri


**Sherri Jardine**
JLL Real Estate Capital, LLC
2401 Cedar Springs
Suite 100
Dallas, TX 75201-1407
T +1 214 692 4707
M+1 214 906 6863
Sherri.Jardine@am.jll.com


On Jun 6, 2022, at 11:01 PM, Bowsher, Matthew R. <Matthew.Bowsher@troutman.com> wrote:

Caution: Message from external sender

App.G-Bowsher-Ex.22

Team -- The USAF-signed docs you sent us are indeed on the correct forms. As Bo and Sherri both noted below, the only catch is that we still need fully-signed versions, not just USAF's signatures. HOWEVER... now that I think of it... I can <u>totally</u> see Freddie agreeing to waive the rate-lock condition now that we do have USAF's signatures, as that was always the real hang-up for Freddie, they didn't want to proceed until they knew for certain that USAF was fully on board, it's not like there was ever any doubt that the borrower will countersign these same docs, for heaven's sake. <u>Can you ask Freddie to switch this from a rate-lock condition to a closing condition, now that we have USAF's sigs on these docs</u>?

**Matthew R. Bowsher**
**Partner**
troutman **pepper**
Office: 202.274.1939 ¦ Mobile: 301.512.0423
<u>matthew.bowsher@troutman.com</u>

**From:** Jardine, Sherri <<u>Sherri.Jardine@am.jll.com</u>>
**Sent:** Monday, June 6, 2022 6:11 PM
**To:** Beidleman, Bo <<u>Bo.Beidleman@am.jll.com</u>>; Bowsher, Matthew R. <<u>Matthew.Bowsher@troutman.com</u>>; Huggins, Foster <<u>Foster.Huggins@am.jll.com</u>>; Smithey, Janet <<u>Janet.Smithey@am.jll.com</u>>
**Cc:** Cosby, Michael <<u>Michael.Cosby@am.jll.com</u>>; Sankano, Gita F. <<u>Gita.Sankano@troutman.com</u>>
**Subject:** RE: Estates at Palm Bay - Closing Coordination (Order No. 10282789; File No. 4711021845/402200193SJ)

**EXTERNAL SENDER**

I will defer to Troutman to confirm the Amendment and form of GL Estoppel is in the correct form. I did note that we need the LURIN signed Amendment to GL.

**Sherri Jardine**
JLL Real Estate Capital, LLC
2401 Cedar Springs
Suite 100
Dallas, TX 75201-1407
T +1 214 692 4707
M+1 214 906 6863
<u>Sherri.Jardine@am.jll.com</u>

**From:** Beidleman, Bo <<u>Bo.Beidleman@am.jll.com</u>>
**Sent:** Monday, June 6, 2022 5:05 PM
**To:** Jardine, Sherri <<u>Sherri.Jardine@am.jll.com</u>>; Bowsher, Matthew R. <<u>Matthew.Bowsher@troutman.com</u>>; Huggins, Foster <<u>Foster.Huggins@am.jll.com</u>>; Smithey, Janet <<u>Janet.Smithey@am.jll.com</u>>
**Cc:** Cosby, Michael <<u>Michael.Cosby@am.jll.com</u>>; Sankano, Gita F. <<u>Gita.Sankano@troutman.com</u>>
**Subject:** RE: [EXTERNAL] RE: Estates at Palm Bay - Closing Coordination (Order No. 10282789; File No. 4711021845/402200193SJ)

All - See attached for what we just received on the signature front. We are reviewing concurrently but please let us know any follow up questions / requests. Looks like we need countersigned version from LURIN but wanted to provide what we could immediately upon receipt.

Thank you,

**Bo Beidleman**
JLL Capital Markets

App.G-Bowsher-Ex.22

2401 Cedar Springs
Suite 100
Dallas, TX 75201-1407
T +1 214 692 4718
M +1 972 757 9937
Bo.Beidleman@am.jll.com

---

**From:** Jardine, Sherri <Sherri.Jardine@am.jll.com>
**Sent:** Monday, June 6, 2022 3:17 PM
**To:** Beidleman, Bo <Bo.Beidleman@am.jll.com>; Bowsher, Matthew R. <Matthew.Bowsher@troutman.com>; Huggins, Foster <Foster.Huggins@am.jll.com>; Smithey, Janet <Janet.Smithey@am.jll.com>
**Cc:** Cosby, Michael <Michael.Cosby@am.jll.com>; Sankano, Gita F. <Gita.Sankano@troutman.com>
**Subject:** RE: [EXTERNAL] RE: Estates at Palm Bay - Closing Coordination (Order No. 10282789; File No. 4711021845/402200193SJ)

Please note that the Estoppel and Ground Lease Amendment are required items for rate lock, so please send over ASAP.  THanks!


**Sherri Jardine**
JLL Real Estate Capital, LLC
2401 Cedar Springs
Suite 100
Dallas, TX 75201-1407
T +1 214 692 4707
M+1 214 906 6863
Sherri.Jardine@am.jll.com

---

**From:** Beidleman, Bo <Bo.Beidleman@am.jll.com>
**Sent:** Monday, June 6, 2022 3:14 PM
**To:** Bowsher, Matthew R. <Matthew.Bowsher@troutman.com>; Huggins, Foster <Foster.Huggins@am.jll.com>; Jardine, Sherri <Sherri.Jardine@am.jll.com>; Smithey, Janet <Janet.Smithey@am.jll.com>
**Cc:** Cosby, Michael <Michael.Cosby@am.jll.com>; Sankano, Gita F. <Gita.Sankano@troutman.com>
**Subject:** RE: [EXTERNAL] RE: Estates at Palm Bay - Closing Coordination (Order No. 10282789; File No. 4711021845/402200193SJ)

Thank you, Matt. As you mention, I am sure all of this is in process, but we will follow up to make note of these items specifically.

Best regards,


**Bo Beidleman**
JLL Capital Markets
2401 Cedar Springs
Suite 100
Dallas, TX 75201-1407
T +1 214 692 4718
M +1 972 757 9937
Bo.Beidleman@am.jll.com

**From:** Bowsher, Matthew R. <Matthew.Bowsher@troutman.com>
**Sent:** Monday, June 6, 2022 3:03 PM
**To:** Huggins, Foster <Foster.Huggins@am.jll.com>; Jardine, Sherri <Sherri.Jardine@am.jll.com>; Smithey, Janet <Janet.Smithey@am.jll.com>
**Cc:** Cosby, Michael <Michael.Cosby@am.jll.com>; Beidleman, Bo <Bo.Beidleman@am.jll.com>; Sankano, Gita F. <Gita.Sankano@troutman.com>
**Subject:** [EXTERNAL] RE: Estates at Palm Bay - Closing Coordination (Order No. 10282789; File No. 4711021845/402200193SJ)

 **Caution: Message from external sender**

Thanks, Foster!   Just so you understand, this is not the Amendment.   This is a half-signed Memorandum of the amendment.   Sponsor needs to add their signature to this and send it to the escrow agent for recordation at closing, but moreover we still need copies of the Amendment and the Estoppel, signed by USAF.    I'm sure they were all signed together, I'm sure it's not an issue, great to hear the sponsor say they've got all signatures in hand, but just didn't want you to think we've received the Amendment yet, as we have not.   If it's true that everything has been signed, then please press them for fully signed copies of:

- <!--[if !supportLists]--><![endif]-->Amendment
- <!--[if !supportLists]--><![endif]-->Estoppel
- <!--[if !supportLists]--><![endif]-->Memorandum of Amendment

Thanks again.

Matt


**Matthew R. Bowsher**
**Partner**
troutman **pepper**
Office: 202.274.1939 | Mobile: 301.512.0423
matthew.bowsher@troutman.com

**From:** Huggins, Foster <Foster.Huggins@am.jll.com>
**Sent:** Monday, June 6, 2022 3:54 PM
**To:** Bowsher, Matthew R. <Matthew.Bowsher@troutman.com>; Jardine, Sherri <Sherri.Jardine@am.jll.com>; Smithey, Janet <Janet.Smithey@am.jll.com>
**Cc:** Cosby, Michael <Michael.Cosby@am.jll.com>; Beidleman, Bo <Bo.Beidleman@am.jll.com>
**Subject:** FW: Estates at Palm Bay - Closing Coordination (Order No. 10282789; File No. 4711021845/402200193SJ)

**EXTERNAL SENDER**

Matt and Sherri,

Not sure if this has been sent to you all yet, but please see attached for the 1st Amendment to the ground lease. The Sponsor noted that all signatures are in hand and Freddie is working on the final commitment which should be coming in this afternoon. Just want to make sure you all are kept in the loop.

Best,


**Foster Huggins**
Analyst

App.G-Bowsher-Ex.22

Troutman_00002735

JLL Capital Markets
2401 Cedar Springs
Suite 100
Dallas, TX 75201-1407
T +1 469 232 1978
M +1 214 808 4393
Foster.Huggins@am.jll.com


us.jll.com/capitalmarkets

Jones Lang LaSalle Americas, Inc.
a licensed real estate brokerage company.

---

**From:** Royce McGarry <rmcgarry@lurin.com>
**Sent:** Monday, June 6, 2022 1:54 PM
**To:** Cosby, Michael <Michael.Cosby@am.jll.com>; Beidleman, Bo <Bo.Beidleman@am.jll.com>; Huggins, Foster <Foster.Huggins@am.jll.com>
**Subject:** [EXTERNAL] FW: Estates at Palm Bay - Closing Coordination (Order No. 10282789; File No. 4711021845/402200193SJ)

**Caution: Message from external sender**

FYI

**Royce McGarry**
Transaction & Asset Manager

**LURIN**

o: (214) 623-5621 | m: (214) 808-9351
rmcgarry@lurin.com | www.lurin.com
2850 N. Harwood St. Suite 1700, Dallas, TX 75201

Confidentiality Notice: This email and any attachments are confidential and may be privileged and are intended only for the authorized recipients of the sender. The information contained in this email and any attachment(s) must not be published, copied, disclosed or transmitted in any form to any person or entity unless authorized by the sender. If you have received this email in error, please advise the sender by return email and delete this email and all attachments immediately.

-----Original Message-----
From: LARES, DEAN M NH-03 USAF HAF SAF/GCN-SA <dean.lares.1@us.af.mil>
Sent: Monday, June 6, 2022 12:40 PM
To: Anne.Wirtanen@ctt.com
Cc: Holden.Heil@ctt.com; elee@winstead.com; tswope@winstead.com; BAUMER, BRIAN J NH-04 USAF AFMC

App.G-Bowsher-Ex.22

Troutman_00002736

AFCEC/SAF/GCN <brian.baumer@us.af.mil>; LARES, DEAN M NH-03 USAF HAF SAF/GCN-SA <dean.lares.1@us.af.mil>; HALL, STANLEY E GS-13 USAF AFMC AFCEC/CITE <stanley.hall.1@us.af.mil>; Jon P Venetos <jvenetos@lurin.com>; Royce McGarry <rmcgarry@lurin.com>; Naomi Souza <nsouza@lurin.com>; David Dix <ddix@lurin.com>; Walker Franz <wfranz@lurin.com>
Subject: FW: Estates at Palm Bay - Closing Coordination (Order No. 10282789; File No. 4711021845/402200193SJ)


Hello Anne,


Attached is a scan copy of the original document that I sent to you via Fed Ex (Tracking: 8113 0503 9374). Package should arrive tomorrow afternoon. Please contact me should you have any concerns regarding this matter. Thank you.


V/r

//SIGNED//
DEAN M. LARES, NH-03, DAF
Paralegal Specialist

Secretary of the Air Force, Office of the General Counsel (SAF/GCN-SA)
Installations, Energy & Environment Division
Phone:  (210) 395-9416/DSN:  969-9416
Fax:  (210) 395-9411/DSN:  969-9411


One of the 2022 World's Most Ethical Companies®

Jones Lang LaSalle

For more information about how JLL processes your personal data, please click here

This email is for the use of the intended recipient(s) only. If you have received this email in error, please notify the sender immediately and then delete it. If you are not the intended recipient, you must not keep, use, disclose, copy or distribute this email without the author's prior permission. We have taken precautions to minimize the risk of transmitting software viruses, but we advise you to carry out your own virus checks on any attachment to this message. We cannot accept liability for any loss or damage caused by software viruses. The information contained in this communication may be confidential and may be subject to the attorney-client privilege. If you are the intended recipient and you do not wish to receive similar electronic messages from us in the future then please respond to the sender to this effect.

This e-mail (and any attachments) from a law firm may contain legally privileged and confidential information solely for the intended recipient. If you received this message in error, please notify the sender and delete it. Any unauthorized reading, distribution, copying, or other use of this e-mail (and attachments) is strictly prohibited. We have taken precautions to minimize the risk of transmitting computer viruses, but you should scan attachments for viruses and other malicious threats; we are not liable for any loss or damage caused by viruses.

| | |
|---|---|
| **From:** | Bowsher, Matthew R. [/O=TROUTMANSANDERS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=99D8D2CBA40440EFA576623B7A8765CF-BOWSHER,] |
| **Sent:** | 11/28/2022 10:58:04 AM |
| **To:** | Sankano, Gita F. [/o=TroutmanSanders/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=Gita.Sankano] |
| **Subject:** | RE: Northaven Park Apartments -Legal Due Diligence Checklist |

It is 100% perfectly okay for them to address the opinion letter to Freddie and to the lender.   Just like Fannie allows it.  The extra address does not hurt us, it is not something which is prohibited.   Moreover, my question was why you'd instruct them to delete ALL addresses.  Keep in mind, this is an opinion letter, and all letters are addressed to somebody; it would be very strange not to have it addressed to anybody.  And the form requires it.

Please instruct them that it's perfectly okay to have both addresses included in the opinion letter.


**Matthew R. Bowsher**
**Partner**
troutman **pepper**
Office: 202.274.1939 ⋮ Mobile: 301.512.0423
matthew.bowsher@troutman.com

**From:** Sankano, Gita F. <Gita.Sankano@troutman.com>
**Sent:** Monday, November 28, 2022 10:29 AM
**To:** Bowsher, Matthew R. <Matthew.Bowsher@troutman.com>
**Cc:** Sankano, Gita F. <Gita.Sankano@troutman.com>
**Subject:** RE: Northaven Park Apartments -Legal Due Diligence Checklist

The borrower included a section for Freddie address. I never seen the Freddie address in the opinion letter. I forgot that the opinion template has a section for *only* the lender's address. However, for Fannie, we include Fannie and the lender's address. I guess I'll tell him to just keep the lender's address?


Freddie Mac

Berkeley Point Capital LLC d/b/a Newmark
8 Springhouse Innovation Park, Suite 200
Lower Gwynedd, Pennsylvania 19002


**Gita F. Sankano**
**Associate**
troutman **pepper**
Direct: 202.220.1251 ⋮ Internal: 803-1251
gita.sankano@troutman.com
Pronouns: she, her, hers

App.G-Bowsher-Ex.23

Troutman_00009809

**From:** Bowsher, Matthew R. <Matthew.Bowsher@troutman.com>
**Sent:** Monday, November 28, 2022 10:18 AM
**To:** Sankano, Gita F. <Gita.Sankano@troutman.com>
**Subject:** RE: Northaven Park Apartments -Legal Due Diligence Checklist

Are you sure about this?  Are we _actively_ telling folks to delete the address?   See screenshot below; in the standard form Freddie opinion letter, it has addresses required.   How is the inclusion of an address _bad_ for us?

<div align="center">

**Opinion Letter**
**Borrower and SPE Equity Owner**
(Revised 10-4-2022)

**[LETTERHEAD OF COUNSEL]**

**[OPINION MUST BE DATED AS OF THE DATE OF THE LOAN DOCUMENTS]**

**[INSERT NAME AND ADDRESS OF LENDER]**

</div>

Re:     Mortgage loan to be made by _____ ("**Lender**") to _____ ("**Borrower**")

Ladies and Gentlemen:

We have acted as counsel to Borrower, a [corporation] [limited liability company] [limited partnership] [general partnership] [trust] organized in the State or Commonwealth of **[STATE]** ("**State of Borrower's Organization**") **[IF AN SPE EQUITY OWNERS IS APPLICABLE:** and _____ ("**SPE Equity Owner**"), a [corporation][limited liability company] organized in the State or Commonwealth of **[STATE]** ("**State of SPE Equity Owner's Organization**")] **[IF BORROWER IS A GENERAL PARTNERSHIP:** and _____, a [corporation][limited liability company][limited partnership] organized in the State or Commonwealth of **[STATE]** and _____, a [corporation][limited liability company][limited partnership] organized in the State or Commonwealth of **[STATE]** (each a "**General Partner**" and collectively, the "**General Partners**")] in connection with a mortgage loan in the original principal amount of $_____ ("**Loan**") to be made by Lender. The Loan will be secured by a [Multifamily Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing] [Multifamily Deed of Trust, Assignment of Rents and Security Agreement] [Multifamily Mortgage, Assignment of Rents and Security Agreement] [Multifamily Deed to Secure Debt, Assignment of Rents and Security Agreement] ("**Security Instrument**") encumbering real property owned by Borrower located at _____ **[INSERT CITY/STATE]** ("**Property**").

<div align="center">

**BACKGROUND**

</div>

**Matthew R. Bowsher**
**Partner**

troutman **pepper**
Office: 202.274.1939 | Mobile: 301.512.0423
matthew.bowsher@troutman.com

---

**From:** Sankano, Gita F. <Gita.Sankano@troutman.com>
**Sent:** Monday, November 28, 2022 9:35 AM
**To:** Scott MacPherson <smacpherson@patellegal.com>; Shameer A. Soni <ssoni@patellegal.com>; Kayla Eggerton <keggerton@patellegal.com>; Erica Payne <epayne@patellegal.com>
**Cc:** Bowsher, Matthew R. <Matthew.Bowsher@troutman.com>; Sankano, Gita F. <Gita.Sankano@troutman.com>
**Subject:** RE: Northaven Park Apartments -Legal Due Diligence Checklist

Thank you, Scott.

Also, no need to include the Lender and Freddie's address in the opinion.

App.G-Bowsher-Ex.23

**Gita F. Sankano**
Associate
troutman **pepper**
Direct: 202.220.1251 | Internal: 803-1251
gita.sankano@troutman.com
Pronouns: she, her, hers

---

**From:** Scott MacPherson <smacpherson@patellegal.com>
**Sent:** Tuesday, November 22, 2022 12:04 PM
**To:** Sankano, Gita F. <Gita.Sankano@troutman.com>; Shameer A. Soni <ssoni@patellegal.com>; Kayla Eggerton <keggerton@patellegal.com>; Erica Payne <epayne@patellegal.com>
**Cc:** Bowsher, Matthew R. <Matthew.Bowsher@troutman.com>
**Subject:** RE: Northaven Park Apartments -Legal Due Diligence Checklist

**EXTERNAL SENDER**

Hi Gita,

Please find the updated letter attached, along with the redline to the last version I sent.



|  |  |
|---|---|
| **Scott "Mac" MacPherson** | Office: (972) 650-6848   Direct: (972) 435-4339 |
| *Attorney* | SMacPherson@patellegal.com |
| **Patel Law Group** | www.patellegal.com |
|  | 1125 Executive Circle, Suite 200 |
|  | Irving, Texas 75038 |

---

**From:** Sankano, Gita F. <Gita.Sankano@troutman.com>
**Sent:** Tuesday, November 22, 2022 10:40 AM

App.G-Bowsher-Ex.23

Troutman_00009811

**To:** Scott MacPherson <smacpherson@patellegal.com>; Shameer A. Soni <ssoni@patellegal.com>; Kayla Eggerton <keggerton@patellegal.com>; Erica Payne <epayne@patellegal.com>
**Cc:** Bowsher, Matthew R. <Matthew.Bowsher@troutman.com>; Sankano, Gita F. <Gita.Sankano@troutman.com>
**Subject:** RE: Northaven Park Apartments -Legal Due Diligence Checklist

Please see our comments to the borrower opinion attached.

Thanks,
Gita

## Gita F. Sankano
**Associate**
**troutman pepper**
Direct: 202.220.1251 ¦ Internal: 803-1251
gita.sankano@troutman.com
Pronouns: she, her, hers

---

**From:** Scott MacPherson <smacpherson@patellegal.com>
**Sent:** Tuesday, November 22, 2022 10:07 AM
**To:** Sankano, Gita F. <Gita.Sankano@troutman.com>; Shameer A. Soni <ssoni@patellegal.com>; Kayla Eggerton <keggerton@patellegal.com>; Erica Payne <epayne@patellegal.com>
**Cc:** Bowsher, Matthew R. <Matthew.Bowsher@troutman.com>
**Subject:** RE: Northaven Park Apartments -Legal Due Diligence Checklist

**EXTERNAL SENDER**

Good Morning,

Please find the draft opinions attached. More items to follow later today.



| | |
|---|---|
| **Scott "Mac" MacPherson** | 📱 Office: (972) 650-6848   Direct: (972) 435-4339 |
| *Attorney* | ✉ SMacPherson@patellegal.com |
| **Patel Law Group** | 🖎 www.patellegal.com |
| | ⊞ 1125 Executive Circle, Suite 200 Irving, Texas 75038 |

App.G-Bowsher-Ex.23

Troutman_00009812

●

●

**From:** Sankano, Gita F. <Gita.Sankano@troutman.com>
**Sent:** Wednesday, November 16, 2022 1:41 PM
**To:** Shameer A. Soni <ssoni@patellegal.com>; Scott MacPherson <smacpherson@patellegal.com>; Kayla Eggerton <keggerton@patellegal.com>; Erica Payne <epayne@patellegal.com>
**Cc:** Bowsher, Matthew R. <Matthew.Bowsher@troutman.com>; Sankano, Gita F. <Gita.Sankano@troutman.com>
**Subject:** Northaven Park Apartments -Legal Due Diligence Checklist

**Please provide the Loan Document Information ASAP. We would like to circulate draft loan documents.**

The Target closing date for this deal is **12/12/2022**

To help keep us on the same page, below is a legal due diligence checklist.  Please review and provide any items/information as soon as available (keeping in mind the timeframes noted below for certain items).

**Loan Document Information (need from Borrower)**
- Property Manager's signature block – **NEED**
- Property Manager's Address – **NEED**
- Were the Certificates of Occupancy issued within 3 years of the loan closing?

**Legal Due Diligence Checklist**
- Title Commitment/Exceptions Documents – **Under Review**
- Survey – **NEED**
- Contact Information/Recorder's Office:
● Survey Contact – **NEED (if applicable)**
- Copy of any agreement being recorded at closing (including the draft deed if an acquisition) – **NEED (or confirm none)**
● Please note: If the deed (or any other document recorded or to be recorded on title) will contain a prohibition against or any indemnification in connection with the conversion of the Property to a condominium or cooperative structure, it will need to be approved by Lender prior to rate lock]
- UCC/Tax Lien/Judgment Lien/Litigation/Bankruptcy Searches (Borrower's counsel to order. Dated within 30 days of closing) – **NEED**
- Draft Opinion Letter(s) (in the forms provided)
● Borrower – **NEED**
● Guarantor – **NEED**
- JV Agreement – **NEED**
- Property Management Agreement – **NEED**
- Asset Management Agreement (or any other agreement with affiliated fees) [*AMA fees must be subordinate to the Loan*] – **NEED (or confirm none)**
- Confirmation that you have reviewed/approved the draft loan documents – any document modifications need to be reviewed and approved by Freddie Mac and no changes are permitted after rate lock – **NEED [Sent 11/10]**
- Organizational Chart – **Comments Sent**
- Signature Pages **[to be circulated]**
● Borrower – **NEED**

App.G-Bowsher-Ex.23

Troutman_00009813

- Guarantor – **NEED**
- Property Manager – **NEED**


**Organizational Documents (Borrower/Guarantor and their sub-entities): [to be updated upon receipt of final org chart]**

1. **Northaven Park Apartment LLC**
a. Operating Agreement – **Comments Sent (11/4)**
   1.         Required SPE Provisions – **NEED (in the form provided)**
b. Certificate of Good Standing (Dated within 30 days of closing) – **NEED**
c. Consent – **NEED**

2. **Northaven Park MGR LLC**
a. Operating Agreement – **Comments Sent (11/4)**
b. Certificate of Good Standing (Dated within 30 days of closing) – **NEED**

**Search Requirements**
UCC/tax lien/judgment lien/litigation and bankruptcy search requirements:
- Name: Borrower's name and, if the Property is being acquired, the name of the current owner of the Property
- Location:
- The State in which the Borrower entity and Seller entity was formed
- The local jurisdiction in which the Property is located
- The State and local jurisdiction for any Individual
- Date: must be dated no earlier than 30 days prior to the Origination Date.
- Newly formed entities: Searches not required for newly formed entities, which are entities formed within 90 days of closing

Closing Coordination
- Executed Escrow Letter from Title – **NEED (after receipt of original recording package)**
- Fully Executed Settlement Statement – **NEED**
- Confirmation Recorder's Office is open and operational - **NEED**


**Gita F. Sankano**
**Associate**
Direct: 202.220.1251 ¦ Internal: 803-1251
gita.sankano@troutman.com
Pronouns: she, her, hers
_____

troutman **pepper**
401 9th Street, NW, Suite 1000
Washington, DC 20004
troutman.com

Troutman Pepper is a Mansfield Certified Plus Firm


This e-mail (and any attachments) from a law firm may contain legally privileged and confidential information solely for the intended recipient. If you received this message in error, please notify the sender and delete it. Any unauthorized reading, distribution, copying, or other use of this e-mail (and attachments) is strictly prohibited. We have taken precautions to minimize the risk of transmitting computer viruses, but you should scan attachments for viruses and other malicious threats; we are not liable for any loss or damage caused by viruses.

| | |
|---|---|
| **From:** | Bowsher, Matthew R. [/O=TROUTMANSANDERS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=99D8D2CBA40440EFA576623B7A8765CF-BOWSHER,] |
| **Sent:** | 12/1/2022 5:45:50 PM |
| **To:** | Crawford, Lindsey [/o=TroutmanSanders/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=6f5bf84aaa4149a59b8d2d4cac0bff7c-Crawford]; Sidarth, S.R. [/o=TroutmanSanders/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=sidartsr] |
| **Subject:** | Gita |
| **Attachments:** | RE: [External] RE: Northaven Park- Contracts |

In one day, on the same deal:

- Per below, she gets a search result back showing that a case was settled 7 years ago… yet she asks borrower's counsel for written confirmation of the status of this case?  When the borrower explains that it was settled 7 years ago as reflected on the search result, Gita doubles-down and says she needs confirmation from bor's counsel in writing?  (!?)

- Per attached, even though this deal is an acquisition with a newly-formed borrower, she asks bor's counsel for searches on the borrower.   Bor's counsel reminds Gita this is a newly-formed borrower, and that Gita's own checklist specifically says we don't need searches on entities formed less than 90 days from closing.  In response, Gita says we still need it anyway?   (It's not a recycled entity, will not own the real estate or anything else prior to loan origination.).   (!?)

