**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

GITA F. SANKANO,

              **Plaintiff,**

        **v.**

**TROUTMAN PEPPER HAMILTON**
**SANDERS LLP AND BRIAN IWASHYNA,**

            **Defendants.**

**Case No. 1:24-cv-00142**

<u>**STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF**</u>
<u>**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**</u>

# Appendix L

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

GITA F. SANKANO,

Plaintiff,

v.

TROUTMAN PEPPER HAMILTON
SANDERS LLP and BRIAN IWASHYNA,

Defendants.

Case No. 1:24-cv-00142

## DECLARATION OF MARSHALL TUCKER

The undersigned states the following:

1.      My name is Marshall Tucker.  I am of majority age, and I give this declaration of my own free will based upon my personal knowledge for use in the above-captioned matter.

2.      Prior to July 1, 2020, I was a partner at Troutman Sanders LLP.  On July 1, 2020, resulting from its combination with Pepper Hamilton LLP ("Pepper Hamilton"), Troutman Sanders changed its name to Troutman Pepper Hamilton Sanders LLP ("Troutman").  On January 1, 2025, the firm's name changed again to Troutman Pepper Locke LLP.

3.      I was a partner in Troutman's Multifamily Housing Finance ("MFH") practice group throughout the time Gita Sankano was employed by Troutman, and I am currently a partner in MFH.

4.      Throughout Ms. Sankano's employment at Troutman, I served on the firm's Associate Development Committee ("ADC").  There is one other partner in the MFH group who has also been on the ADC during this time period – his name is Blair Schiff.

### Ms. Sankano's Work Performance

5.      I worked with Gita Sankano on a few deals in 2021 while Whitney Loughran was on maternity leave, and I worked with her on 4-5 deals in 2023.

6.      In 2021, my impression was that Ms. Sankano was very responsive and good at keeping up with deals and providing checklists and updates.

7.      In 2023, I continued to see Ms. Sankano as being very responsive in handling the initial part of the deals.  But all of the deals I was working on with her in 2023 were not complex and ended up dying, so we did not have the opportunity to work together on anything very complicated.  However, I did have one experience with Ms. Sankano when she was conducting a

Second Attorney Review ("SAR") of one of my deals. On that deal, the closing date had changed, and the dates in the loan documents had not been updated. As the SAR reviewer, Ms. Sankano was supposed to catch issues like this. She noted that one date was wrong, but she failed to note that other dates (which flowed from the closing date) were wrong. I thought that this was an example of an instance where Ms. Sankano was not diligent in her review.

**My Performance Evaluations of Ms. Sankano**

8.      I completed formal written evaluations of Ms. Sankano's work performance in 2021 and 2023. My written evaluations accurately reflected my opinions about Ms. Sankano's work at the time I completed them.

**Feedback Provided to Me About Ms. Sankano**

9.      In late 2022, I had a conversation with Peter Strup about his impressions of Ms. Sankano's work. Mr. Strup told me that he felt like Ms. Sankano moved too fast, missed little things, and was not connecting the dots and seeing the big picture. As a result, if an issue arose that was similar to something she handled on one deal, she was not able to figure out the solution on the next deal.

10.      In 2023, I had a conversation with Dameon Rivers about an associate who made a number of errors on transactions. While Mr. Rivers did not initially tell me that he was talking about Ms. Sankano, I had the impression that he was talking about Ms. Sankano, and that impression was confirmed later, when Mr. Iwashyna told me that Mr. Rivers no longer wanted to work with Ms. Sankano.

**Discussions in the Spring and Summer of 2023 About Ms. Sankano's Performance**

11.      On April 19, 2023, I received an email from Mr. Iwashyna stating that he thought "we are going to have to make a hard call on [Ms. Sankano] at some point." *See* Exhibit 1. I understood that this meant that Mr. Iwashyna thought we would likely need to terminate Ms. Sankano's employment in the near future.

12.      On June 16, 2023, I participated in a meeting to discuss the associates in the MFH practice group and their path forward at the firm. In attendance were MFH Practice Group Leader Brian Iwashyna, other members of the MFH leadership team responsible for associate development (Blair Schiff, Nora Nickel, and me), the MFH Practice Director (Mary Cabell Sulc), representatives of the firm's Legal Talent department, and the Chair of the ADC. During this meeting, we discussed concerns about Ms. Sankano's performance. While I do not remember all details of the discussion, the general theme was that Ms. Sankano was not performing at the substantive level expected of a rising fifth-year associate. We discussed that it was unlikely Ms. Sankano would be promoted to partner, and we considered an option of moving Ms. Sankano from the partnership track to the newly formed career path for associates, but we ultimately deferred any final decisions until we had a chance to consider the upcoming 2023 performance evaluations. In the interim, we agreed to refer Ms. Sankano to participate in the firm's professional coaching program.

**Decision to Terminate Ms. Sankano's Employment**

13.     On October 12, 2023, Legal Talent sent me a link to access the performance evaluations for the associates in the MFH practice group.  I saw that Ms. Sankano's performance evaluations had gotten worse and contained several negative comments and "needs improvement" ratings.

