UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GITA F. SANKANO, <br><br> **Plaintiff,** <br><br> v. <br><br> **TROUTMAN PEPPER HAMILTON SANDERS LLP AND BRIAN IWASHYNA,** <br><br> **Defendants.** | Case No. 1:24-cv-00142-JMC |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF
THEIR OMNIBUS MOTION *IN LIMINE***

I.   **INTRODUCTION**

Defendants Troutman Pepper Hamilton Sanders LLP ("Troutman[1]") and Brian Iwashyna ("Mr. Iwashyna") (together, "Defendants") move the Court for an Order precluding: (1) the use of inflammatory language (either the statements described below, or similar statements) not tied to specific conduct at issue in this trial; (2) references to Plaintiff Gita Sankano's ("Plaintiff" or "Ms. Sankano") now dismissed retaliation claim arising out of Christine Waldmann Carmody's ("Ms. Carmody") conduct; (3) references to Ms. Sankano's now dismissed race discrimination and hostile work environment claims which were based on conduct of Matt Bowsher; (4) references to alleged inequitable treatment of others (not Ms. Sankano) based on sex and/or pregnancy; (5) conclusory or speculative assertions; (6) hearsay statements; (7) evidence from witnesses who were associates at the time of relevant events; and (8) legal conclusions by fact witnesses. In the alternative, Defendants request an Order requiring Ms. Sankano to alert the Court before using or introducing evidence described above so that the Court may determine, outside the presence of the

---
[1] Effective January 1, 2025, the name of the law firm changed to "Troutman Pepper Locke."

1

jury, whether the evidence is probative of the issues in this case and not highly prejudicial to Defendants. Pursuant to Local Rule 7(m), Defendants have conferred with counsel for Ms. Sankano regarding her position on this Motion. Ms. Sankano's counsel responded that she anticipates she will oppose this Motion, either in whole or in part.

## II.  BACKGROUND

Ms. Sankano, who is African American, worked as a junior attorney at Troutman and one of its predecessor firms, Pepper Hamilton LLP.  The claims that will proceed to trial are as follows. Ms. Sankano claims that Troutman discriminated against her because of her race in violation of 42 U.S.C. § 1981 ("Section 1981"). Ms. Sankano also contends that Troutman and her former Practice Group Leader, Mr. Iwashyna, retaliated against her in violation of Section 1981, the D.C. Human Rights Act (the "DCHRA"), and Title VII of the Civil Rights Act of 1964 ("Title VII") (Troutman only). Ms. Sankano's race discrimination claim is based on her interactions with Ms. Carmody, a Partner with then-Pepper Hamilton's Financial Services Practice Group. Specifically, Ms. Sankano alleges Ms. Carmody discriminated against her because of her race by requesting to review Ms. Sankano's time in advance of it being entered into Pepper Hamilton's timekeeping system. Ms. Sankano's retaliation claim arises out of her belief that she was terminated because she raised concerns about e-mails that Matthew Bowsher ("Mr. Bowsher"), a partner, sent to her while working at Troutman.

## III.  LEGAL STANDARD

While the Federal Rules of Civil Procedure and the Federal Rules of Evidence do not explicitly discuss motions *in limine*, the practice of filing such motions has developed overtime "pursuant to the district court's inherent authority to manage the course of trials." *Pintro v. Rosenworcel*, 554 F. Supp. 3d 14, 19 (D.D.C. 2011) (quoting *Youssef v. Lynch,* 144 F. Supp. 3d 70, 80 (D.D.C. 2015); *Feighan v. Res. Sys. Grp. Inc.*, No. 20-03759, 2023 U.S. Dist. LEXIS

124394, at *15-16 (D.D.C. July 19, 2023). Motions *in limine* are intended to narrow the evidentiary issues remaining at trial, and limit unnecessary trial interruptions. *Pintro*, 554 F. Supp. 3d at 19.

Trial judges are given broad discretion in delivering evidentiary rulings, which includes assessing the probative value of proffered evidence and balancing factors to determine admissibility. *See Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 384 (2008). The trial judge may also evaluate whether a motion *in limine* presents an evidentiary issue that is appropriate for ruling on in advance of trial. *See United States v. Valencia*, 826 F.2d 169, 172 (2d Cir. 1987); *accord Rosemann v. Roto-Die, Inc.*, 377 F.3d 897, 902 (8th Cir. 2004); *United States v. Layton*, 720 F.2d 548, 553 (9th Cir. 1983), *cert. denied*, 465 U.S. 1069 (1984), *overruled on other grounds by*, *United States v. W.R. Grace*, 526 F.3d 499 (9th Cir. 2008).

