**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**
-------------------------------------------------------X
GITA SANKANO,                                     :
                                                  :
                Plaintiff,                   :
                                                  :
        v.                                :   Civil Case No. 1:24-cv-142
                                                  :
TROUTMAN PEPPER HAMILTON                          :
SANDERS LLP and BRIAN IWASHYNA,                   :
                                                  :
                Defendants.                  :
-------------------------------------------------------X


**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HER**
**<u>MOTION IN LIMINE</u>**


**WIGDOR LLP**

Michael J. Willemin
Kassandra Vazquez
Brooke Payton

85 Fifth Avenue
New York, NY 10003
Telephone: (212) 257-6800
Facsimile: (212) 257-6845
mwillemin@wigdorlaw.com
kvazquez@wigdorlaw.com
bpayton@wigdorlaw.com

Plaintiff Gita Sankano ("Plaintiff" or "Ms. Sankano"), by and through her undersigned counsel, hereby submits this Motion in Limine to preclude Defendants Troutman Pepper Hamilton Sanders LLP ("Troutman Pepper" or the "Firm") and Brian Iwashyna ("Mr. Iwashyna") (together, "Defendants") from admitting certain evidence and testimony on certain topics, including (1) Partner compensation; and (2) certain alleged performance deficiencies that were not known to decision-makers at the time the decision to terminate Plaintiff was made.[1]

## I. BRIEF BACKGROUND

Ms. Sankano, a Black woman, was an associate at Troutman Pepper in the Multifamily Housing ("MFH") Practice Group. Dkt. No. 15 at ¶ 39. She found herself on the receiving end of racially discriminatory treatment from a white MFH Partner, Christine Waldman Carmody ("Ms. Carmody"). Id. at ¶¶ 42-43. Ms. Carmody inappropriately, and against Firm protocol, required Ms. Sankano to send her (Ms. Carmody) draft time entries of billable hours before they could be inputted into the Firm's timekeeping system (the "System"). Id. at ¶¶ 46-48. Ms. Carmody then manipulated the hours so that the time reflected in the System was not an accurate representation of Ms. Sankano's actual work and negatively impacted her evaluations and compensation. Id. at ¶¶ 55, 69. Ms. Carmody did not do this to white associates. Id. at ¶¶ 53-54.

Throughout her tenure, Ms. Sankano's basic competency and aptitude were repeatedly called into question by white MFH Partners. Id. at ¶¶ 65, 73-74, 134-38, 143, 184-89. She raised concerns about her treatment, and when those concerns were brought to the Practice Group Leader, Mr. Iwashyna, not only did he not escalate those concerns to Human Resources ("HR"), as was his obligation, but he minimized and laughed off the concerns. Id. at ¶¶ 288-95.

---

[1] Plaintiff reserves all rights to object to Defendants' Exhibit List, Witness List, and any other evidence up to and through the completion of the trial.

1

Then, on August 3, 2023, Partner Matthew Bowsher ("Mr. Bowsher") sent Ms. Sankano a vicious email that made clear that he was attacking Ms. Sankano's abilities as a human being. Id. at ¶ 189.  Indeed, in his own words, his hostility had "nothing to do" with her training or knowledge of multifamily transactional law, and Ms. Sankano understood the substance and tone of the email to be racially motivated.  Id.

Ms. Sankano complained about Mr. Bowsher's discriminatory conduct to several Partners, including those who agreed that the email was racist.  Id. at ¶¶ 194, 197-203, 221-28.  No one took action and she complained to HR.  Id. at ¶¶ 203-04, 211-16.  Within days, the Firm began efforts to end Ms. Sankano's employment even though she was never previously at risk for termination and had never even received a negative performance review.  Id. at ¶¶ 221-28.  By November 2023, Ms. Sankano was retaliatorily terminated.  Id. at ¶¶ 254-61.

After summary judgment briefing, Defendants' motion was denied as to four of the six counts, such that the remaining claims are: Count I for discrimination under Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981"); Count II for retaliation under Section 1981; Count IV for retaliation under the Washington D.C. Human Rights Act, D.C. Code § 2-1402.61 ("DCHRA"); and Count VI for retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e ("Title VII").  Dkt. No. 35.

