# Exhibit A

Page 1

```
 1   UNITED STATES DISTRICT COURT
 2   DISTRICT OF COLUMBIA
 3   Case No. 1:24-cv-00142
 4   - - - - - - - - - - - - - - - - - - - -x
 5   GITA F. SANKANO,
 6                            Plaintiff,
 7        -against-
 8   TROUTMAN PEPPER HAMILTON SANDERS LLP,
 9                            Defendant.
10   - - - - - - - - - - - - - - - - - - - -x
11
                            October 25, 2024
12                          10:37 a.m.
13
14      REMOTE DEPOSITION of DAMEON RIVERS, in
15   the above-entitled action, taken before
16   Dawn Matera, a Certified Shorthand
17   Reporter and Notary Public of the State
18   of New York.
19
20                 *      *      *
21
22
23
24
25
```

Page 3

1  D A M E O N   R I V E R S, the Witness
2  herein, having first been duly sworn by
3  the Notary Public, was examined and
4  testified as follows:
5  EXAMINATION BY MR. WILLEMIN:
6      Q.    Good morning, Mr. Rivers, and
7  thank you for accommodating the later
8  start time that I threw upon you all
9  yesterday afternoon.
10     A.    No worries.
11     Q.    Have you ever been deposed
12 before?
13     A.    No.
14     Q.    Okay.  I should introduce
15 myself.  I am Mike Willemin.  I am one of
16 Gita's lawyers in connection with her
17 claims against Troutman and I will be
18 asking you some questions today in
19 connection with those claims and I
20 appreciate if you answer them.
21           You joined Troutman in 2022; is
22 that right?
23     A.    Yes, I believe it was the end
24 of March of 2022.
25     Q.    And did you come from Ballard

Page 4

1  Spahr?
2  A.   I did.
3  Q.   And I know that was probably
4  quite literally classified as a lateral
5  transfer, but did you view that transfer
6  as a lateral one, a step down, a step up?
7  A.   I am not sure of the question
8  but I think it was a lateral -- are you
9  saying like comparing the two firms
10 together, is that what you're asking me?
11 Q.   Let me ask you this:  Did your
12 compensation increase at all when you
13 joined Troutman from what it was when you
14 were at Ballard?
15 A.   It was a better opportunity for
16 my practice.  I would prefer not to
17 answer questions about compensation.
18 That's personal financial information.
19 Q.   Well, I appreciate that.  But
20 you're going to have to answer my
21 questions today.  So was it a
22 compensation increase moving from
23 Troutman to -- from Ballard to Troutman?
24       MS. DAVIS:  Objection.  I am
25    going to direct the witness not to

Page 5

1  answer.  It's not relevant to these
2  proceedings.
3          MR. WILLEMIN:  It's relevant
4  both to the witness's potential bias
5  as well as to the damages ultimately
6  in the case what he's earning now.  So
7  we can call the Court now or we can
8  mark the transcript confidential as
9  the confidentiality order
10 contemplates.
11         MS. DAVIS:  If you want to call
12 the Court now, we would be happy to do
13 that.
14         MR. WILLEMIN:  Are you really
15 going to tell the Court -- okay, all
16 right.  That's good.
17         My first question, direction not
18 to answer for no reason other than
19 confidentiality when we have a
20 confidentiality stipulation?
21         MS. DAVIS:  My objection was on
22 relevance.
23         MR. WILLEMIN:  Yeah, but you
24 can't direct a witness not to answer
25 something based on relevance.  That's

1   not an appropriate objection and you
2   know that very well.  It might be
3   easier to call the judge -- do you
4   have a phone at the table -- maybe you
5   all want to talk about this another
6   couple minutes and talk off camera.
7   There is absolutely no basis in which
8   an officer of the Court can direct the
9   witness not to answer that on
10  relevance and you know that's the law.
11  Even if it was a basis on
12  confidentiality, you know we have a
13  confidentiality stipulation in place.
14          We are entitled to take
15  discovery on whether or not a witness
16  would have a potential bias based on
17  the benefits that he receives from his
18  current employer or his current, in
19  this case, partnership, and we have
20  the right to take discovery on what
21  Ms. Sankano might also have been
22  ultimately been set to earn had she
23  made partnership at Troutman.
24          Maybe we take a couple minutes
25  break so you can reconsider your

1    position and then we can start again.
2    And then we can call the judge.  It
3    might be easier to call the judge if
4    you have a conference phone over
5    there, otherwise I can try on speaker
6    on my cell phone.
7         MS. DAVIS:  Okay.  We will take
8    a break.
9         MR. WILLEMIN:  Thank you.
10        (Off the record.)
11        MR. WILLEMIN:  Are we calling
12   the Court or are we going to mark the
13   transcript confidential?
14        MS. DAVIS:  I will withdraw my
15   objection.
16        MR. WILLEMIN:  Okay.  Thank you.
17 BY MR. WILLEMIN:
18   Q.   Mr. Rivers, did you take a
19 compensation increase, decrease or the
20 same in moving from Ballard to Troutman?
21   A.   Increase.
22   Q.   And what year did you graduate
23 law school?
24   A.   2009, I believe, 2009.
25   Q.   And are you at Troutman a

1    salaried partner, equity partner or
2    something in between?
3         A.    Equity partner.
4         Q.    Is your income year to year
5    fixed based on your equity percentage or
6    is there any discretionary aspect to your
7    compensation?
8              MS. DAVIS:  Objection, but you
9         can answer.
10        A.    My base compensation is based
11   on a percentage.
12        Q.    And there then a discretionary
13   potential bonus that you can receive?
14             MS. DAVIS:  Objection, but you
15        can answer.
16        A.    Our compensation system
17   provides for the availability of a bonus
18   based on performance.
19        Q.    So for 2023, that was your
20   first full calendar year at Troutman; is
21   that right?
22        A.    Correct.
23        Q.    And what was your base
24   compensation in 2023?
25             MS. DAVIS:  Objection.

