**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| GITA F. SANKANO,<br>             **Plaintiff,**<br>        v.<br>**TROUTMAN PEPPER HAMILTON**<br>**SANDERS LLP, BRIAN IWASHYNA,**<br>             **Defendants.** | **Case No. 24-cv-142 (JMC)** |

## JOINT PRETRIAL STATEMENT

Pursuant to the Court's January 22, 2026, Pretrial Conference Order, Dkt. No. 39, in the above-captioned matter, Plaintiff Gita Sankano ("Plaintiff" or "Ms. Sankano") and Defendants Troutman Pepper Hamilton Sanders LLP ("Troutman") and Brian Iwashyna ("Mr. Iwashyna") (the "Defendants") (collectively, the "Parties") submit this Joint Pretrial Statement including : a) nature of the case; b) statement of claims; c) statement of defenses; d) stipulations of fact; e) witness schedule; f) exhibit lists; g) deposition designations; h) demonstrative evidence lists; i) itemization of damages; j) request for other relief; k) proposed *voir dire* questions; l) proposed jury instructions; m) proposed verdict form; n) special considerations; and o) trial time estimates.

**I.      PARTIES AND COUNSEL**

> ### a.      *Plaintiff*

The Plaintiff in this matter is Gita F. Sankano.  Ms. Sankano is represented by Wigdor LLP. Specifically, Ms. Sankano is represented by lead counsel, Michael J. Willemin, as well as Brooke Payton. Counsel for Plaintiff may be contacted at:

> Wigdor LLP
> 85 Fifth Avenue
> New York, NY 1003
> Telephone: (212) 257-6800
> Facsimile: (212) 257-6845
> mwillemin@wigdorlaw.com
> bpayton@wigdorlaw.com

### b.     Defendants

The Defendants in this matter are Troutman Pepper Hamilton Sanders LLP[1]:

Troutman Pepper Hamilton Sanders, LLP
600 Peachtree Street, N.E.
Suite 3000
Atlanta, GA 30308
Telephone: (202) 274-2950
Facsimile: (202) 274-2994

and Brian Iwashyna:

Brian Iwashyna
1001 Haxall Point
15th Floor
Richmond, VA 23219
Telephone: (804) 697-1200
Facsimile: (804) 697-1339

Defendants Troutman and Mr. Iwashyna are represented in this matter by Littler Mendelson, P.C. Specifically, Troutman is represented by lead counsel, Alison Davis (Bar No. 429700), as well as Paul Kennedy (Bar No. 428623), Morgan Kinney (Bar No. 8888325169), and Caroline Jaipaul (Bar No. 90035265). Ms. Davis, Mr. Kennedy, and Ms. Kinney plan to try the case. Counsel for Troutman may be contacted at:

Littler Mendelson, P.C.
815 Connecticut Avenue, NW, Suite 400
Washington, DC 20006-4046
202.842.3400 *Telephone*
202.842.0011 *Facsimile*
andavis@littler.com
pkennedy@littler.com
mkinney@littler.com
cjaipaul@littler.com

---

[1]     Effective January 1, 2025, the name of the law firm changed to "Troutman Pepper Locke LLP."

## II.   NATURE OF THE CASE

### a.   Plaintiff's Proposed Nature of the Case

Ms. Sankano, a Black woman, was an associate at Troutman Pepper in the Multifamily Housing ("MFH") Practice Group.  She alleges that she was discriminated against during her employment and retaliated against after making complaints about discrimination.  She further alleges that Defendant Brian Iwashyna was the one who decided to terminate her employment. Defendants deny that they engaged in any discrimination or retaliation.

The Court has federal subject matter jurisdiction over Plaintiff's claims arising under 42 U.S.C. 1981 ("Section 1981") and 42 U.S.C. 2000e, *et seq*. ("Title VII"), and supplemental jurisdiction over Plaintiff's claims arising under the Washington D.C. Human Rights Act ("DCHRA").