She's been closing deals with us for two years now.   Probably over 200 loans closed, at a minimum.   And she still doesn't even know the basics.  More troubling, her judgement is just so far off the mark.

On both of these matters, as with dozens before this, I always take the time to explain stuff to her, and what troubles me isn't that she's making mistakes, it's her responses to those mistakes.  For example, regarding the searches in item #1 above, HER OWN CHECKLIST says we don't require it, and when I point this out to her (after the bor's counsel pointed to it as well), she simply said 'I'm so used to getting borrower searches in the normal course'… which is completely wrong because half the loans she does are acquisitions which have new borrowers which don't require searches… not like this is some rare scenario, and even if it was rare, the checklist itself says we don't need it, so why did she respond to bor's counsel with "we still require it anyway", why wouldn't she check with me or another associate to understand why our form checklist specifically excludes newly-formed entities?

She's a 2019 grad.  In a few weeks, she'll be considered a 4th Year associate.

You could excuse some of her mistakes if she was 'just going too fast'… but she's not moving fast at all, according to her timesheets.   She typically bills 40+ hours to close a simple vanilla Freddie loan.  At nearly $400/hr, that's $16,000 just for her time, without adding the paralegals or the partner.   I'm routinely writing-off $5k-$10k on every deal she touches.   Other 3rd-Years are closing deals in half that time.  Even when she's not the main associate on the deal, when she's just helping in a supportive/junior role, she's still billing 30 hours.

This isn't working out very well.

I welcome your thoughts.

Matt


**Matthew R. Bowsher**
**Partner**
~~troutman~~ pepper

Office: 202.274.1939 ┊ Mobile: 301.512.0423
matthew.bowsher@troutman.com

---

**From:** Sankano, Gita F. <Gita.Sankano@troutman.com>
**Sent:** Thursday, December 1, 2022 3:07 PM
**To:** Bowsher, Matthew R. <Matthew.Bowsher@troutman.com>
**Subject:** Fwd: RE: [External] RE: Northaven Park- Contracts

Although the report states that the case is settle, I typically still ask for the current status of a litigation that shows up in the report. Just to make sure we have it in writing for our records.

# Gita F. Sankano
**Associate**
**troutman pepper**
Direct: 202.220.1251 ┊ Internal: 803-1251
gita.sankano@troutman.com
Pronouns: she, her, hers

---------- Forwarded message ----------
**From:** Sankano, Gita F. <Gita.Sankano@troutman.com>
**Date:** December 1, 2022 at 3:04:20 PM EST
**Subject:** RE: [External] RE: Northaven Park- Contracts
**To:** Shameer A. Soni <ssoni@patellegal.com>,Kayla Eggerton <keggerton@patellegal.com>,Bowsher, Matthew R. <Matthew.Bowsher@troutman.com>,Glasgow, Hank <Hank.Glasgow@nmrk.com>,Scott MacPherson <smacpherson@patellegal.com>,Lizzie Beil <mbeil@patellegal.com>,Erica Payne <epayne@patellegal.com>
**Cc:** aprealty17@gmail.com,dfwrealty2017@gmail.com,Fein, Jeffrey <Jeffrey.Fein@nmrk.com>,Magana, Brandi <Brandi.Magana@nmrk.com>,Kevin Vance <kvance@patellegal.com>,Mehta, Neil <Neil.Mehta@nmrk.com>,akashjain@yahoo.com,Chris Barsness <cbarsness@patellegal.com>,Gibke, Blaine <Blaine.Gibke@nmrk.com>,Pedersen, Hans <Hans.Pedersen@nmrk.com>

Since the litigation popped up in the search report, we just needed confirmation from borrower counsel, in writing.

# Gita F. Sankano
**Associate**
**troutman pepper**
Direct: 202.220.1251 ┊ Internal: 803-1251
gita.sankano@troutman.com
Pronouns: she, her, hers

App.G-Bowsher-Ex.24

Troutman_00009700

On December 1, 2022 at 3:00:51 PM EST, Shameer A. Soni <ssoni@patellegal.com> wrote:

**EXTERNAL SENDER**

Gita – Per the case information, the Guzman litigation was filed in 2013 and the current status is closed. There was a settlement and agreed judgment entered on November 25, 2015 (see page 32 of the PDF). Given that this was settled over 7 years ago, do you still need status?

Best,

Shameer Soni

**Shameer A. Soni**
*Managing Partner*

**The Patel Law Group, PLLC**
1125 Executive Circle, Suite 200 | Irving, Texas 75038
Direct: (972) 428-5451 | Main: (972) 650-6848 | Fax: (972) 650-6167
ssoni@patellegal.com | www.patellegal.com

**From:** Sankano, Gita F. <Gita.Sankano@troutman.com>
**Sent:** Thursday, December 1, 2022 1:03 PM
**To:** Kayla Eggerton <keggerton@patellegal.com>; Shameer A. Soni <ssoni@patellegal.com>; Bowsher, Matthew R. <Matthew.Bowsher@troutman.com>; 'Glasgow, Hank' <Hank.Glasgow@nmrk.com>; Scott MacPherson <smacpherson@patellegal.com>; Lizzie Beil <mbeil@patellegal.com>; Erica Payne <epayne@patellegal.com>
**Cc:** aprealty17@gmail.com; dfwrealty2017@gmail.com; Fein, Jeffrey <Jeffrey.Fein@nmrk.com>; Magana, Brandi <Brandi.Magana@nmrk.com>; Kevin Vance <kvance@patellegal.com>; Mehta, Neil <Neil.Mehta@nmrk.com>; akashjain@yahoo.com; Chris Barsness <cbarsness@patellegal.com>; Gibke, Blaine <Blaine.Gibke@nmrk.com>; Pedersen, Hans <Hans.Pedersen@nmrk.com>
**Subject:** RE: [External] RE: Northaven Park- Contracts

We won't need searches on the borrower.

Sorry about that. When available, please provide the status of the pending litigation.

**Gita F. Sankano**
**Associate**
troutman **pepper**
Direct: 202.220.1251 | Internal: 803-1251
gita.sankano@troutman.com
Pronouns: she, her, hers

**From:** Kayla Eggerton <keggerton@patellegal.com>
**Sent:** Thursday, December 1, 2022 1:10 PM
**To:** Sankano, Gita F. <Gita.Sankano@troutman.com>; Shameer A. Soni <ssoni@patellegal.com>; Bowsher, Matthew R. <Matthew.Bowsher@troutman.com>; 'Glasgow, Hank' <Hank.Glasgow@nmrk.com>; Scott MacPherson <smacpherson@patellegal.com>; Lizzie Beil <mbeil@patellegal.com>; Erica Payne <epayne@patellegal.com>
**Cc:** aprealty17@gmail.com; dfwrealty2017@gmail.com; Fein, Jeffrey <Jeffrey.Fein@nmrk.com>; Magana, Brandi <Brandi.Magana@nmrk.com>; Kevin Vance <kvance@patellegal.com>; Mehta, Neil <Neil.Mehta@nmrk.com>;

App.G-Bowsher-Ex.24

Troutman_00009701

akashjain@yahoo.com; Chris Barsness <cbarsness@patellegal.com>; Gibke, Blaine <Blaine.Gibke@nmrk.com>;
Pedersen, Hans <Hans.Pedersen@nmrk.com>
**Subject:** RE: [External] RE: Northaven Park- Contracts

**EXTERNAL SENDER**
Hi Gita,

The borrower is a newly formed entity, which per your instructions did not require searches.

Please let me know and I will order additional searches if needed.

Thanks,


**Kayla Eggerton**
*Transactions Paralegal*
**Patel Law Group**
O: (972) 650-6848 | F: (972) 650.6167
keggerton@patellegal.com
www.patellegal.com
1125 Executive Circle, Suite 200 Irving, Texas 75038


**From:** Sankano, Gita F. <Gita.Sankano@troutman.com>
**Sent:** Thursday, December 1, 2022 12:05 PM
**To:** Kayla Eggerton <keggerton@patellegal.com>; Shameer A. Soni <ssoni@patellegal.com>; Bowsher, Matthew R.
<Matthew.Bowsher@troutman.com>; 'Glasgow, Hank' <Hank.Glasgow@nmrk.com>; Scott MacPherson
<smacpherson@patellegal.com>; Lizzie Beil <mbeil@patellegal.com>; Erica Payne <epayne@patellegal.com>
**Cc:** aprealty17@gmail.com; dfwrealty2017@gmail.com; Fein, Jeffrey <Jeffrey.Fein@nmrk.com>; Magana, Brandi
<Brandi.Magana@nmrk.com>; Kevin Vance <kvance@patellegal.com>; Mehta, Neil <Neil.Mehta@nmrk.com>;
akashjain@yahoo.com; Chris Barsness <cbarsness@patellegal.com>; Gibke, Blaine <Blaine.Gibke@nmrk.com>;
Pedersen, Hans <Hans.Pedersen@nmrk.com>
**Subject:** RE: [External] RE: Northaven Park- Contracts

Thank you.

We will also need searches on the borrower.

In addition, please let us know more about the current owner of the property (Seller) pending litigation.

Thanks,
Gita

# Gita F. Sankano
**Associate**
troutman pepper
Direct: 202.220.1251 | Internal: 803-1251
gita.sankano@troutman.com
Pronouns: she, her, hers

App.G-Bowsher-Ex.24

**From:** Kayla Eggerton <keggerton@patellegal.com>
**Sent:** Wednesday, November 30, 2022 5:11 PM
**To:** Shameer A. Soni <ssoni@patellegal.com>; Sankano, Gita F. <Gita.Sankano@troutman.com>; Bowsher, Matthew R. <Matthew.Bowsher@troutman.com>; 'Glasgow, Hank' <Hank.Glasgow@nmrk.com>; Scott MacPherson <smacpherson@patellegal.com>; Lizzie Beil <mbeil@patellegal.com>; Erica Payne <epayne@patellegal.com>
**Cc:** aprealty17@gmail.com; dfwrealty2017@gmail.com; Fein, Jeffrey <Jeffrey.Fein@nmrk.com>; Magana, Brandi <Brandi.Magana@nmrk.com>; Kevin Vance <kvance@patellegal.com>; Mehta, Neil <Neil.Mehta@nmrk.com>; akashjain@yahoo.com; Chris Barsness <cbarsness@patellegal.com>; Gibke, Blaine <Blaine.Gibke@nmrk.com>; Pedersen, Hans <Hans.Pedersen@nmrk.com>
**Subject:** RE: [External] RE: Northaven Park- Contracts

EXTERNAL SENDER
All,

Please find attached the requested lien search results.

Thanks,


**Kayla Eggerton**
*Transactions Paralegal*
**Patel Law Group**
O: (972) 650-6848 | F: (972) 650.6167
keggerton@patellegal.com
www.patellegal.com
1125 Executive Circle, Suite 200 Irving, Texas 75038


**From:** Shameer A. Soni <ssoni@patellegal.com>
**Sent:** Wednesday, November 30, 2022 3:54 PM
**To:** Sankano, Gita F. <Gita.Sankano@troutman.com>; Bowsher, Matthew R. <Matthew.Bowsher@troutman.com>; 'Glasgow, Hank' <Hank.Glasgow@nmrk.com>; Kayla Eggerton <keggerton@patellegal.com>; Scott MacPherson <smacpherson@patellegal.com>; Lizzie Beil <mbeil@patellegal.com>; Erica Payne <epayne@patellegal.com>
**Cc:** aprealty17@gmail.com; dfwrealty2017@gmail.com; Fein, Jeffrey <Jeffrey.Fein@nmrk.com>; Magana, Brandi <Brandi.Magana@nmrk.com>; Kevin Vance <kvance@patellegal.com>; Mehta, Neil <Neil.Mehta@nmrk.com>; akashjain@yahoo.com; Chris Barsness <cbarsness@patellegal.com>; Gibke, Blaine <Blaine.Gibke@nmrk.com>; Pedersen, Hans <Hans.Pedersen@nmrk.com>
**Subject:** RE: [External] RE: Northaven Park- Contracts

Yes we are signed off on loan documents.



Shameer A. Soni
*Managing Partner*

**The Patel Law Group, PLLC**
1125 Executive Circle, Suite 200 | Irving, Texas 75038
Direct: (972) 428-5451 | Main: (972) 650-6848 | Fax: (972) 650-6167
ssoni@patellegal.com | www.patellegal.com


**From:** Sankano, Gita F. <Gita.Sankano@troutman.com>
**Sent:** Wednesday, November 30, 2022 3:41 PM

App.G-Bowsher-Ex.24

Troutman_00009703

**To:** Shameer A. Soni <ssoni@patellegal.com>; Bowsher, Matthew R. <Matthew.Bowsher@troutman.com>; 'Glasgow, Hank' <Hank.Glasgow@nmrk.com>; Kayla Eggerton <keggerton@patellegal.com>; Scott MacPherson <smacpherson@patellegal.com>; Lizzie Beil <mbeil@patellegal.com>; Erica Payne <epayne@patellegal.com>
**Cc:** aprealty17@gmail.com; dfwrealty2017@gmail.com; Fein, Jeffrey <Jeffrey.Fein@nmrk.com>; Magana, Brandi <Brandi.Magana@nmrk.com>; Kevin Vance <kvance@patellegal.com>; Mehta, Neil <Neil.Mehta@nmrk.com>; akashjain@yahoo.com; Chris Barsness <cbarsness@patellegal.com>; Gibke, Blaine <Blaine.Gibke@nmrk.com>; Pedersen, Hans <Hans.Pedersen@nmrk.com>
**Subject:** RE: [External] RE: Northaven Park- Contracts

Please disregard. My calculations were off.

Is the borrower signed off on the draft loan documents?

## Gita F. Sankano
**Associate**
troutman **pepper**
Direct: 202.220.1251 | Internal: 803-1251
gita.sankano@troutman.com
Pronouns: she, her, hers

---

**From:** Shameer A. Soni <ssoni@patellegal.com>
**Sent:** Wednesday, November 30, 2022 4:38 PM
**To:** Sankano, Gita F. <Gita.Sankano@troutman.com>; Bowsher, Matthew R. <Matthew.Bowsher@troutman.com>; 'Glasgow, Hank' <Hank.Glasgow@nmrk.com>; Kayla Eggerton <keggerton@patellegal.com>; Scott MacPherson <smacpherson@patellegal.com>; Lizzie Beil <mbeil@patellegal.com>; Erica Payne <epayne@patellegal.com>
**Cc:** aprealty17@gmail.com; dfwrealty2017@gmail.com; Fein, Jeffrey <Jeffrey.Fein@nmrk.com>; Magana, Brandi <Brandi.Magana@nmrk.com>; Kevin Vance <kvance@patellegal.com>; Mehta, Neil <Neil.Mehta@nmrk.com>; akashjain@yahoo.com; Chris Barsness <cbarsness@patellegal.com>; Gibke, Blaine <Blaine.Gibke@nmrk.com>; Pedersen, Hans <Hans.Pedersen@nmrk.com>
**Subject:** RE: [External] RE: Northaven Park- Contracts

**EXTERNAL SENDER**
Gita – Are you sure? I have them exactly at 100%. The Class B members total 9% and the Class A members total 91%.


Best,

Shameer


**Shameer A. Soni**
*Managing Partner*

**The Patel Law Group, PLLC**
1125 Executive Circle, Suite 200 | Irving, Texas 75038
Direct: (972) 428-5451 | Main: (972) 650-6848 | Fax: (972) 650-6167
ssoni@patellegal.com | www.patellegal.com

---

**From:** Sankano, Gita F. <Gita.Sankano@troutman.com>
**Sent:** Wednesday, November 30, 2022 3:33 PM
**To:** Shameer A. Soni <ssoni@patellegal.com>; Bowsher, Matthew R. <Matthew.Bowsher@troutman.com>; 'Glasgow, Hank' <Hank.Glasgow@nmrk.com>; Kayla Eggerton <keggerton@patellegal.com>; Scott MacPherson

App.G-Bowsher-Ex.24

<smacpherson@patellegal.com>; Lizzie Beil <mbeil@patellegal.com>; Erica Payne <epayne@patellegal.com>
**Cc:** aprealty17@gmail.com; dfwrealty2017@gmail.com; Fein, Jeffrey <Jeffrey.Fein@nmrk.com>; Magana, Brandi <Brandi.Magana@nmrk.com>; Kevin Vance <kvance@patellegal.com>; Mehta, Neil <Neil.Mehta@nmrk.com>; akashjain@yahoo.com; Chris Barsness <cbarsness@patellegal.com>; Gibke, Blaine <Blaine.Gibke@nmrk.com>; Pedersen, Hans <Hans.Pedersen@nmrk.com>
**Subject:** RE: [External] RE: Northaven Park- Contracts

Thank you! The org chart looks good.

Just one minor comment. The membership interest in the Borrower is a little bit over 100%.

### Gita F. Sankano
**Associate**
~~troutman~~ **pepper**
Direct: 202.220.1251 ┊ Internal: 803-1251
gita.sankano@troutman.com
Pronouns: she, her, hers

---

**From:** Shameer A. Soni <ssoni@patellegal.com>
**Sent:** Wednesday, November 30, 2022 4:19 PM
**To:** Bowsher, Matthew R. <Matthew.Bowsher@troutman.com>; 'Glasgow, Hank' <Hank.Glasgow@nmrk.com>; Kayla Eggerton <keggerton@patellegal.com>; Scott MacPherson <smacpherson@patellegal.com>; Lizzie Beil <mbeil@patellegal.com>; Erica Payne <epayne@patellegal.com>
**Cc:** aprealty17@gmail.com; dfwrealty2017@gmail.com; Fein, Jeffrey <Jeffrey.Fein@nmrk.com>; Magana, Brandi <Brandi.Magana@nmrk.com>; Kevin Vance <kvance@patellegal.com>; Mehta, Neil <Neil.Mehta@nmrk.com>; akashjain@yahoo.com; Chris Barsness <cbarsness@patellegal.com>; Gibke, Blaine <Blaine.Gibke@nmrk.com>; Sankano, Gita F. <Gita.Sankano@troutman.com>; Pedersen, Hans <Hans.Pedersen@nmrk.com>
**Subject:** RE: [External] RE: Northaven Park- Contracts

**EXTERNAL SENDER**
Attached please find an updated organizational chart. In the interests of time, we are contemporaneously sharing this with our client and reserve the right to make further changes. Thanks.

Best,

Shameer Soni

**Shameer A. Soni**
*Managing Partner*

**The Patel Law Group, PLLC**
1125 Executive Circle, Suite 200 | Irving, Texas 75038
Direct: (972) 428-5451 | Main: (972) 650-6848 | Fax: (972) 650-6167
ssoni@patellegal.com | www.patellegal.com

---

**From:** Bowsher, Matthew R. <Matthew.Bowsher@troutman.com>
**Sent:** Wednesday, November 30, 2022 3:00 PM
**To:** 'Glasgow, Hank' <Hank.Glasgow@nmrk.com>; Kayla Eggerton <keggerton@patellegal.com>; Shameer A. Soni <ssoni@patellegal.com>; Scott MacPherson <smacpherson@patellegal.com>; Lizzie Beil <mbeil@patellegal.com>; Erica Payne <epayne@patellegal.com>

App.G-Bowsher-Ex.24

Troutman_00009705

Cc: aprealty17@gmail.com; dfwrealty2017@gmail.com; Fein, Jeffrey <Jeffrey.Fein@nmrk.com>; Magana, Brandi <Brandi.Magana@nmrk.com>; Kevin Vance <kvance@patellegal.com>; Mehta, Neil <Neil.Mehta@nmrk.com>; akashjain@yahoo.com; Chris Barsness <cbarsness@patellegal.com>; Gibke, Blaine <Blaine.Gibke@nmrk.com>; Sankano, Gita F. <Gita.Sankano@troutman.com>; Pedersen, Hans <Hans.Pedersen@nmrk.com>
Subject: RE: [External] RE: Northaven Park- Contracts

… and we still need the updated org chart, of course.  Troutman has not received that.


**Matthew R. Bowsher**
**Partner**
troutman **pepper**
Office: 202.274.1939 ¦ Mobile: 301.512.0423
matthew.bowsher@troutman.com

From: Bowsher, Matthew R. <Matthew.Bowsher@troutman.com>
Sent: Wednesday, November 30, 2022 3:57 PM
To: 'Glasgow, Hank' <Hank.Glasgow@nmrk.com>; Kayla Eggerton <keggerton@patellegal.com>; Shameer A. Soni <ssoni@patellegal.com>; Scott MacPherson <smacpherson@patellegal.com>; Lizzie Beil <mbeil@patellegal.com>; Erica Payne <epayne@patellegal.com>
Cc: aprealty17@gmail.com; dfwrealty2017@gmail.com; Fein, Jeffrey <Jeffrey.Fein@nmrk.com>; Magana, Brandi <Brandi.Magana@nmrk.com>; Kevin Vance <kvance@patellegal.com>; Mehta, Neil <Neil.Mehta@nmrk.com>; akashjain@yahoo.com; Chris Barsness <cbarsness@patellegal.com>; Gibke, Blaine <Blaine.Gibke@nmrk.com>; Sankano, Gita F. <Gita.Sankano@troutman.com>; Pedersen, Hans <Hans.Pedersen@nmrk.com>
Subject: RE: [External] RE: Northaven Park- Contracts

We received the drafts opinions, just need the search results, which we understand (per thread below) are expected today/tomorrow.

**Matthew R. Bowsher**
**Partner**
troutman **pepper**
Office: 202.274.1939 ¦ Mobile: 301.512.0423
matthew.bowsher@troutman.com

From: Glasgow, Hank <Hank.Glasgow@nmrk.com>
Sent: Wednesday, November 30, 2022 3:43 PM
To: Kayla Eggerton <keggerton@patellegal.com>; Shameer A. Soni <ssoni@patellegal.com>; Scott MacPherson <smacpherson@patellegal.com>; Lizzie Beil <mbeil@patellegal.com>; Erica Payne <epayne@patellegal.com>
Cc: aprealty17@gmail.com; dfwrealty2017@gmail.com; Fein, Jeffrey <Jeffrey.Fein@nmrk.com>; Magana, Brandi <Brandi.Magana@nmrk.com>; Kevin Vance <kvance@patellegal.com>; Mehta, Neil <Neil.Mehta@nmrk.com>; akashjain@yahoo.com; Chris Barsness <cbarsness@patellegal.com>; Gibke, Blaine <Blaine.Gibke@nmrk.com>; Sankano, Gita F. <Gita.Sankano@troutman.com>; Bowsher, Matthew R. <Matthew.Bowsher@troutman.com>; Pedersen, Hans <Hans.Pedersen@nmrk.com>
Subject: RE: [External] RE: Northaven Park- Contracts

**EXTERNAL SENDER**
Hi Team,

Just checking back in on the progress here. We are still required to rate lock by Monday.

Thanks,

App.G-Bowsher-Ex.24

Hank

**Hank Glasgow**
*Debt & Structured Finance*
*Multifamily Capital Markets*

**NEWMARK**
t 214-420-3108
m 214-263-5566
hank.glasgow@nmrk.com

---

**From:** Kayla Eggerton <keggerton@patellegal.com>
**Sent:** Tuesday, November 29, 2022 12:06 PM
**To:** Glasgow, Hank <Hank.Glasgow@nmrk.com>; Shameer A. Soni <ssoni@patellegal.com>; Scott MacPherson <smacpherson@patellegal.com>; Lizzie Beil <mbeil@patellegal.com>; Erica Payne <epayne@patellegal.com>
**Cc:** aprealty17@gmail.com; dfwrealty2017@gmail.com; Fein, Jeffrey <Jeffrey.Fein@nmrk.com>; Magana, Brandi <Brandi.Magana@nmrk.com>; Kevin Vance <kvance@patellegal.com>; Mehta, Neil <Neil.Mehta@nmrk.com>; akashjain@yahoo.com; Chris Barsness <cbarsness@patellegal.com>; Gibke, Blaine <Blaine.Gibke@nmrk.com>; Sankano, Gita F. <Gita.Sankano@troutman.com>; Bowsher, Matthew R. <matthew.bowsher@troutman.com>; Pedersen, Hans <Hans.Pedersen@nmrk.com>
**Subject:** RE: [External] RE: Northaven Park- Contracts

Hank –

Thanks for the update. We are set to receive the lien search results by this Wednesday or Thursday. I will send them over upon receipt.

Kind regards,

**Kayla Eggerton**
*Transactions Paralegal*
**Patel Law Group**
O: (972) 650-6848 | F: (972) 650.6167
keggerton@patellegal.com
www.patellegal.com
1125 Executive Circle, Suite 200 Irving, Texas 75038

---

**From:** Glasgow, Hank <Hank.Glasgow@nmrk.com>
**Sent:** Tuesday, November 29, 2022 12:01 PM
**To:** Shameer A. Soni <ssoni@patellegal.com>; Scott MacPherson <smacpherson@patellegal.com>; Lizzie Beil <mbeil@patellegal.com>; Kayla Eggerton <keggerton@patellegal.com>; Erica Payne <epayne@patellegal.com>
**Cc:** aprealty17@gmail.com; dfwrealty2017@gmail.com; Fein, Jeffrey <Jeffrey.Fein@nmrk.com>; Magana, Brandi <Brandi.Magana@nmrk.com>; Kevin Vance <kvance@patellegal.com>; Mehta, Neil <Neil.Mehta@nmrk.com>; akashjain@yahoo.com; Chris Barsness <cbarsness@patellegal.com>; Gibke, Blaine <Blaine.Gibke@nmrk.com>; Sankano, Gita F. <Gita.Sankano@troutman.com>; Bowsher, Matthew R. <matthew.bowsher@troutman.com>; Pedersen, Hans <Hans.Pedersen@nmrk.com>
**Subject:** RE: [External] RE: Northaven Park- Contracts

App.G-Bowsher-Ex.24

Troutman_00009707

Also, the rate lock deadline is this Monday, 12/5, so other than the org chart the items below are pressing and needed for rate lock. Crunch time is upon us.