14.     On October 24, 2023, the MFH Practice Group Leader Brian Iwashyna, other members of the practice group leadership team responsible for associate development (Nora Nickel, Blair Schiff, and me), the incoming MFH Practice Group Leader (Virginia Stitzer), and the MFH Practice Director (Mary Cabell Sulc) met to discuss the MFH associates, in light of their 2023 performance evaluations.  During that meeting, the group discussed the fact that Ms. Sankano's performance evaluations for 2023 indicated that she was not performing well and was not at the level that she should be, confirming the concerns that we had discussed in the June 2023 meeting.  We also discussed concerns raised by various partners (including but not limited to Peter Strup, Lindsey Crawford, Dameon Rivers, Virginia Stitzer, Jennifer Bojorquez, and me) about how Ms. Sankano was not taking her analysis to the next level, as expected of a rising fifth year attorney and Ms. Stitzer reported that her SARs were not very good.  During that meeting, we discussed whether Ms. Sankano should be terminated, or whether to give her another year to improve, or whether to put her on a performance improvement plan ("PIP") or corrective action plan ("CAP").   We decided to discuss the options with Legal Talent and the ADC.  At no time during this meeting did we discuss or reference Ms. Sankano's race or the fact that she had filed a complaint with Human Resources about Mr. Bowsher's August 2023 email.

15.     Our MFH Practice Group Leader, Brian Iwashyna, made the decision to terminate Ms. Sankano's employment and communicated that decision to us.  I supported and agreed with the decision to terminate Ms. Sankano's employment based on all of the performance problems we had discussed in our June and October meetings, based on feedback provided by the MFH partners in written performance evaluations and conversations throughout Ms. Sankano's employment, and consensus amongst the MFH leadership team responsible for associate development that it was the appropriate action.

16.     Neither Ms. Sankano's race nor the complaint that Ms. Sankano filed with Human Resources about Mr. Bowsher's August 3, 2023 email was something I considered in connection with my participation in discussions regarding the decision to terminate Ms. Sankano's employment or my support of that decision.

17.     On November 2, 2023, I met with Mr. Iwashyna, the other members of the MFH leadership team responsible for associate development (Mr. Schiff and Ms. Nickel), Legal Talent representatives (Kalle Covert and Sona Spencer), the chair of the ADC (Steve Hewitson), and the MFH Practice Director (Mary Cabell Sulc) to discuss the MFH practice group's associates. During that meeting, we informed Legal Talent and the ADC of the decision to terminate Ms. Sankano's employment.

**Communication of the Termination Decision to Ms. Sankano**

18.    During the next few weeks, I communicated with the MFH Practice Director, Mary
Cabell Sulc, and Blair Schiff on several occasions about the timing of Ms. Sankano's
termination, her severance, and how long she would receive job-search leave. Mr. Schiff and I
asked Legal Talent if Ms. Sankano could be given a longer severance package than the standard
3 months. However, we were told that the firm does not make exceptions to that standard
amount. I ultimately agreed with that approach.

19.    On November 28, 2023, Ms. Covert (the firm's Director of Professional Development)
sent Blair Schiff and me a draft outline to use for the termination meeting with Ms. Sankano, and
suggested that we provide Ms. Sankano with specific examples of her performance problems.
*See* Exhibit 2. Blair Schiff responded to Ms. Covert's email the same day with a revised version
of the script that outlined the reasons the MFH practice group had decided to terminate her
employment and providing some examples. *See* Exhibit 3. I agreed with the reasons for the
termination that Mr. Schiff outlined in his version of the script.

20.    Mr. Schiff, Ms. Covert, and I conducted Ms. Sankano's termination notification meeting
on November 29, 2023, as planned. When we met at the assigned time, Mr. Schiff read Ms.
Sankano the script he had prepared. Ms. Covert then explained the 3-month severance package
that the firm offered to Ms. Sankano.

**Placement of Another Associate on a Corrective Action Plan**

21.    In 2023, MFH Practice Group Leader Brian Iwashyna, Nora Nickel, and I decided to
place associate Sonali Gupta on a 30-day CAP because she was not entering her time into the
system on a regular basis before the weekly deadlines. We thought that if Ms. Gupta were
placed on a CAP, she should be able to improve her time entry within 30 days. Unfortunately,
Ms. Gupta failed to improve her time entry after being placed on a CAP, and her employment
was terminated. To my knowledge, Ms. Gupta is the only associate in the MFH group who has
ever been placed on a CAP or a PIP.

**Transfer of Other Associates to Career Path Positions**

22.    In 2023, MFH Practice Group Leader Brian Iwashyna and the other members of the MFH
leadership team responsible for associate development (Blair Schiff, Nora Nickel, and I) made
the decision to move two associates from partnership track to career path: Iyanna Draper and
Randy Hurlburt. Ms. Draper was moved to the career path because she had experienced a
number of hardships in her life that meant she was not able to meet the hours requirements for a
partnership track associate. Moreover, we determined that she was not likely to have a business
case for partnership. Mr. Hurlburt was moved to career path because his work performance was
good, but a downturn in the type of work he did meant that he was not able to meet the billable
hours requirements for a partnership track associate.