IV.  ARGUMENT

    A.  INFLAMMATORY LANGUAGE

Even where evidence is relevant, not all relevant evidence is admissible. Rule 403 provides:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of . . . confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of the evidence.

Fed. R. Evid. 403. Rule 403 requires the court "engage in on-the-spot balancing of probative value and prejudice and . . . exclude even factually relevant evidence when it fails the balancing test." *Daniels v. District of Columbia*, 15 F. Supp. 3d 62, 67 (D.D.C. 2014) (quoting *United States v. Moore*, 651 F.3d 30, 63 (D.C. Cir. 2011)).

Although Rule 403 does not require parties to "sanitize" their cases, "the use of insults or slurs in lawyers' arguments" is inappropriate unless "tied to specific conduct at issue in the trial." *See United States v. Rhine*, Case No. 21-0687, 2023 U.S. Dist. LEXIS 27764, at *23-5 (D.D.C. Feb. 17, 2023). *Rhine* is instructive. There, the court allowed a party to use terms like "riot" and

3

"mob," which "are not legal terms" and were apt descriptors of conduct at issue. *See id.* But the court concluded the party could not use the term "insurrection," which Merriam-Webster defines as "an act or instance of revolting against civil authority or an established government," unless the party could present a "specific showing, outside the presence of the jury" that the term was "an accurate description . . . tied to specific conduct at issue in the trial." *See id.* at *25-26.

 Here, throughout Ms. Sankano's Amended Complaint and during her deposition, she used inflammatory language to describe the events which gave rise to her allegations of a race-based hostile work environment and described with heightened language the complained-of conduct by Ms. Carmody, both of which should be precluded at trial. First, Ms. Sankano, in connection with her now-dismissed claims of a hostile work environment, used phrases such as "microaggression," "mansplaining," and "dehumanizing" to describe her interactions with Mr. Bowsher. *See, e.g.,* Deposition of Plaintiff Gita Sankano ("Pl.'s Dep.") 190:22-191:8, 202:5-19, 185:22-192:19, 193:13-20, 210:6-211:21 (attached hereto as Ex. A), *see also* Am. Compl. ¶10, ECF No. 15. Ms. Sankano likewise made specific allegations regarding other Black associates, referring to their voluntary choice to leave Troutman, prior to her own termination, as a "mass exodus." Am. Compl. ¶7. Beyond their inflammatory nature, these samples of testimony and allegations pertain only to Ms. Sankano's now-dismissed hostile work environment and race discrimination claims against Troutman and have no probative value because they are not tied to her remaining retaliation claim, which arises from the termination of her employment years after her complained of interactions with Ms. Carmody.

 Ms. Sankano also uses inflammatory language to describe Ms. Carmody's conduct in 2020. Specifically, in Ms. Sankano's Amended Complaint she characterizes Ms. Carmody's request to review her time in advance of entering it into the Pepper Hamilton timekeeping system as

"stealing" her hours. Pl.'s Dep. 61:19-64:5, 166:14-167:17, 281:13-282:13, 308:13-18; *see also* Am. Compl. ¶ 69. Merriam-Webster defines the verb "steal" as the taking of the property of "another wrongfully and especially as a habitual or regular practice"[2] However, based on Ms. Sankano's own testimony and other evidence, Ms. Carmody did not *take* any property that belonged to Ms. Sankano. Rather, the evidence shows that Ms. Carmody reallocated Ms. Sankano's time to non-billable matter numbers – not that Ms. Carmody ever took Ms. Sankano's time for herself, inflated Ms. Carmody's own time with Ms. Sakano's hours, or even wrote off Ms. Sankano's time. Ms. Sankano's use of such inflammatory language will inherently prejudice Defendants by needlessly confusing the members of the jury, who are likely unfamiliar with this industry practice of managing an associate's billable time, as to what specifically occurred with respect to Ms. Sankano's time entries.