## II.   LEGAL STANDARD

Motions in limine are "designed to narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions." Barnes v. District of Columbia, 924 F. Supp. 2d 74, 78 (D.D.C. 2013) (internal quotations and citations omitted).  In other words, "motions *in limine* are a means for arguing why evidence should or should not, *for evidentiary reasons*, be introduced at trial." Id. (internal quotations and citations omitted) (emphasis in original).

"In evaluating the admissibility of proffered evidence on a pretrial motion in limine, the court must assess whether the evidence is relevant and, if so, whether it is admissible, pursuant to Federal Rules of Evidence 401 and 402." Atlanta Channel, Inc. v. Solomon, 583 F. Supp. 3d 174, 186 (D.D.C. 2022). Under Federal Rule of Evidence ("FRE") 401, "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. "[T]he burden is on the introducing party to establish relevancy." Corrigan v. Glover, 254 F. Supp. 3d 184, 191 (D.D.C. 2017) (quoting Dowling v. U.S., 493 U.S. 342, 351 n. 3 (1990)). Under FRE 402, relevant evidence is admissible unless it is unconstitutional or violates a federal statute, the Federal Rules, or other rules prescribed by the U.S. Supreme Court. See Fed. R. Evid. 402. "Irrelevant evidence is not admissible." Id. Further, under FRE 403, the Court may "exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

### III. ARGUMENT

#### A. Defendants Should be Precluded from Offering at Trial Any Evidence Related to Plaintiff's Potential Compensation in her Future as Partner at Troutman Pepper

During the depositions of several Partners, each refused to give testimony about their compensation – even when their own counsel allowed them to answer.

On October 25, 2024, during Partner Dameon Rivers's deposition, he was asked if his compensation increased when he transferred to Troutman Pepper from his previous firm. See Deposition of Dameon Rivers, Ex. A[2] at 4:11-23. At first, Defendants' counsel directed Mr.

---

[2] All Exhibits referenced in this motion are attached to the Declaration of Michael J. Willemin, filed alongside this motion.

Rivers not to answer the question but eventually withdrew their objection. Id. at 4:24-7:15. Mr. Rivers was then asked to give his compensation for 2023, and he refused, stating that he was "not going to answer a question about my personal financial information. I don't believe it's relevant." Id. at 8:23-9:4. Ultimately, Mr. Rivers refused on his own – in other words, without instruction not to respond from Defendants' counsel – to answer questions about his own compensation. Id. at 11:24-13:19.

On October 25, 2024, Partner Lindsay Crawford similarly refused to answer the same kinds of questions about her own compensation. Without being directed either way by her counsel on the record, she responded, "I consider that my personal financial information. I am not going to respond." Deposition of Lindsay Crawford, Ex. B at 7:2-13.

On November 5, 2024, when Mr. Iwashyna, a Partner, was asked at his deposition if he was an equity partner at Troutman Pepper, he responded, "We have a closed compensation system where the equity or non-equity status of the partners is not disclosed." Deposition of Brian Iwashyna, Ex. C at 14:14-15:8. He went on to refuse to answer questions about his own compensation. Id. at 16:2-17:18.

On November 13, 2024, Partner Christine Waldmann Carmody refused to answer if she was an equity or salary partner, saying, "I don't think that's relevant. . . . I think it's very personal, private information that I don't want to share." Deposition of Christine Waldmann Carmody, Ex. D at 10:22-12:7.

Partner Blair Schiff did answer questions about his compensation during his deposition on November 1, 2024, but only in non-specific terms. He testified that while he was an equity partner in 2022 and 2023, he was, at the time of the deposition, a non-equity partner. Deposition of Blair Schiff, Ex. E, at 12:24-13:12. He further testified that his total compensation for 2023

4

was "approximately" $700,000, made up almost entirely of an equity draw. Id. at 13:21-15:10. He was unable to give any other specifics of his compensation.