1      A.    I am not going to answer a
2   question about my personal financial
3   information.  I don't believe it's
4   relevant.
5      Q.    I am going to ask the Court to
6   hold you in contempt if you won't answer
7   questions relevant to the case.  We can
8   take another break, if you want, or I can
9   just make that request now.
10            I mean, I know you're not -- I
11  don't mean this disparagingly -- I know
12  you're not a litigator -- I would
13  strongly advise you to follow the advice
14  of your counsel in respect to these
15  questions.
16            MS. DAVIS:  How is Mr. Rivers'
17       base comp in 2023 relevant to any
18       issue in this case?
19            MR. WILLEMIN:  Because
20       ultimately if Ms. Sankano hadn't been
21       terminated from Troutman she would
22       have a career trajectory at some point
23       where Mr. Rivers was in 2019.  So I am
24       going to be asking every witness in
25       this case about their compensation so

| | |
|---|---|
| 1 | I can understand and refine the |
| 2 | damages analysis that you asked for |
| 3 | that we gave to you the week before |
| 4 | last.  I am starting with Mr. Rivers |
| 5 | because he's our first witness and |
| 6 | then we will move to Ms. Crawford and |
| 7 | every other witness after that in |
| 8 | order for me to map out what |
| 9 | Ms. Sankano's compensation could have |
| 10 | looked like had she not been |
| 11 | terminated. |
| 12 | In addition, to the extent that |
| 13 | Mr. Rivers values the compensation |
| 14 | that he receives from Troutman, that |
| 15 | is a potential bias that he would have |
| 16 | in connection with any testimony that |
| 17 | he would be giving in relation to this |
| 18 | proceeding. |
| 19 | And on top of all of that, |
| 20 | relevance is not, as a matter of black |
| 21 | letter law, a basis for refusing to |
| 22 | answer a question. |
| 23 | MS. DAVIS:  Well, this line of |
| 24 | questioning as to Mr. Rivers' |
| 25 | compensation is just pure harassment |

Page 11

1   because for bias purposes you don't
2   need to know the exact amount figure
3   that Mr. Rivers was earning.
4           In addition, you will be
5   deposing a member of the compensation
6   committee who understands the process
7   for setting salaries.  Individual
8   partners do not have that information.
9           So it is not relevant for doing
10  any type of calculations for
11  Ms. Sankano for you to know how much
12  each partner makes.
13          MR. WILLEMIN:  Well, I disagree
14  with that and you haven't instructed
15  the witness not the answer.  The
16  witness has on his own refused not to
17  answer.  Either way, if he doesn't
18  answer the question, we are calling
19  the Court.
20          MS. DAVIS:  Let's call the Court
21  then.
22          MR. WILLEMIN:  Okay.
23          (Off the record.)
24          MR. WILLEMIN:  Just to be clear,
25  though, you have not instructed the

1    witness not to answer.  He is now
2    refusing on his own to answer; is that
3    correct?
4            MS. DAVIS:  That is correct.
5            MR. WILLEMIN:  Is there a
6    conference line we can call the Court
7    over there?
8            (Off the record.)
9            MR. WILLEMIN:  Just for the
10   record, we just tried to call Judge
11   Cobb, I think her chambers as well as
12   her deputy.  Voicemails in both
13   circumstances.  At this point I am
14   going to mark the transcript for a
15   ruling as well as a motion for
16   contempt and we will try the judge
17   later today, and if we cannot reach
18   the judge I will make those motions
19   formally following deposition.
20 BY MR. WILLEMIN:
21     Q.    I am just going to ask you a
22 couple more questions along these lines.
23 I am not going to belabor the point.
24            I had asked you what your base
25 compensation was in 2023.  Will you tell

```
 1    me what your total compensation was in
 2    2023?
 3             MS. DAVIS:  Objection.
 4        A.   No.
 5        Q.   Will you tell me any specific
 6    information about the amount of
 7    compensation that you've been paid by
 8    Troutman since joining Troutman?
 9             MS. DAVIS:  Objection.
10        A.   No.
11        Q.   Will you tell me what
12    percentage, equity percentage you have at
13    Troutman?
14             MS. DAVIS:  Objection.
15        A.   No.
16             MR. WILLEMIN:  Okay.  And I will
17        move to put Mr. Rivers in contempt for
18        those questions as well as any related
19        ones.
20        Q.   Can you describe, Mr. Rivers,
21    your practice at Troutman?
22        A.   I am the multifamily finance
23    group.  My practice focuses primarily on
24    affordable housing loan transactions,
25    specifically low income housing tax
```