### b.   Defendant's Proposed Nature of the Case

Plaintiff Gita F. Sankano alleges: (1) race discrimination against Defendant Troutman under 42 U.S.C. § 1981, (2) retaliation under 42 U.S.C. § 1981 and the D.C. Human Rights Act of 1977 ("DCHRA") against Defendants Troutman and Mr. Iwashyna, and (3) retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII") against Defendant Troutman. Defendant Troutman is a law firm with offices located across the United States. In July 2020, Troutman combined with another law firm, Pepper Hamilton, to become Troutman Pepper. Plaintiff began her employment with the predecessor firm Pepper Hamilton, and continued employment as an associate with Troutman post-combination.  Defendant Mr. Iwashyna, a partner at Troutman, served as the Practice Group Leader of Troutman's Multifamily Housing Finance ("MFH") Practice Group, to which Plaintiff was assigned, from July 2020 until termination of her

employment in November 2023. Defendant Mr. Iwashyna, acting on behalf of Defendant Troutman, made the decision to terminate Plaintiff's employment with the firm.

Plaintiff's race discrimination allegations arise from her interactions with Christine Waldmann Carmody ("Ms. Carmody"), a now retired partner at Defendant Troutman, during an approximately nine-month period in which Plaintiff worked with Ms. Carmody at Pepper Hamilton. Specifically, Plaintiff alleges Ms. Carmody's request to review and edit her time entries in advance of it being entered into Pepper Hamilton's timekeeping system was discriminatory, based on race. Ms. Carmody's explanation for her request is that it was part of training Plaintiff, supervising her work, and client relations.

Plaintiff's retaliation claims are based on her belief that she was terminated because she filed an internal complaint alleging that Matthew Bowsher ("Mr. Bowsher"), a partner, subjected her to a hostile work environment based on her race. Defendants have articulated a nonretaliatory reason for its decision to terminate Plaintiff's employment, namely, poor work performance.

## III.    STATEMENT OF CLAIMS AND DEFENSES

### a.    *Plaintiff's Statement of Claims*

1.    Discrimination against Defendant Troutman Pepper in violation of Section 1981;

2.    Retaliation against Defendant Troutman Pepper in violation of Section 1981;

3.    Retaliation against Defendant Brian Iwashyna in violation of Section 1981;

4.    Retaliation against Defendant Troutman Pepper in violation of Title VII;

5.    Retaliation against Defendant Troutman Pepper in violation of the DCHRA; and

6.    Retaliation against Defendant Brian Iwashyna in violation of the DCHRA.

### b.    *Defendants' Statement of Defenses*

Defendants raise each of the following defenses in response to each of Plaintiff's claims:

1.      Plaintiff may not recover damages because the reassignment of her billable time was not an employment action that left her worse off and therefore not an adverse employment action.

2.      Defendants made all employment decisions related to Plaintiff for legitimate, non-discriminatory and non-retaliatory reasons.

3.      Defendants at all times acted in good faith and consistently maintained, implemented, and enforced policies in the workplace prohibiting discrimination and retaliation.

4.      Even if Plaintiff was entitled to relief, which Defendants deny, any recovery would be barred to the extent Plaintiff failed to mitigate her damages, and any amounts she earned in the interim must be deducted from recovery.

5.      To the extent the jury awards Plaintiff any damages relating to her retaliatory termination claim, Defendants are entitled to an offset arising out of any monetary relief she received in *Sankano v. Major Lindsey & Africa, LLC, et al.*, No. 8:24-cv-00951 (D. Md. April 1, 2024).

6.      Even if Plaintiff was entitled to relief, which Defendants deny, she may not recover punitive damages because, at all relevant times, Defendants made a good-faith effort to comply with all applicable laws.

7.      Even if Plaintiff was entitled to relief, which Defendants deny, she may not recover punitive damages because the alleged actions by Defendants were not taken with reckless disregard for the rights of Plaintiff.

8.      Even if Plaintiff was entitled to relief, which Defendants deny, Plaintiff cannot prove that punitive damages can be imputed to Defendant Troutman.

9.      Even if Plaintiff were able to prove that a prohibited factor motivated the alleged employment actions, which Defendants deny, the same alleged actions would have been taken even absent those motivations and, therefore, Plaintiff's claims must fail.