- **Draft legal opinions**
- **UCC/Tax Lien/Judgment Lien/Litigation/Bankruptcy Searches**

Thanks

**Hank Glasgow**
*Debt & Structured Finance*
*Multifamily Capital Markets*

**NEWMARK**
t 214-420-3108
m 214-263-5566
hank.glasgow@nmrk.com

---

**From:** Glasgow, Hank
**Sent:** Tuesday, November 29, 2022 11:51 AM
**To:** 'Shameer A. Soni' <ssoni@patellegal.com>; Scott MacPherson <smacpherson@patellegal.com>; Lizzie Beil <mbeil@patellegal.com>; Kayla Eggerton <keggerton@patellegal.com>; Erica Payne <epayne@patellegal.com>
**Cc:** aprealty17@gmail.com; dfwrealty2017@gmail.com; Fein, Jeffrey <Jeffrey.Fein@nmrk.com>; Magana, Brandi <Brandi.Magana@nmrk.com>; Kevin Vance <kvance@patellegal.com>; Mehta, Neil <Neil.Mehta@nmrk.com>; akashjain@yahoo.com; Chris Barsness <cbarsness@patellegal.com>; Gibke, Blaine <Blaine.Gibke@nmrk.com>; Sankano, Gita F. <Gita.Sankano@troutman.com>; Bowsher, Matthew R. <matthew.bowsher@troutman.com>; Pedersen, Hans <Hans.Pedersen@nmrk.com>
**Subject:** RE: [External] RE: Northaven Park- Contracts

Shameer,

We are trying to obtain final Freddie Mac approval and need to have the org chart finalized ASAP today.

The latest version (I believe) is attached and Gita's comments below.

- **Identify the country of citizenship for any non-U.S. individual(s) or state "U.S. Individual" for the following individuals**
  - **Nisha**
  - **Hema**
  - **Deepti**
- **Identify ownership interest for all entities and individual in the org chart.**
- **Please identify Jeff Lew as a guarantor**

Thank you for your help.

Hank

App.G-Bowsher-Ex.24

Troutman_00009708

**Hank Glasgow**
*Debt & Structured Finance*
*Multifamily Capital Markets*

**NEWMARK**
t 214-420-3108
m 214-263-5566
hank.glasgow@nmrk.com

---

**From:** Shameer A. Soni <ssoni@patellegal.com>
**Sent:** Wednesday, November 23, 2022 11:39 AM
**To:** Glasgow, Hank <Hank.Glasgow@nmrk.com>; Scott MacPherson <smacpherson@patellegal.com>; Lizzie Beil <mbeil@patellegal.com>; Kayla Eggerton <keggerton@patellegal.com>; Erica Payne <epayne@patellegal.com>
**Cc:** aprealty17@gmail.com; dfwrealty2017@gmail.com; Fein, Jeffrey <Jeffrey.Fein@nmrk.com>; Magana, Brandi <Brandi.Magana@nmrk.com>; Kevin Vance <kvance@patellegal.com>; Mehta, Neil <Neil.Mehta@nmrk.com>; akashjain@yahoo.com; Chris Barsness <cbarsness@patellegal.com>; Gibke, Blaine <Blaine.Gibke@nmrk.com>; Sankano, Gita F. <Gita.Sankano@troutman.com>; Bowsher, Matthew R. <matthew.bowsher@troutman.com>; Pedersen, Hans <Hans.Pedersen@nmrk.com>
**Subject:** RE: [External] RE: Northaven Park- Contracts

Hank - I believe that we have delivered all of our items to lender counsel. Please let us know if anything is missing. Thanks.


Best,

Shameer


**Shameer A. Soni**
*Managing Partner*

**The Patel Law Group, PLLC**
1125 Executive Circle, Suite 200 | Irving, Texas 75038
Direct: (972) 428-5451 | Main: (972) 650-6848 | Fax: (972) 650-6167
ssoni@patellegal.com | www.patellegal.com

---

**From:** Glasgow, Hank <Hank.Glasgow@nmrk.com>
**Sent:** Wednesday, November 23, 2022 11:36 AM
**To:** Scott MacPherson <smacpherson@patellegal.com>; Shameer A. Soni <ssoni@patellegal.com>; Lizzie Beil <mbeil@patellegal.com>; Kayla Eggerton <keggerton@patellegal.com>; Erica Payne <epayne@patellegal.com>
**Cc:** aprealty17@gmail.com; dfwrealty2017@gmail.com; Fein, Jeffrey <Jeffrey.Fein@nmrk.com>; Magana, Brandi <Brandi.Magana@nmrk.com>; Kevin Vance <kvance@patellegal.com>; Mehta, Neil <Neil.Mehta@nmrk.com>; akashjain@yahoo.com; Chris Barsness <cbarsness@patellegal.com>; Gibke, Blaine <Blaine.Gibke@nmrk.com>; Sankano, Gita F. <Gita.Sankano@troutman.com>; Bowsher, Matthew R. <matthew.bowsher@troutman.com>; Pedersen, Hans <Hans.Pedersen@nmrk.com>
**Subject:** RE: [External] RE: Northaven Park- Contracts

Patel Team,

Are you still on track to have the balance of the items today?

Thanks,

Hank



**Hank Glasgow**
*Debt & Structured Finance*
*Multifamily Capital Markets*

**NEWMARK**
t 214-420-3108
m 214-263-5566
hank.glasgow@nmrk.com



**From:** Glasgow, Hank <Hank.Glasgow@nmrk.com>
**Sent:** Monday, November 21, 2022 4:58 PM
**To:** Scott MacPherson <smacpherson@patellegal.com>; Shameer A. Soni <ssoni@patellegal.com>; Lizzie Beil <mbeil@patellegal.com>; Kayla Eggerton <keggerton@patellegal.com>; Erica Payne <epayne@patellegal.com>
**Cc:** aprealty17@gmail.com; dfwrealty2017@gmail.com; Fein, Jeffrey <Jeffrey.Fein@nmrk.com>; Magana, Brandi <Brandi.Magana@nmrk.com>; Kevin Vance <kvance@patellegal.com>; Mehta, Neil <Neil.Mehta@nmrk.com>; akashjain@yahoo.com; Chris Barsness <cbarsness@patellegal.com>; Gibke, Blaine <Blaine.Gibke@nmrk.com>; Sankano, Gita F. <Gita.Sankano@troutman.com>; Bowsher, Matthew R. <matthew.bowsher@troutman.com>; Pedersen, Hans <Hans.Pedersen@nmrk.com>
**Subject:** Re: [External] RE: Northaven Park- Contracts

Thanks Scott. Looping in the Troutman folks and our Hans our underwriter.

**Hank Glasgow**
*Debt & Structured Finance*
*Multifamily Capital Markets*

**NEWMARK**
t 214-420-3108
m 214-263-5566
hank.glasgow@nmrk.com

**From:** Scott MacPherson <smacpherson@patellegal.com>
**Sent:** Monday, November 21, 2022 4:54:00 PM
**To:** Glasgow, Hank <Hank.Glasgow@nmrk.com>; Shameer A. Soni <ssoni@patellegal.com>; Lizzie Beil <mbeil@patellegal.com>; Kayla Eggerton <keggerton@patellegal.com>; Erica Payne <epayne@patellegal.com>
**Cc:** aprealty17@gmail.com <aprealty17@gmail.com>; dfwrealty2017@gmail.com <dfwrealty2017@gmail.com>; Fein, Jeffrey <Jeffrey.Fein@nmrk.com>; Magana, Brandi <Brandi.Magana@nmrk.com>; Kevin Vance <kvance@patellegal.com>; Mehta, Neil <Neil.Mehta@nmrk.com>; akashjain@yahoo.com <akashjain@yahoo.com>; Chris Barsness <cbarsness@patellegal.com>; Gibke, Blaine <Blaine.Gibke@nmrk.com>
**Subject:** RE: [External] RE: Northaven Park- Contracts

Hi Hank,

App.G-Bowsher-Ex.24

Troutman_00009710

Please find the executed management agreement attached. Here are the signature block and the address of the manager:

Myan Management Group, LLC,

a Texas limited liability company

By: _____

            Bruce P. Woodward, President

Address:

520 Silicon Drive

Southlake, Texas 76092

**Scott "Mac" MacPherson**

*Attorney*

**Patel Law Group**

Office: (972) 650-6848   Direct: (972) 435-4339

SMacPherson@patellegal.com

www.patellegal.com

1125 Executive Circle, Suite 200

Irving, Texas 75038

**From:** Glasgow, Hank <Hank.Glasgow@nmrk.com>
**Sent:** Monday, November 21, 2022 9:43 AM
**To:** Shameer A. Soni <ssoni@patellegal.com>; Lizzie Beil <mbeil@patellegal.com>; Scott MacPherson <smacpherson@patellegal.com>; Kayla Eggerton <keggerton@patellegal.com>; Erica Payne <epayne@patellegal.com>
**Cc:** aprealty17@gmail.com; dfwrealty2017@gmail.com; Fein, Jeffrey <Jeffrey.Fein@nmrk.com>; Magana, Brandi <Brandi.Magana@nmrk.com>; Kevin Vance <kvance@patellegal.com>; Mehta, Neil <Neil.Mehta@nmrk.com>; akashjain@yahoo.com; Chris Barsness <cbarsness@patellegal.com>; Gibke, Blaine <Blaine.Gibke@nmrk.com>
**Subject:** Re: [External] RE: Northaven Park- Contracts

Thank you Shameer!

**Hank Glasgow**
*Debt & Structured Finance*
*Multifamily Capital Markets*

**NEWMARK**
t 214-420-3108
m 214-263-5566
hank.glasgow@nmrk.com

---

**From:** Shameer A. Soni <ssoni@patellegal.com>
**Sent:** Monday, November 21, 2022 9:41:15 AM
**To:** Glasgow, Hank <Hank.Glasgow@nmrk.com>; Lizzie Beil <mbeil@patellegal.com>; Scott MacPherson <smacpherson@patellegal.com>; Kayla Eggerton <keggerton@patellegal.com>; Erica Payne <epayne@patellegal.com>
**Cc:** aprealty17@gmail.com <aprealty17@gmail.com>; dfwrealty2017@gmail.com <dfwrealty2017@gmail.com>; Fein, Jeffrey <Jeffrey.Fein@nmrk.com>; Magana, Brandi <Brandi.Magana@nmrk.com>; Kevin Vance <kvance@patellegal.com>; Mehta, Neil <Neil.Mehta@nmrk.com>; akashjain@yahoo.com <akashjain@yahoo.com>; Chris Barsness <cbarsness@patellegal.com>; Gibke, Blaine <Blaine.Gibke@nmrk.com>
**Subject:** Re: [External] RE: Northaven Park- Contracts

Hank - We are working through the list and will have everything over before the holidays.

Best,

Shameer Soni

Shameer A. Soni

Managing Partner

Patel Law Group PLLC

1125 Executive Circle, Suite 200

Irving, Texas 75038

Direct: (972) 428-5451

App.G-Bowsher-Ex.24

Troutman_00009712

Main: (972) 650-6848

Email: ssoni@patellegal.com


Sent from my mobile device.

---

**From:** Glasgow, Hank <Hank.Glasgow@nmrk.com>
**Sent:** Monday, November 21, 2022 9:08:52 AM
**To:** Lizzie Beil <mbeil@patellegal.com>; Scott MacPherson <smacpherson@patellegal.com>; Kayla Eggerton <keggerton@patellegal.com>; Erica Payne <epayne@patellegal.com>
**Cc:** aprealty17@gmail.com <aprealty17@gmail.com>; dfwrealty2017@gmail.com <dfwrealty2017@gmail.com>; Fein, Jeffrey <Jeffrey.Fein@nmrk.com>; Shameer A. Soni <ssoni@patellegal.com>; Magana, Brandi <Brandi.Magana@nmrk.com>; Kevin Vance <kvance@patellegal.com>; Mehta, Neil <Neil.Mehta@nmrk.com>; akashjain@yahoo.com <akashjain@yahoo.com>; Chris Barsness <cbarsness@patellegal.com>; Gibke, Blaine <Blaine.Gibke@nmrk.com>
**Subject:** Re: [External] RE: Northaven Park- Contracts


Sure thing Lizzie.


**Hank Glasgow**
*Debt & Structured Finance*
*Multifamily Capital Markets*

**NEWMARK**
t 214-420-3108
m 214-263-5566
hank.glasgow@nmrk.com

---

**From:** Lizzie Beil <mbeil@patellegal.com>
**Sent:** Monday, November 21, 2022 8:52:42 AM
**To:** Glasgow, Hank <Hank.Glasgow@nmrk.com>; Scott MacPherson <smacpherson@patellegal.com>; Kayla Eggerton <keggerton@patellegal.com>; Erica Payne <epayne@patellegal.com>
**Cc:** aprealty17@gmail.com <aprealty17@gmail.com>; dfwrealty2017@gmail.com <dfwrealty2017@gmail.com>; Fein, Jeffrey <Jeffrey.Fein@nmrk.com>; Shameer A. Soni <ssoni@patellegal.com>; Magana, Brandi <Brandi.Magana@nmrk.com>; Kevin Vance <kvance@patellegal.com>; Mehta, Neil <Neil.Mehta@nmrk.com>; akashjain@yahoo.com <akashjain@yahoo.com>; Chris Barsness <cbarsness@patellegal.com>; Gibke, Blaine <Blaine.Gibke@nmrk.com>
**Subject:** RE: [External] RE: Northaven Park- Contracts


Hi Hank,


I'm a securities paralegal at Patel Law Group. I'm adding transactions paralegals @Kayla Eggerton and @Erica Payne to this thread. Please keep them included if possible.


Thanks,

App.G-Bowsher-Ex.24

Troutman_00009713

**Margaret "Lizzie" Beil**

*Certified Paralegal - Securities*

**Patel Law Group**

O: (972) 650-6848 | D: (469) 433-0067 | F: (972) 650.6167
mbeil@patellegal.com
www.patellegal.com
1125 Executive Circle, Suite 200 Irving, Texas 75038

---

**From:** Glasgow, Hank <Hank.Glasgow@nmrk.com>
**Sent:** Monday, November 21, 2022 7:54 AM
**To:** Scott MacPherson <smacpherson@patellegal.com>
**Cc:** aprealty17@gmail.com; dfwrealty2017@gmail.com; Fein, Jeffrey <Jeffrey.Fein@nmrk.com>; Shameer A. Soni <ssoni@patellegal.com>; Magana, Brandi <Brandi.Magana@nmrk.com>; Kevin Vance <kvance@patellegal.com>; Mehta, Neil <Neil.Mehta@nmrk.com>; akashjain@yahoo.com; Chris Barsness <cbarsness@patellegal.com>; Lizzie Beil <mbeil@patellegal.com>; Gibke, Blaine <Blaine.Gibke@nmrk.com>
**Subject:** Re: [External] RE: Northaven Park- Contracts

Shameer and team,

We received the outstanding DD checklist from our counsel and was making sure you are working on it.  Some of these items are needed for rate lock which has a 12/5 deadline (2 weeks from today plus we have Thanksgiving). Please let us know how things look and if we need to set up a call early this week with Troutman.

Loan Document Information (need from Borrower)
1.        Property Manager's signature block – NEED
2.        Property Manager's Address – NEED
3.        Were the Certificates of Occupancy issued within 3 years of the loan closing?

-
**Legal Due Diligence Checklist**
3.        Title Commitment/Exceptions Documents – **Under Review**
4.        Survey – **NEED**
5.        Contact Information/Recorder's Office:
1.                Survey Contact – **NEED (if applicable)**
6.        Copy of any agreement being recorded at closing (including the draft deed if an acquisition) – **NEED (or confirm none)**
1.                **Please note:** If the deed (or any other document recorded or to be recorded on title) will contain a prohibition against or any indemnification in connection with the conversion of the Property to a condominium or cooperative structure, it will need to be approved by Lender prior to rate lock]
7.        UCC/Tax Lien/Judgment Lien/Litigation/Bankruptcy Searches (Borrower's counsel to order. Dated within 30 days of closing) – **NEED**
8.        Draft Opinion Letter(s) (in the forms provided)

App.G-Bowsher-Ex.24

1.          Borrower – **NEED**

2.          Guarantor – **NEED**

9.      JV Agreement – **NEED**

10.     Property Management Agreement – **NEED**

11.     Asset Management Agreement (or any other agreement with affiliated fees) [*AMA fees must be subordinate to the Loan*] – **NEED (or confirm none)**

12.     Confirmation that you have reviewed/approved the draft loan documents – <u>any document modifications need to be reviewed and approved by Freddie Mac and no changes are permitted after rate lock</u> – **NEED [Sent 11/10]**

13.     Organizational Chart – **Comments Sent**

14.     Signature Pages **[to be circulated]**

1.          Borrower – **NEED**

2.          Guarantor – **NEED**

3.          Property Manager – **NEED**

**<u>Organizational Documents (Borrower/Guarantor and their sub-entities): [to be updated upon receipt of final org chart]</u>**

-

**1.  <u>Northaven Park Apartment LLC</u>**

a.    Operating Agreement – **Comments Sent (11/4)**

1.    Required SPE Provisions –**NEED (in the form provided)**

b.    Certificate of Good Standing (Dated within 30 days of closing) – **NEED**

c.    Consent – **NEED**

**2.  <u>Northaven Park MGR LLC</u>**

a.    Operating Agreement – **Comments Sent (11/4)**

b.    Certificate of Good Standing (Dated within 30 days of closing) – **NEED**

**<u>Search Requirements</u>**

UCC/tax lien/judgment lien/litigation and bankruptcysearch requirements:

•   Name: Borrower's name and, if the Property is being acquired, the name of the current owner of the Property

•   Location:

•   The State in which the Borrower entity and Seller entity was formed

•   The local jurisdiction in which the Property is located

•   The State and local jurisdiction for any Individual

- Date: must be dated no earlier than 30 days prior to the Origination Date.

- Newly formed entities: Searches not required for newly formed entities, which are entities formed within 90 days of closing

<u>Closing Coordination</u>

**App.G-Bowsher-Ex.24**

15.    Executed Escrow Letter from Title – **NEED(after receipt of original recording package)**

16.    Fully Executed Settlement Statement – **NEED**

17.    Confirmation Recorder's Office is open and operational - **NEED**


Thanks,


Hank


**Hank Glasgow**
*Debt & Structured Finance*
*Multifamily Capital Markets*

**NEWMARK**
t 214-420-3108
m 214-263-5566
hank.glasgow@nmrk.com

---

**From:** Scott MacPherson <smacpherson@patellegal.com>
**Sent:** Friday, November 18, 2022 4:41:27 PM
**To:** Glasgow, Hank <Hank.Glasgow@nmrk.com>
**Cc:** aprealty17@gmail.com <aprealty17@gmail.com>; dfwrealty2017@gmail.com <dfwrealty2017@gmail.com>; Fein, Jeffrey <Jeffrey.Fein@nmrk.com>; Shameer A. Soni <ssoni@patellegal.com>; Magana, Brandi <Brandi.Magana@nmrk.com>; Kevin Vance <kvance@patellegal.com>; Mehta, Neil <Neil.Mehta@nmrk.com>; akashjain@yahoo.com <akashjain@yahoo.com>; Chris Barsness <cbarsness@patellegal.com>; Lizzie Beil <mbeil@patellegal.com>; Fein, Jeffrey <Jeffrey.Fein@nmrk.com>; Mehta, Neil <Neil.Mehta@nmrk.com>
**Subject:** RE: [External] RE: Northaven Park- Contracts

You don't often get email from smacpherson@patellegal.com. Learn why this is important


Good Afternoon,


Please find the amendments attached


| **Scott "Mac" MacPherson** |  | Office: (972) 650-6848   Direct: (972) 435-4339 |
|---|---|---|
| *Attorney* | ✉ | SMacPherson@patellegal.com |
| **Patel Law Group** | 🔗 | www.patellegal.com |
| | ▦ | 1125 Executive Circle, Suite 200 Irving, Texas 75038 |

App.G-Bowsher-Ex.24

**From:** Glasgow, Hank <Hank.Glasgow@nmrk.com>
**Sent:** Friday, November 18, 2022 4:22:06 PM
**To:** Shameer A. Soni <ssoni@patellegal.com>; akashjain@yahoo.com <akashjain@yahoo.com>; Chris Barsness <cbarsness@patellegal.com>; Kevin Vance <kvance@patellegal.com>; Lizzie Beil <mbeil@patellegal.com>
**Cc:** 'Deepti Mikkilineni' <aprealty17@gmail.com>; 'dfw realty' <dfwrealty2017@gmail.com>; Fein, Jeffrey <Jeffrey.Fein@nmrk.com>; Magana, Brandi <Brandi.Magana@nmrk.com>; Mehta, Neil <Neil.Mehta@nmrk.com>
**Subject:** Re: [External] RE: Northaven Park- Contracts

Shameer,

Can you please send the PSA amendment which shows the price reduction and any other amendments that may be out there?

Thanks,

Hank

**Hank Glasgow**
*Debt & Structured Finance*
*Multifamily Capital Markets*

**NEWMARK**
t 214-420-3108
m 214-263-5566
hank.glasgow@nmrk.com

**From:** Shameer A. Soni <ssoni@patellegal.com>
**Sent:** Tuesday, October 18, 2022 9:05:46 AM

App.G-Bowsher-Ex.24

Troutman_00009717

**To:** akashjain@yahoo.com <akashjain@yahoo.com>; Chris Barsness <cbarsness@patellegal.com>; Kevin Vance <kvance@patellegal.com>; Lizzie Beil <mbeil@patellegal.com>
**Cc:** 'Deepti Mikkilineni' <aprealty17@gmail.com>; 'dfw realty' <dfwrealty2017@gmail.com>; Fein, Jeffrey <Jeffrey.Fein@nmrk.com>; Glasgow, Hank <Hank.Glasgow@nmrk.com>
**Subject:** [External] RE: Northaven Park- Contracts

Already replied to them. Already emailed regarding it on the HGI group.

**Shameer A. Soni**

*Managing Partner*

**The Patel Law Group, PLLC**

1125 Executive Circle, Suite 200 | Irving, Texas 75038

Direct: (972) 428-5451 | Main: (972) 650-6848 | Fax: (972) 650-6167

ssoni@patellegal.com | www.patellegal.com

---

**From:** akashjain@yahoo.com <akashjain@yahoo.com>
**Sent:** Tuesday, October 18, 2022 9:05 AM
**To:** Shameer A. Soni <ssoni@patellegal.com>; Chris Barsness <cbarsness@patellegal.com>; Kevin Vance <kvance@patellegal.com>; Lizzie Beil <mbeil@patellegal.com>
**Cc:** 'Deepti Mikkilineni' <aprealty17@gmail.com>; 'dfw realty' <dfwrealty2017@gmail.com>; 'Fein, Jeffrey' <Jeffrey.Fein@nmrk.com>; 'Glasgow, Hank' <Hank.Glasgow@nmrk.com>
**Subject:** FW: Northaven Park- Contracts

Shameer,

You must have received a welcome / introductory email from Newmark Counsel – Matt Bowsher – Troutman Pepper last week. Just wondering if you were able to connect and what the next steps are with the Newmark team.

As you know we have a very short fuse and we need to keep moving – let us know if we can help..

Thanks

Akash

---

**From:** Glasgow, Hank <Hank.Glasgow@nmrk.com>
**Sent:** Friday, October 14, 2022 2:10 PM
**To:** akashjain@yahoo.com
**Cc:** Fein, Jeffrey <Jeffrey.Fein@nmrk.com>
**Subject:** Fwd: Northaven Park- Contracts

Akash, I know our counsel has already reached out to your counsel to get the ball rolling on the Freddie side.

**Hank Glasgow**
*Debt & Structured Finance*
*Multifamily Capital Markets*

**NEWMARK**
t 214-420-3108
m 214-263-5566
hank.glasgow@nmrk.com

---

**From:** Fein, Jeffrey <Jeffrey.Fein@nmrk.com>
**Sent:** Friday, October 14, 2022 1:50:53 PM
**To:** akashjain@yahoo.com <akashjain@yahoo.com>
**Cc:** 'dfw realty' <dfwrealty2017@gmail.com>; 'Deepti Mikkilineni' <aprealty17@gmail.com>; 'Shameer A. Soni' <ssoni@patellegal.com>; 'Kevin Vance' <kvance@patellegal.com>; 'Chris Barsness' <cbarsness@patellegal.com>; Glasgow, Hank <Hank.Glasgow@nmrk.com>; 'Lizzie Beil' <mbeil@patellegal.com>; Nisha Jain <njain@slimnskin.com>; Jacob Slone <jis@harborg.com>; Matt Jones <mjones@harborg.com>; Steven Bernstein <sbernstein@harborg.com>; Matt Grabler <mgrabler@harborg.com>; Matthew Levine <mlevine@harborg.com>; Gibke, Blaine <Blaine.Gibke@nmrk.com>
**Subject:** RE: Northaven Park- Contracts

Good afternoon everyone –

Apologies for the duplicate email but it appears that harbor Group is out of pocket till Wednesday for the weekend and the Jewish Holiday on Monday and Tuesday, so we can certainly hit the ground running at that point.

Thanks,

**Jeffrey Fein**
*Debt & Structured Finance*
*Multifamily Capital Markets*

**NEWMARK**
14114 Dallas Pkwy, Suite 520
Dallas, TX 75254
T 972.450.3263
M 469-278-3408
Jeffrey.Fein@nmrk.com

nmrk.com
Linkedin Twitter Facebook Instagram

---

**From:** Fein, Jeffrey
**Sent:** Friday, October 14, 2022 1:42 PM
**To:** akashjain@yahoo.com
**Cc:** 'dfw realty' <dfwrealty2017@gmail.com>; 'Deepti Mikkilineni' <aprealty17@gmail.com>; 'Shameer A. Soni' <ssoni@patellegal.com>; 'Kevin Vance' <kvance@patellegal.com>; 'Chris Barsness' <cbarsness@patellegal.com>;

App.G-Bowsher-Ex.24

Glasgow, Hank <Hank.Glasgow@nmrk.com>; 'Lizzie Beil' <mbeil@patellegal.com>; Nisha Jain <njain@slimnskin.com>; Jacob Slone <jis@harborg.com>; Matt Jones <mjones@harborg.com>; Steven Bernstein <sbernstein@harborg.com>; Matt Grabler <mgrabler@harborg.com>; Matthew Levine <mlevine@harborg.com>; Gibke, Blaine <Blaine.Gibke@nmrk.com>
**Subject:** Northaven Park- Contracts

Good afternoon everyone –

Wanted to send out an email that had all parties from the Borrower side as well as the Harbor Group side so that we could all meet and get this party going.  In addition, I know that Akash and his team along with his legal counsel wanted to go ahead and start a dialogue with the Harbor Group side in order to work out the Organizational Chart and entities that are needed.  Given that Monday and Tuesday are a holiday for the Harbor Group folks, figured it was best to connect everyone today so that if there are any initial questions that need to be addressed, we could get those started.

Please feel free to reach out to us with any questions or feel free to start initial conversations between your two sides.

Thanks,


**Jeffrey Fein**
*Debt & Structured Finance*
*Multifamily Capital Markets*

**NEWMARK**
14114 Dallas Pkwy, Suite 520
Dallas, TX 75254
T 972.450.3263
M 469-278-3408
Jeffrey.Fein@nmrk.com

nmrk.com
Linkedin Twitter Facebook Instagram


NOTICE: This e-mail message and any attachments are intended solely for the use of the intended recipient, and may contain information that is confidential, privileged and exempt from disclosure under applicable law. If you are not the intended recipient, you are not permitted to read, disclose, reproduce, distribute, use or take any action in reliance upon this message and any attachments, and we request that you promptly notify the sender and immediately delete this message and any attachments as well as any copies thereof. Delivery of this message to an unintended recipient is not intended to waive any right or privilege. Newmark is neither qualified nor authorized to give legal or tax advice, and any such advice should be obtained from an appropriate, qualified professional advisor of your own choosing.