**Matt Bowsher's August 3, 2023 Email**

23.     On August 3, 2023, Ms. Sankano sent an email to me and three other partners (Nora Nickel, Ashante Smith, and Brian Iwashyna), forwarding an email she had received from Matt Bowsher earlier that day and her response to that email, saying "I'm sorry I had enough with Matt and how he addresses me." <u>Exhibit 4</u>.    Shortly after receiving that email, I called Ms. Sankano to discuss it.    Ms. Sankano explained to me her concerns about the August 3 email and shared prior incidents with Mr. Bowsher.    She told me that she felt like Mr. Bowsher was "too much" with his feedback, and that he had it in for her.    Ms. Sankano told me that she felt that the email was very harsh and the feedback was very critical, and she indicated that she thought there was some racial undertone to his email.

24.     During this conversation, Ms. Sankano told me that she did not feel comfortable having Mr. Bowsher evaluate her work.    I told her that I would take her concern under advisement.    I did not make any promises to her about Mr. Bowsher's review, but rather decided that I would wait to see if Mr. Bowsher completed a review, and if he did, I would review it and determine whether to let it go to Ms. Sankano and become part of her file.

25.     After my conversation with Ms. Sankano on August 3, 2023, I talked with Mr. Iwashyna about Mr. Bowsher's email.    I shared with Mr. Iwashyna Ms. Sankano's concern with having Mr. Bowsher review her work.    He and I agreed that we would wait and see if Mr. Bowsher did a review of her, and then we could review it before it was released to her or into the system.

26.     The tone Mr. Bowsher used in his August 3 email to Ms. Sankano was not one that I would have used.    But I thought that the email Mr. Bowsher sent to Ms. Sankano on August 3 was typical of the type of emails Mr. Bowsher sends, both in tone and length.    I did not think that Mr. Bowsher's August 3 email to Ms. Sankano was racist, and I did not believe that it referenced her race in any way.    No one has ever told me that they thought Mr. Bowsher had made a racist comment to them or sent them a racist email.    I identify as Black.    I never received any racist emails from Mr. Bowsher and he never made any comments to me that I considered racist.

        Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

_____          _____
Marshall Tucker                                              Date  1/30/2025

**From:**          Tucker, Marshall D.[/O=TROUTMANSANDERS/OU=EXCHANGE ADMINISTRATIVE GROUP
                   (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=TUCKERMD]
**Sent:**          Wed 4/19/2023 11:21:31 AM (UTC-04:00)
**To:**            Iwashyna, Brian J.[Brian.Iwashyna@troutman.com]
**Subject:**       RE: Gita

Got it. I'll keep in that in mind as new deals come in.

**Marshall D. Tucker**
**Partner**
troutman **pepper**
Direct: 804.697.1895 | Internal: 15-1895
marshall.tucker@troutman.com

**From:** Iwashyna, Brian J. <Brian.Iwashyna@troutman.com>
**Sent:** Wednesday, April 19, 2023 10:08 AM
**To:** Tucker, Marshall D. <Marshall.Tucker@troutman.com>
**Subject:** RE: Gita

Dameon didn't have a great experience and doesn't want to use her anymore.   I think we are going to
have to make a hard call on her at some point and I think it would be helpful if you could use her on one or
two deals before that.   So that we can talk from direct experience.   I am going to push Nora to do the
same.

**Brian J. Iwashyna**
**Partner**
troutman **pepper**
Direct: 804.697.1402 | Internal: 15-1402
brian.iwashyna@troutman.com
Pronouns: he, him, his

**From:** Tucker, Marshall D. <Marshall.Tucker@troutman.com>
**Sent:** Wednesday, April 19, 2023 10:00 AM
**To:** Iwashyna, Brian J. <Brian.Iwashyna@troutman.com>
**Subject:** RE: Gita

Nope. Strup was doing some work with her in the past. She getting better or worse?

**Marshall D. Tucker**
**Partner**
troutman **pepper**
Direct: 804.697.1895 | Internal: 15-1895
marshall.tucker@troutman.com

App.L-Tucker-Ex.1

Troutman_00005867

**From:** Iwashyna, Brian J. <Brian.Iwashyna@troutman.com>
**Sent:** Wednesday, April 19, 2023 9:55 AM
**To:** Tucker, Marshall D. <Marshall.Tucker@troutman.com>
**Subject:** Gita

Have you worked with her recently?

**Brian J. Iwashyna**
**Partner**
Direct: 804.697.1402 | Internal: 15-1402
brian.iwashyna@troutman.com
Pronouns: he, him, his
──────────────────
**troutman** pepper
1001 Haxall Point, Suite 1500
Richmond, VA 23219
troutman.com

Troutman Pepper is a 2021 Mansfield Certified Plus Firm

App.L-Tucker-Ex.1

Troutman_00005868

| | |
|---|---|
| **From:** | Covert, Kalle R.[/O=TROUTMANSANDERS/OU=EXTERNAL (FYDIBOHF25SPDLT)/CN=RECIPIENTS/CN=9EEFF4AC0D5940E680E8AFAB006FAA4F] |
| **Sent:** | Tue 11/28/2023 12:19:10 PM (UTC-05:00) |
| **To:** | Schiff, Blair L.[Blair.Schiff@Troutman.com]; Tucker, Marshall D.[Marshall.Tucker@troutman.com] |
| **Subject:** | Meeting Outline |
| **Attachment:** | Separation Meeting Template_GS_Nov 2023.docx |