For these reasons, the Court should preclude Ms. Sankano or Ms. Sankano's counsel from presenting inflammatory remarks, such as accusing Defendants of engaging in racial microaggressions, and any reference to mansplaining, a mass "black exodus," or "stealing time." In the alternative, the Court, at minimum, should preclude Ms. Sankano and her counsel from making inflammatory statements without first presenting a basis for their statements outside of the presence of the jury. *See Rhine*, 2023 U.S. Dist. LEXIS 27764, at *23-5.

**B.      ALLEGATIONS OR CLAIMS NOT AT ISSUE IN THIS TRIAL**

Relevant evidence "has any tendency to make a fact more or less probable than it would be without the evidence; and . . . the fact is of consequence in determining the action." Fed. R. Evid. 401. "[I]rrelevant evidence is not admissible." Fed. R. Evid. 402. As outlined in Section A,

---

[2] *Steal*, MERRIAM-WEBSTER.COM, https://www.merriam-webster.com/dictionary/steal (last visited Feb. 18, 2026).

5

*supra*, even where evidence is relevant, not all relevant evidence is admissible. *See* Fed. R. Evid. 403.

Here, the only remaining claims Ms. Sankano has in this case are: (1) a race discrimination claim based on Ms. Carmody's conduct under 42 U.S.C. § 1981, (2) retaliation claims based on her termination under 42 U.S.C. § 1981, Title VII, and the DCHRA. As a result, evidence supporting any of Ms. Sankano's claims which did not survive summary judgment should not be presented to the jury. Specifically, evidence or testimony regarding any allegations that Ms. Carmody retaliated against Ms. Sankano, that Ms. Sankano believed she was subjected to a hostile work environment based on her race, or that Ms. Sankano was wrongfully terminated because of her race are no longer relevant. Further, even if such purported evidence were relevant, the risk of prejudice to Defendants from the jury hearing this evidence outweighs any marginal probative value.

The decision in *Beyene v. Hilton Hotels Corp.*, No. 08-1972 (BJR), 2012 U.S. Dist. LEXIS 208014 (D.D.C. Nov. 13, 2012) is instructive. There, "[t]he issues that remain[ed]" in the case concerned an alleged assault and the defendant's response to the assault. *See id*. at *7-8. The defendant sought to exclude allegations from the plaintiff that in addition to threatening violence against him, two individuals harassed him based on his national origin and religion. *Id*. The court "agree[d]" with the defendant, which argued evidence of harassment was likely to be "confusing, and potentially inflammatory" and would "have little probative value." *Id*. at *7-8. Like the court found in *Beyene*, any reference to Ms. Sankano's unsuccessful hostile work environment claim or wrongful termination claim based on race would needlessly confuse the jury about the limited remaining claims and would have no probative value to Ms. Sankano's claims to be tried.

1. **No Testimony Regarding Ms. Carmody's Alleged Retaliatory Conduct**

While Ms. Sankano's claim of race discrimination under Section 1981 challenging Ms. Carmody's timekeeping practices survived summary judgment, Ms. Sankano's allegations that Ms. Carmody, or anyone, retaliated against her for voicing concerns about Ms. Carmody's actions were dismissed. *See* Sept. 30, 2025 Order, ECF No. 35. Thus, evidence supporting allegations of retaliation by Ms. Carmody will have little probative value in determining whether her timekeeping instruction to Ms. Sankano was based on race, but is more likely to prejudice Defendants by needlessly confusing the jury as to the evidence which should be weighed to determine whether Ms. Sankano has proven that Ms. Carmody discriminated against Ms. Sankano by a preponderance of the evidence. Specifically, the Court should exclude any testimony by witnesses that Ms. Sankano engaged in protected activity by complaining about Ms. Carmody's instruction; that she "fell out of favor" with Ms. Carmody after allegedly complaining about Ms. Carmody's instruction (Am. Compl. ¶83); that Ms. Sankano's work load was "substantially decreased" or "dried up" after Ms. Sankano complained about Ms. Carmody (Pl.'s Dep. 89:15-90:8); that Ms. Carmody, or anyone in the Pepper Hamilton or Troutman offices stopped giving her work or refused to give her work because of a complaint about Ms. Carmody (*Id*. 91:17-92:7, 146:18-20, 156:17, 158:11-17, 166:19-167:18); that Ms. Carmody disparaged Ms. Sankano after she allegedly complained about the instruction (Am. Compl. ¶¶105-107); or that Ms. Sankano was denied any opportunities for development and/or training because of any protected activity pertaining to Ms. Carmody's instruction. (Pl.'s Dep. 142-144, 166:19-167:18).