As Plaintiff's counsel explained during Mr. Rivers' deposition, Partner compensation is relevant to Ms. Sankano's damages because "if [she] hadn't been terminated from Troutman [Pepper], she would have a career trajectory [to Partnership] . . . So I am going to be asking every witness in this case about their compensation . . . in order for me to map out what Ms. Sankano's compensation could have looked like had she not been terminated." Ex. A at 9:19-10:11. Without detailed information about Partnership compensation, Plaintiff is unable to determine aspects of her economic damages with specificity. Therefore, we ask the Court to preclude Defendants from bringing in any testimony or evidence at trial to contradict any of Plaintiff's evidence of what she would have earned had she continued at Troutman Pepper and eventually became a Partner at the Firm. Because Defendants refused to provide such information during discovery, it would be prejudicial to Plaintiff to be blindsided by such information this late in litigation. See Jennings v. Thompson, 792 F. Supp. 2d 1, 6 (D.D.C. 2011) (finding that information provided "long after the close of discovery, long after . . . deposition[s], and indeed after the plaintiff had already filed [a] motion *in limine* in preparation for trial" should be excluded from trial).

> **B.    Defendants Should Be Precluded from Introducing at Trial Certain Performance Deficiencies That Were Not Known to Decision-Makers at the Time the Decision to Terminate Plaintiff Was Made**

Defendants maintain that the decision to terminate Plaintiff from Troutman Pepper was made on October 24, 2023, by Mr. Iwashyna during a meeting he had with Mr. Schiff, Partner Nora Nickel, Partner Marshall Tucker, Practice Manager Mary Cabell Sulc and Partner Virginia Stitzer. Dkt. No. 31-2 at ¶¶ 131-37.

5

However, the record reflects that Defendants solicited negative information about Ms. Sankano after the decision to terminate her employment was made. Dkt. No. 31-2 at ¶¶ 273-74. To be clear, the fact that Defendants sought to manufacture a bogus reason for Plaintiff's termination is relevant. However, any purported performance deficiencies that were actually disclosed during that process are irrelevant because they were not known to decision-makers at the time the decision to terminate Plaintiff was made. For example, Defendant produced an undated sheet of handwritten notes. See Ex. F. At his deposition, Mr. Schiff testified that he wrote the notes while speaking to some MFH Partners about Plaintiff's performance. See Deposition of Blair Schiff, Ex. G at 134:6-135:2. When asked when the notes were taken, Mr. Schiff stated, "These notes were taken in preparation for the memo for the termination, for the script for our discussion review of the termination." Ex. G at 135:3-8. He further confirmed that the notes were taken "after performance evaluations were submitted" and "after we had decided that we were terminating Gita." Id. at 135:9-13. The statements in the handwritten notes should be excluded because, as Mr. Schiff admitted, they were not known to the decision-makers at the time the decision to terminate Plaintiff was made and are therefore irrelevant to any claim for retaliation or any defense to such a claim. The jury should not be allowed to hear that Ms. Crawford, Peter Strup, and Mr. Rivers had negative things to say about Plaintiff when those negative things had no bearing or relevance on her termination. See Altman v. New Rochelle Pub. Sch. Dist., No. 13 Civ. 3253 (NSR), 2017 WL 66326, at *11 (S.D.N.Y. Jan. 6, 2017) (excluding evidence of threat made "days *after* the adverse employment action" because it could not have affected the decision to terminate the plaintiff) (emphasis in original); Ruddy v. Bluestream Prof. Serv., LLC, 444 F. Supp. 3d 697, 710 (E.D.Va. 2020) (finding no inference of discrimination where the decision-maker did not know the plaintiff was pregnant). These written

statements are therefore irrelevant at best and highly prejudicial towards Plaintiff at worst. See Fed. R. Evid. 401 and 403. The Court should preclude Defendants from introducing such statements, or any other statements, testimony or other evidence, not known to decision-makers at the time of the decision to terminate Plaintiff. However, if the Court disagrees and finds that these handwritten notes – created *after* the decision to terminate Plaintiff was made – then the notes should still be excluded as double hearsay evidence. See Fed. R. Evid. 801.

## IV. CONCLUSION

For the reasons set forth herein, Plaintiff respectfully requests that the Court preclude Defendants from admitting certain evidence and testimony on certain topics, including (1) Partner compensation; and (2) certain alleged performance deficiencies that were not known to decision-makers at the time the decision to terminate Plaintiff was made.

Dated: March 4, 2026
      New York, New York

**WIGDOR LLP**

By: _____
    Michael J. Willemin
    Kassandra Vazquez
    Brooke Payton

85 Fifth Avenue
New York, NY 10003
Telephone: (212) 257-6800
Facsimile: (212) 257-6845
mwillemin@wigdorlaw.com
kvazquez@wigdorlaw.com
bpayton@wigdorlaw.com