## IV.    STIPULATIONS OF FACT

Plaintiff does not believe that stipulations of fact would be helpful or appropriate in this matter.  This is a jury trial, and stipulating to a handful of disjointed facts is only going to confuse the jury as it attempts to piece together the stipulations with the presentation of witnesses and exhibits.  It will not streamline the trial or make things more efficient and will instead have the opposite effect.  Relatedly, Defendants' Proposed Stipulated Facts are cherry-picked and many of them are taken out of context.  Putting them into context (and doing the same for any facts that Plaintiff might propose) will only lengthen the trial.  Finally, it is unclear why Defendants are providing the Court with proposed stipulations of fact.  By their nature, stipulations have to be agreed upon by the parties, and Plaintiff does not agree to introduce evidence by stipulation.

A list of Defendants' Proposed Stipulated Facts is attached as **Appendix 1.**  Defendants' Proposed Stipulated Facts are based in large part on the Court's order on Summary Judgment (*see* ECF No. 35) and are intended to streamline the proceedings at trial.

In addition to the Defendants' proposed stipulated facts delineated in **Appendix 1**, the Parties stipulate to the authenticity of exhibits, except as otherwise noted on the Trial Exhibit List, so no Party will have to lay an evidentiary foundation as to authenticity as a condition of having the exhibits admitted. The Parties have reserved all other objections to admissibility and further reserve all rights to object to the introduction on the basis that it is not being introduced through an appropriate witness.

## V.   WITNESS SCHEDULE

The Parties' respective witness lists and objections thereto are attached as **Appendix 2.**

## VI.   TRIAL EXHIBIT LIST

The Parties' respective exhibit lists and objections thereto are attached as **Appendix 3.**

## VII.   DEPOSITION DESIGNATIONS

Note that the parties currently have no deposition designations because: (i) Defendants represent all but one deposed witness and have represented that all will appear; and (ii) the only deposed witness represented by third-party counsel has represented that she will appear.  If the parties determine that any deposed witness is unavailable, they reserve the right to designate testimony.

## VIII.   DEMONSTRATIVE, PHYSICAL, AND VIDEOTAPE EVIDENCE LIST

The parties do intend on utilizing evidence falling within this category.  Any physical or videotape exhibits will be identified on the parties' exhibit list.  The Parties are not yet prepared to identify or describe any potential demonstrative exhibits but reserve the right to use them as appropriate.

## IX.   REQUEST FOR RELIEF & ITEMIZATION OF DAMAGES

Plaintiff will seek the following damages:

Economic Damages:  Plaintiff seeks back pay in an amount to be determined by the Court to compensate her for what she would have earned had she not been subjected to discrimination and/or retaliation, from the time of the unlawful conduct to the date of the verdict.[2]  See Hubbard v. E.P.A., 949 F.2d 453, 462-65 (D.C. App. 1991) (collecting cases holding that back pay is

---

[2]   Because there is no expert testimony to be presented on the issue of back pay, it can be determined solely by the Court.  See George Washington Univ. v. Violand, 940 A.2d 965, 981 (App. D.C. 2008) (finding that under the DCHRA, "it was within the province of the jury to  . . . decide whether to accept [an expert's] assumptions and calculations of back pay").

equitable relief); <u>Klotzbach-Piper v. Nat'l R.R. Passenger Corp.</u>, 636 F. Supp. 3d 73, 83 n.2 (D.D.C. 2022) (internal citations omitted) ("It is well-settled that under Title VII, back pay . . . [is] equitable in nature and that the district court has broad discretion in fashioning such equitable remedies. . . . [T]he decision in equitable remedies . . . is left to the court, often to be determined in a post-trial proceeding once a jury has decided liability and compensatory damages issues[.]"). Plaintiff also seeks front pay in an amount to be determined by the Court to compensate her for what she would have earned had she not been subjected to discrimination and/or retaliation, from the time of the verdict through the date she would have left the employ of Troutman Pepper. <u>See</u> <u>Pollard v. E.I. du Pont de Nemours & Co.</u>, 532 U.S. 843, 853 (2001) (looking to Section 706(g) of Title VII to hold that front pay is equitable relief to be determined by a Court, not a jury); <u>George</u> <u>Washington Univ.</u>, 940 A.2d at 981 (affirming the exclusion of front pay from jury consideration under the DCHRA).

Plaintiff submits the following chart of her economic damages through 2038[3] and assumes the following: (i) Ms. Sankano would have remained an Associate for four years; (ii) she would have moved to Senior Associate for two years; (iii) she would have become Partner; (iv) as an Associate, her compensation would increase $20,000.00 per year; (v) as Partner, her compensation would increase 20 percent per year; and (vi) her subsequent employer will give her an annual $10,000.00 compensation increase.