[External Email: Use Caution when clicking on links and attachments]

App.G-Bowsher-Ex.24

This e-mail (and any attachments) from a law firm may contain legally privileged and confidential information solely for the intended recipient. If you received this message in error, please notify the sender and delete it. Any unauthorized reading, distribution, copying, or other use of this e-mail (and attachments) is strictly prohibited. We have taken precautions to minimize the risk of transmitting computer viruses, but you should scan attachments for viruses and other malicious threats; we are not liable for any loss or damage caused by viruses.

| | |
|---|---|
| **From:** | Bowsher, Matthew R. [/O=TROUTMANSANDERS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=99D8D2CBA40440EFA576623B7A8765CF-BOWSHER,] |
| **Sent:** | 2/8/2022 10:02:21 PM |
| **To:** | Sankano, Gita F. [Gita.Sankano@Troutman.com] |
| **Subject:** | RE: 1430Q Received Org Docs |
| **Attachments:** | 1430Q WD Org Chart Draft v2(14365338.7) (002).docx |

Great work!   Please communicate your findings to borrower's counsel, and have them send us a revised org chart.   Please have them start with the attached version, which has better formatting (but same substance) than the version they previously sent us.

**Matthew R. Bowsher**
**Partner**
troutman **pepper**
Office: 202.274.1939 ⁝ Mobile: 301.512.0423
matthew.bowsher@troutman.com

**From:** Sankano, Gita F. <Gita.Sankano@Troutman.com>
**Sent:** Monday, February 7, 2022 5:38 PM
**To:** Bowsher, Matthew R. <Matthew.Bowsher@troutman.com>
**Subject:** FW: 1430Q Received Org Docs

Hi Matt,

I reviewed the due diligence documents. Please see my comments below. The org docs do not match our org chart.

- Argosy Real Estate Income & Growth I, L.P.
o      In the intro of the operating agreement, the general partner is Argosy Real Estate Income & Growth I, GP, LP. However, Argosy Real Estate Income & Growth I, GP, LLC is listed in the org chart.
- ARIG I Investor GP, LLC
o      In the operating agreement, the manager is Argosy Real Estate Income & Growth I, L.P. In the org chart, ARIG I Investor, L.P. is the manager.

**Gita F. Sankano**
**Associate**
troutman **pepper**
Direct: 202.220.1251 ⁝ Internal: 803-1251
gita.sankano@troutman.com

**From:** Veronica Veraldi <vveraldi@walkerdunlop.com>
**Sent:** Monday, February 7, 2022 2:27 PM
**To:** Bowsher, Matthew R. <Matthew.Bowsher@Troutman.com>; Sankano, Gita F. <Gita.Sankano@Troutman.com>
**Subject:** FW: 1430Q Received Org Docs

**EXTERNAL SENDER**

FYI

App.G-Bowsher-Ex.25

Troutman_00009750

Veronica Veraldi
SVP & GSE Closing Manager | GSE Closing
**Walker & Dunlop**
P: 301-215-5562
vveraldi@walkerdunlop.com

**From:** Dillon Hoffman <DHoffman@walkerdunlop.com>
**Sent:** Monday, February 7, 2022 2:23 PM
**To:** Veronica Veraldi <vveraldi@walkerdunlop.com>
**Cc:** Colin Barnard <CBarnard@walkerdunlop.com>
**Subject:** 1430Q Received Org Docs

Veronica,

Please see attached the received org docs for 1430Q. Let us know if you have any questions.

Thank you,


Dillon Hoffman
Analyst | GSE Underwriting
**Walker & Dunlop**
2010 Main Street, Suite 1100 Irvine, CA 92614
P: 949-208-8447 M: 949-726-2956
DHoffman@walkerdunlop.com

*Use our web site to* **send me a file** *over 20MB.*

Follow Us:
LinkedIn | Facebook | Twitter | Instagram | YouTube



https://www.walkerdunlop.com/contact-us/email-disclaimer/

App.G-Bowsher-Ex.25

Troutman_00009751

| | |
|---|---|
| **From:** | Bowsher, Matthew R. [/O=TROUTMANSANDERS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=99D8D2CBA40440EFA576623B7A8765CF-BOWSHER,] |
| **Sent:** | 6/2/2022 10:57:34 AM |
| **To:** | Sankano, Gita F. [/o=TroutmanSanders/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=Gita.Sankano] |
| **Subject:** | RE: Estates at Palm Bay - Comments to Commitment |

Great catch, thanks for telling me this.  I will take care of this.


## Matthew R. Bowsher
**Partner**
troutman **pepper**
Office: 202.274.1939 ǀ Mobile: 301.512.0423
matthew.bowsher@troutman.com

**From:** Sankano, Gita F. <Gita.Sankano@troutman.com>
**Sent:** Thursday, June 2, 2022 10:52 AM
**To:** Bowsher, Matthew R. <Matthew.Bowsher@troutman.com>
**Subject:** RE: Estates at Palm Bay - Comments to Commitment

One last thing. I didn't draft the LIA. However,  I wanted to point out that the LIA is listed as a pre-rate lock condition.

## Gita F. Sankano
**Associate**
troutman **pepper**
Direct: 202.220.1251 ǀ Internal: 803-1251
gita.sankano@troutman.com


**From:** Sankano, Gita F.
**Sent:** Thursday, June 2, 2022 10:45 AM
**To:** Bowsher, Matthew R. <Matthew.Bowsher@Troutman.com>
**Subject:** Estates at Palm Bay - Comments to Commitment

Hi Matt,

Please see my comments to the commitment. Please let me know your thoughts!!

Thanks.

## Gita F. Sankano
**Associate**
Direct: 202.220.1251 ǀ Internal: 803-1251
gita.sankano@troutman.com

troutman **pepper**
401 9th Street, NW, Suite 1000
Washington, DC  20004
troutman.com

Troutman Pepper is a 2021 Mansfield Certified Plus Firm

App.G-Bowsher-Ex.25

Troutman_00009770

| | |
|---|---|
| **From**: | Bowsher, Matthew R. [/O=TROUTMANSANDERS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=99D8D2CBA40440EFA576623B7A8765CF-BOWSHER,] |
| **Sent**: | 6/8/2022 11:25:25 PM |
| **To**: | Sankano, Gita F. [/o=TroutmanSanders/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=Gita.Sankano] |
| **Subject**: | RE: Estates at Palm Bay - Legal Due Diligence Checklist |

Well look at you!  Nice work.


# Matthew R. Bowsher
**Partner**
~~troutman~~ **pepper**
Office: 202.274.1939 ¦ Mobile: 301.512.0423
matthew.bowsher@troutman.com

**From:** Sankano, Gita F. <Gita.Sankano@troutman.com>
**Sent:** Wednesday, June 8, 2022 7:38 PM
**To:** Lee, Esther <elee@winstead.com>; Swope, Tobin <tswope@winstead.com>
**Cc:** Bowsher, Matthew R. <Matthew.Bowsher@troutman.com>
**Subject:** Estates at Palm Bay - Legal Due Diligence Checklist

## Target Closing Date: June 9, 2022


<u>Legal Due Diligence</u>
-        Updated Pro forma – **NEED**
-        Draft Opinion Letter(s) (**in the forms provided**)
1.            Borrower
1.                    Delaware- **IN; Need executed copy for closing**
2.                    DE single-member LLC- **IN; Need executed copy for closing**
3.                    FL – **IN; Need executed copy for closing**
2.            Guarantor (FL) – **IN; Need executed copy for closing**
3.            Non-Con Opinion Letter – **Under Review**
-        Organizational Documents (Borrower/Guarantor and their sub-entities):
1.        <u>Lurin Real Estate Holdings VI, LLC</u>
**1.**            A&R Operating Agreement -  **IN; Need executed copy for closing**


<u>Closing Coordination</u>
-        Executed Escrow Letter from Title – **NEED (after receipt of original recording package)**
-        Certified Record Documents from Title – **NEED**
-        Fully Executed Settlement Statement – **NEED**

Please forward each item as soon as it is available.

Thanks,
Gita


# Gita F. Sankano
**Associate**

App.G-Bowsher-Ex.25

Troutman_00004726

Direct: 202.220.1251 ⫶ Internal: 803-1251
gita.sankano@troutman.com

troutman **pepper**
401 9th Street, NW, Suite 1000
Washington, DC  20004
troutman.com

Troutman Pepper is a 2021 Mansfield Certified Plus Firm

App.G-Bowsher-Ex.25

Troutman_00004727

| | |
|---|---|
| **From:** | Mufarrige, Kelly A.[/O=TROUTMANSANDERS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=F580B034C11A44D096A73ECAACE804BC-MUFARRIG] |
| **Sent:** | Tue 11/8/2022 9:44:25 AM (UTC-05:00) |
| **To:** | Bowsher, Matthew R.[Matthew.Bowsher@troutman.com] |
| **Subject:** | RE: Mosaic Dallas, Amesbury Court, Wellington Apartments (Abacus) - Freddie Mac Conventional |

I agree with the below…it's hard because I want to put her on more deals so that she can gain more experience but then I sometimes regret that because she doesn't produce the work product that I'd expect from someone at her level.

If I don't use Gita then I'll use Drolma.I don't think this is a good fit for Cristina (she needs to get a handle on plain vanilla Freddie first).Obviously Drolma requires handholding too and I'm sure she'll bill more time than someone with a bit more experience but I at least feel like there will be a payoff in the long run with Drolma.

**Kelly A. Mufarrige**
Associate
**troutman** pepper
Direct: 202.274.2921 | Mobile: 703.405.9142
kelly.mufarrige@troutman.com

---

**From:** Bowsher, Matthew R. <Matthew.Bowsher@troutman.com>
**Sent:** Tuesday, November 8, 2022 12:11 AM
**To:** Mufarrige, Kelly A. <Kelly.Mufarrige@troutman.com>
**Subject:** RE: Mosaic Dallas, Amesbury Court, Wellington Apartments (Abacus) - Freddie Mac Conventional

… totally forgot to address your other question, i.e. whether to use Gita.I saw her email, thought of ways to try to use her, and I must admit that putting her on 3 credit facility additions was not what I had in mind.'s just not sharp, Kelly.It's been a couple years now, and she's not getting better, her work product and her thought process/analysis are just not good.And the kicker is that she's either grossly inefficient or she totally inflates her timesheet, as two years after our first deal together she still bills 40 hours to do a plain vanilla deal that you and Ari and Kimmie were all doing in 25 hours when you were at her same experience level (or less), and ironically you all required far less of my time than she does.She's insanely responsive, super focused on keeping the deal moving forward, excellent at pressing folks for open items, she's got a great attitude, and she does try in her own way to be conscientious, so she absolutely brings something to the table, don't get me wrong, but at the end of the day her final product is consistently cringy and she blows-up the invoice.that said, not unlike your admirably bold choice to staff a 46-loan MHC crossed pool with two juniors who barely knew how to close a Freddie loan, I do have supreme faith in your judgement and in your ability to get the deals done and to oversee her, so I'll certainly go along with it if that's your preference, I'm just letting you know she's on a very short leash as far as I'm concerned, and we cannot let her make us look bad in front of Mona and Kris and their biggest client.

**Matthew R. Bowsher**
Partner
**troutman** pepper
Office: 202.274.1939 | Mobile: 301.512.0423
matthew.bowsher@troutman.com

**From:** Bowsher, Matthew R.
**Sent:** Monday, November 7, 2022 11:30 PM
**To:** Mufarrige, Kelly A. <Kelly.Mufarrige@troutman.com>
**Subject:** RE: Mosaic Dallas, Amesbury Court, Wellington Apartments (Abacus) - Freddie Mac Conventional

Yes, they're going into the Fund VI facility.recently closed the seed on that while you were on leave, it was called Sendero Ridge (JLL 649).Nice that Kris copied you directly, makes it less awkward for me to assign these to you rather than to Ari; you've always handled the Abacus facilities, so I fully intended to have you do the additions to this new

App.G-Bowsher-Ex.26

facility upon your return, and Kris's email avoids an awkward switch in front of the client.
The new Fund VI facility was based entirely on the Fund V facility that you handled, no difference except for the economics/fees, as I recall.However, remember we're no longer dealing with Emanuel, he left Cadwalader, so, assuming Freddie is still using Cadwalader, our contact there is Teresa ("Teri") Long, but I'll check with Freddie first, as there was some buzz that Freddie might shift to use Reiferson instead.Teri/Cadwalader was GROSSLY overpriced considering how little she brought to the table in terms of experience/knowledge/leadership; both Sidarth and Jeremy were holding her hand following the transition away from Emanuel, and so was I, yet she still charged INSAAAAANE fees, and this was not lost on Freddie.
Incidentally, Blank Rome (not Sklar Kirsch) closed Sendero Ridge.'ll recall that Sklar Kirsch did handle Advenir at Central Park which was a Fund V Facility addition, so you might think Sklar knows how to handle a credit facility addition… but you'd be wrong, because that deal was handled by an attorney who is no longer with Sklar (Daniel Katz), meaning this is effectively their first credit facility deal.This just adds insult to injury over the fact that Abacus is splitting these deals between two firms.
Ari opened the matter for the Fund IV Facility, and naturally he put himself as 30% Matter Responsible, and the Matter Assigned.Normally we use the same client/matter for all loans in the same facility, or at least that's what we did for Fund V.But that's not gonna work if you're handing all subsequent additions to this Facility.So I think we need to open a new client/matter for this… which means we'll have separate deal folders for the various Fund VI Facility deals, but I don't see a way around it.Let me know if you see a solution that I'm not seeing.when we open the new client/matter, we can just add a separate deal subfolder titled "Sendero Ridge (see JLL 649)", to avoid any confusion as to where to find the seed loan.

## Matthew R. Bowsher
**Partner**
troutman pepper
Office: 202.274.1939 | Mobile: 301.512.0423
matthew.bowsher@troutman.com
**From:** Mufarrige, Kelly A. <Kelly.Mufarrige@troutman.com>
**Sent:** Monday, November 7, 2022 9:08 PM
**To:** Bowsher, Matthew R. <Matthew.Bowsher@troutman.com>
**Subject:** FW: Mosaic Dallas, Amesbury Court, Wellington Apartments (Abacus) - Freddie Mac Conventional
Are these all going in Fund VI?Gita mentioned she's light on deals.Okay to include her on these? Also that's soooo annoying that they have different counsel.

## Kelly A. Mufarrige
**Associate**
troutman pepper
Direct: 202.274.2921 | Mobile: 703.405.9142
kelly.mufarrige@troutman.com

---

**From:** Franzen, Sydney <Sydney.Franzen@jll.com>
**Sent:** Monday, November 7, 2022 2:16 PM
**To:** JLL REC Production - FM Application Received <JLLRECProduction-FMApplicationReceived@am.jll.com>
**Cc:** Lowe, Kris <Kris.Lowe@jll.com>; Carlton, Mona <Mona.Carlton@jll.com>; Goldberg, Lucas <Lucas.Goldberg@jll.com>; Huggins, Foster <Foster.Huggins@jll.com>; McCarren, Patrick <Patrick.McCarren@jll.com>; Bowsher, Matthew R. <Matthew.Bowsher@troutman.com>; Mufarrige, Kelly A. <Kelly.Mufarrige@troutman.com>
**Subject:** Mosaic Dallas, Amesbury Court, Wellington Apartments (Abacus) - Freddie Mac Conventional
**EXTERNAL SENDER**

**FOR INTERNAL DISTRIBUTION ONLY**
The following three Freddie Mac deals are Abacus Credit Facility deals – thus no application is provided.
Mosaic Dallas
**LENDER DEAL TEAM**

| | |
|---|---|
| Closer Contact | Patrick McCarren |
| | (713) 852-3413 |
| | Patrick.McCarren@jll.com |
| JLL Counsel | Matthew Bowsher, Kelly Muffarige – Troutman Pepper |
| Producer/Initial Lead | Mona Carlton, Kris Lowe |
| Production Analysts | Lucas Goldberg, Foster Huggins |
| Closing Analyst/Processor | Sydney Franzen |

| **TRANSACTION TIMING** | |
|---|---|
| Loan Amount | $60,368,000 |
| Loan Purpose | Acquisition |
| Application Rec'd Date | N/A |
| Submission Date | 11/16/2022 |
| Anticipated Closing Date | 12/14/2022 |

---

**Amesbury Court**

| **LENDER DEAL TEAM** |
|---|
| **Same as above** |

| **TRANSACTION TIMING** | |
|---|---|
| Loan Amount | $11,396,000 |
| Loan Purpose | Acquisition |
| Application Rec'd Date | N/A |
| Submission Date | 11/16/2022 |
| Anticipated Closing Date | 12/14/2022 |

**Wellington Apartments**

| **LENDER DEAL TEAM** |
|---|
| **Same as above** |

| **TRANSACTION TIMING** |
|---|

| Loan Amount | $TBD |
| Loan Purpose | Acquisition |
| Application Rec'd Date | N/A |
| Submission Date | 11/16/2022 |
| Anticipated Closing Date | 12/14/2022 |

Best,

**SydneyFranzen**

Analyst-

JLL

4200
Suite

Houston,TX77027

T+1

M+1

Sydney.Franzen@jll.com

us.jll.com/capitalmarkets



**One of the 2022 World's Most Ethical Companies®**

Jones Lang LaSalle

For more information about how JLL processes your personal data, please click here

This email is for the use of the intended recipient(s) only. If you have received this email in error, please notify the sender immediately and then delete it. If you are not the intended recipient, you must not keep, use, disclose, copy or distribute this email without the author's prior permission. We have taken precautions to minimize the risk of transmitting software viruses, but we advise you to carry out your own virus checks on any attachment to this message. We cannot accept liability for any loss or damage caused by software viruses. The information contained in this communication may be confidential and may be subject to the attorney-client privilege. If you are the intended recipient and you do not wish to receive similar electronic messages from us in the future then please respond to the sender to this effect.

App.G-Bowsher-Ex.26

Troutman_00006273

2022 Associate Evaluation

**Evaluatee:** Gita F Sankano

| | | | | 10 completed | 1 declined |

📄 **Matter Report**

| Evaluator | Client | Matter | Comments | Hours |
|---|---|---|---|---|
| <Unassigned> | Berkadia Commercial Mortgage LLC (215247) | Asmp/ReNew One Eleven, AZ/FHLMC (008288) | | 21.00 |
| | | Ln/SummerTree & Mason Manor, AL/FNMA (008388) | | 10.20 |
| | | Loan on Rivercroft & Haverford, DE/FNMA (008413) | | 13.30 |
| | | Loan on Rosemore Gardens, PA/FHLMC (008820) | | 10.10 |
| | | Loan on Stirling Court Apts, NJ/FHLMC (008821) | | 10.00 |
| | | Loan on Summit Park, PA/FNMA (008851) | | 14.80 |
| | | Loan on Sunchase Longwood, VA/FNMA/ACQ (008992) | | 13.20 |
| | | Loan on Walnut Creek & Valley, KY/FNMA (008461) | | 13.30 |
| | | Supp/Glen at Lewisville, TX/FHLMC (008710) | | 13.80 |
| | | Supp/Glen at North Creek, WA/FHLMC (008652) | | 20.60 |
| | | Supp/Pillar Portfolio (16)/FHLMC (008937) | | 18.30 |
| | | Svcng/Downtown 5th, FL/FHLMC (008909) | | 17.90 |
| | Grandbridge Real Estate Capital LLC (230736) | Ln/Carpenter Village&Commons/FHLMC/FRED (000511) | | 13.60 |
| | | Loan on Franklin School, MT/FNMA (000562) | | 18.00 |
| | | Loan on Yuba Gardens Apartments, CA/FNMA (000586) | | 24.40 |
| | | Supp/Elevate Brier Creek, NC/FHLMC (000572) | | 18.10 |
| | | Supp/Meridian at Sutton Square, NC/FHLMC (000542) | | 22.00 |
| | | Svcg/Gulfshore Apartments (000576) | | 11.70 |
| | Greystone Servicing Company, LLC (023889) | Loan on Heights at 2121, TX/FNMA (000895) | | 14.90 |
| | Jones Lang LaSalle (018413) | Loan on Point at Bella Grove, FL/FHLMC (000667) | | 11.20 |
| | | Loan on Redbud Estates, KS/FHLMC/MH (000669) | | 11.30 |
| | | Supp/Andorra Point, PA/FHLMC (000613) | | 27.50 |
| | | Supp/Confluence at Three Springs,CO (000625) | | 13.70 |
| | JP Morgan Chase, N.A. (Multifamily Lendi (260314) | Loan on Roosevelt Townhomes, CA/FNMA (000009) | | 12.80 |
| | KeyBank National Association (033631) | Loan on Halstead Manchester, NH/FHLMC (000852) | | 23.70 |
| | | Loan on Meadowbrook MHC, WA/FNMA/MH (000801) | | 38.90 |
| | | Loan on Pointe at Irving Park, NC/FNMA (000855) | | 13.40 |

<span style="color:red">App.G-Bowsher-Ex.27</span>

| Evaluator | Client | Matter | Comments | Hours |
|---|---|---|---|---|
| | | Loan on ReNew Creve Coeur, MO/FNMA (000795) | | 21.20 |
| | | Loan on Villa Lago Apartments, TX/FHLMC (000856) | | 11.40 |
| | | Supp/Arcadia Cove, AZ/FHLMC (000807) | | 17.90 |
| | | Supp/Denim Scottsdale, AZ/FNMA (000879) | | 11.70 |
| | | Supp/Glen at Mesa, AZ/FNMA (000804) | | 13.40 |
| | | Supp/Rembrandt Park Apts, ID/FNMA (000777) | | 13.20 |
| | | Supp/Water's Edge, FL/FHLMC (000841) | | 12.30 |
| | | Svcng/Harmony Housing I/FNMA (000850) | | 10.50 |
| | Newmark Knight Frank (222688) | Ln/The Villages at City Center, VA/FHLMC (001398) | | 29.20 |
| | | Svcng/Gull Harbor, FL/FNMA (001160) | | 26.50 |
| | ORIX Real Estate Capital, LLC (033737) | Ln/Alta Verde Workforce Housing, CO/FNMA (000683) | | 20.80 |
| | Prudential Multifamily Mortgage, Inc. (213529) | Asmp/Pinnacle on Pleasant, OH/FNMA (001611) | | 19.40 |
| | | Asmp/Villages (4), KY/FNMA (001650) | | 13.40 |
| | | Loan on Timber Court, IL/FNMA (001661) | | 16.70 |
| | | Supp/Lake Lucerne Towers, FL/FHLMC (001660) | | 26.50 |
| | | Supp/Northern Cross, TX/FHLMC (001625) | | 24.70 |
| | Walker & Dunlop, LLC (028516) | Ln/Broadstone Southside Apts, TX/FNMA (002324) | | 10.10 |
| | | Loan on Cromwell at Plum Creek TX/FNMA (002364) | | 15.60 |
| | | Loan on Homestead Gardens, NJ/FHLMC (002504) | | 17.50 |
| | | Loan on Top of the Hill, DE/FHLMC (002503) | | 16.50 |
| | | Supp/Florin Hill Apartments, PA/FNMA (002530) | | 15.30 |
| Bojorquez, Jennifer A | Capital One Multifamily Finance, LLC (239272) | Ln/Spruce Kansas City 2 pack, MO/FHLMC (001612) | | 54.90 |
| Bowsher, Matthew R | Jones Lang LaSalle (018413) | Loan on Estates at Palm Bay, FL/FHLMC (000594) | | 36.20 |
| | Newmark Knight Frank (222688) | Loan on Venetian on Ella, TX/FHLMC (001397) | | 27.20 |
| | Walker & Dunlop, LLC (028516) | Loan on 1430Q, CA/FHLMC (002422) | | 58.70 |
| Burke, Natalie A | Berkadia Commercial Mortgage LLC (215247) | Svcng/Alpha Mill, NC/FNMA (008646) | | 39.00 |
| | Capital One Multifamily Finance, LLC (239272) | Ln/Spruce Kansas City 2 pack, MO/FHLMC (001612) | | 54.90 |
| Crawford, Lindsey | Greystone Servicing Company, LLC (023889) | Asmp/CONTI Portfolio (21)/FNMA (000814) | | 41.00 |
| | KeyBank National Association (033631) | Asmp/Mebane Ridge Asst Lvng, NC/FNMA/SR (000781) | | 47.70 |
| | | Loan on NPM Rochester 8 Pool, NY/FNMA (000773) | | 80.10 |

App.G-Bowsher-Ex.27

| Evaluator | Client | Matter | Hours |
|---|---|---|---|
| | | Loan on Pebblebrooke Villas, KS/FNMA (000812) | 34.20 |
| | | Loan on Rocky Glen MHC, WV/FNMA/MH (000818) | 44.00 |
| | | Supp/Westport Portfolio (3), KS/FNMA (000845) | 43.80 |
| | Prudential Multifamily Mortgage, Inc. (213529) | Supp/Pinnacle on Pleasant, OH/FNMA (001637) | 29.10 |
| | Walker & Dunlop, LLC (028516) | Supp/3310 Apartment Homes, CA/FNMA (002467) | 26.30 |
| Ebi, Ari | Grandbridge Real Estate Capital LLC (230736) | Loan on Addison Point, NC/FHLMC (000568) | 28.10 |
| | KeyBank National Association (033631) | Asmp/Mebane Ridge Asst Lvng, NC/FNMA/SR (000781) | 47.70 |
| | | Loan on NPM Rochester 8 Pool, NY/FNMA (000773) | 80.10 |
| Loughran, Whitney D | KeyBank National Association (033631) | Loan on Riverwalk Lofts, MA/FHLMC (000808) | 25.60 |
| | | Loan on The Collection Midtown, VA/FNMA (000836) | 28.70 |
| McPherson, David J | Walker & Dunlop, LLC (028516) | Loan on Skyline Trinity, TX/FNMA (002382) | 26.30 |
| Mufarrige, Kelly A | Capital One Multifamily Finance, LLC (239272) | Loan on The Alden South Hills, PA/FHLMC (001477) | 27.20 |
| | Jones Lang LaSalle (018413) | Loan on Estates at Palm Bay, FL/FHLMC (000594) | 36.20 |
| Nickel, Nora G | CBRE Capital Markets, Inc. (032105) | Supp/Liv Ahwatukee, AZ/FHLMC (002974) | 33.30 |
| | | Supp/Liv Northgate, AZ/FHLMC (002975) | 47.10 |
| | | Svcng/LIV Northgate, AZ/FHLMC (003113) | 16.80 |
| Popoola, Lanre A | Arbor Commercial Mortgage, LLC (216000) | Ln/ San Tropez Apartments, NV/ FNMA (001123) | 10.30 |
| | | Ln/Chicago Emerald Port, IL /FNMA DUS (001140) | 12.30 |
| | | Loan on Diamond Townhomes, SC/FNMA (001105) | 16.80 |
| | | Supp/ Haven Hill Exchange, GA/FNMA DUS (001129) | 11.60 |
| Sidarth, S.R. | Grandbridge Real Estate Capital LLC (230736) | Loan on Addison Point, NC/FHLMC (000568) | 28.10 |
| | KeyBank National Association (033631) | Ln/Governors House Apts, IL/FHLMC/FRED (000817) | 28.50 |
| Strup, Peter D | Berkadia Commercial Mortgage LLC (215247) | Loan on Champion's Walk Apts, FL/FHLMC (008755) | 39.90 |
| | | Loan on Sea Aire Apartments, NJ/FHLMC (008713) | 40.10 |

## Extent of Contact and Supervision

### Extent of contact

- I worked with this associate extensively during this evaluation cycle.