Hi there –

See attached for a meeting outline for tomorrow. Does Gita know that we are planning to speak to her? If not, I will plan to send the calendar invite tomorrow morning. I have also given a heads up to Denise in the DC office so she can plan to be nearby in case there is any issue. I wasn't sure which of you wanted to take the lead on discussing the reasons, or if you both plan to speak during that part. Feel free to provide specific examples. I will help keep things on point if she brings up things outside the scope of this conversation. Let me know if you'd like to discuss anything before the meeting.

Thanks,

**Kalle R. Covert**
**Director of Professional Development**
Direct: 804.697.1489 | Mobile: 804.564.6975 | Internal: 15-1489
kalle.covert@troutman.com
Pronouns: she, her, hers
─────────────
**troutman** pepper
1001 Haxall Point, Suite 1500
Richmond, VA 23219
troutman.com

Troutman Pepper is a Mansfield Certified Plus Firm

App.L-Tucker-Ex.2

**Gita Sankano Conference Outline – 11/29/2023**

**Kalle:**

Gita, this is a difficult conversation so I will get right to the message and then we can have further discussions. Your practice group and the Firm have decided that you do not have a path forward at the Firm. This decision was carefully considered and it is final. Blair/Marshall is going to briefly review the issues that led to this decision, then I will discuss next steps.

**Blair/Marshall:**[C1]

Gita – multiple partners in the PG have expressed concern that you are not operating at the level of a rising 5th year associate. Several of us have met with you to discuss expectations around improving the substantive quality of your work, taking ownership of deals, and getting beyond the basic mechanics of a deal. We have also discussed your tendency to rush and make avoidable mistakes simply because you are moving too quickly. Unfortunately, we have not seen you apply this feedback to your work, and we are seeing the same issues over and over again. As a result, partners have lost confidence in your ability to serve the firm and its clients. Unfortunately, we do not see a path for advancement for you at the firm. We want you to be able to find another platform where you will be able to advance your career and we believe you will be able to find employment in-house or with another employer that is a better fit for you. We want to support you and give you time to do this.

**Kalle:**

Under Firm policy, your employment would normally end today. However, we would like to give you 90 days during which you will be employed by the Firm but will not be required to perform work for the Firm. This means you will receive pay/benefits for the next 90 days; however, your time will be spent searching for a job as opposed to doing legal work. To have the 90 days, we will require that you sign a Separation Agreement with the Firm. I am going to send you a copy

If you choose to sign the Separation and Release Agreement you are waiving your right to certain claims listed in the agreement. You are also agreeing not to sue or bring any claims against the firm. You are also agreeing not to disclose any Firm trade secrets and confidential Firm information.

If you choose to sign the agreement, please return a copy to Shana Beldick, the firm's Chief Human Resources Officer. Her contact information is in the agreement. If returning via email,

161316150v1

App.L-Tucker-Ex.2

Troutman_00000886

## Page 1 Comments

C1    I pulled these examples from past discussions and her reviews. Feel free to provide other specifics. I expect that she will have questions so we may want to briefly pause after this portion to give her that opportunity.

*Covert, Kalle R.,  11/28/2023 07:15 AM*

App.L-Tucker-Ex.2

Troutman_00000887

please include the whole document, not just the signature page. Please also CC me. If you do not sign the agreement, your employment will end on December 18, 2023. All of these details are included in the agreement for reference and I am also available to walk through any questions you may have.

**Job Search Leave Confidentiality**

The Firm's decision and your status will be shared on a very limited basis for those with a business reason to know. A small number of partners in the MFH practice group are aware of this decision. This information has not been shared with any other attorneys and employees and there are no plans to do so. The only way in which other employees will find out about your status is if you disclose it. We will not share information about your status with any staff, attorneys, or associates. When your separation period ends, you will be allowed to announce your departure as you wish, even if it implies that your departure is voluntary. We treat your departure like any voluntary departure from the firm and make no announcement.

**References**

The Firm's policy is to provide a neutral reference to all employees who have left the firm and release only positions and dates of employment regardless of the circumstances under which an attorney leaves the Firm. If potential employers contact the Firm during your separation period or following your separation, this is the only information that will be provided.

**Firm Equipment Access**

You will have access to your firm laptop and email account. However, during this period your firm equipment and email address are to be used expressly to facilitate your job search process and not to perform legal work for the Firm. You will also continue have access to the DC office.

Lastly, we recommend that you review the Separation Agreement with a significant other, tax accountant or attorney before signing to ensure you understand all the details within the agreement. I recognize this is a significant amount of information – I can walk through any questions you have now, as well as set up additional time to review later if that is helpful. Do you have any initial questions to what I have just reviewed with you?

161316150v1

App.L-Tucker-Ex.2

Troutman_00000888

**Next Steps**

After the meeting, I will e-mail you a form of transition memo and a list of transition procedures. Please complete and return the transition memo to Mary Cabell Sulc so your practice group can reassign any open matters, including pro bono matters.