Again, there is no remaining retaliation claim based specifically on Ms. Carmody's conduct. The only retaliation claim to be decided at trial pertains to a decision by Mr. Iwashyna to terminate Ms. Sankano's employment years after she stopped working for Ms. Carmody. Any

7

testimony or other evidence conflating the decision to terminate Ms. Sankano (at Troutman) with her years' earlier complaint about Ms. Carmody (at Pepper Hamilton) would unfairly prejudice Defendants by again needlessly confusing the jury as to the remaining claim of retaliation.

### 2. No Testimony Regarding Plaintiff's Hostile Work Environment Based on Race and Race Discrimination Claims Against Troutman

Similar to any claim of retaliation by Ms. Carmody, Ms. Sankano's allegations regarding a hostile work environment based on race and the wrongful termination based on her race did not survive summary judgment. While a single claim of race discrimination remains, this is a discrete claim that relates to Ms. Sankano's work at Pepper Hamilton (before the merger with Troutman) and is entirely separate from the facts underlying Ms. Sankano's now dismissed hostile work environment and wrongful termination claims based on her race while at Troutman (after the merger). Thus, any testimony (or other evidence) pertaining to Ms. Sankano's belief that Ms. Sankano was targeted for unfavorable treatment because of race during her time at Troutman must be excluded, as such testimony would be needlessly confusing to the jury and also prejudicial to Defendants.

Specifically, Ms. Sankano should be precluded from expressing her opinion that Mr. Bowsher, or any other individual she interacted with post-July 2020, belittled her because of her race or questioned her competency level because of her race, and she should be precluded from expressing her belief that Mr. Bowsher, or any other individual she interacted with post-July 2020, bore discriminatory animus towards her and/or any other black females. Ms. Sankano should also be precluded from describing any conduct by Mr. Bowsher, or any other individual, as "racist."

Again, because the sole remaining race claim pertains to the actions of Ms. Carmody while Ms. Sankano was employed at Pepper Hamilton, any allegations or characterization of conduct by

8

anyone other than Ms. Carmody relating to racial bias or discrimination would too needlessly confuse the jury by presenting highly prejudicial testimony with little probative value.

### 3. No Testimony Regarding Allegations of Sex Discrimination or Allegations of Pregnancy Discrimination

While Ms. Sankano did not pursue claims of sex or pregnancy discrimination, during several depositions, Ms. Sankano's counsel inquired about witnesses' knowledge of sex discrimination complaints allegedly filed against various partners, and perceived treatment during and after female witnesses were pregnant at Troutman. These lines of questioning do not relate to any of the claims at issue and, should witnesses testify on these topics, it would be highly prejudicial to Troutman. Specifically, witnesses were questioned about alleged sexist conduct by a former partner, internal complaints related to the same, and bias training allegedly contemplated for a partner. *See* Pl. Dep. 241:2-21; Deposition of Whitney Loughran ("Loughran Dep.") 16:22-17:14, attached hereto as Ex. B. Witnesses were also asked about alleged sexist comments by Mr. Bowsher. *See* Deposition of Lindsey Crawford ("Crawford Dep.") 31:11-24, attached hereto as Ex. C. Finally, at least one witness was asked to provide testimony about how she felt her pregnancy impacted her advancement and bonus opportunities at Troutman. *See* Loughran Dep. 24:4-25:8.

This testimony must be excluded from trial as none of it relates to Ms. Sankano's remaining claims of race discrimination and retaliation and, even if relevant, would be highly prejudicial to Defendants due to the inflammatory nature of the allegations. Admission of such evidence would result in needless minitrials, resulting in undue delay. Ms. Sankano has not brought a sex discrimination claim or a pregnancy-related claim; therefore, testimony by witnesses relating to those topics at trial would confuse the issues for the jury and hinder Troutman's ability to defend itself against the race and retaliation claims that remain.