---

[3]     Plaintiff reserves the right to revise these damages in accordance with the evidence presented at trial, including to extend the damages sought further into the future if the evidence supports the claim she would have remained at Troutman beyond 2038.  However, the chart provided illustrates what she expects the evidence to show.

| Year | Total Comp. | Mitigation | Loss |
|---|---|---|---|
| Associate 2024 | $280,000.00 | ($90,002.06)[4] | $189,997.94 |
| Associate 2025 | $300,000.00 | ($153,566.26) | $146,433.74 |
| Associate 2026 | $320,000.00 | ($159,551.00) | $160,449.00 |
| Associate 2027 | $340,000.00 | ($169,551.00) | $170,449.00 |
| Senior Associate 2028 | $360,000.00 | ($179,551.00) | $180,449.00 |
| Senior Associate 2029 | $380,000.00 | ($189,551.00) | $190,449.00 |
| Partner 2030 | $456,000.00 | ($199,551.00) | $256,449.00 |
| Partner 2031 | $547,200.00 | ($209,551.00) | $337,649.00 |
| Partner 2032 | $656,640.00 | ($219,551.00) | $437,089.00 |
| Partner 2033 | $787,968.00 | ($229,551.00) | $558,417.00 |
| Partner 2034 | $945,561.60 | ($239,551.00) | $706,010.60 |
| Partner 2035 | $1,134,673.92 | ($249,551.00) | $885,122.92 |
| Partner 2036 | $1,361,608.70 | ($259,551.00) | $1,102,057.70 |
| Partner 2037 | $1,633,930.44 | ($269,551.00) | $1,364,379.44 |
| Partner 2038 | $1,960,716.53 | ($279,551.00) | $1,681,165.53 |
| **TOTAL** | | | **$8,366,567.88** |

Compensatory and Emotional Distress Damages: Plaintiff seeks compensatory damages (*e.g.*, emotional distress, mental anguish, reputational damages and other monetary loss) in an amount to be determined by the jury. The financial damages caused by the harm Defendants' conduct has caused to Ms. Sankano's reputation overlap substantially with the past and future lost income calculations. Considering emotional distress as well, Plaintiff seeks no less than $10,000,000 in compensatory damages.

Punitive Damages: Plaintiff seeks punitive damages in an amount to be determined by the jury, but of no less than $25,000,000.

Other Relief: Plaintiff seeks pre- and post-judgment interest and reasonable attorneys' fees and costs as permitted by law and in an amount to be determined by the Court based upon a post-verdict fee application.

## X.    **PROPOSED *VOIR DIRE* QUESTIONS**

A statement of the proposed *voir dire* questions is attached as **Appendix 4**.

---

[4]    Ms. Sankano received $3,996 in unemployment benefits from February to April 2024. She also did some short-term contract work with Robert Half from April to September 2024, making $24,938.14. She made $37,448.75 in 2024 from her new role at the D.C. Department of Housing and Community Development.

## XI.   <u>PROPOSED JURY INSTRUCTIONS</u>

The Parties submit the following proposed jury instructions, agreed upon and not agreed to, to be given in the following order:

1. Plaintiff's Proposed Introduction and Instruction on Voir Dire

2. Plaintiff's Proposed Preliminary Instruction Before Trial

3. Joint Proposed Instruction #1: Evidence in the Case

4. Plaintiff's Proposed Instruction #2: Consideration of the Evidence –Partnership Party's Agents and Employees

5. Joint Proposed Instruction #3: Direct and Circumstantial Evidence

6. Joint Proposed Instruction #4: Multiple Defendants

7. Joint Proposed Instruction #5: Burden of Proof

8. Plaintiff's Proposed Instruction #6: Evidence Admitted for a Limited Purpose

9. Joint Proposed Instruction #7: Inadmissible and Stricken Evidence

10. Plaintiff's Proposed Instruction #8: Depositions as Evidence (if applicable)

11. Plaintiff's Proposed Instruction #9: Failure to Produce Witness or Other Evidence

12. Joint Proposed Instruction #10: Credibility of Witnesses

13. Joint Proposed Instruction #11: Number of Witnesses and Weight of Evidence

14. Joint Proposed Instruction #12: Impeachment by Prior Inconsistent Statement

15. Joint Proposed Instruction #13: Adopting Prior Inconsistent Statements

16. Joint Proposed Instruction #14: Charts and Summaries as Demonstrative or Instructional Aids

17. Joint Proposed Instruction #15: Redacted Exhibits

18. Joint Proposed Instruction #16: Separate Verdicts on Each Claim

19.     Joint Proposed Instruction #17: Section 1981 Race Discrimination

20.     Plaintiff's Proposed Instruction #18: Section 1981 Retaliation

21.     Defendants' Proposed Instruction #18: Section 1981 Retaliation

22.     Plaintiff's Proposed Instruction #19: DCHRA Retaliation

23.     Defendants' Proposed Instruction #19: DCHRA Retaliation

24.     Plaintiff's Proposed Instruction #20: Title VII Retaliation

25.     Defendants' Proposed Instruction #20: Title VII Retaliation

26.     Joint Proposed Instruction #21: Jury to Award Damages

27.     Joint Proposed Instruction #22:  Burden of Proof – Speculative Damages

28.     Joint Proposed Instruction #23: Emotional Distress Damages

29.     Defendants' Proposed Instruction #24: Punitive Damages

30.     Defendants' Proposed Instruction #24(a): Punitive Damages Calculation

31.     Plaintiff's Proposed Instruction #24: Punitive Damages

32.     Joint Proposed Instruction #25: Nominal Damages

33.     Joint Proposed Instruction #26: Function of the Jury and Considering Instructions as a Whole

34.     Joint Proposed Instruction #27: Selection of Foreperson

35.     Joint Proposed Instruction #28: Unanimity and Duty to Deliberate

36.     Joint Proposed Instruction #29: Beginning of Deliberations

37.     Joint Proposed Instruction #30: Communications Between Court and Jury

38.     Plaintiff's Proposed Instruction #31: Delivering the Verdict

The text of each proposed jury instruction, and any objection(s) thereto, are attached as **Appendix 5**.

**XII.    PROPOSED VERDICT FORMS**

The Parties' respective proposed verdict forms are attached as **Appendix 6 and 7.**

**XIII.    SPECIAL CONSIDERATIONS**

Defendants will designate some documents or portions of documents as confidential and will request the courtroom be sealed when those documents are presented to witnesses and the jury. This is consistent with the Parties' Stipulated Protective Order. Defendants do not intend to request the Courtroom be sealed for any documents that it removed the Confidential designation and submitted on the public docket with their summary judgment filings.   Plaintiff objects to the sealing of the courtroom as completely inappropriate and unwarranted, and notes that the entirety of the summary judgment briefing, including all of the documents marked "confidential" by Defendants, was filed on the public docket.

One witness, Jennifer Jana, will be in her third trimester of a high-risk pregnancy at the time of trial. This may prevent her from appearing, at least in-person, at trial.

**XIV.    TRIAL TIME ESTIMATES**

Plaintiff estimates that trial will be completed within nine days (in other words, by Friday, May 29, 2026).  Plaintiff proposes that the Court impose time limits on the parties to ensure that the trial is completed within this time frame.

In light of the number of witnesses, collectively 34 witnesses, and documents identified by the Parties, including more than 300 hundred by just Plaintiff and around 90 for both Defendants, Defendants estimate fifteen days will be needed for trial, concluding by Friday, June 5, 2026.

Dated: March 30, 2026

_____
Michael J. Willemin
Brooke Payton


Wigdor LLP
85 Fifth Avenue
New York, NY 10003
Telephone: (212) 257-6800
Facsimile: (212) 257-6845
mwillemin@wigdorlaw.com
bpayton@wigdorlaw.com


*Counsel for Plaintiff*

/s/ Alison N. Davis_____
Alison Davis
Paul Kennedy
Morgan Kinney
Caroline Jaipaul


Littler Mendelson P.C.
815 Connecticut Avenue NW, Suite 400
Washington, DC 20006
Telephone: (202) 772-2533
Fax: (202) 318-8416
andavis@littler.com
pkennedy@littler.com
mkinney@littler.com
cjaipaul@littler.com


*Counsel for Defendants*

13