App.G-Bowsher-Ex.27

- Crawford, Lindsey
- Loughran, Whitney D
▪ I worked with this associate a moderate amount during this evaluation cycle.
- Bowsher, Matthew R
- Ebi, Ari
- Mufarrige, Kelly A
- Strup, Peter D
▪ I worked with this associate briefly during this evaluation cycle.
- Bojorquez, Jennifer A
- Nickel, Nora G
- Popoola, Lanre A
- Sidarth, S.R.

## Associate Performance: Rating Scale

On the following pages, please rate how well the associate is performing each of the skills in the following associate performance areas. If you have not directly observed this skill, please select N/A.

**Rating Scale:**
**5 – Stellar performance and consistently exceeds expectations.**
**4 – Above average and often exceeds expectations**
**3 – Satisfactory performance and meets expectations for class year**
**2 – Needs improvement and does not meet expectations for class year**
**1 – Consistently and significantly underperforming**
**N/A – not observed**

## Associate Performance: Legal Skills

Please rate how well the associate is performing each of the following skills. If you have not directly observed this skill, please select N/A.

**Knowledge & Expertise** - Demonstrates an appropriate understanding of their area of law. Answers level-appropriate questions clearly and with certainty.
**Research & Analysis** - Provides thorough and complete analyses, demonstrating a clear understanding of the issues.
**Professional Judgment** - Identifies and prioritizes issues and provides practical solutions and approaches.
**Practice Experience** - Associate has gained practical experience in their area of focus and seeks out additional opportunities to enhance skillset.

## Knowledge & Expertise

▪ 4
- Ebi, Ari
- Loughran, Whitney D
- Mufarrige, Kelly A
- Nickel, Nora G
▪ 3
- Bojorquez, Jennifer A
- Bowsher, Matthew R
- Crawford, Lindsey
- Popoola, Lanre A
- Strup, Peter D
▪ 2
- Sidarth, S.R.

## Research & Analysis

▪ 5
- Loughran, Whitney D

App.G-Bowsher-Ex.27

Troutman_00000488

- 4
  - Bojorquez, Jennifer A
  - Mufarrige, Kelly A
  - Nickel, Nora G
- 3
  - Bowsher, Matthew R
  - Crawford, Lindsey
  - Ebi, Ari
  - Popoola, Lanre A
  - Strup, Peter D
- 2
  - Sidarth, S.R.

## Professional Judgment

- 4
  - Bowsher, Matthew R
  - Ebi, Ari
  - Loughran, Whitney D
  - Mufarrige, Kelly A
  - Nickel, Nora G
- 3
  - Bojorquez, Jennifer A
  - Crawford, Lindsey
  - Popoola, Lanre A
  - Sidarth, S.R.
  - Strup, Peter D

## Practice Experience

- 5
  - Bowsher, Matthew R
- 4
  - Crawford, Lindsey
  - Ebi, Ari
  - Loughran, Whitney D
  - Mufarrige, Kelly A
  - Nickel, Nora G
- 3
  - Bojorquez, Jennifer A
  - Popoola, Lanre A
  - Sidarth, S.R.
  - Strup, Peter D

App.G-Bowsher-Ex.27

**Associate Performance: Professional Skills**

Please rate how well the associate is performing each of the following skills. If you have not directly observed this skill, please select N/A.

**Written Communication** - Communication is clear, concise, and well-organized.
**Oral Communication** - Communication is clear, concise, and well-organized.
**Time & Project Management** - Completes assignments within applicable budgeted time constraints and balances priorities.
**Critical Thinking & Problem Solving** - Assimilates, analyzes and synthesizes complex information.

### Written Communication (including legal writing, drafting and professional writing skills)

- 4
  - Loughran, Whitney D
  - Mufarrige, Kelly A
  - Nickel, Nora G
- 3
  - Bojorquez, Jennifer A
  - Bowsher, Matthew R
  - Crawford, Lindsey
  - Ebi, Ari
  - Popoola, Lanre A
  - Sidarth, S.R.
  - Strup, Peter D

### Oral Communication

- 5
  - Crawford, Lindsey
  - Loughran, Whitney D
  - Mufarrige, Kelly A
- 4
  - Bowsher, Matthew R
  - Nickel, Nora G
- 3
  - Bojorquez, Jennifer A
  - Popoola, Lanre A
  - Strup, Peter D
- N/A
  - Ebi, Ari
  - Sidarth, S.R.

### Time & Project Management

- 5
  - Bowsher, Matthew R
  - Ebi, Ari
  - Loughran, Whitney D
  - Sidarth, S.R.
- 4
  - Bojorquez, Jennifer A
  - Crawford, Lindsey
  - Mufarrige, Kelly A
  - Nickel, Nora G
- 3
  - Popoola, Lanre A
  - Strup, Peter D

### Critical Thinking & Problem Solving

- 4

App.G-Bowsher-Ex.27

Troutman_00000490

  - Mufarrige, Kelly A
  ▪ 3
    - Bojorquez, Jennifer A
    - Bowsher, Matthew R
    - Crawford, Lindsey
    - Nickel, Nora G
    - Popoola, Lanre A
    - Strup, Peter D
  ▪ 2
    - Sidarth, S.R.
  ▪ N/A
    - Ebi, Ari


**Associate Performance: Accountability & Ownership**

Please rate how well the associate is performing each of the following skills. If you have not directly observed this skill, please select N/A.

**Ownership of Matters** - Takes accountability for quality and timeliness of work product and provides proactive status updates.
**Collaboration** - Works well with others and demonstrates courtesy and professionalism in interactions with all clients and firm personnel.
**Dependability** - Fulfills responsibilities and meets deadlines.
**Responsiveness** - Responds to emails and phone calls promptly and professionally.
**Delegation & Management** - Understands the importance of leverage and utilizes resources appropriately.

**Ownership of Matters**

  ▪ 5
    - Loughran, Whitney D
    - Mufarrige, Kelly A
  ▪ 4
    - Bowsher, Matthew R
    - Crawford, Lindsey
    - Ebi, Ari
    - Nickel, Nora G
  ▪ 3
    - Popoola, Lanre A
    - Sidarth, S.R.
    - Strup, Peter D
  ▪ N/A
    - Bojorquez, Jennifer A

**Collaboration**

  ▪ 5
    - Loughran, Whitney D
    - Mufarrige, Kelly A
  ▪ 4
    - Bojorquez, Jennifer A
    - Crawford, Lindsey
    - Ebi, Ari
    - Nickel, Nora G
  ▪ 3
    - Bowsher, Matthew R
    - Popoola, Lanre A
    - Sidarth, S.R.
    - Strup, Peter D

App.G-Bowsher-Ex.27

**Dependability**

- 5
  - Bowsher, Matthew R
  - Loughran, Whitney D
  - Mufarrige, Kelly A
  - Sidarth, S.R.
- 4
  - Bojorquez, Jennifer A
  - Crawford, Lindsey
  - Ebi, Ari
  - Nickel, Nora G
- 3
  - Popoola, Lanre A
  - Strup, Peter D

## Responsiveness

- 5
  - Bowsher, Matthew R
  - Crawford, Lindsey
  - Ebi, Ari
  - Loughran, Whitney D
  - Mufarrige, Kelly A
  - Sidarth, S.R.
- 4
  - Bojorquez, Jennifer A
  - Nickel, Nora G
- 3
  - Popoola, Lanre A
  - Strup, Peter D

## Delegation & Management

- 5
  - Bowsher, Matthew R
  - Loughran, Whitney D
  - Mufarrige, Kelly A
- 3
  - Popoola, Lanre A
  - Sidarth, S.R.
  - Strup, Peter D
- N/A
  - Bojorquez, Jennifer A
  - Crawford, Lindsey
  - Ebi, Ari
  - Nickel, Nora G

**Associate Performance: Client Service & Business Acumen**

Please rate how well the associate is performing each of the following skills. If you have not directly observed this skill, please select N/A.

**Commitment to Client Care** - Strives to impress clients in all interactions and through quality of work.
**Firm Operations** - Understands firm resources and practices, and adheres to firm policies and protocols.
**Resourcefulness & Efficiency** - Meets or beats deadlines; consistently looks for ways to improve or add value.
**Contributes to expanding or developing work with existing and new clients** - Shows a commitment

App.G-Bowsher-Ex.27

## Commitment to Client Care

- 5
  - Crawford, Lindsey
  - Loughran, Whitney D
  - Mufarrige, Kelly A
- 4
  - Bojorquez, Jennifer A
  - Ebi, Ari
  - Nickel, Nora G
  - Sidarth, S.R.
- 3
  - Bowsher, Matthew R
  - Popoola, Lanre A
  - Strup, Peter D

## Firm Operations

- 5
  - Bowsher, Matthew R
  - Loughran, Whitney D
  - Strup, Peter D
- 4
  - Mufarrige, Kelly A
  - Nickel, Nora G
  - Sidarth, S.R.
- N/A
  - Bojorquez, Jennifer A
  - Crawford, Lindsey
  - Ebi, Ari
  - Popoola, Lanre A

## Resourcefulness & Efficiency

- 5
  - Bowsher, Matthew R
  - Loughran, Whitney D
- 4
  - Bojorquez, Jennifer A
  - Crawford, Lindsey
  - Ebi, Ari
  - Mufarrige, Kelly A
  - Nickel, Nora G
  - Sidarth, S.R.
- 3
  - Popoola, Lanre A
  - Strup, Peter D

## Contributes to expanding or developing work with existing and new clients

- 5
  - Loughran, Whitney D
- 4
  - Crawford, Lindsey
  - Mufarrige, Kelly A
  - Nickel, Nora G
- 3
  - Bojorquez, Jennifer A
  - Bowsher, Matthew R

App.G-Bowsher-Ex.27

- Popoola, Lanre A
  - Strup, Peter D
- 2
  - Sidarth, S.R.
- N/A
  - Ebi, Ari


**Associate Performance: Firm & Community Service**

Please rate how well the associate is performing each of the following skills. If you have not directly observed this skill, please select N/A.

**Pro Bono** - Actively participates in pro bono matters.
**Firm Citizenship** - Actively participates in firm and community activities.
**DEI Commitment** - Welcomes different ideas and viewpoints, supports colleagues, and shows respect to everyone at the firm. Participates in programs that promote diversity and inclusion.

### Pro Bono

- 5
  - Ebi, Ari
  - Loughran, Whitney D
  - Sidarth, S.R.
- N/A
  - Bojorquez, Jennifer A
  - Bowsher, Matthew R
  - Crawford, Lindsey
  - Mufarrige, Kelly A
  - Nickel, Nora G
  - Popoola, Lanre A
  - Strup, Peter D

### Firm Citizenship

- 5
  - Ebi, Ari
  - Loughran, Whitney D
  - Sidarth, S.R.
- 3
  - Nickel, Nora G
- N/A
  - Bojorquez, Jennifer A
  - Bowsher, Matthew R
  - Crawford, Lindsey
  - Mufarrige, Kelly A
  - Popoola, Lanre A
  - Strup, Peter D

### DEI Commitment

- 5
  - Bowsher, Matthew R
  - Ebi, Ari
  - Loughran, Whitney D
- 3
  - Nickel, Nora G
  - Sidarth, S.R.
- N/A
  - Bojorquez, Jennifer A
  - Crawford, Lindsey

App.G-Bowsher-Ex.27

## Associate Performance: Commentary

### Please describe the contributions the associate made to the Firm's success this past year.

| | |
|---|---|
| - Bojorquez, Jennifer A | My work with Gita is limited. She is very eager to do work and learn the MFH practice. Gita also has a great attitude. |
| - Bowsher, Matthew R | Gita is exceptionally responsive, beyond compare. New matters are opened immediately, checklists issued immediately, LIAs are always drafted long before they're due, as are loan docs. She's also excellent about following-up on needed items; whereas many associates at her level often issue the checklist and call it a day, Gita proactively follows-up on specific items she needs. |
| - Crawford, Lindsey | Gita is a super hard worker, she is very organized and stays on top of all tasks. Clients give her rave reviews. |
| - Ebi, Ari | Gita is well-organized, capable, and committed to improving her practice. She tackles difficult issues with aplomb, asks questions and studies materials in order to ensure she is gaining knowledge in the practice area, and is a great firm citizen with involvement in client matters, pro bono matters, and diversity initiatives. I look forward to seeing how she continues to develop as a mid-level associate! |
| - Loughran, Whitney D | Gita is my go to associate for the majority of my matters. She is always responsive and quick to get projects done. She is communicative with me in the event her assignments will be delayed and doesn't leave me wondering where she is. We've also had the opportunity to meet several of our clients this year and she is warm, inviting and personable. She also has found time for participation in pro bono matters. Finally, I know Gita has had a few tough personal matters to work through this year and as someone who knows intimately how hard it is to balance, she handled those situations with grace and professionalism. |
| - Mufarrige, Kelly A | Gita has always been extremely helpful and enjoyable to work with. She's very responsive and clients like her. |
| - Nickel, Nora G | Gita's attitude on deals is great. She's always eager to help and learn. I've enjoyed working on a couple hairy deals with her. They definitely tested patience and Gita has a lot of it! |
| - Popoola, Lanre A | N/A |
| - Sidarth, S.R. | I worked less with Gita over the past year than in the prior 12 months -- we brought in a couple of more junior associates with whom I worked more closely. She is a team player who has been willing to pitch in as I have gotten very busy late in the year. |
| - Strup, Peter D | Gita has helped with a good number of transactions this year and made meaningful contributions to getting them closed. |

## Comments (cont'd)

### What does this associate do really well?

| | |
|---|---|
| - Bojorquez, Jennifer A | Gita is very responsive and eager to learn the practice. |
| - Bowsher, Matthew R | See prior comment; her best attribute is her responsiveness, her natural desire to stay ahead of the curve, and to get things done well in advance |

App.G-Bowsher-Ex.27

Troutman_00000495

area. Gita deadline. I've relied on Gita during litigations as exceptional in this

| | |
|---|---|
| - Crawford, Lindsey | Gita makes the trains run on time. She is well steeped in our processes and makes excellent use of iManage. This allows her to find documents at the drop of a hat. Gita is exceptionally responsive, sometimes to a fault. In her haste to respond errors are sometimes made. |
| - Ebi, Ari | Takes responsibility for tasks, excels at maintaining communication. |
| - Loughran, Whitney D | Efficiency<br>Responsiveness<br>Great with clients |
| - Mufarrige, Kelly A | Gita does a great job of communicating with both myself and the clients. She also has a great confidence about her that will definitely benefit her in the future when it comes to client development. |
| - Nickel, Nora G | - Great attitude<br>- Dependability |
| - Popoola, Lanre A | I have worked on a few deals with Gita, and on each deal, Gita does a good job managing the deal timeline by circulating legal checklist that communicate what is outstanding on the transaction to the working group to keep all partied on task. |
| - Sidarth, S.R. | Gita is on the ball with her matters. She pushes the team to stay ahead of deadlines and circulate items to the client and borrower's counsel on a regular basis. |
| - Strup, Peter D | Gita has a lot of enthusiasm and wants very much to do her job well and make sure that clients are happy. Her attitude of self-improvement and willingness to learn is fantastic. |

## Comments (cont'd)

### What skills does this associate need to improve and/or develop over the course of the next year?

| | |
|---|---|
| - Bojorquez, Jennifer A | Gita should work on communication and making sure that the partner/senior associate has signed off on work product before it's sent to clients. |
| - Bowsher, Matthew R | For a 2019 grad, I'd like to see more attention to detail, more independent analysis, and demonstration of a deeper level of understanding of the underlying issues, rather than merely moving the checklist forward at lightspeed. I would gladly see her responsiveness be slowed to a mere mortal level if it allowed her to focus on these other areas. While it's certainly important to keep things moving forward, it cannot come at the cost of a consistently solid work product. She's now at a level of experience where more is expected than merely pushing things forward. Some recent examples:<br><br>• In our legal intro email, she attached the Application for an entirely different deal. In that same email, she wrote "we'll prepare the closing checklist in the coming days" but then later in the email she contradicts this by saying "we prepared the closing checklist, see below". In that same email, she asked for title commitments "for each property", yet this was a one-property deal. 3 mistakes in one short email, 1 of which was particularly embarrassing and could've been potentially catastrophic for our client, and all of which could've been caught with a simple careful proofread. |

App.G-Bowsher-Ex.27

delivery coordinator's email says "the Survey Cert is inconsistent with the Survey", and the coordinator took the time to set forth two screenshots, one of the applicable portion of the Survey Cert and one of the applicable part of the Survey. Anyone could clearly see that the Cert refers to a different date than the date shown on the Survey. The delivery coordinator literally painted a picture of the inconsistency, did all the work, the reader of the email didn't need to review the docs, it was right there, all of the info. Gita's response was, "what exactly is the inconsistency?"

We all make mistakes, I make them every day, but it's the type of mistakes that are important, and for a 2019 grad I'd like to see Gita improve on reducing the number of mistakes which could easily be prevented paying more attention to detail, giving more careful thought to responses and analysis.

| | |
|---|---|
| - Crawford, Lindsey | A greater depth of substance and the reasons behind why certain documentation is acceptable while other documentation is not. |
| - Ebi, Ari | Continuing to become more familiar with complex deal types and issues. |
| - Loughran, Whitney D | Gita has process down and knows who to go to for help, but I'd love to see her problem solving skill develop and for her to develop more of a process to answer questions she may have on her own. This will lead to an increase in substantive knowledge of subject matter. |
| - Mufarrige, Kelly A | Just general knowledge of the multifamily housing space - this will come with time. |
| - Nickel, Nora G | Gita is super responsive, which is great, but I think it would benefit her to slow down a little in order to better understand the big picture. |
| - Popoola, Lanre A | Gita has expressed an interest in working on affordable housing transactions and I look forward to working with her in the next year and help her strengthen her understanding of this type of transaction so that she can better analyze the affordable housing documents. |
| - Sidarth, S.R. | Gita needs to become both more thorough and more efficient. My focus would first be on thoroughness -- making sure that she ties off loose ends on her matters (including asking questions if not exactly sure what is to be done). Then the next goal is greater efficiency -- some assignments are probably still taking too long at her class level.<br><br>I think Gita would also benefit from being in the office more -- it is hard to develop skills and grow interpersonal relationships remotely. Hopefully 2023 will provide that opportunity. |
| - Strup, Peter D | Gita's biggest area for improvement is making sure to ask questions early and often when handling a transaction. I would like for her to make sure to question what she knows and to ask the partners and associates whom she works with about the right way to handle a particular issue, even if she's fairly certain of the correct approach.<br><br>I also want to make sure she knows that she will never be expected to have all of the answers, but that I want her to make sure she knows how to get those answers when something comes up. This involves expanding her internal network and feeling confident that she can take questions to the people she works with. |

App.G-Bowsher-Ex.27

I have spoken with Gita about this on some recent transactions, so I know she is working on it and fully anticipate that she will improve in the coming year.

## Comments (cont'd)

**Provide any additional comments about this associate including but not limited to client feedback on the associate's performance.**

| | | |
|---|---|---|
| - | Bojorquez, Jennifer A | None |
| - | Bowsher, Matthew R | See prior comments. |
| - | Crawford, Lindsey | See previous comments |
| - | Ebi, Ari | I am always glad to have Gita on a deal helping move things forward and keeping organized -- it's an invaluable skill valued by senior attorneys and clients alike. |
| - | Loughran, Whitney D | Gita is a wonderful asset to the team! |
| - | Mufarrige, Kelly A | Clients are always happy with Gita's performance on a deal. |
| - | Nickel, Nora G | n/a |
| - | Popoola, Lanre A | N/A |
| - | Sidarth, S.R. | Clients respond well to Gita. I appreciate her willingness to help in a variety of ways. |
| - | Strup, Peter D | Gita has a lot of potential! As I mentioned before, I just want her to be more comfortable asking questions early and often. |

## ⊘ Decline Report

| Evaluator | Evaluator Decline Reason |
|---|---|
| McPherson, David J | In anticipation of my retirement at the end of this year, I have not actively worked on any matters this year. |

App.G-Bowsher-Ex.27

Troutman_00000498

**From:** Sankano, Gita F. [Gita.Sankano@Troutman.com]
**Sent:** 10/5/2022 3:36:15 PM
**To:** Call, Taylor M. [Taylor.Call@Troutman.com]
**Subject:** FW: Final delivery review - NKF 1397 Venetian on Ella
**Attachments:** Freddie Delivery Checklist.DOC; NKF 1397 Venetian on Ella.zip

Can you tell me what doesn't match

## Gita F. Sankano
**Associate**
troutman **pepper**
Direct: 202.220.1251 | Internal: 803-1251
gita.sankano@troutman.com

---

**From:** Call, Taylor M. <Taylor.Call@troutman.com>
**Sent:** Wednesday, October 5, 2022 2:04 PM
**To:** Sankano, Gita F. <Gita.Sankano@Troutman.com>
**Cc:** Bowsher, Matthew R. <Matthew.Bowsher@Troutman.com>; Stratton, Katherine E <Katie.Stratton@Troutman.com>; Fields, Lacinda J. <Lacinda.Fields@Troutman.com>; Call, Taylor M. <Taylor.Call@Troutman.com>
**Subject:** Final delivery review - NKF 1397 Venetian on Ella

Attached is the final electronic delivery for the subject loan.

**Issues:**

- Survey Cert
o Does not match survey

Survey:

TO: IBERIABANK; RAMA VENETIAN APARTMENTS, LLC; ROC II TX LA JOLLA, LLC, A UTAH LIMITED LIABILITY COMPANY; CHARTER TITLE COMPANY; AND FIDELITY NATIONAL TITLE INSURANCE COMPANY

I CERTIFY THAT THE HEREIN PLAT AND THE SURVEY ON WHICH IT WAS BASED MEET THE MINIMUM REQUIREMENTS OF A CATEGORY 1A, CONDITION II SURVEY, AS DESCRIBED IN THE TEXAS SOCIETY OF PROFESSIONAL LAND SURVEYORS – MANUAL OF PRACTICE. THE FIELD WORK WAS COMPLETED ON OCTOBER 12TH, 2017.

DATED THIS THE 24TH DAY OF OCTOBER 2017.

CAROLYN J. QUINN
REGISTERED PROFESSIONAL LAND SURVEYOR
TEXAS REGISTRATION NUMBER 6033
EMAIL: JARDINE@MILLERSURVEY.COM
LAST REVISED DATE: 10/24/2017

STATE OF TEXAS
REGISTERED
CAROLYN J. QUINN
6033
PROFESSIONAL
LAND SURVEYOR

Survey Cert:

App.G-Bowsher-Ex.28

Troutman_00009479

Borrower has submitted an existing survey of the Property prepared by Miller Survey Group dated June 5, 2015, job number 081166 ("**Survey**") to Lender in connection with the origination of the Loan.

The following documents have been rescanned and reflect the originals in the delivery:
- Note
- Guaranty
- Loan Agreement

Please note that the delivery contains recorded documents received from Title.

Please address any comments or concerns you may have before delivery.

**Taylor M. Call**
**Delivery Coordinator**
Direct: 804.697.1399
taylor.call@troutman.com

troutman **pepper**
1001 Haxall Point, Suite 1500
Richmond, VA 23219
troutman.com

Troutman Pepper is a 2021 Mansfield Certified Plus Firm

App.G-Bowsher-Ex.28

Troutman_00009480

**From:**      Bowsher, Matthew R. [Matthew.Bowsher@troutman.com]
**Sent:**      10/12/2022 12:24:21 PM
**To:**        Sankano, Gita F. [/o=Pepper Hamilton LLP/ou=Exchange Administrative Group
               (FYDIBOHF23SPDLT)/cn=Recipients/cn=Sankano, Gita F.b71]
**Subject:**   RE: Northaven Park - Legal Introduction and Checklist


Thanks for jumping on this so quickly!   Couple things:

- You attached the wrong Application

- Your email says "we'll get a legal checklist together in the coming days".... but then it says "we went ahead and prepared our legal due diligence checklist (see below)".

- Are there more than one property?   Your email says "Title Commitment for each Property"


Matt


## Matthew R. Bowsher
**Partner**
troutman **pepper**
Office: 202.274.1939 ⋮ Mobile: 301.512.0423
matthew.bowsher@troutman.com

**From:** Sankano, Gita F. <Gita.Sankano@troutman.com>
**Sent:** Wednesday, October 12, 2022 12:17 PM
**To:** ssoni@patellegal.com
**Cc:** Bowsher, Matthew R. <Matthew.Bowsher@troutman.com>
**Subject:** Northaven Park - Legal Introduction and Checklist

Matt and I will be Lender's counsel (representing Newmark) on this transaction and we understand that you are counsel for the Borrower. We look forward to working with you! Attached is the Loan Application we received from the Lender for your reference.

We'll get a legal checklist together in the coming days, but in the meantime would you please provide the following:

- Target Closing Date (we have heard **12/9**)
- Title Commitment for each Property (and title/escrow agent contact information) as soon as available (Freddie Mac requirements attached)
- Updated Survey, along with surveyor contact information (or confirm Borrower is requesting a Waiver)
- We received the Borrower organizational chart attached. Please confirm if any changes. (see attached Freddie requirements). Please note, the Freddie Mac Borrower Structure requirements are also attached.
- Borrower signature block and notice address
- Guarantor notice address
- Completed "Other Legal Matters" Questionnaire (attached)


In addition, we went ahead and prepared our legal due diligence checklist (see below).

App.G-Bowsher-Ex.29

Troutman_00009486

Lastly, please let me know if you have any questions or if anyone else needs to be on our email distribution list.

Thanks,
Gita

The Target closing date for this deal is **12/9/2022**

To help keep us on the same page, below is a legal due diligence checklist.  Please review and provide any items/information as soon as available (keeping in mind the timeframes noted below for certain items).