The transition procedures address how you will get your personal documents/e-emails from the system. Please do not download/e-mail to yourself any Firm/client documents. As part of any transition from the firm, our IT Department routinely monitors transfer activity, and downloading or emailing numerous documents to a personal email account will be flagged.

**Questions?**

We realize that this is a lot to absorb and that you may have questions later. We can break now, and we will be available to answer questions when you are ready to talk again.

161316150v1

App.L-Tucker-Ex.2

Troutman_00000889

**From:**                Schiff, Blair L.[/O=TROUTMANSANDERS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=BLAIR.SCHIFF]

**Sent:**                Tue 11/28/2023 12:55:25 PM (UTC-05:00)

**To:**                  Covert, Kalle R.[Kalle.Covert@troutman.com]; Tucker, Marshall D.[Marshall.Tucker@troutman.com]

**Subject:**            RE: Meeting Outline

Thanks, Kalle.

I have not discussed meeting with Gita tomorrow. Marshall do you think one of us should give her a head's up or just send the invite in the morning? I have mixed feelings on how to handle it.

As Marshall knows, I had a good discussion with Ashely Hager yesterday about how to handle Wednesday's meeting. She suggested [ Defendants' Privilege ] [ Defendants' Privilege ] Here are the buckets I came up with based on her reviews and conversations I've had with some of her reviewing partners, feel free to add to this list or change the examples. I can also reach out to a few people to get more concrete examples.

As you noted, the general theme is she is not operating at the level we expect from a mid-level associate going into their 5th year.

1. **Not diligent in your review.** Multiple partners have had issues with checklists not being properly updated and you staying on top of changes. Your SAR reviews have not been up to the standard we expect from a rising 5th year, the analysis is very superficial. (Marshall I think you have a specific deal for this one but I can ask Virginia as well)

2. **Lack of substantive knowledge** – Things do not seem to be clicking in the manner we expect from a rising 5th year, and your knowledge base does not seem to be developing at the rate we would expect. You seem to struggle with linking the pieces together to make the whole and carrying over what you were taught from one transaction to the next transaction. The amount of direction you have to be given is greater than what is expected for a mid-level associate.

3. **Taking control of a deal** - Worked on a large assumption with Jennifer (Nineteen01 – CONA) and in taking first review said it all was fine but did not review the UCCs to see what collateral was being pledged and did not review the purchase and sale agreement to understand the structure of the deal. We expect mid-level associates to really dig deep into the matter, take ownership of the matter and not require a ton of partner oversight. You have not proven that you are ready to take on a deal and own it.

4. **Not thinking critically** – You appear to have trouble grasping transactions at a level we expect from a 5th year associate. You should know, or at least be asking why, an issue was addressed in a certain manner as opposed to trying to use that same method to address a similar issue even when the fact pattern and reasoning might not apply. When asked why you addressed an issue in a certain manner, the answer is constantly because that is how you have seen it handled previously, as opposed to understanding the reasoning behind the solution and being able to apply it to different fact patterns. This has limited your ability to critically think through analysis memos and loan modifications. Your recent Ground Lease Analysis for 930 Broadway included some misses and was limited at a level below what we expect from a 4th year associate. Another deal you are currently working on, Sherwood Manor, you performed a regulatory agreement analysis and quoted the regulatory agreement rider as part of your analysis but missed in the rider that the time period of the restrictions was extended.

App.L-Tucker-Ex.3

Troutman_00000704

Ashley's advice was

<div style="border:1px dashed">
Defendants' Privilege

## Defendants' Privilege
</div>

Thanks,
Blair

**Blair L. Schiff**
**Partner**
Direct: 202.220.1223
blair.schiff@troutman.com
Pronouns: he, him, his

troutman **pepper**
401 9th Street, NW, Suite 1000
Washington, DC 20004
troutman.com

Troutman Pepper is a Mansfield Certified Plus Firm

**From:** Covert, Kalle R. <Kalle.Covert@troutman.com>
**Sent:** Tuesday, November 28, 2023 12:19 PM
**To:** Schiff, Blair L. <Blair.Schiff@Troutman.com>; Tucker, Marshall D. <Marshall.Tucker@troutman.com>
**Subject:** Meeting Outline

Hi there –

See attached for a meeting outline for tomorrow. Does Gita know that we are planning to speak to her? If not, I will plan to send the calendar invite tomorrow morning. I have also given a heads up to Denise in the DC office so she can plan to be nearby in case there is any issue. I wasn't sure which of you wanted to take the lead on discussing the reasons, or if you both plan to speak during that part. Feel free to provide specific examples. I will help keep things on point if she brings up things outside the scope of this conversation. Let me know if you'd like to discuss anything before the meeting.