### C. CONCLUSORY OR SPECULATIVE TESTIMONY

The Court should preclude Ms. Sankano from providing conclusory or speculative testimony that would be inadmissible under Federal Rules of Evidence 602 and 701. Rule 602 provides (in relevant part):

> A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may consist of the witness's own testimony.

Fed. R. Evid. 602; *see also Sabre Int'l Sec. v. Torres Advanced Enter. Solutions, LLC*, 72 F. Supp. 3d 131, 146 (D.D.C. 2014) (granting motion *in limine* and concluding deposition testimony was inadmissible because witness lacked personal knowledge); *Berkley Ins. Co. v. Fed. Hous. Fin. Agency*, Case No. 1:13-cv-1053, 2023 U.S. Dist. LEXIS 128690, at *41-42 (D.D.C. July 21, 2023) (granting motion *in limine* to exclude deposition testimony that speculated about a third party's motives, as the testimony "lack[ed] a foundation in personal knowledge as required by Rule 602").

If a witness can show she holds sufficient personal knowledge of matters about which she seeks to testify, her testimony must still clear Rule 701, which provides:

> If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:
>
> (a) rationally based on the witness's perception;
> (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and
> (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Fed. R. Evid. 701; *see also Lightfoot v. Rosskopf*, 377 F. Supp. 2d 31, 33 (D.D.C. 2005) (explaining relationship between Rules 602 and 701). In an employment discrimination case, "Rule 701 bars lay opinion testimony that amounts to a naked speculation concerning the motivation for a defendant's adverse employment decision." *See Barnett v. Pa Consulting Grp., Inc.*, 35 F. Supp. 3d 11, 21 (D.D.C. 2014); *Coles v. Perry*, 217 F.R.D. 1, 8 (D.D.C. 2003) ("While [a witness] might

be able to testify as to what she saw and heard, her divination of why [the employer] acted crosses the line from a legitimate opinion based on a perception to a speculation as to a witness's motives.").

At deposition, Ms. Sankano made various broad, conclusory, and speculative statements inadmissible under Rules 602 and/or 701. Specifically, Ms. Sankano provided speculative testimony pertaining to Ms. Carmody's review of her time based on Ms. Sankano's understanding of how flat fee matters were billed; however, Ms. Sankano admitted she had no first-hand knowledge of how Ms. Carmody's transactions were billed and the impact of reducing her billable hours. *See* Pl.'s Dep. 93:22-94:5. Ms. Sankano likewise provided speculative testimony about Ms. Carmody's motivation or reasoning for reviewing Ms. Sankano's time in advance of it being input into the system. Ms. Sankano's entire theory of Ms. Carmody's motivation is purely speculative, however, as she testified during her deposition that she does not really know why Ms. Carmody reviewed her time. *See id*. at 92:22-93:5.

Ms. Sankano has also provided conclusory and speculative allegations in her Amended Complaint relating to the subjective motivation of various partners and senior associates regarding the content of their performance evaluations and feedback provided to her during her employment.[3] *See, e.g.*, Am. Compl. ¶235. Ms. Sankano should be precluded from needlessly confusing the jury with such speculative testimony. While Ms. Sankano may, under Rules 602 and 701, testify to specific facts supporting her remaining claims of race discrimination and retaliation, self-serving testimony based only on her own assessment of her performance and what she thought

---

[3] Ms. Sankano likewise provided speculative testimony and conclusory statements about her work performance during her time at Troutman. For example, during Ms. Sankano's deposition she provided conclusory unsupported statements that as a first- and second-year associate she was running entire deals, with little to no oversight by partners. *Id*. at 116:5-119:15. There is simply no evidence to support Ms. Sankano's bare assertion, and, indeed, the record evidence contradicts Ms. Sankano's self-serving characterization of her performance and role on deals.

various individuals meant when providing feedback constitutes impermissible speculation about Defendants' motives and future acts. *See Barnett*, 35 F. Supp. 3d 11at 21.