**Legal Due Diligence Checklist**
- Title Commitment/Exceptions Documents – **NEED**
- Survey – **NEED New or Confirmation that a Waiver will be requested:**
- Contact Information/Recorder's Office:
  - Title Contact – **NEED**
  - Survey Contact – **NEED (if applicable)**
  - Contact info for the escrow / closing agent– **NEED (or confirm same as Title Contact)**
- Copy of any agreement being recorded at closing (including the draft deed if an acquisition) – **NEED (or confirm none)**
  - Please note: If the deed (or any other document recorded or to be recorded on title) will contain a prohibition against or any indemnification in connection with the conversion of the Property to a condominium or cooperative structure, it will need to be approved by Lender prior to rate lock]
- UCC/Tax Lien/Judgment Lien/Litigation/Bankruptcy Searches (Borrower's counsel to order. Dated within 30 days of closing) – **NEED**
- Draft Opinion Letter(s) (in the forms provided)
  - Borrower – **NEED**
  - Guarantor – **NEED**
- Purchase and Sale Agreement, including any amendments and assignment to Borrower [if Acquisition] – **NEED**
- Property Management Agreement – **NEED**
- Asset Management Agreement (or any other agreement with affiliated fees) [*AMA fees must be subordinate to the Loan*] – **NEED (or confirm none)**
- Confirmation that you have reviewed/approved the draft loan documents – any document modifications need to be reviewed and approved by Freddie Mac and no changes are permitted after rate lock – **NEED [to be circulated]**
- Confirmation that the "**Other Legal Matters**" do not apply – **NEED [See list attached]**
- Organizational Chart – **IN; Confirm if any changes [See requirements attached]**
- Signature Pages **[to be circulated]**
  - Borrower – **NEED**
  - Guarantor – **NEED**
  - Property Manager – **NEED**
  - Lender – **NEED**


**Loan Document Information (need from Borrower)**
- Borrower Signature Block – **NEED ASAP**
- Property Manager's signature block – **NEED**
- Borrower's Organizational ID Number – **NEED**
- Borrower's Tax ID Number – **NEED**
- Borrower's Tax Classification– **NEED**
- Borrower's Address – **NEED**
- Guarantor's Address – **NEED**
- Guarantor's State of Residency (if individual guarantor) – **NEED**
- Guarantor's Marital Status (if individual guarantor) – **NEED**

App.G-Bowsher-Ex.29

-       Property Manager's Address – **NEED**
-       Were the Certificates of Occupancy issued within 3 years of the loan closing?


**Organizational Documents (Borrower/Guarantor and their sub-entities): [to be updated upon receipt of final org chart]**

**1.      Northaven Park Apartment LLC**
a.       Certificate of Formation – **NEED**
b.       Operating Agreement – **NEED**
1.              Required SPE Provisions – **NEED (attached)**
c.       Certificate of Good Standing (Dated within 30 days of closing) – **NEED**
d.       Certificate of Authority to Transact Business (Dated within 30 days of closing) *(TBD)* – **NEED**
e.       Consent – **NEED**

**2.      Northaven Park MGR LLC**
a.       Certificate of Formation – **NEED**
b.       Operating Agreement – **NEED**
c.       Certificate of Good Standing (Dated within 30 days of closing) – **NEED**

**Search Requirements**
UCC/tax lien/judgment lien/litigation and bankruptcy search requirements:
-       Name: Borrower's name and, if the Property is being acquired, the name of the current owner of the Property
-       Location:
-       The State in which the Borrower entity and Seller entity was formed
-       The local jurisdiction in which the Property is located
-       The State and local jurisdiction for any Individual
- Date: must be dated no earlier than 30 days prior to the Origination Date.
- Newly formed entities: Searches not required for newly formed entities, which are entities formed within 90 days of closing

Closing Coordination
-       Executed Escrow Letter from Title – **NEED (after receipt of original recording package)**
-       Fully Executed Settlement Statement – **NEED**
-       Confirmation Recorder's Office is open and operational - **NEED**

**Gita F. Sankano**
**Associate**
Direct: 202.220.1251 ¦ Internal: 803-1251
gita.sankano@troutman.com
_____

troutman **pepper**
401 9th Street, NW, Suite 1000
Washington, DC  20004
troutman.com
_____

Troutman Pepper is a 2021 Mansfield Certified Plus Firm

| From: | Bowsher, Matthew R. [/O=TROUTMANSANDERS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=99D8D2CBA40440EFA576623B7A8765CF-BOWSHER,] |
|---|---|
| Sent: | 8/3/2023 11:25:19 AM |
| To: | Sankano, Gita F. [/o=TroutmanSanders/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=Gita.Sankano]; Mauriello, Lisa M. [/o=TroutmanSanders/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=d1ab56bbd490432b8295db6296670bdc-Mauriell]; MFH New Matters [/o=TroutmanSanders/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=9634fdbfaa0b4c148c2cbebf82b2394a-MFH New] |
| CC: | Mufarrige, Kelly A. [/o=TroutmanSanders/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=f580b034c11a44d096a73ecaace804bc-Mufarrig]; Staub, Julie Lynn [/o=TroutmanSanders/ou=First Administrative Group/cn=Recipients/cn=staubjl]; Jackson, Tia L. [/o=TroutmanSanders/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=jacksot2]; Morant, Michelle [/o=TroutmanSanders/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=Michelle.Morant]; Stratton, Katherine E [/o=TroutmanSanders/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=5c193b2d2205419582f1cbc97fd2058f-Stratton] |
| Subject: | RE: Falls of Braeswood and Falls of Dairy Ashford - NEW MATTER |

It should not be 100% Kelly.   It should be as was originally requested, per the thread below:  **Kelly Mufarrige (30%) / Matt Bowsher (70%)**

## Matthew R. Bowsher
**Partner**
troutman pepper
Office: 202.274.1939 ⋮ Mobile: 301.512.0423
matthew.bowsher@troutman.com

**From:** Sankano, Gita F. <Gita.Sankano@troutman.com>
**Sent:** Thursday, August 3, 2023 11:19 AM
**To:** Mauriello, Lisa M. <Lisa.Mauriello@troutman.com>; MFH New Matters <MFHNewMatters@troutman.com>
**Cc:** Mufarrige, Kelly A. <Kelly.Mufarrige@troutman.com>; Bowsher, Matthew R. <Matthew.Bowsher@troutman.com>; Staub, Julie Lynn <Julie.Staub@troutman.com>; Jackson, Tia L. <Tia.Jackson@troutman.com>; Morant, Michelle <Michelle.Morant@Troutman.com>; Stratton, Katherine E <Katie.Stratton@troutman.com>
**Subject:** RE: Falls of Braeswood and Falls of Dairy Ashford - NEW MATTER

To be clear, it should be the following

**Client Matter Number** - 018413.000867
**Client Name** - Jones Lang LaSalle
**Matter Name** - Ln/Dairy Ashford & Braeswood, TX/FHLMC
**Matter Responsible Atty** – Mufarrige, Kelly
**Billing Attorney** - Bowsher, Matt
**Matter Assigned Atty** - Sankano, Gita

## Gita F. Sankano
**Associate**
troutman pepper
Direct: 202.220.1251 ⋮ Internal: 803-1251
gita.sankano@troutman.com

App.G-Bowsher-Ex.30

Troutman_00003369

**From:** Sankano, Gita F.
**Sent:** Thursday, August 3, 2023 11:17 AM
**To:** Mauriello, Lisa M. <Lisa.Mauriello@troutman.com>; MFH New Matters <MFHNewMatters@troutman.com>
**Cc:** Mufarrige, Kelly A. <Kelly.Mufarrige@troutman.com>; Bowsher, Matthew R. <Matthew.Bowsher@troutman.com>; Staub, Julie Lynn <Julie.Staub@troutman.com>; Jackson, Tia L. <Tia.Jackson@troutman.com>; Morant, Michelle <Michelle.Morant@Troutman.com>; Stratton, Katherine E <Katie.Stratton@troutman.com>
**Subject:** RE: Falls of Braeswood and Falls of Dairy Ashford - NEW MATTER

I just got a request to change the matter assigned from to Kelly?

Kelly should be the matter responsible. So it should change from Matt to Kelly.

I hope that that makes sense!

**Gita F. Sankano**
**Associate**
troutman pepper
Direct: 202.220.1251 | Internal: 803-1251
gita.sankano@troutman.com

---

**From:** Mauriello, Lisa M. <Lisa.Mauriello@troutman.com>
**Sent:** Thursday, August 3, 2023 11:14 AM
**To:** Sankano, Gita F. <Gita.Sankano@troutman.com>; MFH New Matters <MFHNewMatters@troutman.com>
**Cc:** Mufarrige, Kelly A. <Kelly.Mufarrige@troutman.com>; Bowsher, Matthew R. <Matthew.Bowsher@troutman.com>; Staub, Julie Lynn <Julie.Staub@troutman.com>; Jackson, Tia L. <Tia.Jackson@troutman.com>; Morant, Michelle <Michelle.Morant@Troutman.com>; Stratton, Katherine E <Katie.Stratton@troutman.com>
**Subject:** RE: Falls of Braeswood and Falls of Dairy Ashford - NEW MATTER

Good Morning,
The change request was entered.
Thanks

**Lisa Mauriello**
**Firm Intelligence Coordinator**
troutman pepper
Direct: 757.687.7521 | Internal: 17-7521
lisa.mauriello@troutman.com

---

**From:** Sankano, Gita F. <Gita.Sankano@troutman.com>
**Sent:** Thursday, August 3, 2023 11:09 AM
**To:** Mauriello, Lisa M. <Lisa.Mauriello@troutman.com>; MFH New Matters <MFHNewMatters@troutman.com>
**Cc:** Mufarrige, Kelly A. <Kelly.Mufarrige@troutman.com>; Bowsher, Matthew R. <Matthew.Bowsher@troutman.com>; Staub, Julie Lynn <Julie.Staub@troutman.com>; Jackson, Tia L. <Tia.Jackson@troutman.com>; Morant, Michelle <Michelle.Morant@Troutman.com>; Stratton, Katherine E <Katie.Stratton@troutman.com>
**Subject:** RE: Falls of Braeswood and Falls of Dairy Ashford - NEW MATTER

App.G-Bowsher-Ex.30

Hi Lisa,

Kelly should be the matter responsible attorney for this one. See below. Please update.

Thanks!!

| Matter Responsible Atty: | Kelly Mufarrige (30%) / Matt Bowsher (70%) |
|---|---|

## Gita F. Sankano
**Associate**
troutman pepper
Direct: 202.220.1251 ⦙ Internal: 803-1251
gita.sankano@troutman.com

**From:** Mauriello, Lisa M. <Lisa.Mauriello@troutman.com>
**Sent:** Wednesday, August 2, 2023 11:31 AM
**To:** Sankano, Gita F. <Gita.Sankano@troutman.com>; MFH New Matters <MFHNewMatters@troutman.com>
**Cc:** Mufarrige, Kelly A. <Kelly.Mufarrige@troutman.com>; Bowsher, Matthew R. <Matthew.Bowsher@troutman.com>; Staub, Julie Lynn <Julie.Staub@troutman.com>; Jackson, Tia L. <Tia.Jackson@troutman.com>; Morant, Michelle <Michelle.Morant@Troutman.com>; Stratton, Katherine E <Katie.Stratton@troutman.com>
**Subject:** RE: Falls of Braeswood and Falls of Dairy Ashford - NEW MATTER

Good Morning,
We combined the two properties into one matter, **018413.000867**
Thanks!

## Lisa Mauriello
**Firm Intelligence Coordinator**
troutman pepper
Direct: 757.687.7521 ⦙ Internal: 17-7521
lisa.mauriello@troutman.com

**From:** Sankano, Gita F. <Gita.Sankano@troutman.com>
**Sent:** Monday, July 31, 2023 2:10 PM
**To:** MFH New Matters <MFHNewMatters@troutman.com>
**Cc:** Mufarrige, Kelly A. <Kelly.Mufarrige@troutman.com>; Bowsher, Matthew R. <Matthew.Bowsher@troutman.com>; Staub, Julie Lynn <Julie.Staub@troutman.com>; Jackson, Tia L. <Tia.Jackson@troutman.com>; Morant, Michelle <Michelle.Morant@Troutman.com>; Stratton, Katherine E <Katie.Stratton@troutman.com>
**Subject:** Falls of Braeswood and Falls of Dairy Ashford - NEW MATTER

Good afternoon,

Please open the two deals below. We will only need **one client matter number** for these two.

Thanks,

| Client: | JLL |
| --- | --- |
| Deal Type: | Freddie Mac |
| Property Name & Location: | Falls of Dairy Ashford<br>12707 Bellaire Boulevard<br>Houston, TX 77072 |
| Matter Opening Atty: | Matt Bowsher |
| Matter Responsible Atty: | Kelly Mufarrige (30%) / Matt Bowsher (70%) |
| Matter Assigned Atty: | Gita Sankano |
| Closing Date: | 08/30/2023 |
| Loan Amount: | $17,400,000 |
| Borrower(s): | Falls of Dairy Ashford LP |
| Guarantor(s) /<br>Key Principals(s): | Rao J. Polavarapu |
| Originator: | Luke Rogers |
| Closer: | Patrick McCarren |

| Client: | JLL |
| --- | --- |
| Deal Type: | Freddie Mac |
| Property Name & Location: | Falls of Braeswood<br>8801 South Braeswood Boulevard<br>Houston, TX 77031 |
| Matter Opening Atty: | Matt Bowsher |
| Matter Responsible Atty: | Kelly Mufarrige (30%) / Matt Bowsher (70%) |
| Matter Assigned Atty: | Gita Sankano |
| Closing Date: | 08/30/2023 |
| Loan Amount: | $16,781,000 |
| Borrower(s): | Falls of Braeswood LP |
| Guarantor(s) /<br>Key Principals(s): | Rao J. Polavarapu |
| Originator: | Luke Rogers |
| Closer: | Patrick McCarren |

**Gita F. Sankano**
**Associate**
Direct: 202.220.1251 | Internal: 803-1251
gita.sankano@troutman.com

App.G-Bowsher-Ex.30

Troutman_00003372

troutman **pepper**
401 9th Street, NW, Suite 1000
Washington, DC 20004
troutman.com

Troutman Pepper is a Mansfield Certified Plus Firm

| | |
|---|---|
| **From:** | Bowsher, Matthew R. [/o=TroutmanSanders/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=99d8d2cba40440efa576623b7a8765cf-Bowsher,] |
| **Sent:** | 8/3/2023 11:03:48 AM |
| **To:** | Sankano, Gita F. [/o=TroutmanSanders/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=Gita.Sankano]; Mufarrige, Kelly A. [/o=TroutmanSanders/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=f580b034c11a44d096a73ecaace804bc-Mufarrig] |
| **Subject:** | RE: 018413.000867 is now available in iManage |

Can you have them fix it?

## Matthew R. Bowsher
**Partner**
troutman **pepper**
Office: 202.274.1939 ⁞ Mobile: 301.512.0423
matthew.bowsher@troutman.com

**From:** Sankano, Gita F. <Gita.Sankano@troutman.com>
**Sent:** Thursday, August 3, 2023 9:01 AM
**To:** Bowsher, Matthew R. <Matthew.Bowsher@troutman.com>; Mufarrige, Kelly A. <Kelly.Mufarrige@troutman.com>
**Subject:** FW: 018413.000867 is now available in iManage

It looks like they messed up again. Kelly doesn't have credit

## Gita F. Sankano
**Associate**
troutman **pepper**
Direct: 202.220.1251 ⁞ Internal: 803-1251
gita.sankano@troutman.com

**From:** iMatterSystemAlert <iMatterSystemAlert@troutman.com>
**Sent:** Thursday, August 3, 2023 5:30 AM
**To:** Bowsher, Matthew R. <Matthew.Bowsher@troutman.com>; Staub, Julie Lynn <Julie.Staub@troutman.com>; Small, LeTitia I. <LeTitia.Small@troutman.com>; Burrell, Yaiza E. <Yaiza.Burrell@troutman.com>; Sankano, Gita F. <Gita.Sankano@troutman.com>; Stratton, Katherine E <Katie.Stratton@troutman.com>; Morant, Michelle <Michelle.Morant@Troutman.com>
**Subject:** 018413.000867 is now available in iManage

The following new matter is now available in iManage, **however it is not yet available in Aderant**.
Please provide this number to others working on this matter.

**Client Matter Number** - 018413.000867
**Client Name** - Jones Lang LaSalle
**Matter Name** - Ln/Dairy Ashford & Braeswood, TX/FHLMC
**Matter Responsible Atty** - Bowsher, Matt
**Billing Attorney** - Bowsher, Matt
**Matter Assigned Atty** - Sankano, Gita

App.G-Bowsher-Ex.31

| From: | Bowsher, Matthew R.[/O=TROUTMANSANDERS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=99D8D2CBA40440EFA576623B7A8765CF-BOWSHER,] |
|---|---|
| Sent: | Thur 8/3/2023 3:47:36 PM (UTC-04:00) |
| To: | Sankano, Gita F.[Gita.Sankano@troutman.com] |
| Subject: | RE: Falls of Braeswood and Falls of Dairy Ashford  - NEW MATTER |

That was obviously not the reaction I intended.  Thank you for your constructive criticism of my constructive criticism. I will keep that in mind next time I offer you my feedback on your performance.

Sounds like we both could benefit from continued growth and improvement regarding our communications.  Of course, that can't happen until we fully acknowledge and accept how our communications are actually perceived by others, regardless of our own intentions and subjective perceptions thereof.  Here's hoping we can both get past that difficult first stage, and unlock the growth which alludes us.

Matt


## Matthew R. Bowsher
**Partner**
troutman pepper
Office: 202.274.1939 | Mobile: 301.512.0423
matthew.bowsher@troutman.com

**From:** Sankano, Gita F. <Gita.Sankano@troutman.com>
**Sent:** Thursday, August 3, 2023 1:59 PM
**To:** Bowsher, Matthew R. <Matthew.Bowsher@troutman.com>
**Subject:** RE: Falls of Braeswood and Falls of Dairy Ashford - NEW MATTER

Matt,

As with the prior deals we worked on with this sponsor including this one, I made it clear that this was a 70/30 split between you and Kelly. In this particular deal, it was the MFH matter department who made the error of not linking the matters and not giving Kelly the proper credit. I called it out this morning that Kelly did not receive the proper credit (see attached).  As per my initial email this morning, I stated that Kelly should be the Matter Responsible Attorney and I copied and pasted the percentage spilt. Now could I have reiterated over and over again about the spilt – absolutely!  I could have been more specific about the split as you explained below. I appreciate your feedback.

However, what I will not tolerate from you is the condescending tone, my intelligence being questioned (see below),and you belittling me. I have never disrespected you and I will appreciate if you do the same. I worked hard to be here and I deserve to be here like every other associate. I would appreciate if you treat me with respect .

This is very basic, elementary communication.  This has nothing to do with training, or understanding of multifamily transactional law, this is daily required functioning.  You expressed interest in receiving my input/feedback in real time as to your performance, so I am taking 20 minutes out of my morning right now to explain to you, in very clear objective detailed analysis, that when I see something like this, where it is so undeniably evident that you've made an obvious and surprising error, and you're saying you still don't see the error even after I've taken the time to point it out to you, and you're still saying you've done nothing wrong… I really just don't know what more I can say here.   If you don't even see the problem, I'm not sure how you'll fix it, but it's definitely something you need to fix, because if you had this same type of miscommunication with a client or borrower's counsel rather than with our internal administrative team, I would have to drop everything and get on

App.G-Bowsher-Ex.32

Troutman_00003988

the phone immediately to do serious damage control, reassuring them that the deal is actually in capable hands.  Bottom line: this is not something I would expect from a fourth-year associate.

I am in the office 4 days a week, every week, available to discuss this further in person any time you wish.  Just so we are 100% clear, I have no intention of proactively contacting you to discuss this any further, as I've already given you my full and candid thoughts on the matter, nor am I necessarily implying that any further discussion need be had, rather I am merely clarifying that I leave it to your own initiative as to whether you wish to discuss it further.

**Gita F. Sankano**
**Associate**
troutman **pepper**
Direct: 202.220.1251 | Internal: 803-1251
gita.sankano@troutman.com

**From:** Bowsher, Matthew R. <Matthew.Bowsher@troutman.com>
**Sent:** Thursday, August 3, 2023 12:44 PM
**To:** Sankano, Gita F. <Gita.Sankano@troutman.com>
**Subject:** RE: Falls of Braeswood and Falls of Dairy Ashford - NEW MATTER

I'm concerned that you thought you were "clear".   In fact, you were the opposite of clear.  And the fact that you still don't see this upon further reflection, even after I've taken the time to point it out, is what worries me.

In your first email below (from 11:09am this morning), you stated "**Kelly should be the matter responsible**".  Anyone reading that sentence would reasonably interpret that as a request to make Kelly the matter responsible attorney, i.e. to switch it from 100% Matt to 100% Kelly. There is no other way to interpret that sentence.  If you meant to ask for them to change it from Matt being 100% responsible to Matt only being 70% responsible, that is not what that sentence conveyed.  You added a sentence which said "See below", and then you added a clip of the originally-requested 70/30 split at the end, but that clip with the correct split contradicted your initial sentence which requested that Kelly be 100% matter responsible; that contradiction is what made your communication anything but clear.  Then, adding to the confusion, in your subsequent email, you doubled-down on your initial request, by again saying "**Kelly should be the matter responsible. So it should change from Matt to Kelly.**"   Again, I'm not sure how anyone could read that sentence to mean anything other than what it very clearly says, which is that you're asking to make Kelly "the" matter responsible attorney, i.e. the 100% matter responsible, the only matter responsible attorney, not a 70/30 split with Matt.

This is very basic, elementary communication.  This has nothing to do with training, or understanding of multifamily transactional law, this is daily required functioning.  You expressed interest in receiving my input/feedback in real time as to your performance, so I am taking 20 minutes out of my morning right now to explain to you, in very clear objective detailed analysis, that when I see something like this, where it is so undeniably evident that you've made an obvious and surprising error, and you're saying you still don't see the error even after I've taken the time to point it out to you, and you're still saying you've done nothing wrong… I really just don't know what more I can say here.   If you don't even see the problem, I'm not sure how you'll fix it, but it's definitely something you need to fix, because if you had this same type of miscommunication with a client or borrower's counsel rather than with our internal administrative team, I would have to drop everything and get on the phone immediately to do serious damage control, reassuring them that the deal is actually in capable hands.  Bottom line: this is not something I would expect from a fourth-year associate.

App.G-Bowsher-Ex.32

I am in the office 4 days a week, every week, available to discuss this further in person any time you wish. Just so we are 100% clear, I have no intention of proactively contacting you to discuss this any further, as I've already given you my full and candid thoughts on the matter, nor am I necessarily implying that any further discussion need be had, rather I am merely clarifying that I leave it to your own initiative as to whether you wish to discuss it further.

Matt

**Matthew R. Bowsher**
**Partner**
troutman **pepper**
Office: 202.274.1939 | Mobile: 301.512.0423
matthew.bowsher@troutman.com

---

**From:** Sankano, Gita F. <Gita.Sankano@troutman.com>
**Sent:** Thursday, August 3, 2023 11:31 AM
**To:** Bowsher, Matthew R. <Matthew.Bowsher@troutman.com>
**Subject:** RE: Falls of Braeswood and Falls of Dairy Ashford - NEW MATTER

Thank you, Matt.

I thought I was clear with the first email I sent today as it relates to the percentage distribution (see attached).

**Gita F. Sankano**
**Associate**
troutman **pepper**
Direct: 202.220.1251 | Internal: 803-1251
gita.sankano@troutman.com

---

**From:** Bowsher, Matthew R. <Matthew.Bowsher@troutman.com>
**Sent:** Thursday, August 3, 2023 11:28 AM
**To:** Sankano, Gita F. <Gita.Sankano@troutman.com>
**Subject:** RE: Falls of Braeswood and Falls of Dairy Ashford - NEW MATTER

You are confused. Kelly is not to be the sole 100% matter responsible attorney. Per your original request, and per the other matters you've previously opened for me and Kelly, it should be 30% Kelly and 70% Matt.

**Matthew R. Bowsher**
**Partner**
troutman **pepper**
Office: 202.274.1939 | Mobile: 301.512.0423
matthew.bowsher@troutman.com

---

**From:** Sankano, Gita F. <Gita.Sankano@troutman.com>
**Sent:** Thursday, August 3, 2023 11:17 AM
**To:** Mauriello, Lisa M. <Lisa.Mauriello@troutman.com>; MFH New Matters <MFHNewMatters@troutman.com>
**Cc:** Mufarrige, Kelly A. <Kelly.Mufarrige@troutman.com>; Bowsher, Matthew R. <Matthew.Bowsher@troutman.com>; Staub, Julie Lynn <Julie.Staub@troutman.com>; Jackson, Tia L. <Tia.Jackson@troutman.com>; Morant, Michelle <Michelle.Morant@Troutman.com>; Stratton, Katherine E

App.G-Bowsher-Ex.32

<Katie.Stratton@troutman.com>
**Subject:** RE: Falls of Braeswood and Falls of Dairy Ashford - NEW MATTER

I just got a request to change the matter assigned from to Kelly?

Kelly should be the matter responsible. So it should change from Matt to Kelly.

I hope that that makes sense!

**Gita F. Sankano**
**Associate**
troutman **pepper**
Direct: 202.220.1251 | Internal: 803-1251
gita.sankano@troutman.com

**From:** Mauriello, Lisa M. <Lisa.Mauriello@troutman.com>
**Sent:** Thursday, August 3, 2023 11:14 AM
**To:** Sankano, Gita F. <Gita.Sankano@troutman.com>; MFH New Matters <MFHNewMatters@troutman.com>
**Cc:** Mufarrige, Kelly A. <Kelly.Mufarrige@troutman.com>; Bowsher, Matthew R.
<Matthew.Bowsher@troutman.com>; Staub, Julie Lynn <Julie.Staub@troutman.com>; Jackson, Tia L.
<Tia.Jackson@troutman.com>; Morant, Michelle <Michelle.Morant@Troutman.com>; Stratton, Katherine E
<Katie.Stratton@troutman.com>
**Subject:** RE: Falls of Braeswood and Falls of Dairy Ashford - NEW MATTER

Good Morning,
The change request was entered.
Thanks

**Lisa Mauriello**
**Firm Intelligence Coordinator**
troutman **pepper**
Direct: 757.687.7521 | Internal: 17-7521
lisa.mauriello@troutman.com

**From:** Sankano, Gita F. <Gita.Sankano@troutman.com>
**Sent:** Thursday, August 3, 2023 11:09 AM
**To:** Mauriello, Lisa M. <Lisa.Mauriello@troutman.com>; MFH New Matters <MFHNewMatters@troutman.com>
**Cc:** Mufarrige, Kelly A. <Kelly.Mufarrige@troutman.com>; Bowsher, Matthew R.
<Matthew.Bowsher@troutman.com>; Staub, Julie Lynn <Julie.Staub@troutman.com>; Jackson, Tia L.
<Tia.Jackson@troutman.com>; Morant, Michelle <Michelle.Morant@Troutman.com>; Stratton, Katherine E
<Katie.Stratton@troutman.com>
**Subject:** RE: Falls of Braeswood and Falls of Dairy Ashford - NEW MATTER

Hi Lisa,

Kelly should be the matter responsible attorney for this one. See below. Please update.