Thanks,

**Kalle R. Covert**
**Director of Professional Development**
Direct: 804.697.1489 | Mobile: 804.564.6975 | Internal: 15-1489
kalle.covert@troutman.com
Pronouns: she, her, hers

troutman **pepper**
1001 Haxall Point, Suite 1500
Richmond, VA 23219
troutman.com

Troutman Pepper is a Mansfield Certified Plus Firm

App.L-Tucker-Ex.3

| | |
|---|---|
| **From:** | Sankano, Gita F. [/o=TroutmanSanders/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=Gita.Sankano] |
| **Sent:** | 8/3/2023 1:59:58 PM |
| **To:** | Iwashyna, Brian J. [/o=TroutmanSanders/ou=First Administrative Group/cn=Recipients/cn=iwashybj]; Smith, Ashante L. [/o=TroutmanSanders/ou=First Administrative Group/cn=Recipients/cn=smithal]; Tucker, Marshall D. [/o=TroutmanSanders/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=tuckermd]; Nickel, Nora Garcia [/o=TroutmanSanders/ou=First Administrative Group/cn=Recipients/cn=garciamn] |
| **Subject:** | FW: Falls of Braeswood and Falls of Dairy Ashford - NEW MATTER |
| **Attachments:** | RE: 018413.000867 is now available in iManage |

I'm sorry I had enough with Matt and how he addresses me.

## Gita F. Sankano
**Associate**
troutman **pepper**
Direct: 202.220.1251 | Internal: 803-1251
gita.sankano@troutman.com

---

**From:** Sankano, Gita F.
**Sent:** Thursday, August 3, 2023 1:59 PM
**To:** Bowsher, Matthew R. <Matthew.Bowsher@troutman.com>
**Subject:** RE: Falls of Braeswood and Falls of Dairy Ashford - NEW MATTER

Matt,

As with the prior deals we worked on with this sponsor including this one, I made it clear that this was a 70/30 split between you and Kelly. In this particular deal, it was the MFH matter department who made the error of not linking the matters and not giving Kelly the proper credit. I called it out this morning that Kelly did not receive the proper credit (see attached). As per my initial email this morning, I stated that Kelly should be the Matter Responsible Attorney and I copied and pasted the percentage spilt. Now could I have reiterated over and over again about the spilt – absolutely! I could have been more specific about the split as you explained below. I appreciate your feedback.

However, what I will not tolerate from you is the condescending tone, my intelligence being questioned (see below),and you belittling me. I have never disrespected you and I will appreciate if you do the same. I worked hard to be here and I deserve to be here like every other associate. I would appreciate if you treat me with respect .

This is very basic, elementary communication.  This has nothing to do with training, or understanding of multifamily transactional law, this is daily required functioning.  You expressed interest in receiving my input/feedback in real time as to your performance, so I am taking 20 minutes out of my morning right now to explain to you, in very clear objective detailed analysis, that when I see something like this, where it is so undeniably evident that you've made an obvious and surprising error, and you're saying you still don't see the error even after I've taken the time to point it out to you, and you're still saying you've done nothing wrong… I really just don't know what more I can say here.  If you don't even see the problem, I'm not sure how you'll fix it, but it's definitely something you need to fix, because if you had this same type of miscommunication with a client or borrower's counsel rather than with our internal administrative team, I would have to drop everything and get on the phone immediately to do serious damage control, reassuring them that the deal is actually in capable hands.  Bottom line: this is not something I would expect from a fourth-year associate.

App.L-Tucker-Ex.4

I am in the office 4 days a week, every week, available to discuss this further in person any time you wish.  Just so we are 100% clear, I have no intention of proactively contacting you to discuss this any further, as I've already given you my full and candid thoughts on the matter, nor am I necessarily implying that any further discussion need be had, rather I am merely clarifying that I leave it to your own initiative as to whether you wish to discuss it further.


**Gita F. Sankano**
**Associate**
~~troutman~~ **pepper**
Direct: 202.220.1251 ¦ Internal: 803-1251
gita.sankano@troutman.com

---

**From:** Bowsher, Matthew R. <Matthew.Bowsher@troutman.com>
**Sent:** Thursday, August 3, 2023 12:44 PM
**To:** Sankano, Gita F. <Gita.Sankano@troutman.com>
**Subject:** RE: Falls of Braeswood and Falls of Dairy Ashford - NEW MATTER

I'm concerned that you thought you were "clear".  In fact, you were the opposite of clear.  And the fact that you still don't see this upon further reflection, even after I've taken the time to point it out, is what worries me.

In your first email below (from 11:09am this morning), you stated "**Kelly should be the matter responsible**".  Anyone reading that sentence would reasonably interpret that as a request to make Kelly the matter responsible attorney, i.e. to switch it from 100% Matt to 100% Kelly. There is no other way to interpret that sentence.  If you meant to ask for them to change it from Matt being 100% responsible to Matt only being 70% responsible, that is not what that sentence conveyed.  You added a sentence which said "See below", and then you added a clip of the originally-requested 70/30 split at the end, but that clip with the correct split contradicted your initial sentence which requested that Kelly be 100% matter responsible; that contradiction is what made your communication anything but clear.  Then, adding to the confusion, in your subsequent email, you doubled-down on your initial request, by again saying "**Kelly should be the matter responsible. So it should change from Matt to Kelly.**"   Again, I'm not sure how anyone could read that sentence to mean anything other than what it very clearly says, which is that you're asking to make Kelly "the" matter responsible attorney, i.e. the 100% matter responsible, the only matter responsible attorney, not a 70/30 split with Matt.