In discovery, Ms. Sankano also provided a damages analysis based entirely on speculative wages she believes she would have received had she remained with Troutman and become partner. First, any assertion by Ms. Sakano that had she remained with Troutman she would have become partner is far too speculative given she was at least five years from consideration for partnership at the time of her termination. Likewise, Ms. Sankano's damages analysis provided during discovery was not based on any real data from Troutman regarding associate or partner compensation. Of course, Ms. Sankano is not an expert in economics or any other field which would enable her to opine on wage prospects. Again, while Ms. Sankano may testify under Rules 602 and 701 to her own personal observations and knowledge regarding her work at Troutman and the compensation she received during that time, her unsupported conclusions and speculations regarding future compensation (especially compensation as a partner, as such compensation is not public knowledge) and career trajectory as a partner at Troutman are inadmissible speculation under Rules 602 and 701. *See Beyene*, 2012 U.S. Dist. LEXIS 208014, at *9-10 (citing Rules 602 and 701 and cautioning counsel "to inform his client of the proper bounds of testimony" after the plaintiff "freely mix[ed] in conclusory allegations with his factual testimony").

Based on the foregoing, Defendants respectfully request the Court enter an Order precluding Ms. Sankano from delivering conclusory and speculative testimony at trial.

**D.    HEARSAY TESTIMONY**

The Court should preclude testimony amounting to inadmissible hearsay. Rule 801 defines hearsay as "a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801. Hearsay statements that do not fall into a recognized hearsay exclusion (which

are outlined in Rule 801) or exception (which are outlined in Rules 803, 804, 807) are inadmissible. *See Coles*, 217 F.R.D. at 7; *see also* Fed. R. Evid. 803, 804, 807.

Here, Defendants ask the Court to exclude as inadmissible hearsay anticipated testimony by Ms. Sankano about her performance and Troutman's practices with respect to performance management and termination decisions. Specifically, Defendants anticipate Ms. Sankano will seek to provide hearsay testimony about her prospects of becoming a partner, hearsay testimony about the experiences and quality of work of other associates, and hearsay testimony about the firm's process for performance managing associates. Defendants likewise anticipate Ms. Sankano relying on hearsay testimony pertaining to Ms. Carmody's motivation for reviewing and reallocating Ms. Sankano's time, as she has testified that she does not know why Ms. Carmody took such action. These statements would not fall under any of the applicable hearsay exceptions.

As for Rule 807, the residual exception, it is unlikely any testimony as described above would meet Rule 807's "stringent requirements." *See Bell v. Gonzales*, No. 03-163, 2005 U.S. Dist. LEXIS 37879, at *23 (D.D.C. Dec. 23, 2005). Based on the foregoing, Defendants respectfully request that the Court enter an Order precluding Ms. Sankano from offering the types of hearsay statements described above at trial. In the alternative, Defendants seek an Order requiring Ms. Sankano to notify Defendants and the Court outside the presence of the jury if she seeks to introduce statements similar to any of those described above, so that the parties may first discuss admissibility on a case-by-case basis.

### E. TESTIMONY FROM WITNESSES WHO WERE ASSOCIATES AT THE TIME OF PLAINTIFF'S TERMINATION

The Court should also preclude testimony from individuals who were associates at the time of Ms. Sankano's termination. Specifically, this Court has already determined that the fact Ms. Sankano suffered from performance deficiencies, which resulted in partners not wanting to work

with her, is undisputed. *See* Oct. 8, 2025 Hearing Transcript 18:17-19:9. Therefore, the only remaining issue for the jury to decide is whether Defendants' method for addressing Ms. Sankano's poor performance changed because she raised concerns about the tone of Mr. Bowsher's e-mails. To that end, no associate, including Ms. Sankano, would have any first-hand knowledge regarding Defendants' practice for addressing poor performance or its decision on the timing of personnel actions.

Defendants have provided undisputed testimony and evidence showing that associates were not consulted in making the decision to terminate Ms. Sankano's employment at Troutman nor otherwise consulted about the timing of addressing her deficient performance. Iwashyna Dec. 44-47. Moreover, during Ms. Sankano's deposition, she testified that she was not aware of the individuals who were involved in the decision to terminate her employment. Pl.'s Dep. 251:2-21. As no associate was consulted as part of Troutman's decision to terminate Ms. Sankano, and no associates were involved in the decision to terminate Ms. Sankano or any other associate at Troutman, any testimony by such individuals would be based entirely on speculation and hearsay, which, as noted above, should be excluded.