Thanks!!

App.G-Bowsher-Ex.32

Troutman_00003991

| Matter Responsible Atty: | Kelly Mufarrige (30%) / Matt Bowsher (70%) |
|---|---|

**Gita F. Sankano**
**Associate**
**troutman** pepper
Direct: 202.220.1251 | Internal: 803-1251
gita.sankano@troutman.com

**From:** Mauriello, Lisa M. <Lisa.Mauriello@troutman.com>
**Sent:** Wednesday, August 2, 2023 11:31 AM
**To:** Sankano, Gita F. <Gita.Sankano@troutman.com>; MFH New Matters <MFHNewMatters@troutman.com>
**Cc:** Mufarrige, Kelly A. <Kelly.Mufarrige@troutman.com>; Bowsher, Matthew R.
<Matthew.Bowsher@troutman.com>; Staub, Julie Lynn <Julie.Staub@troutman.com>; Jackson, Tia L.
<Tia.Jackson@troutman.com>; Morant, Michelle <Michelle.Morant@Troutman.com>; Stratton, Katherine E
<Katie.Stratton@troutman.com>
**Subject:** RE: Falls of Braeswood and Falls of Dairy Ashford - NEW MATTER

Good Morning,
We combined the two properties into one matter, **018413.000867**
Thanks!

**Lisa Mauriello**
**Firm Intelligence Coordinator**
**troutman** pepper
Direct: 757.687.7521 | Internal: 17-7521
lisa.mauriello@troutman.com

**From:** Sankano, Gita F. <Gita.Sankano@troutman.com>
**Sent:** Monday, July 31, 2023 2:10 PM
**To:** MFH New Matters <MFHNewMatters@troutman.com>
**Cc:** Mufarrige, Kelly A. <Kelly.Mufarrige@troutman.com>; Bowsher, Matthew R.
<Matthew.Bowsher@troutman.com>; Staub, Julie Lynn <Julie.Staub@troutman.com>; Jackson, Tia L.
<Tia.Jackson@troutman.com>; Morant, Michelle <Michelle.Morant@Troutman.com>; Stratton, Katherine E
<Katie.Stratton@troutman.com>
**Subject:** Falls of Braeswood and Falls of Dairy Ashford - NEW MATTER

Good afternoon,

Please open the two deals below. We will only need **one client matter number** for these two.

Thanks,

| Client: | JLL |
|---|---|

App.G-Bowsher-Ex.32

| Deal Type: | Freddie Mac |
|---|---|
| Property Name & Location: | Falls of Dairy Ashford<br>12707 Bellaire Boulevard<br>Houston, TX 77072 |
| Matter Opening Atty: | Matt Bowsher |
| Matter Responsible Atty: | Kelly Mufarrige (30%) / Matt Bowsher (70%) |
| Matter Assigned Atty: | Gita Sankano |
| Closing Date: | 08/30/2023 |
| Loan Amount: | $17,400,000 |
| Borrower(s): | Falls of Dairy Ashford LP |
| Guarantor(s) / Key Principals(s): | Rao J. Polavarapu |
| Originator: | Luke Rogers |
| Closer: | Patrick McCarren |

| Client: | JLL |
|---|---|
| Deal Type: | Freddie Mac |
| Property Name & Location: | Falls of Braeswood<br>8801 South Braeswood Boulevard<br>Houston, TX 77031 |
| Matter Opening Atty: | Matt Bowsher |
| Matter Responsible Atty: | Kelly Mufarrige (30%) / Matt Bowsher (70%) |
| Matter Assigned Atty: | Gita Sankano |
| Closing Date: | 08/30/2023 |
| Loan Amount: | $16,781,000 |
| Borrower(s): | Falls of Braeswood LP |

App.G-Bowsher-Ex.32

| | |
|---|---|
| **Guarantor(s) / Key Principals(s):** | **Rao J. Polavarapu** |
| **Originator:** | **Luke Rogers** |
| **Closer:** | **Patrick McCarren** |

**Gita F. Sankano**
**Associate**
Direct: 202.220.1251 | Internal: 803-1251
gita.sankano@troutman.com

**troutman** pepper
401 9th Street, NW, Suite 1000
Washington, DC 20004
troutman.com

Troutman Pepper is a Mansfield Certified Plus Firm

App.G-Bowsher-Ex.32

| | |
|---|---|
| **From:** | Sankano, Gita F.[Gita.Sankano@Troutman.com] |
| **Sent:** | Fri 2/25/2022 2:12:59 PM (UTC-05:00) |
| **To:** | Bowsher, Matthew R.[Matthew.Bowsher@Troutman.com] |
| **Subject:** | RE: The Alden South Hills (Supplemental) - Escrow Package |

Makes sense! Thank you.

**Gita F. Sankano**
**Associate**
troutman **pepper**
Direct: 202.220.1251 | Internal: 803-1251
gita.sankano@troutman.com

---

**From:** Bowsher, Matthew R. <Matthew.Bowsher@troutman.com>
**Sent:** Friday, February 25, 2022 2:12 PM
**To:** Sankano, Gita F. <Gita.Sankano@Troutman.com>
**Subject:** RE: The Alden South Hills (Supplemental) - Escrow Package

Perfect, thanks, sounds like we'll all on the same page.   Kelly's response email to you really nailed it on the head, which is that, even if you've worked with your LPA for years and she knows what you mean by "send scans", the 1 minute of typing-up the instructions is invaluable to the attorney, not just to the LPA, because like Kelly said, it forces you to think of the quirks like the Pennsylvania extra signature page.  Or like, right now I've got a deal where the property straddles two counties so we'll need to file 2 separate mortgages and 2 local UCCs.   On another one of my deals we're doing a Florida A&R so there will need to be the assignment of the existing mortgage to our lender.   Last week, we had a deal in Louisiana where we were required to attach a corporate secretary certificate/resolution to the mortgage (!?).   It's the unusual stuff like that, which the LPA will never know to grab when she's preparing the escrow package, where's it's critical to take the extra 1 minute to type-up instructions on stuff like this, as it really forces us to stop and think for just one minute as to whether there's anything funky out there.

Thanks again.

**Matthew R. Bowsher**
**Partner**
troutman **pepper**
Office: 202.274.1939 | Mobile: 301.512.0423
matthew.bowsher@troutman.com

---

**From:** Sankano, Gita F. <Gita.Sankano@Troutman.com>
**Sent:** Friday, February 25, 2022 1:31 PM
**To:** Bowsher, Matthew R. <Matthew.Bowsher@troutman.com>
**Subject:** RE: The Alden South Hills (Supplemental) - Escrow Package

Yes I agree. I am soooo used to working with Susan Hensley, Catherine Smith, and Katie  (Peter and Whitney's deals). Majority, if not all of the time, their escrow packages are fully collated escrow packages. They send out the full escrow package even if we haven't RL.  If something changes, they send out slip pages. Those LPAs typically know what I mean when I say send out the escrow package.

However, I completely forgot that sometimes we just send out signature pages or the full escrow packages. I hope that makes sense.

Right after I sent the email. I pinged Kelly. See attached. I should have been more specific. Sorry about that!

App.G-Bowsher-Ex.33

Troutman_00002892

**Gita F. Sankano**
**Associate**
**troutman** pepper
Direct: 202.220.1251 | Internal: 803-1251
gita.sankano@troutman.com

---

**From:** Bowsher, Matthew R. <Matthew.Bowsher@troutman.com>
**Sent:** Friday, February 25, 2022 12:59 PM
**To:** Sankano, Gita F. <Gita.Sankano@Troutman.com>
**Subject:** RE: The Alden South Hills (Supplemental) - Escrow Package

Gita, not sure what your takeaway was from this exchange yesterday (below), but mine was that, when we communicate with Lacinda and other secretaries, we can't just throw a vague statement at them, we really need to take 2 minutes to type-out actual clear instructions.   I know we're all in a hurry, I know that so much of what we do is repetitive so we just assume everyone around us know what we mean -- I totally get it, truly --- but I gotta be honest, even I had no clear idea what exactly your email to Lacinda below was asking.  (Scans of what?  "As well as" what?)  What you have to keep in mind is that "escrow packages" are not universal, different folks expect different things in their escrow packages, sometimes we're only sending original signature pages in our escrow packages (because we send the remainder of the docs via email) while sometimes we expect full sets of docs.   Moreover, when sending full escrow packages, there are different docs required for A&R deals, vs ground lease deals, etc.   Not sure if you noticed, but in Kelly's email below, she specifically reminded Lacinda that there are 2 lender sig pages for the assignment… because this is in Pennsylvania… which is something that Lacinda, with only 6 months of experience, would never think to look for.   That's the kind of stuff which takes less than a minute to type-out, but the failure to take that minute could derail closing, if that extra signature isn't included in the package.

Anyway, you get the idea.   Just need you to be mindful, when using LPAs, whether it's for escrow packages, or pulling signature pages, or drafting loan docs, we need to be clear and thoughtful in our instructions, because the extra 1 or 2 minutes can save you 30 minutes of fixing a mistake, resending the correct versions, etc.



**Matthew R. Bowsher**
**Partner**
**troutman** pepper
Office: 202.274.1939 | Mobile: 301.512.0423
matthew.bowsher@troutman.com

---

**From:** Mufarrige, Kelly A. <Kelly.Mufarrige@troutman.com>
**Sent:** Thursday, February 24, 2022 5:23 PM
**To:** Sankano, Gita F. <Gita.Sankano@troutman.com>; Fields, Lacinda J. <Lacinda.Fields@troutman.com>
**Cc:** Bowsher, Matthew R. <Matthew.Bowsher@troutman.com>
**Subject:** RE: The Alden South Hills (Supplemental) - Escrow Package

Thanks, Gita.  Lacinda, as I mentioned, we'll send a full hardcopy set of the escrow package for this one tomorrow.

Docs:

- Escrow Letter
- Cert of Closing Agent
- Security Instrument

App.G-Bowsher-Ex.33

Troutman_00002893

- UCC
- Assignment of Security Instrument
- TP Invoice

We'll need you to attach the original sig pages you are holding.

As a reminder, there are <u>two</u> Lender sig pages to the Assignment and a Lender and Borrower sig page to the Security Instrument.

Once you have everything assembled, please send scans for our review <u>prior</u> to sending out.
Thanks!

**Kelly A. Mufarrige**
**Associate**
**troutman** pepper
Direct: 202.274.2921 | Internal: 12-2921
kelly.mufarrige@troutman.com

**From:** Sankano, Gita F. <Gita.Sankano@Troutman.com>
**Sent:** Thursday, February 24, 2022 5:16 PM
**To:** Fields, Lacinda J. <Lacinda.Fields@troutman.com>
**Cc:** Mufarrige, Kelly A. <Kelly.Mufarrige@troutman.com>; Bowsher, Matthew R. <Matthew.Bowsher@troutman.com>
**Subject:** The Alden South Hills (Supplemental) - Escrow Package

Hi Lacinda,

We are sending out of escrow package for this one tomorrow. Please send us the scans as well. I'll send you a calendar invite as well.

Thank you!

**Gita F. Sankano**
**Associate**
Direct: 202.220.1251 | Internal: 803-1251
gita.sankano@troutman.com

**troutman** pepper
401 9th Street, NW, Suite 1000
Washington, DC  20004
troutman.com

Troutman Pepper is a 2021 Mansfield Certified Plus Firm

| | |
|---|---|
| **From:** | Bowsher, Matthew R.[/O=TROUTMANSANDERS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=99D8D2CBA40440EFA576623B7A8765CF-BOWSHER,] |
| **Sent:** | Thur 8/3/2023 12:59:23 PM (UTC-04:00) |
| **To:** | Iwashyna, Brian J.[Brian.Iwashyna@troutman.com] |
| **Subject:** | (FYI, not urgent) re: Gita |

You should probably be aware that I'm having this type of communication with Gita…

**Matthew R. Bowsher**
**Partner**
troutman **pepper**
Office: 202.274.1939 | Mobile: 301.512.0423
matthew.bowsher@troutman.com

---

**From:** Bowsher, Matthew R.
**Sent:** Thursday, August 3, 2023 12:44 PM
**To:** Sankano, Gita F. <Gita.Sankano@troutman.com>
**Subject:** RE: Falls of Braeswood and Falls of Dairy Ashford - NEW MATTER

I'm concerned that you thought you were "clear". In fact, you were the opposite of clear. And the fact that you still don't see this upon further reflection, even after I've taken the time to point it out, is what worries me.

In your first email below (from 11:09am this morning), you stated "**Kelly should be the matter responsible**". Anyone reading that sentence would reasonably interpret that as a request to make Kelly the matter responsible attorney, i.e. to switch it from 100% Matt to 100% Kelly. There is no other way to interpret that sentence. If you meant to ask for them to change it from Matt being 100% responsible to Matt only being 70% responsible, that is not what that sentence conveyed. You added a sentence which said "See below", and then you added a clip of the originally-requested 70/30 split at the end, but that clip with the correct split contradicted your initial sentence which requested that Kelly be 100% matter responsible; that contradiction is what made your communication anything but clear. Then, adding to the confusion, in your subsequent email, you doubled-down on your initial request, by again saying "**Kelly should be the matter responsible. So it should change from Matt to Kelly.**" Again, I'm not sure how anyone could read that sentence to mean anything other than what it very clearly says, which is that you're asking to make Kelly "the" matter responsible attorney, i.e. the 100% matter responsible, the only matter responsible attorney, not a 70/30 split with Matt.

This is very basic, elementary communication. This has nothing to do with training, or understanding of multifamily transactional law, this is daily required functioning. You expressed interest in receiving my input/feedback in real time as to your performance, so I am taking 20 minutes out of my morning right now to explain to you, in very clear objective detailed analysis, that when I see something like this, where it is so undeniably evident that you've made an obvious and surprising error, and you're saying you still don't see the error even after I've taken the time to point it out to you, and you're still saying you've done nothing wrong… I really just don't know what more I can say here. If you don't even see the problem, I'm not sure how you'll fix it, but it's definitely something you need to fix, because if you had this same type of miscommunication with a client or borrower's counsel rather than with our internal administrative team, I would have to drop everything and get on the phone immediately to do serious damage control, reassuring them that the deal is actually in capable hands. Bottom line: this is not something I would expect from a fourth-year associate.

I am in the office 4 days a week, every week, available to discuss this further in person any time you wish. Just so we are 100% clear, I have no intention of proactively contacting you to discuss this any further, as I've already given you my full and candid thoughts on the matter, nor am I necessarily implying that any

App.G-Bowsher-Ex.34

further discussion need be had, rather I am merely clarifying that I leave it to your own initiative as to whether you wish to discuss it further.

Matt

**Matthew R. Bowsher**
**Partner**
troutman **pepper**
Office: 202.274.1939 | Mobile: 301.512.0423
matthew.bowsher@troutman.com

**From:** Sankano, Gita F. <Gita.Sankano@troutman.com>
**Sent:** Thursday, August 3, 2023 11:31 AM
**To:** Bowsher, Matthew R. <Matthew.Bowsher@troutman.com>
**Subject:** RE: Falls of Braeswood and Falls of Dairy Ashford - NEW MATTER

Thank you, Matt.

I thought I was clear with the first email I sent today as it relates to the percentage distribution (see attached).

**Gita F. Sankano**
**Associate**
troutman **pepper**
Direct: 202.220.1251 | Internal: 803-1251
gita.sankano@troutman.com

**From:** Bowsher, Matthew R. <Matthew.Bowsher@troutman.com>
**Sent:** Thursday, August 3, 2023 11:28 AM
**To:** Sankano, Gita F. <Gita.Sankano@troutman.com>
**Subject:** RE: Falls of Braeswood and Falls of Dairy Ashford - NEW MATTER

You are confused. Kelly is not to be the sole 100% matter responsible attorney. Per your original request, and per the other matters you've previously opened for me and Kelly, it should be 30% Kelly and 70% Matt.

**Matthew R. Bowsher**
**Partner**
troutman **pepper**
Office: 202.274.1939 | Mobile: 301.512.0423
matthew.bowsher@troutman.com

**From:** Sankano, Gita F. <Gita.Sankano@troutman.com>
**Sent:** Thursday, August 3, 2023 11:17 AM
**To:** Mauriello, Lisa M. <Lisa.Mauriello@troutman.com>; MFH New Matters <MFHNewMatters@troutman.com>
**Cc:** Mufarrige, Kelly A. <Kelly.Mufarrige@troutman.com>; Bowsher, Matthew R.
<Matthew.Bowsher@troutman.com>; Staub, Julie Lynn <Julie.Staub@troutman.com>; Jackson, Tia L.
<Tia.Jackson@troutman.com>; Morant, Michelle <Michelle.Morant@Troutman.com>; Stratton, Katherine E
<Katie.Stratton@troutman.com>
**Subject:** RE: Falls of Braeswood and Falls of Dairy Ashford - NEW MATTER

I just got a request to change the matter assigned from to Kelly?

App.G-Bowsher-Ex.34

Troutman_00006687

Kelly should be the matter responsible. So it should change from Matt to Kelly.

I hope that that makes sense!

**Gita F. Sankano**
**Associate**
troutman **pepper**
Direct: 202.220.1251 | Internal: 803-1251
gita.sankano@troutman.com

**From:** Mauriello, Lisa M. <Lisa.Mauriello@troutman.com>
**Sent:** Thursday, August 3, 2023 11:14 AM
**To:** Sankano, Gita F. <Gita.Sankano@troutman.com>; MFH New Matters <MFHNewMatters@troutman.com>
**Cc:** Mufarrige, Kelly A. <Kelly.Mufarrige@troutman.com>; Bowsher, Matthew R.
<Matthew.Bowsher@troutman.com>; Staub, Julie Lynn <Julie.Staub@troutman.com>; Jackson, Tia L.
<Tia.Jackson@troutman.com>; Morant, Michelle <Michelle.Morant@Troutman.com>; Stratton, Katherine E
<Katie.Stratton@troutman.com>
**Subject:** RE: Falls of Braeswood and Falls of Dairy Ashford - NEW MATTER

Good Morning,
The change request was entered.
Thanks

**Lisa Mauriello**
**Firm Intelligence Coordinator**
troutman **pepper**
Direct: 757.687.7521 | Internal: 17-7521
lisa.mauriello@troutman.com

**From:** Sankano, Gita F. <Gita.Sankano@troutman.com>
**Sent:** Thursday, August 3, 2023 11:09 AM
**To:** Mauriello, Lisa M. <Lisa.Mauriello@troutman.com>; MFH New Matters MFHNewMatters@troutman.com
**Cc:** Mufarrige, Kelly A. <Kelly.Mufarrige@troutman.com>; Bowsher, Matthew R.
<Matthew.Bowsher@troutman.com>; Staub, Julie Lynn <Julie.Staub@troutman.com>; Jackson, Tia L.
<Tia.Jackson@troutman.com>; Morant, Michelle <Michelle.Morant@Troutman.com>; Stratton, Katherine E
<Katie.Stratton@troutman.com>
**Subject:** RE: Falls of Braeswood and Falls of Dairy Ashford - NEW MATTER

Hi Lisa,

Kelly should be the matter responsible attorney for this one. See below. Please update.

Thanks!!

| Matter Responsible Atty: | Kelly Mufarrige (30%) / Matt Bowsher (70%) |
| --- | --- |

App.G-Bowsher-Ex.34

Troutman_00006688

**Gita F. Sankano**
**Associate**
troutman **pepper**
Direct: 202.220.1251 | Internal: 803-1251
gita.sankano@troutman.com

---

**From:** Mauriello, Lisa M. <Lisa.Mauriello@troutman.com>
**Sent:** Wednesday, August 2, 2023 11:31 AM
**To:** Sankano, Gita F. <Gita.Sankano@troutman.com>; MFH New Matters <MFHNewMatters@troutman.com>
**Cc:** Mufarrige, Kelly A. <Kelly.Mufarrige@troutman.com>; Bowsher, Matthew R.
<Matthew.Bowsher@troutman.com>; Staub, Julie Lynn <Julie.Staub@troutman.com>; Jackson, Tia L.
<Tia.Jackson@troutman.com>; Morant, Michelle <Michelle.Morant@Troutman.com>; Stratton, Katherine E
<Katie.Stratton@troutman.com>
**Subject:** RE: Falls of Braeswood and Falls of Dairy Ashford - NEW MATTER

Good Morning,
We combined the two properties into one matter, **018413.000867**
Thanks!

**Lisa Mauriello**
**Firm Intelligence Coordinator**
troutman **pepper**
Direct: 757.687.7521 | Internal: 17-7521
lisa.mauriello@troutman.com

---

**From:** Sankano, Gita F. <Gita.Sankano@troutman.com>
**Sent:** Monday, July 31, 2023 2:10 PM
**To:** MFH New Matters <MFHNewMatters@troutman.com>
**Cc:** Mufarrige, Kelly A. <Kelly.Mufarrige@troutman.com>; Bowsher, Matthew R.
<Matthew.Bowsher@troutman.com>; Staub, Julie Lynn <Julie.Staub@troutman.com>; Jackson, Tia L.
<Tia.Jackson@troutman.com>; Morant, Michelle <Michelle.Morant@Troutman.com>; Stratton, Katherine E
<Katie.Stratton@troutman.com>
**Subject:** Falls of Braeswood and Falls of Dairy Ashford - NEW MATTER

Good afternoon,

Please open the two deals below. We will only need **one client matter number** for these two.

Thanks,

| Client: | JLL |
|---|---|
| **Deal Type:** | **Freddie Mac** |
| **Property Name & Location:** | **Falls of Dairy Ashford**<br>**12707 Bellaire Boulevard** |

| | Houston, TX 77072 |
|---|---|
| **Matter Opening Atty:** | **Matt Bowsher** |
| **Matter Responsible Atty:** | **Kelly Mufarrige (30%) / Matt Bowsher (70%)** |
| **Matter Assigned Atty:** | **Gita Sankano** |
| **Closing Date:** | **08/30/2023** |
| **Loan Amount:** | **$17,400,000** |
| **Borrower(s):** | **Falls of Dairy Ashford LP** |
| **Guarantor(s) / Key Principals(s):** | Rao J. Polavarapu |
| Originator: | **Luke Rogers** |
| **Closer:** | **Patrick McCarren** |

| Client: | JLL |
|---|---|
| **Deal Type:** | **Freddie Mac** |
| **Property Name & Location:** | **Falls of Braeswood 8801 South Braeswood Boulevard Houston, TX 77031** |
| **Matter Opening Atty:** | **Matt Bowsher** |
| **Matter Responsible Atty:** | **Kelly Mufarrige (30%) / Matt Bowsher (70%)** |
| **Matter Assigned Atty:** | **Gita Sankano** |
| **Closing Date:** | **08/30/2023** |
| **Loan Amount:** | **$16,781,000** |
| **Borrower(s):** | **Falls of Braeswood LP** |
| **Guarantor(s) / Key Principals(s):** | Rao J. Polavarapu |

| Originator: | Luke Rogers |
|---|---|
| Closer: | Patrick McCarren |

**Gita F. Sankano**
**Associate**
Direct: 202.220.1251 | Internal: 803-1251
gita.sankano@troutman.com

troutman **pepper**
401 9th Street, NW, Suite 1000
Washington, DC 20004
troutman.com

Troutman Pepper is a Mansfield Certified Plus Firm

App.G-Bowsher-Ex.34

| | |
|---|---|
| **From:** | Bowsher, Matthew R. [/O=TROUTMANSANDERS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=99D8D2CBA40440EFA576623B7A8765CF-BOWSHER,] |
| **Sent:** | 2/28/2022 11:49:20 PM |
| **To:** | Sankano, Gita F. [Gita.Sankano@Troutman.com] |
| **Subject:** | RE: Aspire at Live Oak- Lender Signature Pages |

Understood, totally makes sense.  Thanks again.

## Matthew R. Bowsher
**Partner**
troutman **pepper**
Office: 202.274.1939 ⋮ Mobile: 301.512.0423
matthew.bowsher@troutman.com

---

**From:** Sankano, Gita F. <Gita.Sankano@Troutman.com>
**Sent:** Monday, February 28, 2022 5:54 PM
**To:** Bowsher, Matthew R. <Matthew.Bowsher@troutman.com>
**Subject:** FW: Aspire at Live Oak- Lender Signature Pages

FYI- Shelia typically signs the notary pages and Veronica signs the other signature pages.

## Gita F. Sankano
**Associate**
troutman **pepper**
Direct: 202.220.1251 ⋮ Internal: 803-1251
gita.sankano@troutman.com

---

**From:** Sankano, Gita F. <Gita.Sankano@Troutman.com>
**Sent:** Wednesday, October 20, 2021 10:09 AM
**To:** Veronica Veraldi <vveraldi@walkerdunlop.com>; Ned Tazewell <NTazewell@walkerdunlop.com>; Matt Restivo <MRestivo@walkerdunlop.com>; Askia Brown <ABrown@walkerdunlop.com>; Archna Gupta <agupta@walkerdunlop.com>; Katie Hinder <KHinder@walkerdunlop.com>; Team Tapley <TeamTapley@walkerdunlop.com>; July James <jjames@walkerdunlop.com>; Andrew Dalgliesh <adalgliesh@walkerdunlop.com>
**Cc:** McPherson, David J. <David.McPherson@Troutman.com>; Crumpton, Lisa Pennington <Lisa.Crumpton@Troutman.com>; Fields, Lacinda J. <Lacinda.Fields@Troutman.com>; Hayden, Kelly L. <Kelly.Hayden@Troutman.com>
**Subject:** Aspire at Live Oak- Lender Signature Pages

Good Morning,

Attached are the signature pages and notarials.

Please have all of the pages sent to my attention at our DC office at the address below:

Troutman Pepper Hamilton Sanders LLP
401 9th Street, NW, Suite 1000
Washington, DC 20004
Attention: Gita F. Sankano, Esq./ Aspire at Live Oak

We have also included a few extra signature pages (both with and without notarials) for use in the event any original pages are damaged during scanning, copying, or transit – we will not use these pages without your permission.