This is very basic, elementary communication.  This has nothing to do with training, or understanding of multifamily transactional law, this is daily required functioning.  You expressed interest in receiving my input/feedback in real time as to your performance, so I am taking 20 minutes out of my morning right now to explain to you, in very clear objective detailed analysis, that when I see something like this, where it is so undeniably evident that you've made an obvious and surprising error, and you're saying you still don't see the error even after I've taken the time to point it out to you, and you're still saying you've done nothing wrong… I really just don't know what more I can say here.   If you don't even see the problem, I'm not sure how you'll fix it, but it's definitely something you need to fix, because if you had this same type of miscommunication with a client or borrower's counsel rather than with our internal administrative team, I would have to drop everything and get on the phone immediately to do serious damage control, reassuring them that the deal is actually in capable hands.  Bottom line: this is not something I would expect from a fourth-year associate.

I am in the office 4 days a week, every week, available to discuss this further in person any time you wish.  Just so we are 100% clear, I have no intention of proactively contacting you to discuss this any further, as I've already given you my full and candid thoughts on the matter, nor am I necessarily implying that any further discussion need be had, rather I am merely clarifying that I leave it to your own initiative as to whether you wish to discuss it further.

Matt

App.L-Tucker-Ex.4

Troutman_00001141

**Matthew R. Bowsher**
**Partner**
troutman pepper
Office: 202.274.1939 ⦙ Mobile: 301.512.0423
matthew.bowsher@troutman.com

---

**From:** Sankano, Gita F. <Gita.Sankano@troutman.com>
**Sent:** Thursday, August 3, 2023 11:31 AM
**To:** Bowsher, Matthew R. <Matthew.Bowsher@troutman.com>
**Subject:** RE: Falls of Braeswood and Falls of Dairy Ashford - NEW MATTER

Thank you, Matt.

I thought I was clear with the first email I sent today as it relates to the percentage distribution (see attached).

**Gita F. Sankano**
**Associate**
troutman pepper
Direct: 202.220.1251 ⦙ Internal: 803-1251
gita.sankano@troutman.com

---

**From:** Bowsher, Matthew R. <Matthew.Bowsher@troutman.com>
**Sent:** Thursday, August 3, 2023 11:28 AM
**To:** Sankano, Gita F. <Gita.Sankano@troutman.com>
**Subject:** RE: Falls of Braeswood and Falls of Dairy Ashford - NEW MATTER

You are confused.  Kelly is not to be the sole 100% matter responsible attorney.   Per your original request, and per the other matters you've previously opened for me and Kelly, it should be 30% Kelly and 70% Matt.

**Matthew R. Bowsher**
**Partner**
troutman pepper
Office: 202.274.1939 ⦙ Mobile: 301.512.0423
matthew.bowsher@troutman.com

---

**From:** Sankano, Gita F. <Gita.Sankano@troutman.com>
**Sent:** Thursday, August 3, 2023 11:17 AM
**To:** Mauriello, Lisa M. <Lisa.Mauriello@troutman.com>; MFH New Matters <MFHNewMatters@troutman.com>
**Cc:** Mufarrige, Kelly A. <Kelly.Mufarrige@troutman.com>; Bowsher, Matthew R. <Matthew.Bowsher@troutman.com>; Staub, Julie Lynn <Julie.Staub@troutman.com>; Jackson, Tia L. <Tia.Jackson@troutman.com>; Morant, Michelle <Michelle.Morant@Troutman.com>; Stratton, Katherine E <Katie.Stratton@troutman.com>
**Subject:** RE: Falls of Braeswood and Falls of Dairy Ashford - NEW MATTER

I just got a request to change the matter assigned from to Kelly?

Kelly should be the matter responsible. So it should change from Matt to Kelly.

I hope that that makes sense!

**Gita F. Sankano**
**Associate**

App.L-Tucker-Ex.4

Troutman_00001142

troutman pepper
Direct: 202.220.1251 ┊ Internal: 803-1251
gita.sankano@troutman.com

---

**From:** Mauriello, Lisa M. <Lisa.Mauriello@troutman.com>
**Sent:** Thursday, August 3, 2023 11:14 AM
**To:** Sankano, Gita F. <Gita.Sankano@troutman.com>; MFH New Matters <MFHNewMatters@troutman.com>
**Cc:** Mufarrige, Kelly A. <Kelly.Mufarrige@troutman.com>; Bowsher, Matthew R. <Matthew.Bowsher@troutman.com>; Staub, Julie Lynn <Julie.Staub@troutman.com>; Jackson, Tia L. <Tia.Jackson@troutman.com>; Morant, Michelle <Michelle.Morant@Troutman.com>; Stratton, Katherine E <Katie.Stratton@troutman.com>
**Subject:** RE: Falls of Braeswood and Falls of Dairy Ashford - NEW MATTER

Good Morning,
The change request was entered.
Thanks

**Lisa Mauriello**
**Firm Intelligence Coordinator**
troutman pepper
Direct: 757.687.7521 ┊ Internal: 17-7521
lisa.mauriello@troutman.com