### F. LEGAL CONCLUSIONS BY LAY WITNESSES

The Court should preclude lay witnesses, including Ms. Sankano, from testifying that Defendants subjected them or others to discrimination or engaged in retaliatory conduct. Rule 701 provides:

> If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Fed. R. Evid. 701. "A lay witness may not . . . testify as to a legal conclusion." *See Athridge v. Iglesias*, Nos. 89-1222 & 92-1868, 2004 U.S. Dist. LEXIS 34272, at *4-5 (D.D.C. Dec. 21, 2004).

Indeed, "Rule[] 701 . . . require[s] that the opinion of a witness assist the trier of fact, and 'evidence that merely tells the jury what result to reach is not sufficiently helpful to the trier of fact to be admissible.'" *Id.*; *see also Vill. of Freeport v. Barella*, 814 F.3d 594, 611 (2d Cir. 2016) ("Rule 701(b) helps to protect 'against the admission of opinions which would *merely tell the jury what result to reach*,' rather than providing information that would assist the jury in drawing its own conclusions.") (emphasis in original). Further, in an employment discrimination case, "Rule 701 bars lay opinion testimony that amounts to a naked speculation concerning the motivation for a defendant's adverse employment decision." *See Barnett*, 35 F. Supp. 3d at 21; *Coles*, 217 F.R.D. at 8 ("While [a witness] might be able to testify as to what she saw and heard, her divination of why [the employer] acted crosses the line from a legitimate opinion based on a perception to a speculation as to a witness's motives."). Here, while lay witnesses (including Ms. Sankano) may testify under Rule 701 to specific events they believe are indicative of discrimination or retaliation, having witnesses testify they experienced discrimination amounts to improper "speculation" about Defendants' motives. *See Barnett*, 35 F. Supp. 3d at 21.

  Critically, each of the witnesses to this case, including Ms. Sankano, are trained in the legal field. As discussed earlier in this Motion, Rule 403 permits the court to exclude evidence "if its probative value is substantially outweighed by a danger of […] unfair prejudice, confusing the issues, [or] misleading the jury." Fed. R. Evid. 403. It is likely that Ms. Sankano will introduce as background evidence each witness's legal training and experience. Then, should these witnesses be permitted to testify to what they believed was discrimination or retaliation, the jury may not be able to clearly delineate these witnesses' testimony as being offered as lay opinion from legal conclusions based on the attorneys' specialized knowledge. *See United States v. Perkins*, 470 F.3d 150, 156 (4th Cir. 2006) ("Rule 701 forbids the admission of expert testimony dressed in lay

witness clothing […]); *see also Beach Mart, Inc. v. L&L Wings, Inc.*, No. 2:11-CV-44-FL, 2020 U.S. Dist. LEXIS 212303, at *10 (E.D.N.C. Nov. 13, 2020) (cautioning attorney acting as lay witness to "be careful to avoid specialized terms and phrases, or to otherwise testify on the basis of specialized knowledge.")

Should these witnesses be permitted to testify to these opinions without, at least, a limiting instruction informing the jury that their testimony is just that – a personal opinion and not a legal conclusion – there is a substantial risk of prejudice, confusion, and that the jury will be misled especially in light of the fact that the majority of witnesses are attorneys themselves.

For these reasons, Defendants request the Court preclude Ms. Sankano and other witnesses' from testifying to statements which may prejudicially and impermissibly be interpreted as legal conclusions by the jury. In the alternative, Defendants request, and can prepare for the court's review, a limiting instruction for the jury to consider these statements only as those of lay witnesses and not as legal conclusions.

## V.    CONCLUSION

Defendants respectfully request that the Court enter an Order precluding Ms. Sankano from seeking to introduce the above-described evidence.

| | |
|---|---|
| Dated: March 4, 2026 | */s/ Alison N. Davis* <br> Alison N. Davis, Bar No. 429700 <br> andavis@littler.com <br> Paul Kennedy, Bar No. 428623 <br> pkennedy@littler.com <br> Morgan Kinney, Bar No. 8888325169 <br> mkinney@littler.com <br> LITTLER MENDELSON, P.C. <br> 815 Connecticut Avenue NW, Suite 400 <br> Washington, DC 20006.4046 <br> Telephone:   202.842.3400 <br> Facsimile:    202.842.0011 <br> <br> *Attorneys for Defendants* |