Thanks,
Gita


**Gita F. Sankano**
**Associate**
Direct: 202.220.1251 ¦ Internal: 803-1251
gita.sankano@troutman.com
————————————————
troutman **pepper**
401 9th Street, NW, Suite 1000
Washington, DC  20004
troutman.com
————————————————

Troutman Pepper is a 2021 Mansfield Certified Plus Firm

From:       Bowsher, Matthew R. [Matthew.Bowsher@troutman.com]
Sent:       4/22/2022 12:57:40 PM
To:         Sankano, Gita F. [/o=Pepper Hamilton LLP/ou=Exchange Administrative Group
            (FYDIBOHF23SPDLT)/cn=Recipients/cn=Sankano, Gita F.b71]
Subject:    RE: Estates at Palm Bay - Legal Due Diligence Checklist

Perfect, thanks.

## Matthew R. Bowsher
**Partner**
troutman **pepper**
Office: 202.274.1939 ⁞ Mobile: 301.512.0423
matthew.bowsher@troutman.com

**From:** Sankano, Gita F. <Gita.Sankano@Troutman.com>
**Sent:** Friday, April 22, 2022 9:58 AM
**To:** Bowsher, Matthew R. <Matthew.Bowsher@troutman.com>
**Subject:** RE: Estates at Palm Bay - Legal Due Diligence Checklist

Hi Matt,

Please see attached on your first question below.

On the second point, I have seen that language used before.

> 1.   Based solely on the Borrower Good Standing Certificates, Borrower is a Delaware limited liability company, duly organized, validly existing and in good standing under the laws of the State of Delaware, and  is qualified to transact business as a foreign limited liability company in Texas.

However, it's Fannie Mae language (wrong deal type on my part). I might have got the opinion languages confused.
In addition, Winstead has rendered opinion #1 on the Freddie Mac deals before (see attached). As such, I completely agree with your point below.  I think we can push back and have the borrower revise opinion #1.

Thank you!

## Gita F. Sankano
**Associate**
troutman **pepper**
Direct: 202.220.1251 ⁞ Internal: 803-1251
gita.sankano@troutman.com

**From:** Bowsher, Matthew R. <Matthew.Bowsher@troutman.com>
**Sent:** Thursday, April 21, 2022 10:02 PM
**To:** Sankano, Gita F. <Gita.Sankano@Troutman.com>
**Subject:** RE: Estates at Palm Bay - Legal Due Diligence Checklist

My comments on the DE opinion:

1.     Can you explain why you feel #21-24 are not required for this loan?

App.G-Bowsher-Ex.36

2.      Not sure I'm okay with the following mod, circled in red below; have you ever seen us accept this before?   Seems to me that (i) we already allow borrower to rely broadly on certificates from the borrower as to factual matters, in the Scope of Review section, so they don't need to specifically repeat it here, and (ii) there are more than mere factual matters involved in giving a legal opinion as to formation, it's not just a matter of fact it's a matter of law, and it's not standard/customary to allow the opinion issuer to rely exclusively on a self-serving statement by the borrower which says they are duly formed, the whole point of the opinion is for borrower's counsel to reach that conclusion on its own and to opine to it.   Not asking you to push back blindly on the bor's counsel on this, rather I'm asking you to give this some thought, consider whether you've ever seen it in the year that you've been closing loans with us, and also pull prior Winstead opinions to see if Troutman has accepted it from this firm, then let's circle-back and see if it's appropriate to reject it.



1.   Borrower is a [CHOOSE ONE: corporation (a) limited liability company (a) based solely on Borrower's Certificate, duly incorporatedformed, (b) validly existing, and (c) in good standing OR limited partnership (a) duly formed, (b) validly existing, and (c) in good standing OR limited liability company (a) duly organized, (b) validly existing, and (c) in good standing OR general partnership (a) duly formed, (b) validly existing, and (c) in good standing] under the laws of the State of Borrower's Organization.

**Matthew R. Bowsher**
**Partner**
troutman **pepper**
Office: 202.274.1939 ¦ Mobile: 301.512.0423
matthew.bowsher@troutman.com

**From:** Sankano, Gita F. <Gita.Sankano@Troutman.com>
**Sent:** Thursday, April 21, 2022 2:12 PM
**To:** Bowsher, Matthew R. <Matthew.Bowsher@troutman.com>
**Subject:** FW: Estates at Palm Bay - Legal Due Diligence Checklist

Hi Matt,

The DE opinion looks good. I have no comments.

Thanks,
Gita

**Gita F. Sankano**
**Associate**
troutman **pepper**
Direct: 202.220.1251 ¦ Internal: 803-1251
gita.sankano@troutman.com

**From:** Lee, Esther <elee@winstead.com>
**Sent:** Thursday, April 21, 2022 11:05 AM

App.G-Bowsher-Ex.36

**To:** Sankano, Gita F. <Gita.Sankano@Troutman.com>
**Cc:** Bowsher, Matthew R. <Matthew.Bowsher@Troutman.com>; Swope, Tobin <tswope@winstead.com>
**Subject:** RE: Estates at Palm Bay - Legal Due Diligence Checklist

**EXTERNAL SENDER**

Good morning Gita,

We reviewed the updated loan documents and it looks like our requested changes to Exhibit B of the Multifamily Loan and Security Agreement have not been included. Please see attached our revised version (with the same previously requested changes) and a redline to your most recent draft.

Also, here are a couple of more items for the checklist.

1.      Attached is the draft DE opinion letter and a redline to the Freddie opinion form. (*We are still waiting on draft opinions from Florida counsel and will send those as soon as available.)

2.      There are no laundry leases, asset agreement, or commercial leases.

Please let us know if you have any questions.

Thanks,
Esther

Esther Lee, Real Estate Development & Investments Associate
Winstead PC | 2728 N. Harwood Street | Suite 500 | Dallas, Texas 75201
214.745.5885 direct | 214.745.5390 fax | elee@winstead.com | Winstead.com

**From:** Sankano, Gita F. <Gita.Sankano@Troutman.com>
**Sent:** Friday, April 15, 2022 3:19 PM
**To:** Lee, Esther <elee@winstead.com>
**Cc:** Bowsher, Matthew R. <Matthew.Bowsher@Troutman.com>; Swope, Tobin <tswope@winstead.com>
**Subject:** RE: Estates at Palm Bay - Legal Due Diligence Checklist

Hi there,

Please see the changes that we have made so far on the loan documents. Please let me know if you have any questions,

Thanks,
Gita

**Gita F. Sankano**
**Associate**
**troutman pepper**
Direct: 202.220.1251 ¦ Internal: 803-1251
gita.sankano@troutman.com

**From:** Lee, Esther <elee@winstead.com>
**Sent:** Friday, April 15, 2022 10:58 AM
**To:** Sankano, Gita F. <Gita.Sankano@Troutman.com>

App.G-Bowsher-Ex.36

Troutman_00002727

Cc: Bowsher, Matthew R. <Matthew.Bowsher@Troutman.com>; Swope, Tobin <tswope@winstead.com>
**Subject:** RE: Estates at Palm Bay - Legal Due Diligence Checklist

**EXTERNAL SENDER**

Hi Gita,

Thanks for sending over the updated checklist. It looks like closing is being pushed to the end of May. Please see comments in red below.

Let us know if you have any questions.

Thanks,
Esther

Esther Lee, Real Estate Development & Investments Associate
Winstead PC | 2728 N. Harwood Street | Suite 500 | Dallas, Texas 75201
214.745.5885 direct | 214.745.5390 fax | elee@winstead.com | Winstead.com

**From:** Sankano, Gita F. <Gita.Sankano@Troutman.com>
**Sent:** Thursday, April 14, 2022 5:10 PM
**To:** Lee, Esther <elee@winstead.com>; Swope, Tobin <tswope@winstead.com>
**Cc:** Bowsher, Matthew R. <Matthew.Bowsher@Troutman.com>
**Subject:** Estates at Palm Bay - Legal Due Diligence Checklist

**Good Evening,**

**Please see the updated checklist below. Please send and provide the answers for the following items by Wednesday next week**

- **DE & FL Opinions (borrower and guarantor)** [We are working on the opinions and will send drafts over as soon as possible.]
- **Confirmation if there are any laundry leases, asset agreement, or commercial leases** [Most likely none but will confirm again.]
- **When will we receive the signature pages?** [You mentioned 3-4 days prior to closing, correct?]

**Thanks,**
**Gita**

<u>Target Closing Date: May 2, 2022</u> [End of May Closing]

<u>A&R Loan</u>
- Draft Assignment documents (Allonge to Note and Assignment of Mortgage) from current Lender to JLL – **Comments Sent**
- Confirmation from Title of receipt the Assignment of Mortgage– **NEED (at closing)**
- Confirmation from Troutman of receipt of the Original Allonge, and Original Note(s) – **NEED (at closing)**

<u>Legal Due Diligence</u>
- Title Commitment/Exceptions Documents – **Comments Sent**
- Copy of any agreement being recorded at closing – **NEED (or confirm none)** [If any document recorded or to be recorded on title will contain a prohibition against or any indemnification in connection with

App.G-Bowsher-Ex.36

the conversion of the Property to a condominium or cooperative structure, it will need to be approved by Lender prior to rate lock]

-        UCC/Judgment/Tax Lien Searches on Borrower (Borrower's counsel to order. <u>Dated within 30 days of closing</u>) – **NEED [To be ordered sometime next week so it is dated within 30 days of closing.]**
o        Name: Lurin Real Estate Holdings VI, LLC
o        Location:
- The State in which the Borrower was formed (DE)
- The local jurisdiction in which the Property is located (Okaloosa County, FL)
-        Draft Opinion Letter(s) (**in the forms provided**)
1.        Borrower
1.                Delaware- **NEED**
2.                DE single-member LLC- **IN; Need executed copy for closing**
3.                FL – **NEED**
2.        Guarantor (FL) – **NEED**
3.        Non-Con Opinion Letter – **NEED**
-        Asset Management Agreement (or any other agreement with affiliated fees) [*Must be subordinate to the Loan*] – **NEED (or confirm none)**
-        Ground Lessor Estoppel – **(revised form approved, need final signed copy)**
-        Amendment (Extension) to Ground Lease (**revised form approved, need final signed copy**)
-        Organizational Documents (Borrower/Guarantor and their sub-entities):
1.        <u>Lurin Real Estate Holdings VI, LLC</u>
**1.**                A&R Operating Agreement -  **IN; Need executed copy at closing**
**1.**                Assignment of membership interest - **IN; Need executed copy at closing**
b.        Certificate of Good Standing (Dated within 30 days of closing) – **NEED**
c.        Certificate of Authority to Transact Business (Dated within 30 days of closing) – **NEED**
2.        <u>Lurin Real Estate Holdings VI KB 1, LLC</u>
a.        A&R Operating Agreement (or amendment) – **NEED (to reflect removal of pref member)  [There is no A&R Operating Agreement. The KB 1 entity is being terminated before closing and we have already started the process. The preferred member interest has been fully redeemed and the KB 1 entity has assigned all of its interest in the Borrower entity to Lurin Equity Partners VI, LLC (who is the new sole member of Borrower). Please see attached assignment of membership interest.]**
b.        Certificate of Good Standing (Dated within 30 days of closing) – **NEED**
3.        <u>Lurin Advisors, LLC</u>
a.        Certificate of Good Standing ( Dated within 30 days of closing) – **NEED**
-        Laundry Lease – **NEED (or confirm none)**
-        Commercial Leases (non-Laundry Lease) – **NEED (or confirm none)**
-        Confirmation that you have reviewed/approved the draft loan documents – <u>any document modifications need to be reviewed and approved by Freddie Mac and no changes are permitted after rate lock</u> – **NEED [Sent (3/16)] [Can you please send the updated drafts of the loan agreement, note and mortgage per our comments?]**
-        Signature Pages **[Sent 4/4]**
1.        Borrower – **NEED**
2.        Guarantor – **NEED**
3.        Property Manager – **NEED**

<u>Troutman / Lender</u>
-        Zoning Report – *draft received*

<u>Closing Coordination</u>
-        Executed Escrow Letter from Title – **NEED (after receipt of original recording package)**
-        Certified Record Documents from Title – **NEED**
-        Closing Protection Letter from Title, if applicable – **NEED**
-        Acceptable interest rate cap documentation from Kutak Rock, if applicable – **NEED**
-        Fully Executed Settlement Statement – **NEED**

App.G-Bowsher-Ex.36

Please forward each item as soon as it is available.

Thanks,
Gita

**Gita F. Sankano**
**Associate**
Direct: 202.220.1251 ¦ Internal: 803-1251
gita.sankano@troutman.com

troutman **pepper**
401 9th Street, NW, Suite 1000
Washington, DC  20004
troutman.com

Troutman Pepper is a 2021 Mansfield Certified Plus Firm

This e-mail (and any attachments) from a law firm may contain legally privileged and confidential information solely for the intended recipient. If you received this message in error, please notify the sender and delete it. Any unauthorized reading, distribution, copying, or other use of this e-mail (and attachments) is strictly prohibited. We have taken precautions to minimize the risk of transmitting computer viruses, but you should scan attachments for viruses and other malicious threats; we are not liable for any loss or damage caused by viruses.

Information contained in this transmission is attorney privileged and confidential. It is intended for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copy of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone.

| | |
|---|---|
| **From:** | Sankano, Gita F.[/O=TROUTMANSANDERS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=GITA.SANKANO] |
| **Sent:** | Wed 8/23/2023 2:24:02 PM (UTC-04:00) |
| **To:** | Sankano, Gita F.[Gita.Sankano@troutman.com] |
| **Subject:** | FW: Estates at Palm Bay - Comments to the local opinion |

## Gita F. Sankano
**Associate**
troutman **pepper**
Direct: 202.220.1251 | Internal: 803-1251
gita.sankano@troutman.com

**From:** Bowsher, Matthew R. <Matthew.Bowsher@troutman.com>
**Sent:** Wednesday, May 4, 2022 9:09 PM
**To:** Sankano, Gita F. <Gita.Sankano@Troutman.com>
**Subject:** RE: Estates at Palm Bay - Comments to the local opinion

Meh.   No biggie.   I'll respond.

## Matthew R. Bowsher
**Partner**
troutman **pepper**
Office: 202.274.1939 | Mobile: 301.512.0423
matthew.bowsher@troutman.com

**From:** Sankano, Gita F. <Gita.Sankano@Troutman.com>
**Sent:** Wednesday, May 4, 2022 6:34 PM
**To:** Bowsher, Matthew R. <Matthew.Bowsher@troutman.com>
**Subject:** FW: Estates at Palm Bay - Comments to the local opinion

Yikes…

## Gita F. Sankano
**Associate**
troutman **pepper**
Direct: 202.220.1251 | Internal: 803-1251
gita.sankano@troutman.com

**From:** Lee, Esther <elee@winstead.com>
**Sent:** Wednesday, May 4, 2022 6:33 PM
**To:** Sankano, Gita F. <Gita.Sankano@Troutman.com>
**Cc:** Bowsher, Matthew R. <Matthew.Bowsher@Troutman.com>; Swope, Tobin <tswope@winstead.com>
**Subject:** RE: Estates at Palm Bay - Comments to the local opinion

**EXTERNAL SENDER**

Gita,

Thanks for sending the comments.

The DE opinion is still under internal review. It looks like our firm recently closed on another JLL/Freddie loan last week with a formation opinion based solely on borrower's certificate (and with your firm as lender's counsel). The borrower in that deal was Culberson Apartments, Ltd. and the property was Liberty Lofts, located in Cooke County, TX. Would you mind letting us know what the difference is between the two deals? We would then relay that information to our internal board.

Thank you,
Esther

Esther Lee, Real Estate Development & Investments Associate
Winstead PC | 2728 N. Harwood Street | Suite 500 | Dallas, Texas 75201
214.745.5885 direct | 214.745.5390 fax | elee@winstead.com | Winstead.com

---

**From:** Sankano, Gita F. <Gita.Sankano@Troutman.com>
**Sent:** Wednesday, May 4, 2022 7:58 AM
**To:** Lee, Esther <elee@winstead.com>; Swope, Tobin <tswope@winstead.com>
**Cc:** Bowsher, Matthew R. <Matthew.Bowsher@Troutman.com>
**Subject:** Estates at Palm Bay - Comments to the local opinion

Hi Esther,

Please see our comments to the FL opinions attached. Also, can you let us know the status on the DE opinion?

Thanks,
Gita

## Gita F. Sankano
**Associate**
Direct: 202.220.1251 | Internal: 803-1251
gita.sankano@troutman.com

———————————

**troutman** pepper
401 9th Street, NW, Suite 1000
Washington, DC  20004
troutman.com

———————————

Troutman Pepper is a 2021 Mansfield Certified Plus Firm

---

This e-mail (and any attachments) from a law firm may contain legally privileged and confidential information solely for the intended recipient. If you received this message in error, please notify the sender and delete it. Any unauthorized reading, distribution, copying, or other use of this e-mail (and attachments) is strictly prohibited. We have taken precautions to minimize the risk of transmitting computer viruses, but you should scan attachments for viruses and other malicious threats; we are not liable for any loss or damage caused by viruses.

---

Information contained in this transmission is attorney privileged and confidential. It is intended for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copy of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone.

App.G-Bowsher-Ex.37

Troutman_00000652

| From: | Bowsher, Matthew R.[Matthew.Bowsher@troutman.com] |
|---|---|
| Sent: | Tue 5/3/2022 11:36:14 AM (UTC-04:00) |
| To: | Sankano, Gita F.[Gita.Sankano@Troutman.com] |
| Subject: | RE: Andorra Point (fka Cathedral East) - Legal Due Diligence Checklist |

Oh, wow!  Ha!!  That's a massive disconnect between the form opinion and the guidelines.   FYI, the opinion you and Kelly reviewed on Alden South Hills has all of the local opinions except enforceability, notwithstanding Kelly's comment.   And the most recent supplemental I did with Ari also has all the local opinions except enforceability.  Feels like we're saying one thing but requiring/obtaining something else.    Thanks for bringing this to my attention!  I'll ping Jeremy and Virginia.  Hard to argue with the Guidelines, you're totally right of course, it says right there in black and white that no local law opinions are required, but that's not consistent with the actual form opinion or with what I've been seeing our DC associates require/obtain.

## Matthew R. Bowsher
**Partner**
troutman **pepper**
Office: 202.274.1939 | Mobile: 301.512.0423
matthew.bowsher@troutman.com

From: Sankano, Gita F. <Gita.Sankano@Troutman.com>
Sent: Tuesday, May 3, 2022 7:16 AM
To: Bowsher, Matthew R. <Matthew.Bowsher@troutman.com>
Subject: RE: Andorra Point (fka Cathedral East) - Legal Due Diligence Checklist

Good morning Matt!

It was my understanding that all local opinions are not required for supplemental loans. In addition to the attached Freddie Mac published opinions guidelines which show no enforceability opinion or local law opinions will be required for supplemental loans, our firm annotated opinions also instructs that no enforceability or local law opinions are required for supplemental loans (see footnote 22). I also have an old email from Jeremy (2016) that Whitney forwarded to which states the same. Please let me know how you'd like to proceed. I'm happy to confirm with Jeremy and Virginia.

Lastly, on the Alden deal Kelly specifically told me that we don't need local opinions on supplemental deals. I'll forward that email shortly.

Thanks,
Gita

## Gita F. Sankano
**Associate**
troutman **pepper**
Direct: 202.220.1251 | Internal: 803-1251
gita.sankano@troutman.com

From: Bowsher, Matthew R. <Matthew.Bowsher@troutman.com>
Sent: Tuesday, May 3, 2022 12:11 AM
To: Sankano, Gita F. <Gita.Sankano@Troutman.com>
Subject: RE: Andorra Point (fka Cathedral East) - Legal Due Diligence Checklist

Please issue a correction to your statement below.  It is not accurate to say that "no enforceability/local opinions are

App.G-Bowsher-Ex.38

Troutman_00002630

needed".   See attached form Freddie opinion, and do a search for "supplemental", you'll see that the only opinion which is waived on supplementals is the enforceability opinion.   All of the other opinions labeled as being required from counsel for Property Jurisdiction… i.e., all other "local opinions"…  are still required, to the extent they are applicable.   For example, if our borrower is formed in DE but the property is in PA, then we still need an opinion regarding authorization to do business as a foreign LLC, which comes from local counsel.   See the Alden South Hills supplemental loan for which you recently helped review the opinion; local opinions were required/included.

## Matthew R. Bowsher
**Partner**
troutman **pepper**
Office: 202.274.1939 | Mobile: 301.512.0423
matthew.bowsher@troutman.com

---

**From:** Sankano, Gita F. <Gita.Sankano@Troutman.com>
**Sent:** Monday, May 2, 2022 4:50 PM
**To:** Marrinucci, Andrew <amarrinucci@klehr.com>
**Cc:** Bowsher, Matthew R. <Matthew.Bowsher@troutman.com>; Maslow, Jonathan <JMaslow@klehr.com>
**Subject:** RE: Andorra Point (fka Cathedral East) - Legal Due Diligence Checklist

Thank you, Andrew! For the opinion, no enforceability/local opinions are needed because this transaction is a supplemental loan.

Thanks!

## Gita F. Sankano
**Associate**
troutman **pepper**
Direct: 202.220.1251 | Internal: 803-1251
gita.sankano@troutman.com

---

**From:** Marrinucci, Andrew <amarrinucci@klehr.com>
**Sent:** Monday, May 2, 2022 4:47 PM
**To:** Sankano, Gita F. <Gita.Sankano@Troutman.com>
**Cc:** Bowsher, Matthew R. <Matthew.Bowsher@troutman.com>; Maslow, Jonathan <JMaslow@klehr.com>
**Subject:** RE: Andorra Point (fka Cathedral East) - Legal Due Diligence Checklist

**EXTERNAL SENDER**

Gita,

Attached for your review are the following certified formation documents and standing certificates for the Borrower and Love Andorra A LLC.  Let us know if you have any questions.

Thank you,

Andrew



**ANDREW MARRINUCCI  |  ASSOCIATE**
**KLEHR HARRISON HARVEY BRANZBURG LLP**
1835 Market Street | Suite 1400 | Philadelphia, PA 19103
t 215.569.4284 | f 215.568.6603
amarrinucci@klehr.com  |  LinkedIn  |  Twitter

App.G-Bowsher-Ex.38

Troutman_00002631

This email may contain material that is confidential, privileged and/or attorney work product for the sole use of the intended recipient. Any review, reliance or distribution by others or forwarding without express permission is strictly prohibited. If you are not the intended recipient, please contact the sender and delete all copies.

**From:** Sankano, Gita F. <Gita.Sankano@Troutman.com>
**Sent:** Saturday, April 30, 2022 12:19 PM
**To:** Marrinucci, Andrew <amarrinucci@klehr.com>; Maslow, Jonathan <JMaslow@klehr.com>
**Cc:** Bowsher, Matthew R. <Matthew.Bowsher@Troutman.com>
**Subject:** Andorra Point (fka Cathedral East) - Legal Due Diligence Checklist

Target closing date of 6/1/2022

To help keep us on the same page, below is a legal due diligence checklist. Please review and provide any items/information as soon as available (keeping in mind the timeframes noted below for certain items). We would like to receive the documents/confirm the status highlighted in yellow sometime next week.

**Legal Due Diligence**

- Loan Document Information – **NEED ASAP (see below)**
- Title Commitment/Exceptions Documents – **Under Review**
- Survey – **Waiver Requested – (See Survey Cert provided)**
- Contact Information:
  ○ Contact info for the escrow / closing agent– **NEED (or confirm same as Title Contact)**
- Copy of any agreement being recorded at closing (including the draft deed if an acquisition) – **NEED (or confirm none) [If the deed (or any other document recorded or to be recorded on title) will contain a prohibition against or any indemnification in connection with the conversion of the Property to a condominium or cooperative structure, it will need to be approved by Lender prior to rate lock]**
- UCC/Judgment/Tax Lien Searches on Borrower (Borrower's counsel to order. Dated within 30 days of closing) – **NEED [See requirements below]**
- Draft Opinion Letter(s) (in the forms provided)
  ○ Borrower – **NEED**
  ○ Guarantor – **NEED**
- Asset Management Agreement (or any other agreement with affiliated fees) [Must be subordinate to the Loan] – **NEED (or confirm none)**
- Laundry Lease – **NEED (or confirm none)**
- Confirmation that you have reviewed/approved the draft loan documents – any document modifications need to be reviewed and approved by Freddie Mac and no changes are permitted after rate lock – **NEED [to be circulated]**
- Signature Pages **[to be circulated]**
  ○ Borrower – **NEED**
  ○ Guarantor – **NEED**
  ○ Property Manager – **NEED**
  ○ Lender – **NEED**

**Organizational Documents (Borrower/Guarantor and their sub-entities):**

1. Love Andorra LLC
   a. Certificate of Formation – **Confirm no changes. Cert dated  8/13/2020**
   b. Operating Agreement – **Confirm no changes. Agreement dated 10/15/2020**
      1. Amendment to Operating Agreement – **NEED (reference new loan)**
   c. Certificate of Good Standing (DE) (Dated within 30 days of closing) – **NEED**
   d. Certificate of Good Standing (PA) (Dated within 30 days of closing) – **NEED**

App.G-Bowsher-Ex.38

2. Love Andorra A, LLC
    a. Certificate of Formation – **NEED**
    b. Operating Agreement – **NEED**
    c. Certificate of Good Standing (DE) (Dated within 30 days of closing) – **NEED**

**Loan Document Information (needed from Borrower)**

- Property Manager's Address – **NEED**

**UCC/tax lien/judgment lien search requirements:**
- Name: Borrower's name
- Location:
  - The State in which the entity was formed
  - The local jurisdiction in which the Property is located
  - The State of residence of any individual
- Date: must be dated no earlier than 30 days prior to the Origination Date

**Closing Coordination**

- Executed Escrow Letter from Title – **NEED (after receipt of original recording package)**
- Fully Executed Settlement Statement – **NEED**
- Intercreditor Agreement - **NEED**

Please forward each item as soon as it is available.

Please note that Title/Survey, Borrower Organizational Documents, Draft Opinions, and any requested document modifications all require approval and must be submitted at least 10 business days before rate lock.

Please let me know if you have any questions or need anything from me.

Thanks,

**Gita F. Sankano**
**Associate**
Direct: 202.220.1251 | Internal: 803-1251
gita.sankano@troutman.com

troutman **pepper**
401 9th Street, NW, Suite 1000
Washington, DC  20004
troutman.com

Troutman Pepper is a 2021 Mansfield Certified Plus Firm

App.G-Bowsher-Ex.38

This e-mail (and any attachments) from a law firm may contain legally privileged and confidential information solely for the intended recipient. If you received this message in error, please notify the sender and delete it. Any unauthorized reading, distribution, copying, or other use of this e-mail (and attachments) is strictly prohibited. We have taken precautions to minimize the risk of transmitting computer viruses, but you should scan attachments for viruses and other malicious threats; we are not liable for any loss or damage caused by viruses.

CAUTION: External email. Do not click links or open attachments unless you recognize the sender and know the content is safe.

App.G-Bowsher-Ex.38