---

**From:** Sankano, Gita F. <Gita.Sankano@troutman.com>
**Sent:** Thursday, August 3, 2023 11:09 AM
**To:** Mauriello, Lisa M. <Lisa.Mauriello@troutman.com>; MFH New Matters <MFHNewMatters@troutman.com>
**Cc:** Mufarrige, Kelly A. <Kelly.Mufarrige@troutman.com>; Bowsher, Matthew R. <Matthew.Bowsher@troutman.com>; Staub, Julie Lynn <Julie.Staub@troutman.com>; Jackson, Tia L. <Tia.Jackson@troutman.com>; Morant, Michelle <Michelle.Morant@Troutman.com>; Stratton, Katherine E <Katie.Stratton@troutman.com>
**Subject:** RE: Falls of Braeswood and Falls of Dairy Ashford - NEW MATTER

Hi Lisa,

Kelly should be the matter responsible attorney for this one. See below. Please update.

Thanks!!

| Matter Responsible Atty: | Kelly Mufarrige (30%) / Matt Bowsher (70%) |
|---|---|

**Gita F. Sankano**
**Associate**
troutman pepper
Direct: 202.220.1251 ┊ Internal: 803-1251
gita.sankano@troutman.com

App.L-Tucker-Ex.4

**From:** Mauriello, Lisa M. <Lisa.Mauriello@troutman.com>
**Sent:** Wednesday, August 2, 2023 11:31 AM
**To:** Sankano, Gita F. <Gita.Sankano@troutman.com>; MFH New Matters <MFHNewMatters@troutman.com>
**Cc:** Mufarrige, Kelly A. <Kelly.Mufarrige@troutman.com>; Bowsher, Matthew R. <Matthew.Bowsher@troutman.com>; Staub, Julie Lynn <Julie.Staub@troutman.com>; Jackson, Tia L. <Tia.Jackson@troutman.com>; Morant, Michelle <Michelle.Morant@Troutman.com>; Stratton, Katherine E <Katie.Stratton@troutman.com>
**Subject:** RE: Falls of Braeswood and Falls of Dairy Ashford - NEW MATTER

Good Morning,
We combined the two properties into one matter, **018413.000867**
Thanks!

**Lisa Mauriello**
**Firm Intelligence Coordinator**
troutman pepper
Direct: 757.687.7521 | Internal: 17-7521
lisa.mauriello@troutman.com

**From:** Sankano, Gita F. <Gita.Sankano@troutman.com>
**Sent:** Monday, July 31, 2023 2:10 PM
**To:** MFH New Matters <MFHNewMatters@troutman.com>
**Cc:** Mufarrige, Kelly A. <Kelly.Mufarrige@troutman.com>; Bowsher, Matthew R. <Matthew.Bowsher@troutman.com>; Staub, Julie Lynn <Julie.Staub@troutman.com>; Jackson, Tia L. <Tia.Jackson@troutman.com>; Morant, Michelle <Michelle.Morant@Troutman.com>; Stratton, Katherine E <Katie.Stratton@troutman.com>
**Subject:** Falls of Braeswood and Falls of Dairy Ashford - NEW MATTER

Good afternoon,

Please open the two deals below. We will only need **one client matter number** for these two.

Thanks,

| Client: | JLL |
|---|---|
| Deal Type: | **Freddie Mac** |
| Property Name & Location: | **Falls of Dairy Ashford**<br>**12707 Bellaire Boulevard**<br>**Houston, TX 77072** |
| Matter Opening Atty: | **Matt Bowsher** |
| Matter Responsible Atty: | **Kelly Mufarrige (30%) / Matt Bowsher (70%)** |
| Matter Assigned Atty: | **Gita Sankano** |
| Closing Date: | 08/30/2023 |
| Loan Amount: | $17,400,000 |

App.L-Tucker-Ex.4

Troutman_00001144

| Borrower(s): | Falls of Dairy Ashford LP |
|---|---|
| Guarantor(s) / Key Principals(s): | Rao J. Polavarapu |
| Originator: | Luke Rogers |
| Closer: | Patrick McCarren |

| Client: | JLL |
|---|---|
| Deal Type: | Freddie Mac |
| Property Name & Location: | Falls of Braeswood<br>8801 South Braeswood Boulevard<br>Houston, TX 77031 |
| Matter Opening Atty: | Matt Bowsher |
| Matter Responsible Atty: | Kelly Mufarrige (30%) / Matt Bowsher (70%) |
| Matter Assigned Atty: | Gita Sankano |
| Closing Date: | 08/30/2023 |
| Loan Amount: | $16,781,000 |
| Borrower(s): | Falls of Braeswood LP |
| Guarantor(s) / Key Principals(s): | Rao J. Polavarapu |
| Originator: | Luke Rogers |
| Closer: | Patrick McCarren |

**Gita F. Sankano**
Associate
Direct: 202.220.1251 ┊ Internal: 803-1251
gita.sankano@troutman.com

troutman **pepper**
401 9th Street, NW, Suite 1000
Washington, DC 20004
troutman.com

Troutman Pepper is a Mansfield Certified Plus Firm

App.L-Tucker-Ex.4